APPEAL NO.: 25 - 7024

IN THE
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

PHANTA U. DARAMY-ANDREWS
Appellant

v.

LIBERTY INSURANCE CORPORATION
Appellee

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
(Judge Timothy J. Kelly)

APPENDIX

Charles C. Iweanoge
THE IWEANOGES' FIRM, P.C.
IWEANOGE LAW CENTER
1026 Monroe Street, NE
Washington, D.C. 20017-1760
Phone: (202) 347 - 7026
Fax: (202) 347-7108
Email: cci@iweanogesfirm.com
Counsel for Appellant

# TABLE OF CONTENTS

Docket sheet ………………………………………………………………App 1

Notice of Removal ……………………………………………….....App 009

Complaint and Jury Demand ……………….…………………….....App 012

Amended Complaint and Jury Demand …………………………….…..App 032

Answer to Amended Complaint …………………….………….…..…… App 040

Defendant's Motion for Summary Judgment ……………………..… App.045

Plaintiff's Opposition to Defendant's Motion for Summary Judgment …. App.094

Defendant's Motion for Leave to File Amended Answer ……………..… App.237

Plaintiff's Opposition to Defendant's Motion
for Leve to File Amended Answer ……………………………………… App.247

Reply to Plaintiff's Opposition to Defendant's
Motion for Leave to File Amended Answer ……………………………… App.274

Defendant's Renewed Motion for Summary Judgment ……………..… App.277

Plaintiff's Opposition to Defendant's Motion for Summary Judgment …. App.326

Reply to Plaintiff's Opposition to Defendant's
Motion for Summary Judgment …………………………………….. App.554

Memorandum Opinion ………………………………………… App.560

Order …………………………………………………… App.575

Notice of Appeal ……………………………………………….. App.576

Amended Notice of Appeal ……………………………………… App.577

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:22-cv-01694-TJK

DARAMY-ANDREWS v. LIBERTY MUTUAL INSURANCE
COMPANY et al
Assigned to: Judge Timothy J. Kelly
Demand: $201,000
Case in other court: D.C. Superior Court, 2022 CA 001751 B
        USCA, 25-07024
Cause: 28:1332 Diversity-Breach of Contract

Date Filed: 06/14/2022
Date Terminated: 01/24/2025
Jury Demand: Plaintiff
Nature of Suit: 110 Insurance
Jurisdiction: Diversity

## Plaintiff

**PHANTA U. DARAMY-ANDREWS**

represented by **Charles C. Iweanoge**
IWEANOGES' FIRM, PC
1026 Monroe Street, NE
Washington, DC 20017
(202) 347-7026
Fax: (202) 347-7108
Email: cci@iweanogesfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

## Defendant

**LIBERTY MUTUAL INSURANCE
COMPANY**
*TERMINATED: 07/09/2022*

represented by **James Charles Mehigan**
MEHIGAN LAW GROUP PLLC
11921 Freedom Drive
Suite 550
Reston, VA 20190
703-774-7281
Email: jmehigan@mehiganlawgroup.com
*ATTORNEY TO BE NOTICED*

## Defendant

**LIBERTY MUTUAL GROUP INC.**
*TERMINATED: 07/09/2022*

represented by **James Charles Mehigan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

## Defendant

**LIBERTY MUTUAL FIRE
INSURANCE COMPANY**
*TERMINATED: 07/09/2022*

represented by **James Charles Mehigan**
(See above for address)
*LEAD ATTORNEY*

**Defendant**

**LIBERTY MUTUAL AUTO AND HOME SERVICES, LLC**
*TERMINATED: 07/09/2022*

represented by **James Charles Mehigan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**LIBERTY INSURANCE CORPORATION**

represented by **James Charles Mehigan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/14/2022 | 1 | NOTICE OF REMOVAL from Superior Court of the District of Columbia, case number 2022 CA 001751 B Filing fee $ 402, receipt number ADCDC-9305778 filed by LIBERTY MUTUAL INSURANCE COMPANY. (Attachments: # 1 Exhibit Complaint, # 2 Exhibit Summons, # 3 Exhibit Notice of Service, # 4 Exhibit Civil Information Sheet, # 5 Exhibit Initial Order, # 6 Civil Cover Sheet Civil Coversheet)(Mehigan, James) (Attachment 6 replaced on 6/14/2022) (znmg). Modified on 6/14/2022 to replace fillable civil cover sheet (znmg). (Entered: 06/14/2022) |
| 06/14/2022 | 2 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by LIBERTY MUTUAL AUTO AND HOME SERVICES LLC, LIBERTY MUTUAL FIRE INSURANCE COMPANY, LIBERTY MUTUAL GROUP INC., LIBERTY MUTUAL INSURANCE COMPANY (Mehigan, James) (Entered: 06/14/2022) |
| 06/14/2022 | | NOTICE OF ERROR re 1 Notice of Removal; Civil Cover Sheet; emailed to jmehigan@mehiganlawgroup.com, cc'd 0 associated attorneys -- The PDF file you docketed contained errors: 1. Noncompliance with LCvR 5.1(c). Please file an errata correcting the initiating pleading to include the name & full residence address of each party using the event Errata., 2. Blank or missing coversheet. Please use the cover sheet at https://www.dcd.uscourts.gov/new-case-forms & file using the event Civil Cover Sheet., 3. **COMPLIANCE DEADLINE is by close of business today. This case will not proceed any further until all errors are satisfied.** (znmg, ) (Entered: 06/14/2022) |
| 06/14/2022 | 3 | ERRATA by LIBERTY MUTUAL INSURANCE COMPANY. (Mehigan, James) (Entered: 06/14/2022) |
| 06/14/2022 | 4 | CIVIL COVER SHEET by LIBERTY MUTUAL INSURANCE COMPANY filed by LIBERTY MUTUAL INSURANCE COMPANY.(Mehigan, James) (Entered: 06/14/2022) |
| 06/14/2022 | | Case Assigned to Judge Timothy J. Kelly. (znmg) (Entered: 06/14/2022) |
| 06/14/2022 | 5 | NOTICE to Counsel/Party re 1 Notice of Removal. (Attachment: # 1 Notice and Consent)(znmg) (Entered: 06/14/2022) |
| 06/17/2022 | 7 | Receipt on 6/17/2022 of ORIGINAL FILE, certified copy of transfer order and docket |

| | | |
|---|---|---|
| | | sheet from Superior Court. Superior Court Number 2022 CA 001751 B. (ztth) (Entered: 06/21/2022) |
| 06/20/2022 | 6 | Consent MOTION for Extension of Time to File *Answer or Responsive Pleading* by LIBERTY MUTUAL AUTO AND HOME SERVICES, LLC, LIBERTY MUTUAL FIRE INSURANCE COMPANY, LIBERTY MUTUAL GROUP INC., LIBERTY MUTUAL INSURANCE COMPANY. (Attachments: # 1 Text of Proposed Order Proposed Order)(Mehigan, James) (Entered: 06/20/2022) |
| 06/22/2022 | | MINUTE ORDER granting Defendants' 6 Consent Motion for Extension to File Answer or Responsive Pleading. It is hereby ORDERED that, for good cause shown, Defendants' motion is GRANTED. It is further ORDERED that Defendants shall answer or otherwise respond seven days after Plaintiff files her anticipated Amended Complaint. Signed by Judge Timothy J. Kelly on 6/22/2022. (lctjk1) (Entered: 06/22/2022) |
| 07/09/2022 | 8 | AMENDED COMPLAINT against All Defendants with Jury Demand filed by PHANTA U. DARAMY-ANDREWS. (Attachments: # 1 Appendix Redlined Amended Complaint)(Iweanoge, Charles) (Entered: 07/09/2022) |
| 07/15/2022 | 9 | ANSWER to 8 Amended Complaint by LIBERTY INSURANCE CORPORATION. (Mehigan, James) (Entered: 07/15/2022) |
| 07/15/2022 | 10 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by LIBERTY INSURANCE CORPORATION (Mehigan, James) (Entered: 07/15/2022) |
| 07/18/2022 | | MINUTE ORDER: It is hereby ORDERED that an Initial Scheduling Conference is set for August 12, 2022, at 9:30 a.m. via teleconference. It is further ORDERED that the parties shall meet, confer, and submit a joint report pursuant to Federal Rule of Civil Procedure 26(f) and Local Rule 16.3. The parties shall contact the Courtroom Deputy at (202) 354-3495 at least one business day prior to the hearing to make arrangements to participate. Signed by Judge Timothy J. Kelly on 7/18/2022. (lctjk1) (Entered: 07/18/2022) |
| 07/18/2022 | | Set/Reset Hearings: Telephonic Initial Scheduling Conference set for 8/12/2022 at 09:30 AM before Judge Timothy J. Kelly. (zkh) (Entered: 08/01/2022) |
| 07/21/2022 | 11 | MEET AND CONFER STATEMENT. (Mehigan, James) (Entered: 07/21/2022) |
| 08/12/2022 | | Minute Entry for proceedings held before Judge Timothy J. Kelly: Telephonic Initial Scheduling Conference held on 8/12/2022. Scheduling Order to be entered by the court. Telephonic Post-Discovery Status Conference set for 7/11/2023 at 9:30 AM before Judge Timothy J. Kelly. (Court Reporter: Lisa Moreira) (zkh) (Entered: 08/12/2022) |
| 08/12/2022 | 12 | SCHEDULING ORDER. See Order for details. Signed by Judge Timothy J. Kelly on 8/2/2022. (lctjk1) (Entered: 08/12/2022) |
| 08/17/2022 | 13 | STANDING ORDER. See Order for details. Signed by Judge Timothy J. Kelly on 8/17/2022. (lctjk1) (Entered: 08/17/2022) |
| 03/31/2023 | 14 | Joint MOTION for Extension of Time to Complete Discovery by LIBERTY INSURANCE CORPORATION. (Attachments: # 1 Text of Proposed Order Proposed Order)(Mehigan, James) (Entered: 03/31/2023) |

| Date | No. | Entry |
|---|---|---|
| 04/03/2023 | | MINUTE ORDER granting the parties' 14 Joint Motion for Extension of Time to Complete Discovery. It is hereby ORDERED that, for good cause shown, the parties' 14 joint motion is GRANTED. It is further ORDERED that the Court's 12 Scheduling Order is hereby modified as follows: fact discovery shall close on May 31, 2023; requests for admission shall be served by June 30, 2023; Plaintiff shall serve her Rule 26(a)(2) expert disclosures by July 2, 2023; Defendant shall serve its Rule 26(a)(2) rebuttal expert disclosures by August 1, 2023; and discovery shall close on September 1, 2023. It is further ORDERED that the post-discovery status conference currently scheduled for July 11, 2023 is RESCHEDULED to September 11, 2023 at 9:30 a.m. via teleconference, in advance of which the parties shall confer to discuss a joint proposed summary judgment briefing schedule and the possibility of mediating the case. The parties shall contact the Courtroom Deputy at (202) 354-3495 at least one business day prior to the hearing to make arrangements to participate. Signed by Judge Timothy J. Kelly on 4/3/2023. (lctjk1) (Entered: 04/03/2023) |
| 04/24/2023 | 15 | STIPULATION *Regarding Confidentiality* by LIBERTY INSURANCE CORPORATION. (Mehigan, James) (Entered: 04/24/2023) |
| 04/24/2023 | 16 | STIPULATION *Regarding Non-Waiver of Privilege* by LIBERTY INSURANCE CORPORATION. (Mehigan, James) (Entered: 04/24/2023) |
| 04/27/2023 | 17 | STIPULATION AND ORDER regarding confidentiality of discovery material. See Order for details. Signed by Judge Timothy J. Kelly on 4/27/2023. (lctjk1) (Entered: 04/27/2023) |
| 04/27/2023 | 18 | STIPULATION AND ORDER regarding non-waiver of privilege. See Order for details. Signed by Judge Timothy J. Kelly on 4/27/2023. (lctjk1) (Entered: 04/27/2023) |
| 09/08/2023 | 19 | PROPOSED BRIEFING SCHEDULE by PHANTA U. DARAMY-ANDREWS. (Iweanoge, Charles) (Entered: 09/08/2023) |
| 09/11/2023 | | Minute Entry for proceedings held before Judge Timothy J. Kelly: Telephonic Post-Discovery Status Conference held on 9/11/2023. Summary Judgment Scheduling order to be entered by the court. (Court Reporter: Timothy Miller) (zkh) (Entered: 09/11/2023) |
| 09/11/2023 | | MINUTE ORDER: As discussed at today's status conference, it is hereby ORDERED that Defendant shall file any motion for summary judgment by October 19, 2023; Plaintiff shall file any opposition by November 13, 2023; and Defendant shall file any reply by November 20, 2023. Signed by Judge Timothy J. Kelly on 9/11/2023. (lctjk1) (Entered: 09/11/2023) |
| 10/19/2023 | 20 | MOTION for Summary Judgment by LIBERTY INSURANCE CORPORATION. (Attachments: # 1 Statement of Facts Statement of Material Facts, # 2 Memorandum in Support Memorandum In Support, # 3 Exhibit Exhibit 1, # 4 Exhibit Exhibit 2, # 5 Text of Proposed Order Proposed Order)(Mehigan, James) (Entered: 10/19/2023) |
| 11/01/2023 | 21 | Consent MOTION for Extension of Time to File Response/Reply as to 20 MOTION for Summary Judgment by PHANTA U. DARAMY-ANDREWS. (Attachments: # 1 Text of Proposed Order)(Iweanoge, Charles) (Entered: 11/01/2023) |
| 11/03/2023 | | MINUTE ORDER granting Plaintiff's 21 Consent Motion for Extension of Time. Upon consideration of Plaintiff's 21 Consent Motion for Extension of Time, and for good cause shown, it is hereby ORDERED that the motion is GRANTED. Plaintiff shall file |

| | | |
|---|---|---|
| | | any response to Defendants' 20 Motion for Summary Judgment by November 20, 2023. Signed by Judge Timothy J. Kelly on 11/3/2023. (lctjk1) (Entered: 11/03/2023) |
| 11/17/2023 | 22 | Second MOTION for Extension of Time to File Response/Reply as to 20 MOTION for Summary Judgment by PHANTA U. DARAMY-ANDREWS. (Iweanoge, Charles) (Entered: 11/17/2023) |
| 11/20/2023 | | MINUTE ORDER granting Plaintiff's 22 Consent Motion for Extension of Time. Upon consideration of Plaintiff's 22 Consent Motion for Extension of Time, and for good cause shown, it is hereby ORDERED that the motion is GRANTED. Plaintiff shall file any response to Defendants' 20 Motion for Summary Judgment by November 28, 2023. Signed by Judge Timothy J. Kelly on 11/20/2023. (lctjk1) (Entered: 11/20/2023) |
| 11/28/2023 | 23 | Memorandum in opposition to re 20 Motion for Summary Judgment, filed by PHANTA U. DARAMY-ANDREWS. (Attachments: # 1 Statement of Facts Statement of Material Facts in Dispute, # 2 Affidavit Plaintiff's Affidavit, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Text of Proposed Order) (Iweanoge, Charles) (Entered: 11/28/2023) |
| 12/05/2023 | 24 | REPLY to opposition to motion re 20 MOTION for Summary Judgment filed by LIBERTY INSURANCE CORPORATION. (Mehigan, James) (Entered: 12/05/2023) |
| 12/05/2023 | 25 | MOTION for Leave to File *First Amended Answer* by LIBERTY INSURANCE CORPORATION. (Attachments: # 1 Exhibit First Amended Answer, # 2 Text of Proposed Order Proposed Order)(Mehigan, James) (Entered: 12/05/2023) |
| 12/19/2023 | 26 | Consent MOTION for Extension of Time to *File Opposition to Defendant's Motion for Leave to file Amended Answer* by PHANTA U. DARAMY-ANDREWS. (Attachments: # 1 Text of Proposed Order)(Iweanoge, Charles) (Entered: 12/19/2023) |
| 12/20/2023 | | MINUTE ORDER granting Plaintiff's 26 Consent Motion for Extension of Time. It is hereby ORDERED, *nunc pro tunc* and for good cause shown, that Plaintiff's 26 consent motion for an extension of time to file an opposition to Defendants' 25 motion for leave to file first amended answer is GRANTED. It is further ORDERED that Plaintiff shall file any opposition to Defendants' 25 motion by January 5, 2024. Signed by Judge Timothy J. Kelly on 12/20/2023. (lctjk1) (Entered: 12/20/2023) |
| 01/04/2024 | 27 | Memorandum in opposition to re 25 Motion for Leave to File filed by PHANTA U. DARAMY-ANDREWS. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Text of Proposed Order)(Iweanoge, Charles) (Entered: 01/04/2024) |
| 01/11/2024 | 28 | REPLY to opposition to motion re 25 MOTION for Leave to File *First Amended Answer* filed by LIBERTY INSURANCE CORPORATION. (Mehigan, James) (Entered: 01/11/2024) |
| 05/03/2024 | | MINUTE ORDER granting Defendant's 25 Motion for Leave to File First Amended Answer and denying without prejudice its 20 Motion for Summary Judgment. Plaintiff sues her homeowner's insurance company for damage to her home, and Defendant moves for summary judgment in part on the basis that the terms of her policy require an action be brought within one year from the date of loss. ECF No. 20. Defendant, however, did not assert this contractual statute-of-limitations affirmative defense in its 9 Answer. Defendant now moves for leave to amend its answer, which Plaintiff opposes, arguing that she was not aware of that term of her contract and that she would be prejudiced because she did not conduct discovery related to that defense. ECF Nos. 25, |

| | | |
|---|---|---|
| | | 27. "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). And "[i]n the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.--the leave sought should, as the rules require, be freely given." *Harris v. Sec'y, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 343 (D.C. Cir. 1997) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Although the Court must weigh that Defendant moved to do so only after discovery had closed, that is not necessarily dispositive. *Lenkiewicz v. Castro*, 145 F. Supp. 3d 140 (D.D.C. 2015). Here, Defendant was not dilatory; it moved to amend within a week of Plaintiff bringing the oversight to its attention. And there is no indication Defendant's delay was strategic or otherwise was the result of bad faith, given that Defendant's counsel questioned Plaintiff about the delay in bringing suit in her deposition. *See* ECF No. 20-2 at 6. Further, any prejudice to Plaintiff can be ameliorated by briefly re-opening discovery if she so requests. Thus, it is hereby ORDERED that Defendant's 25 Motion for Leave to File First Amended Answer is GRANTED, and its 20 Motion for Summary Judgment is DENIED WITHOUT PREJUDICE. It is further ORDERED that Plaintiff shall file any motion for an extension of time to complete discovery by May 17, 2024. Signed by Judge Timothy J. Kelly on 5/3/2024. (lctjk1) (Entered: 05/03/2024) |
| 05/16/2024 | 29 | Consent MOTION for Discovery *Reopen Discovery* by PHANTA U. DARAMY-ANDREWS. (Attachments: # 1 Text of Proposed Order)(Iweanoge, Charles) (Entered: 05/16/2024) |
| 05/20/2024 | | MINUTE ORDER granting Plaintiff's 29 Consent Motion to Reopen Discovery. It is hereby ORDERED that Plaintiff's consent motion is GRANTED, and the period for discovery shall reopen for 45 days for Plaintiff to conduct discovery on the issue of contractual statute of limitation and related issues. Discovery shall close on July 5, 2024. Signed by Judge Timothy J. Kelly on 5/20/2024. (lctjk1) (Entered: 05/20/2024) |
| 05/22/2024 | 30 | ANSWER to 8 Amended Complaint *First Amended* by LIBERTY INSURANCE CORPORATION.(Mehigan, James) (Entered: 05/22/2024) |
| 06/27/2024 | 31 | Consent MOTION for Extension of Time to Complete Discovery by LIBERTY INSURANCE CORPORATION. (Attachments: # 1 Text of Proposed Order Proposed Order)(Mehigan, James) (Entered: 06/27/2024) |
| 06/28/2024 | | MINUTE ORDER granting Defendant's 31 Consent Motion for Extension of Time to Complete Discovery. It is hereby ORDERED that Defendant's consent motion is GRANTED, and the period for discovery on the issue of contractual statute of limitation and related issues shall close on August 5, 2024. It is further ORDERED that the parties shall appear for a post-discovery status conference on August 6, 2024, at 9:30 a.m. via teleconference, in advance of which the parties shall confer to discuss a joint proposed summary judgment briefing schedule and the possibility of mediating the case. The parties shall contact the Courtroom Deputy at (202) 354-3495 at least one business day prior to the hearing to make arrangements to participate. Signed by Judge Timothy J. Kelly on 6/28/2024. (lctjk1) (Entered: 06/28/2024) |
| 06/28/2024 | 32 | Consent MOTION to Continue *Status Conference or for Leave to Appear In Person* by LIBERTY INSURANCE CORPORATION. (Attachments: # 1 Text of Proposed Order Proposed Order)(Mehigan, James). Added MOTION for Leave to Appear on 7/1/2024 |

| | | (znmw). (Entered: 06/28/2024) |
|---|---|---|
| 07/02/2024 | | MINUTE ORDER granting Defendant's 32 Consent Motion to Continue Status Conference or for Leave to Appear in Person. It is hereby ORDERED that Defendant's consent motion is GRANTED, and the status conference scheduled for August 6, 2024, via teleconference shall now occur in Courtroom 11. Plaintiff's counsel may appear via teleconference. Signed by Judge Timothy J. Kelly on 7/2/2024. (lctjk1) (Entered: 07/02/2024) |
| 08/06/2024 | | Minute Entry for proceedings held before Judge Timothy J. Kelly: Post-Discovery Status Conference held on 8/6/2024. Scheduling Order to be entered by the court. Defendant's Motion due by 8/20/2024. Plaintiff's Response due by 9/17/2024. Defendant's Reply due by 10/1/2024. (Court Reporter: Chandra Kean) (zkh) (Entered: 08/06/2024) |
| 08/20/2024 | 33 | MOTION for Summary Judgment by LIBERTY INSURANCE CORPORATION. (Attachments: # 1 Statement of Facts Statement of Material Facts, # 2 Memorandum in Support Memorandum In Support, # 3 Exhibit Exhibit 1, # 4 Exhibit Exhibit 2, # 5 Text of Proposed Order Proposed Order)(Mehigan, James) (Entered: 08/20/2024) |
| 09/17/2024 | 34 | Memorandum in opposition to re 33 Motion for Summary Judgment, filed by PHANTA U. DARAMY-ANDREWS. (Attachments: # 1 Statement of Facts Statement of Disputed Facts, # 2 Affidavit Plaintiff's Affidavit, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Exhibit 9)(Iweanoge, Charles) (Entered: 09/17/2024) |
| 10/01/2024 | 35 | REPLY to opposition to motion re 33 MOTION for Summary Judgment filed by LIBERTY INSURANCE CORPORATION. (Attachments: # 1 Exhibit Exhibit 1) (Mehigan, James) (Entered: 10/01/2024) |
| 01/24/2025 | 36 | ORDER granting 33 Motion for Summary Judgment. See Order for details. This is a final, appealable Order. The Clerk of Court is directed to close the case. Signed by Judge Timothy J. Kelly on 1/24/2025. (lctjk1) (Entered: 01/24/2025) |
| 01/24/2025 | 37 | MEMORANDUM OPINION in support of 36 Order granting Defendant's motion for summary judgment. Signed by Judge Timothy J. Kelly on 1/24/2025. (lctjk1) (Entered: 01/24/2025) |
| 02/21/2025 | 38 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 36 Order on Motion for Summary Judgment, 37 Memorandum & Opinion by PHANTA U. DARAMY-ANDREWS. Filing fee $ 605, receipt number ADCDC-11497459. Fee Status: Fee Paid. Parties have been notified. (Iweanoge, Charles) (Entered: 02/21/2025) |
| 02/21/2025 | 39 | ERRATA re 38 NOTICE OF APPEAL by PHANTA U. DARAMY-ANDREWS. (Iweanoge, Charles) (zdp). Modified docket text on 2/24/2025 (zdp). (Entered: 02/21/2025) |
| 02/24/2025 | | RESOLVED.....NOTICE of Provisional/Government Not Certified Status re 39 Amended NOTICE OF APPEAL re appeal 38 by PHANTA U. DARAMY-ANDREWS. (Iweanoge, Charles).<br><br>Your attorney renewal/government certification has not been received. As a result, your membership with the U.S. District & Bankruptcy Courts for the District of Columbia is not in good standing, and you are not permitted to file. Pursuant to Local Civil Rule |

| | | |
|---|---|---|
| | | 83.9, you must immediately correct your membership status by following the appropriate instructions on this page of our website: https://www.dcd.uscourts.gov/attorney-renewal.<br><br>Please be advised that the presiding judge in this case has been notified that you are currently not in good standing to file in this court. Renewal Due by 3/3/2025. (zapb) 2/24/2025 (zapb). (Entered: 02/24/2025) |
| 02/24/2025 | 40 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid re 39 Amended Notice of Appeal. (zdp) (Entered: 02/24/2025) |
| 02/25/2025 | | USCA Case Number 25-7024 for 38 Notice of Appeal to DC Circuit Court, filed by PHANTA U. DARAMY-ANDREWS. (zdp) (Entered: 02/26/2025) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/03/2025 09:20:06 | | |
| **PACER Login:** | IWEANOGESFIRM | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:22-cv-01694-TJK |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

**PHANTA U. DARAMY-ANDREWS,**            :

    **Plaintiff,**                                  :
                                 **CASE NO.: 22-1694**

**v.**                                            :

**LIBERTY MUTUAL INSURANCE**              :
**INSURANCE COMPANY, et. al.,**

                                     :

    **Defendants.**          <u>**NOTICE OF REMOVAL**</u>

Pursuant to 28 U.S.C. §§ 1332 and 1446, Defendants Liberty Mutual Insurance Company, Liberty Mutual Group, Inc., Liberty Mutual Fire Insurance Company, and Liberty Mutual Auto and Home Services, LLC hereby file this Notice of Removal and states as follows:

1.    Liberty Mutual Insurance Company, Liberty Mutual Group, Inc., Liberty Mutual Fire Insurance Company, and Liberty Mutual Auto and Home Services, LLC are Defendants in Case Number 2022 CA 001751 B filed in the Superior Court of the District of Columbia (the "<u>State Court Action</u>").

2.    Plaintiff Phanta U. Daramy-Andrews filed a Complaint against Defendants in the Superior Court of the District of Columbia on April 20, 2022.  *See* Superior Court Complaint, attached hereto as **Exhibit 1**.

3.    Plaintiff effected service of process on Defendant Liberty Mutual Insurance Company on May 24, 2022 by serving a copy of the Summons and Complaint on Defendant's resident agent CSC. *See* Writ of Summons, attached hereto as **Exhibit 2** and Notice of Service of Process **Exhibit 3**.

4.    Thus, removal of this action is being timely made within 30 days of the date of service.

5.      The State Court Action seeks recovery in excess of $75,000, exclusive of interest and costs, and the parties are from different states, as Plaintiff is a citizen of the District of Columbia, and all Defendants are citizens of other states.  Thus, the requirements of diversity are met for removal.

6.      This Notice of Removal will be filed promptly in the State Court Action and served upon Plaintiff.

7.      Copies of process and pleadings in the State Court Action that have been received by Defendant's counsel are attached hereto as set forth below.

- Plaintiff's Complaint against Defendants, filed in the Superior Court of the District of Columbia on April 20, 2022, attached hereto as **Exhibit 1**.

- Writ of Summons to Defendant Liberty Mutual Insurance Company, attached hereto as **Exhibit 2**.

- Plaintiff's Civil Information Sheet, attached hereto as **Exhibit 4**.

- Superior Court Initial Order, attached hereto as **Exhibit 5**.

**WHEREFORE**, Defendants Liberty Mutual Insurance Company, Liberty Mutual Group, Inc., Liberty Mutual Fire Insurance Company, and Liberty Mutual Auto and Home Services, LLC hereby remove the subject action from the Superior Court of the District of Columbia to the United States District Court for the District of Columbia.

**App.010**

Dated: June 14, 2022                                    Respectfully submitted,


                                                       */s/ James C. Mehigan*
                                                       James C. Mehigan, Bar #: 480691
                                                       Mehigan Law Group PLLC
                                                       11921 Freedom Drive
                                                       Suite 550
                                                       Reston, Virginia  20190
                                                       (703) 774-7281
                                                       jmehigan@mehiganlawgroup.com


                                                       *Attorney for Defendants*




## CERTIFICATE OF SERVICE

I hereby certify that, on June 14, 2022, a copy of the foregoing Defendants' Notice of

Removal and Defendants' Civil Cover Sheet was served by first class mail, postage prepaid, on:

            Charles C. Iweanoge, Esquire
            THE IWEANOGES' FIRM P.C.
            1026 Monroe Street, NE
            Washington, DC 20017


                                                        /s/ James C. Mehigan
                                                       James C. Mehigan

**App.011**

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

PHANTA U. DARAMY-ANDREWS    )
707 49TH PLACE, NE    )
WASHINGTON, DC 20019-4805    )
               PLAINTIFF,    )
                   )
          V.    )    CASE NO. 2022 CA 001751 B
                   )
LIBERTY MUTUAL INSURANCE COMPANY    )    ACTION INVOLVING REAL
PROPERTY    )
175 BERKELEY STREET    )
BOSTON, MA 02116    )
    SERVE REGISTERED AGENT    )
    CORPORATION SERVICE COMPAY    )
    1090 VERMONT AVENUE, NW, # 430    )
    WASHINGTON, DC 20005    )
                   )
    AND    )
                   )
LIBERTY MUTUAL GROUP INC.    )
175 BERKELEY STREET    )
BOSTON, MA 02116    )
SERVE REGISTERED AGENT    )
    CORPORATION SERVICE COMPANY    )
    1090 VERMONT AVENUE, NW, # 430    )
    WASHINGTON, DC 20005    )
                   )
    AND    )
                   )
LIBERTY MUTUAL FIRE INSURANCE COMPANY)
175 BERKELEY STREET    )
BOSTON, MA 02116    )
    SERVE REGISTERED AGENT    )
    CORPORATION SERVICE COMPANY    )
    1090 VERMONT AVENUE, NW, # 430    )
    WASHINGTON, DC 20005    )
                   )
    AND    )
                   )
LIBERTY MUTUAL AUTO    )
AND HOME SERVICES, LLC    )
175 BERKELEY STREET    )

**BOSTON, MA 02116**  )
   **SERVE REGISTERED AGENT**  )
   **CORPORATION SERVICE COMPAY**  )
   **1090 VERMONT AVENUE, NW, # 430**  )
   **WASHINGTON, DC 20005**  )
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### COMPLAINT AND JURY DEMAND

**COMES NOW,** Plaintiff, Phanta U. Daramy-Andrews, by and through under-signed counsel, Charles C. Iweanoge and THE IWEANOGES' FIRM, PC and files her Complaint and Jury Demand as follows.

### I. JURISDICTION AND VENUE

1.    The transaction involves insurance policy and property in the District of Columbia.

2.    Pursuant to *D.C. Code Ann., §§ 13-422 and §§ 13-423*, this Court has personal jurisdiction over Defendant because they transacted business within the District of Columbia.

3.    Pursuant to *D.C. Code Ann., §§ 11-921*, this Court has jurisdiction over the subject matter of the claims raised herein because it involves insurance policy and real property located in the District of Columbia.

4.    Pursuant to *D.C. Code Ann., §§ 13-423*, the District of Columbia is the proper venue for this action because the real property is in the District of Columbia.

## II. THE PARTIES

5.      Plaintiff, **PHANTA DARAMY-ANDREWS,** is of the full age of majority and a resident of the District of Columbia.

6.      Defendants, Liberty Mutual Insurance Company, Liberty Mutual Group, Inc., Liberty Mutual Fire and Casualty Insurance Company and Liberty Mutual Auto and Services, LLC, are foreign insurance companies authorized to do and/or doing business in the District of Columbia under the name Liberty Mutual Insurance, with the same Registered Agent and business address. Defendants are subject to the jurisdiction of this Honorable Court, which at all times pertinent herein was the property and casualty insurer of Phanta Daramy-Andrews for the property located at 707 49th Place NW, Washington, D.C. 20019.

## III. FACTUAL BACKGROUND

6.      The Plaintiff is the owner of the property known as 707 49th Place, NE, Washington, DC, 20019 who purchased insurance coverage from the Defendant, Liberty Mutual Insurance with Policy Number H37-238-660209-40 8 4, for her property located at 707 49th Place NW, Washington, D.C. 20019. The effective date of the policy was January 26, 2019, was expected to expire on January 26, 2020.

7.      The insured property was Plaintiff's primary residence during the relevant period and Plaintiff still resides at the property as her primary residence.

8.     The basement of the loss location was used primarily for storing pre-
cious and rarely used personal property and personal space area. The base-
ment contained clothes, plates, saucers, cups, radio, wine glasses, speakers,
books, vases, CD players, etc.

9.     On or about April 21, 2019, the basement of the property flooded
due to pipe break, which caused extensive damages to the basement, and all
the properties in the basement.

10.     Also, most of the personal property suffered mold damage after the
incident, resulting in Plaintiff's personal property in the basement being a total
loss entitling plaintiff to the full insurable amount shown on her policy for person-
al property. In addition, the real property was also damaged by the water and
subsequent molding.

11.     Defendants contracted the services of 1-800-Packouts to remove
Plaintiff's personal property for clean-up and storage. 1-800-Packouts discarded
some of Plaintiff's personal property because they were unsalvageable and
removed the rest to its business location for storage and cleanup. Defendants
requested that Plaintiff itemize all her personal property resulting in Plaintiff
spending two days at 1-800-Packouts itemizing her personal property stored at
that location.

12.     Plaintiff contacted Defendants and filed a claim under their cov-
erage for the cost of cleanup, repairs, damage to her personal and real prop-
erty. Defendants accepted that the loss was covered under Plaintiffs insurance

policy and the insurance set up a claim and requested Plaintiff to provide an itemized list of their damaged properties which Plaintiffs subsequently did.

13.    The estimated loss to Plaintiff for cleanup, storage, repairs to basement, property damage, loss of personal property is Two Hundred and One Thousand Thirty-Seven Dollars and Thirty-Four Cents ($201,037.34).

14.    At the time of the water damage, the Plaintiffs had in force a policy of property owners coverage issued by Liberty Mutual Insurance. Said policy of insurance contained a provision for property damage and for the kind of losses and damages sustained by Plaintiff.

15.    Plaintiff made a demand for payment to cover the loss as provided under their policy but Defendants without justification continued to prolong payment on the claim. Subsequently, in 2020, Defendants refused to make any payment and closed the file.

16.    Defendant's refusal to pay any amount for the cleanup, repairs, and covered damaged properties loss is a material breach of the insurance agreement. Defendant in contravention of the insurance agreement failed and/or refused to pay Plaintiff's repair and replacement costs for the damages done to the basement under the Plaintiff's insurance policy.

## IV. CAUSES OF ACTION
## FIRST CAUSE OF ACTION: BREACH OF CONTRACT

17.    Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1 through 16, as if delineated here in extenso.

18.    Defendants breached its contract of insurance with plaintiff by:

A. Failing to adjust the claim promptly and reasonably;
B.  Failing to properly train and/or instruct its adjusters and/or agents;
C. Failing to provide uniform and/or standard guidelines to adjusters and/or   agents to properly evaluate claims;
D. Failing to timely provide sufficient funds for the repairs and re placement of the subject property;
E.  Failing to promptly adjust and properly pay the policy limits for the plaintiff's total loss of personal property;
G. Failing to provide sufficient funds for the repair or replacement of the contents contained in the subject property, as per policy provisions; and
H. Any other acts or omissions to be shown at trial on the merits.

## SECOND CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION

19.    Plaintiff realleges and reavers every allegation contained in Paragraphs 1 through 18, as if delineated here in extenso.

20.    Defendants further breached its contract with plaintiff and/or acted negligently by the following actions:

A.    Failing to respond to verbal requests and correspondence in a timely manner;
B.    Failing to properly and timely adjust this case consistent with insurance industry standards;
C.    Failing to provide any reasonable basis for denying payment on this claim for months following the incident;
D.    Failing to meet its duty owed to plaintiff to engage in good faith and fair dealings; and
E.    Any other actions or omissions that will establish bad faith, breach of contract and/or negligence which will be proven at the trial on the merits.

## THIRD CAUSE OF ACTION: UNJUST ENRICHMENT

21    Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1 through 20, as if delineated here in extenso.

22.     Despite realizing substantial premium from plaintiff, Defendants have withheld the insurance payments owed to plaintiff for the water damage to her insured property.

23.     Defendant have therefore been unjustly enriched at plaintiff's expense.

## FOURTH CAUSE OF ACTION: BAD FAITH

24.     Plaintiff reallege and reaver each and every allegation contained in Paragraphs 1 through 23, as if delineated here in extenso.

25     Defendants breached its duty of good faith and fair dealing, as well as its affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with plaintiff by failing to issue a property insurance contract to plaintiff that is not designed to be used to deny coverage for the replacement cost of personal property, cost of repairs and restoration of plaintiffs' property as a result of the damages arising from an occurrence or covered peril as defined in the policy and failing to provide a property insurance contract that is unambiguous.

26.     Defendants bad faith conduct include failing to pay plaintiff living expenses; contents damages; and/or promptly adjust the claim. The defendants failure and/or omissions constitute bad faith in that they were arbitrary and capricious, all of which entitles plaintiffs to recover damages, attorney's fees, costs and penalties as allowed by law.

27.     Defendants failures were willful and/or intentional and/or arbitrary and capricious so that the plaintiff is entitled to an award of penalties, attorney's fees and costs.

**WHEREFORE,** plaintiff, Phanta Daramy-Andrews, respectfully prays after due proceedings be had that there be a judgment entered in her favor and against defendants awarding damages, prejudgment interest, post judgment interest, attorney's fees and costs, punitive and/or exemplary damages as may be allowed by law and for further relief as equity and justice require.

Respectfully submitted,
THE IWEANOGES' FIRM, P.C.

Phanta Daramy-Andrews
Plaintiff by Counsel

By:   /s/CharesCIweanoge/s/
        Charles C. Iweanoge (Bar #: 465663)
        1026 Monroe Street, NE
        Washington, D.C. 20017
        Telephone: (202) 347-7026
        Fax: (202) 347-7026
        Email: cci@iweanogesfirm.com

## JURY DEMAND

The Plaintiffs through Counsel respectfully demands a jury trial on all issues presented herein.

        /s/CharesCIweanoge/s/
            Charles C. Iweanoge

**Superior Court of the District of Columbia**
CIVIL DIVISION
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

PHANTA DARAMY - ANDREWS
_____
Plaintiff

vs.

LIBERTY MUTUAL INSURANCE COMPANY
_____
Defendant

Case Number ___2022 CA 001751 B___

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Charles C. Iweanoge, Esquire
_____
Name of Plaintiff's Attorney

THE IWEANOGES' FIRM, PC
_____
Address
1026 Monroe Street, NE, Washington, DC 20017

202 - 347 - 7026
_____
Telephone

Clerk of the Court

By _____

Date ___04/28/2022___

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시오.      የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español



**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

e   q    a  o     ao  t
_____
                                            Demandante

             contra

                                                            Número de Caso: _____

i    oq    rqr  i     ro       l
_____
                                            Demandado

**CITATORIO**

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

*SECRETARIO DEL TRIBUNAL*

Nombre del abogado del Demandante
_____

qe    t    l   D    o l                                  Por: _____
Dirección                                                                              Subsecretario
NMOS            t       l  a   OMMNT

OMO P  T TMOS                                             Fecha _____
Teléfono
如需翻译，请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

한국어로 통역이 필요하시면 (202) 879-4828 로 연락주십시오.    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                         Super. Ct. Civ. R. 4



**null / ALL**
**Transmittal Number: 24967110**
**Date Processed: 05/25/2022**

# Notice of Service of Process

**Primary Contact:**        Bruce Buttaro; Hm Office Lgl SOP Paralegal
Liberty Mutual Insurance Company
175 Berkeley St
Boston, MA 02116-5066

| | |
|---|---|
| **Entity:** | Liberty Mutual Insurance Company<br>Entity ID Number  1765547 |
| **Entity Served:** | Liberty Mutual Insurance Company |
| **Title of Action:** | Phanta U. Daramy-Andrews vs. Liberty Mutual Insurance Company |
| **Matter Name/ID:** | Phanta U. Daramy-Andrews vs. Liberty Mutual Insurance Company (12350488) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Superior Court, DC |
| **Case/Reference No:** | 2022 CA 001751 B |
| **Jurisdiction Served:** | District Of Columbia |
| **Date Served on CSC:** | 05/24/2022 |
| **Answer or Appearance Due:** | 21 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Sender Information:** | The Iweanoges' Firm, P.C.<br>202-347-7026 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

**App.022**

Filed
D.C. Superior Court
04/20/2022 02:03PM
Clerk of the Court

# Superior Court of the District of Columbia

## CIVIL DIVISION- CIVIL ACTIONS BRANCH

### INFORMATION SHEET

PHANTA DARAMY-ANDREWS

Case Number: ___2022 CA 001751 B___

vs

Date: __04/20/2022__

LIBERTY MUTUAL INSURANCE COMPANY, ET AL ☐ One of the defendants is being sued
in their official capacity.

| | |
|---|---|
| Name: *(Please Print)* Charles C. Iweanoge | **Relationship to Lawsuit** |
| Firm Name: THE IWEANOGES' FIRM, PC | [X] Attorney for Plaintiff |
| Telephone No.: 202-347-7026  Six digit Unified Bar No.: 465663 | ☐ Self (Pro Se) |
| | ☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury     [X] 6 Person Jury     ☐ 12 Person Jury
Demand: $ 201,037.34                          Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED
Case No.:_____  Judge: _____  Calendar #:_____

Case No.:_____  Judge: _____  Calendar#:_____

---

**NATURE OF SUIT:**     *(Check One Box Only)*

### A. CONTRACTS                    COLLECTION CASES

[X] 01 Breach of Contract
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 07 Personal Property
☐ 13 Employment Discrimination
☐ 15 Special Education Fees

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 27 Insurance/Subrogation
  Over $25,000 Pltf. Grants Consent
☐ 07 Insurance/Subrogation
  Under $25,000 Pltf. Grants Consent
☐ 28 Motion to Confirm Arbitration
  Award (Collection Cases Only)

☐ 16 Under $25,000 Consent Denied
☐ 18 OVER $25,000 Consent Denied
☐ 26 Insurance/Subrogation
  Over $25,000 Consent Denied
☐ 34 Insurance/Subrogation
  Under $25,000 Consent Denied

### B. PROPERTY TORTS

☐ 01 Automobile
☐ 02 Conversion
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

☐ 03 Destruction of Private Property
☐ 04 Property Damage

☐ 05 Trespass

### C. PERSONAL TORTS

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
☐ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☐ 07 False Arrest
☐ 08 Fraud

☐ 10 Invasion of Privacy
☐ 11 Libel and Slander
☐ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☐ 16 Negligence- (Not Automobile,
  Not Malpractice)

☐ 17 Personal Injury- (Not Automobile,
  Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE          IF USED

CV-496/June 2015

**App.023**

# Information Sheet, Continued

**C. OTHERS**

☐ 01 Accounting
☐ 02 Att. Before Judgment
☐ 05 Ejectment
☐ 09 Special Writ/Warrants
    (DC Code § 11-941)
☐ 10 Traffic Adjudication
☐ 11 Writ of Replevin
☐ 12 Enforce Mechanics Lien
☐ 16 Declaratory Judgment

☐ 17 Merit Personnel Act (OEA)
    (D.C. Code Title 1, Chapter 6)
☐ 18 Product Liability

☐ 24 Application to Confirm, Modify,
    Vacate Arbitration Award (DC Code § 16-4401)
☐ 29 Merit Personnel Act (OHR)
☐ 31 Housing Code Regulations
☐ 32 Qui Tam
☐ 33 Whistleblower

**II.**

☐ 03 Change of Name
☐ 06 Foreign Judgment/Domestic
☐ 08 Foreign Judgment/International
☐ 13 Correction of Birth Certificate
☐ 14 Correction of Marriage
    Certificate
☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
☐ 27 Petition for Civil Asset Forfeiture (Currency)
☐ 28 Petition for Civil Asset Forfeiture (Other)

☐ 15 Libel of Information
☐ 19 Enter Administrative Order as
    Judgment [ D.C. Code §
    2-1802.03 (h) or 32-151 9 (a)]
☐ 20 Master Meter (D.C. Code §
    42-3301, et seq.)

☐ 21 Petition for Subpoena
    [Rule 28-I (b)]
☐ 22 Release Mechanics Lien
☐ 23 Rule 27(a)(1)
    (Perpetuate Testimony)
☐ 24 Petition for Structured Settlement
☐ 25 Petition for Liquidation

**D. REAL PROPERTY**

☐ 09 Real Property-Real Estate
☐ 12 Specific Performance
☐ 04 Condemnation (Eminent Domain)
☐ 10 Mortgage Foreclosure/Judicial Sale
☐ 11 Petition for Civil Asset Forfeiture (RP)

☐ 08 Quiet Title
☐ 25 Liens: Tax / Water Consent Granted
☐ 30 Liens: Tax / Water Consent Denied
☐ 31 Tax Lien Bid Off Certificate Consent Granted

/S/CharlesCIweanoge/s/
_____
Attorney's Signature

04/20/2022
_____
Date

CV-496/ June 2015

**App.024**

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
CIVIL DIVISION Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Telephone: (202) 879-1133 • Website: www.dccourts.gov

PHANTA U. DARAMY-ANDREWS
    Vs.                                    C.A. No.       2022 CA 001751 B
LIBERTY MUTUAL AUTO AND HOME SERVICES, LLC et al

### INITIAL ORDER AND ADDENDUM

### Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:

(1) This case is assigned to the judge and calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of (a) the summons, (b) the complaint, and (c) this Initial Order and Addendum. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4(m).

(3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

(4) At the time stated below, all counsel and unrepresented parties shall participate in a remote hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients **before** the hearing whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this hearing.**

(5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

**Chief Judge Anita M. Josey-Herring**

Case Assigned to: Judge EBONY M SCOTT
Date:       April 26, 2022
Initial Conference: **REMOTE HEARING - DO NOT COME TO COURTHOUSE**
**SEE REMOTE HEARING INSTRUCTIONS ATTACHED TO INITIAL ORDER**

9:30 am, Friday, July 22, 2022
Location:   Courtroom 219
               500 Indiana Avenue N.W.
               WASHINGTON, DC 20001

CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

D.C. Code § 16-2821, which part of the Medical Malpractice Proceedings Act of 2006, provides,    "[a]fter action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ('ISSC'"), prior to any further litigation in an effort to reach a settlement agreement.  The early mediation schedule shall be included in the Scheduling Order following the ISSC.  Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC."

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator.  Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/.  To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825  Two separate Early Mediation Forms are available.    Both forms may be obtained at www.dccourts.gov/medmalmediation.  One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator.  Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. Unrepresented plaintiffs who elect not to eFile must either mail the form to the Multi-Door Dispute Resolution Office at, Suite 2900, 410 E Street, N.W., Washington, DC 20001, or deliver if in person if the Office is open for in-person visits.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation.  D.C. Code § 16-2823(a).  If the parties cannot agree on a mediator, the Court will appoint one.  D.C. Code § 16-2823(b).

The following people are required by D.C. Code § 16-2824 to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826.  Any Plaintiff who is unrepresented may mail the form to the Civil Actions Branch at [address] or deliver it in person if the Branch is open for in-person visits. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Anita M. Josey-Herring

CAIO-60

The following instructions are for participants who are scheduled to have cases heard before a Civil Judge in a **Remote Courtroom**

Option1: **(AUDIO ONLY/Dial-in by Phone):**

Toll 1 (844) 992-4762 or (202) 860-2110, enter the Meeting ID from the attachment followed by #, press again to enter session.

- *Please call in no sooner than 5 minutes before your scheduled hearing time. Once you have joined the session, please place your phone on mute until directed otherwise. If you should happen to get disconnected from the call, please call back in using the phone number and access number provided and the courtroom clerk will mute your call until the appropriate time.*

If you select **Option 2** or **Option 3** use the **Audio Alternative**

Option 2: **(LAPTOP/ DESKTOP USERS 1):**

Open Web Browser in Google Chrome and copy and paste following address from the next page:
https://dccourts.webex.com/meet/XXXXXXXXX

Option 3: **(LAPTOP/ DESKTOP USERS 2):**

Open Web Browser in Google Chrome and copy and paste following address
https://dccourts.webex.com  Select **Join,** enter the Meeting ID from the next page

**AUDIO ALTERNATIVE:**  Instead of automatically using **USE COMPUTER FOR AUDIO,** select **CALL-IN** and follow the **CALL-IN** prompt window.  Use a cell phone or desk phone. You will be heard clearer if you **do not** place your phone on SPEAKER. It is very important that you enter the **ACCESS ID #** so that your audio is matched with your video.



Option 4: **(Ipad/SMART PHONE/TABLET):**

- Go to App Store, Download WebEx App (Cisco WebEx Meetings)
- Sign into the App with your Name and Email Address
- Select Join Meeting
- Enter address from the next page: https://dccourts.webex.com/meet/XXXXXXXXX
- Click join and make sure your microphone is muted and your video is unmuted (if you need to be seen). If you only need to speak and do not need to be seen, use the audio only option.
- When you are ready click "Join Meeting". If the host has not yet started the meeting, you will be placed in the lobby until the meeting begins.

**For Technical Questions or issues Call: (202) 879-1928, Option #2**

Superior Court of the District of Columbia
Public Access for Remote Court Hearings
(Effective August 24, 2020)

**The current telephone numbers for all remote hearings are: 202-860-2110 (local) or 844-992-4726 (toll free).** After dialing the number, enter the WebEx Meeting ID as shown below for the courtroom. Please click a WebEx Direct URL link below to join the hearing online.

Audio and video recording; taking pictures of remote hearings; and sharing the live or recorded remote hearing by rebroadcasting, live-streaming or otherwise are not allowed

| Division | Courtroom | Types of Hearings Scheduled in Courtroom | Public Access via WebEx | |
|---|---|---|---|---|
| | | | **WebEx Direct URL** | **WebEx Meeting ID** |
| Auditor Master | 206 | Auditor Master Hearings | https://dccourts.webex.com/meet/ctbaudmaster | 129 648 5606 |
| Civil | 100 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb100 | 129 846 4145 |
| | 205 | Foreclosure Matters | https://dccourts.webex.com/meet/ctb205 | 129 814 7399 |
| | 212 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb212 | 129 440 9070 |
| | 214 | Title 47 Tax Liens; and Foreclosure Hearings | https://dccourts.webex.com/meet/ctb214 | 129 942 2620 |
| | 219 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb219 | 129 315 2924 |
| | 221 | Civil 1 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb221 | 129 493 5162 |
| | 318 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb318 | 129 801 7169 |
| | 320 | | https://dccourts.webex.com/meet/ctb320 | 129 226 9879 |

CAIO-60

| 400 | Judge in Chambers Matters including Temporary Restraining Orders, Preliminary Injunctions and Name Changes | https://dccourts.webex.com/meet/ctb400 | 129 339 7379 |
|---|---|---|---|
| 415 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb415 | 129 314 3475 |
| 516 | | https://dccourts.webex.com/meet/ctb516 | 129 776 4396 |
| 517 | | https://dccourts.webex.com/meet/ctb517 | 129 911 6415 |
| 518 | | https://dccourts.webex.com/meet/ctb518 | 129 685 3445 |
| 519 | | https://dccourts.webex.com/meet/ctb519 | 129 705 0412 |
| JM-4 | | https://dccourts.webex.com/meet/ctbjm4 | 129 797 7557 |
| A-47 | Housing Conditions Matters | https://dccourts.webex.com/meet/ctba47 | 129 906 2065 |
| B-52 | Debt Collection and Landlord and Tenant Trials | https://dccourts.webex.com/meet/ctbb52 | 129 793 4102 |
| B-53 | Landlord and Tenant Matters including Lease Violation Hearings and Post Judgment Motions | https://dccourts.webex.com/meet/ctbb53 | 129 913 3728 |
| B-109 | Landlord and Tenant Matters | https://dccourts.webex.com/meet/ctbb109 | 129 127 9276 |
| B-119 | Small Claims Hearings and Trials | https://dccourts.webex.com/meet/ctbb119 | 129 230 4882 |

CAIO-60

# CIVIL COVER SHEET

JS-44 (Rev. 11/2020 DC)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____ (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____ (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

- ● 1 U.S. Government Plaintiff
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place an X in one category, A-N, that best represents your Cause of Action and one in a corresponding Nature of Suit)**

○ **A. Antitrust**

- ☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

- ☐ 151 Medicare Act

Social Security
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**          OR          ○ **F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 27 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Conditions
- ☐ 560 Civil Detainee – Conditions of Confinement

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent – Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016 (DTSA)

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

Other Statutes
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc
- ☐ 460 Deportation
- ☐ 462 Naturalization Application

- ☐ 465 Other Immigration Actions
- ☐ 470 Racketeer Influenced & Corrupt Organization
- ☐ 480 Consumer Credit
- ☐ 485 Telephone Consumer Protection Act (TCPA)
- ☐ 490 Cable/Satellite TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

**App.030**

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/Privacy Act** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus – General<br>☐ 510 Motion/Vacate Sentence<br>☐ 463 Habeas Corpus – Alien Detainee | ☐ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>\*(If pro se, select this deck)\* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>\*(If pro se, select this deck)\* | ☐ 152 Recovery of Defaulted Student Loan (excluding veterans) |
| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Labor Railway Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities – Employment<br>☐ 446 Americans w/Disabilities – Other<br>☐ 448 Education | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights – Voting (if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi-district Litigation  ○ 7 Appeal to District Judge from Mag. Judge  ○ 8 Multi-district Litigation – Direct File

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

**VII. REQUESTED IN COMPLAINT**     ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23     **DEMAND $**     **JURY DEMAND:**     Check YES only if demanded in complaint     YES ☐  NO ☐

**VIII. RELATED CASE(S) IF ANY**     (See instruction)     YES ☐     NO ☐     If yes, please complete related case form

DATE: _____     SIGNATURE OF ATTORNEY OF RECORD _____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

I.     COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

VI.    CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| **PHANTA U. DARAMY-ANDREWS** | ) | |
| **707 49TH PLACE, NE** | ) | |
| **WASHINGTON, DC 20019-4805** | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **V.** | ) | **CASE NO. 1:22-CV-01694-TJK** |
| | ) | |
| **LIBERTY INSURANCE CORPORATION** | ) | |
| **175 BERKELEY STREET** | ) | |
| **BOSTON, MA 02116** | ) | |
| **SERVE REGISTERED AGENT** | ) | |
| **CORPORATION SERVICE COMPAY** | ) | |
| **1090 VERMONT AVENUE, NW, # 430** | ) | |
| **WASHINGTON, DC 20005** | ) | |
| | ) | |
| **AND** | ) | |
| | ) | |
| **CORPORATE SECRETARY** | ) | |
| **175 BERKELEY STREET** | ) | |
| **BOSTON, MA 02116** | ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**AMENDED COMPLAINT AND JURY DEMAND**

**COMES NOW,** Plaintiff, Phanta U. Daramy-Andrews, by and through under-signed counsel, Charles C. Iweanoge and THE IWEANOGES' FIRM, PC and files her Amended Complaint and Jury Demand as follows.

**I. JURISDICTION AND VENUE**

1.      The transaction involves insurance policy and property in the District of Columbia.

2.      Pursuant to *D.C. Code Ann., §§ 13-422 and §§ 13-423*, this Court has personal jurisdiction over Defendant because they transacted business within the District of Columbia.

3.      Pursuant to *D.C. Code Ann., §§ 11-921,* this Court has jurisdiction over the subject matter of the claims raised herein because it involves insurance policy and real property located in the District of Columbia.

4.      Pursuant to *D.C. Code Ann., §§ 13-423,* the District of Columbia is the proper venue for this action because the real property is in the District of Columbia.

## II. THE PARTIES

5.      Plaintiff, Phanta Daramy-Andrews**,** is of the full age of majority and a resident of the District of Columbia.

6.      Defendant, Liberty Insurance Corporation **,** is a foreign insurance company authorized to do and/or doing business in the District of Columbia

## III. FACTUAL BACKGROUND

7.      The Plaintiff is the owner of the property known as 707 49th Place, NE, Washington, DC, 20019 who purchased insurance coverage from the Defendant, Liberty Insurance Corporation with Policy Number H37-238-660209-40 8 4, for her property located at 707 49th Place NW, Washington, D.C. 20019. The effective date of the policy was January 26, 2019, was expected to expire on January 26, 2020.

8.      The insured property was Plaintiff's primary residence during the relevant period and Plaintiff still resides at the property as her primary residence.

9.      The basement of the loss location was used primarily for storing precious and rarely used personal property and personal space area. The basement

contained clothes, plates, saucers, cups, radio, wine glasses, speakers, books, vases, CD players, etc.

10.    On or about April 21, 2019, the basement of the property flooded due to pipe break, which caused extensive damages to the basement, and all the properties in the basement.

11.    Also, most of the personal property suffered mold damage after the incident, resulting in Plaintiff's personal property in the basement being a total loss entitling plaintiff to the full insurable amount shown on her policy for personal property. In addition, the real property was also damaged by the water and subsequent molding.

12.    Defendant contracted the services of 1-800-Packouts to remove Plaintiff's personal property for clean-up and storage. 1-800-Packouts discarded some of Plaintiff's personal property because they were unsalvageable and removed the rest to its business location for storage and cleanup. Defendants requested that Plaintiff itemize all her personal property resulting in Plaintiff spending two days at 1-800-Packouts itemizing her personal property stored at that location.

13.    Plaintiff contacted Defendant and filed a claim under their coverage for the cost of cleanup, repairs, damage to her personal and real property. Defendant conducted deposition of the Plaintiff prior to accepting the claim. Defendant accepted that the loss was covered under Plaintiff's insurance policy and the insurance set up a claim and requested Plaintiff to provide an itemized

list of her damaged personal properties which Plaintiffs subsequently did and submitted an affidavit of loss. Defendant rejected the listed personal property submitted to them for reasons unknown to Plaintiff. Plaintiff requested that since most of the items were still stored with I-800-Packouts that Defendant's adjuster should inspect and evaluate the items which they refused.

14.     The estimated loss to Plaintiff for cleanup, storage, repairs to basement, property damage, and loss of personal property is Two Hundred and One Thousand Thirty-Seven Dollars and Thirty-Four Cents ($201,037.34).

15.     At the time of the water damage, the Plaintiffs had in force a Homeowners Insurance policy coverage issued by Liberty Insurance Corporation. Said policy of insurance contained a provision for property damage and for the kind of losses and damages sustained by Plaintiff.

16.     Plaintiff made a demand for payment to cover the loss as provided under her policy but Defendant without justification continued to prolong payment on the claim. Subsequently, in 2020, Defendants refused to make any payment and closed the file.

17.     Defendant's refusal to pay for the cleanup, repairs, and covered damaged properties  is a material breach of the insurance agreement. Defendant in contravention of the insurance agreement failed and/or refused to pay Plaintiff's repair and replacement costs for the damages done to her personal properties, cost of storage of the personal properties and damages to the real property under the Plaintiff's insurance policy.

## IV. CAUSES OF ACTION

## FIRST CAUSE OF ACTION: BREACH OF CONTRACT

18.     Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1 through 17, as if delineated here in extenso.

19.     Defendant breached its contract of insurance with plaintiff by:

A. Failing to adjust the claim promptly and reasonably;
B.  Failing to properly train and/or instruct its adjusters and/or agents;
C. Failing to provide uniform and/or standard guidelines to adjusters and/or  agents to properly evaluate claims;
D. Failing to timely provide sufficient funds for the repairs and replacement of the subject property;
E.  Failing to promptly adjust and properly pay the policy limits for the plaintiff's total loss of personal property;
G. Failing to provide sufficient funds for the repair or replacement of the contents contained in the subject property, as per policy provisions; and
H. Any other acts or omissions to be shown at trial on the merits.

20.     Plaintiff has suffered damages and continues to suffer damages as a result of Defendant's breach of the contract.

## SECOND CAUSE OF ACTION: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

21.     Plaintiff realleges and reavers every allegation contained in Paragraphs 1 through 20, as if delineated herein extenso.

22.     Parties to every contract, including insurance contracts, owe each other a duty of good faith and fair dealing. Defendant agreed to act in good faith and deal fairly with Ms. Daramy-Andrews when it entered into the insurance contact and accepted her premium payments.

23.     Defendant's conduct in handling Plaintiff's claim, including but not limited to refusing to accept the claim until after it deposed Plaintiff, delaying the adjustment of the claim that resulted in the molding and damage of Plaintiff's real and personal property, refusing to pay the storage and cleanup company, and closing the case without justification, constitute extreme and outrageous behavior by Defendant that denied Plaintiff the fruit and benefit of her insurance contract, in violation of the implied covenant of good faith and fair dealing inherent in that contract.

24.     As a direct and proximate result of Defendant's violation of its implied covenant of good faith and fair dealing, Plaintiffs has been deprived of the bargained for value of her insurance contract.

25.     Plaintiff has at all times complied with the terms of Defendant's Policy and as a result of Defendant's breach of duty of good faith and fair dealings, Plaintiff is entitled to an award that will compensate her for her economic losses, loss of the value of time, interest, attorney's fees, and other losses that she sustained as a result of the breach.

### THIRD CAUSE OF ACTION: UNJUST ENRICHMENT

26     Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1 through 25, as if delineated herein extenso.

27.     Despite realizing substantial premium from plaintiff, Defendant has withheld the insurance payments owed to plaintiff for the damage and loss of her property  due to water damage to her insured property.

28. Defendant have therefore been unjustly enriched at plaintiff's expense.

**WHEREFORE,** plaintiff, Phanta Daramy-Andrews, respectfully prays that a judgment be entered in her favor and against defendant in the amount of Three Hundred Thousand ($300,000.00) in damages, prejudgment interest, post judgment interest, attorney's fees and costs, punitive and/or exemplary damages as may be allowed by law and for further relief as equity and justice require.

Respectfully submitted,
THE IWEANOGES' FIRM, P.C.

Phanta Daramy-Andrews     By:  /s/CharesCIweanoge/s/
Plaintiff by Counsel         Charles C. Iweanoge (Bar #: 465663)
                    1026 Monroe Street, NE
                    Washington, D.C. 20017
                    Telephone: (202) 347-7026
                    Fax: (202) 347-7026
                    Email: cci@iweanogesfirm.com

### JURY DEMAND

The Plaintiffs through Counsel respectfully demands a jury trial on all issues presented herein.

                    /s/CharesCIweanoge/s/
                      Charles C. Iweanoge

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 9, 2922, Plaintiff's Amended Complaint was filed via electronic case filing system of the United States District Court for the District of Columbia and accordingly, that the Court will send notice of this filing electronically to all attorneys of record.

   <u>/s/CharlesCIweanoge/s/</u>   
Charles C. Iweanoge

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **PHANTA U. DARAMY-ANDREWS,** | **:** | |
| | **:** | |
| **Plaintiff,** | **:** | |
| | **:** | |
| **v.** | **:** | **Civil Action No. 1:22-cv-01694-TJK** |
| | **:** | |
| **LIBERTY INSURANCE** | **:** | |
| **CORPORATION,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**ANSWER TO COMPLAINT**

Defendant Liberty Insurance Corporation, by and through counsel, answers the

Complaint as follows:

1.     Defendant is without knowledge or information sufficient to form a belief as to

the allegations contained in Paragraph 1 of the Complaint.  To the extent that a response is

required, Defendant denies the allegations of this paragraph.

2.     The allegations of this paragraph are conclusions of law regarding jurisdiction to

which no responsive pleading is required.  To the extent that a response is required, Defendant

denies the allegations contained in paragraph 2.

3.     The allegations of this paragraph are conclusions of law regarding jurisdiction to

which no responsive pleading is required.  To the extent that a response is required, Defendant

denies the allegations contained in paragraph 3.

4.     The allegations of this paragraph are conclusions of law regarding venue to which

no responsive pleading is required.  To the extent that a response is required, Defendant denies

the allegations contained in paragraph 4.

5.       Defendant is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 5 of the Complaint.  To the extent that a response is required, Defendant denies the allegations of this paragraph.

6.       Defendant admits that it is an insurance company organized under the laws of the state of Illinois and authorized to conduct business in the District of Columbia.  Defendant denies any remaining averments contained in this paragraph.

7.       Defendant admits that it issued a policy of insurance to Plaintiff relating to the property known as 707 49th Place, NE, Washington, DC  20019-4805 with a policy period of 1/26/19 to 1/26/20. Defendant denies any remaining averments contained in this paragraph.

8.       Defendant is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 8 of the Complaint.  To the extent that a response is required, Defendant denies the allegations of this paragraph.

9.       Defendant is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 9 of the Complaint.  To the extent that a response is required, Defendant denies the allegations of this paragraph.

10.      Defendant denies the allegations contained in Paragraph 10 of the Complaint.

11.      Defendant denies the allegations contained in Paragraph 11 of the Complaint.

12.      Defendant admits that it retained 1800 Packouts to clean and salvage Plaintiff's personal property. Defendant denies any remaining averments contained in this paragraph.

13.      Defendant admits that Plaintiff filed a claim under her homeowner's policy; and that Defendant conducted Plaintiff's examination under oath pursuant to the terms of the policy. Defendant denies any remaining averments contained in this paragraph.

14.      Defendant denies the allegations contained in Paragraph 14 of the Complaint.

15.    Defendant denies the allegations contained in Paragraph 15 of the Complaint.

16.    Defendant denies the allegations contained in Paragraph 16 of the Complaint.

17.    Defendant denies the allegations contained in Paragraph 17 of the Complaint.

### FIRST CAUSE OF ACTION: BREACH OF CONTRACT

18.    Defendant repeats and incorporates its responses to paragraphs 1-17 of Plaintiff's Complaint as if fully set forth herein.

19.    Defendant denies the allegations contained in Paragraph 19 of the Complaint.

20.    Defendant denies the allegations contained in Paragraph 20 of the Complaint.

### SECOND CAUSE OF ACTION:
### BREACH OF IMPLIED COVENT OF GOOD FAITH AND FAIR DEALING

21.    Defendant repeats and incorporates its responses to paragraphs 1-20 of Plaintiff's Complaint as if fully set forth herein.

22.    The allegations of this paragraph are conclusions of law to which no responsive pleading is required.  To the extent that a response is required, Defendant denies the allegations contained in paragraph 22.

23.    Defendant denies the allegations contained in Paragraph 23 of the Complaint.

24.    Defendant denies the allegations contained in Paragraph 24 of the Complaint.

25.    Defendant denies the allegations contained in Paragraph 25 of the Complaint.

### THIRD CAUSE OF ACTION: UNJUST ENRICHMENT

26.    Defendant repeats and incorporates its responses to paragraphs 1-25 of Plaintiff's Complaint as if fully set forth herein.

27.    Defendant denies the allegations contained in Paragraph 27 of the Complaint.

28.    Defendant denies the allegations contained in Paragraph 28 of the Complaint.

**App.042**

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are limited or barred by her failure to mitigate her damages.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff has failed to show that Defendant breached any duty owed to her.

### THIRD AFFIRMATIVE DEFENSE

The Complaint is barred by the Doctrine of Avoidable Consequences.

### FOURTH AFFIRMATIVE DEFENSE

The incident alleged in the Complaint is not sole or proximate cause of Plaintiff's damages.

### FIFTH AFFIRMATIVE DEFENSE

Any alleged damages of Plaintiff were caused by an intervening or superseding cause.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to attorney's fees.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to punitive damages.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to prejudgment interest.

### NINETH AFFIRMATIVE DEFENSE

Defendant hereby reserves the right to supplement its affirmative defenses at any time prior trial.

App.043

Dated: July 15, 2022                                   Respectfully submitted,


                                                       */s/ James C. Mehigan*
                                                       James C. Mehigan, Bar #: 480691
                                                       Mehigan Law Group PLLC
                                                       11921 Freedom Drive
                                                       Suite 550
                                                       Reston, Virginia  20190
                                                       (703) 774-7281
                                                       jmehigan@mehiganlawgroup.com


                                                       *Attorney for Defendant*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 15, 2022, a copy of the foregoing was served via ECF to all parties of record.


                                                       */s/ James C. Mehigan*
                                                       James C. Mehigan

**App.044**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **PHANTA U. DARAMY-ANDREWS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No. 1:22-cv-01694-TJK** |
| | : | |
| **LIBERTY INSURANCE** | : | |
| **CORPORATION,** | : | |
| | : | |
| **Defendant.** | : | |

## <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Defendant Liberty Insurance Corporation, by and through counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby moves for summary judgment as to all claims on the basis that no disputed material fact exists, and that Defendant is entitled to judgment as a matter of law. In support of this motion, Defendant respectfully refers this honorable Court to the attached Statement of Material Facts Not in Dispute and Memorandum of Points and Authorities, attached hereto and incorporated herein.

WHEREFORE for the foregoing reasons, Defendant Liberty Insurance Corporation respectfully requests that this honorable Court GRANT its Motion for Summary Judgment.

Dated: October 19, 2023                Respectfully submitted,

_/s/ James C. Mehigan_
James C. Mehigan, Bar #: 480691
Mehigan Law Group PLLC
11921 Freedom Drive
Suite 550
Reston, Virginia  20190
(703) 774-7281
jmehigan@mehiganlawgroup.com

_Attorney for Defendant_

**App.045**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 19, 2023, a copy of the foregoing was served via

ECF to all parties of record.

*/s/ James C. Mehigan*_____

James C. Mehigan

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **PHANTA U. DARAMY-ANDREWS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No. 1:22-cv-01694-TJK** |
| | : | |
| **LIBERTY INSURANCE** | : | |
| **CORPORATION,** | : | |
| | : | |
| **Defendant.** | : | |

<u>**DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**</u>

Defendant Liberty Insurance Corporation, by and through counsel, hereby sets forth the following statement of material facts not in dispute in support of its Motion for Summary Judgment:

1.      Plaintiff owns the house located at 707 49th Place, NE, Washington, DC  20019 that forms the basis of this Dispute. Deposition of Phanta Daramy-Andrews (**Exhibit 1**) 5-6. *See also,* Amended Complaint (ECF 8) ¶ 7.

2.      Plaintiff purchased a homeowner's insurance policy from Defendant that provides insurance coverage for damage to her house and personal belongings inside the house, subject to the terms of the policy. This policy was in effect for the period of January 26, 2019 through January 26, 2020. Certified Copy of Policy (**Exhibit 2**).

3.      On April 21, 2019, the basement of Plaintiff's house incurred damage as the result of a water leak in the basement caused by a pipe burst. Exhibit 1 at 38-9.

4.      Defendant determined coverage for the loss in accordance with the terms of the policy and paid $21,483.17 to remediate and repair the dwelling, $6,069.51 clean and repair her

personal property affected by the event, and $7,280.48 in alternative living expenses for a reasonable time while the dwelling was being repaired.  *Id.* at 47-53.

5.      Plaintiff, however, disputes Defendant's determination regarding the value of her claim, and contends that she is entitled to $75,000 for her personal property; and that the cost to repair the house is at least $50,000 to $60,000.  *Id*. at 60-64.

6.      On April 4, 2022, nearly three years after the date of loss, Plaintiff first filed suit against Defendant[1] claiming damages under the policy for the April 21, 2019 loss.  *See*, District of Columbia Superior Court Certified Docket Report (ECF 7) at 4 and Original Complaint (ECF 1-1).

7.      Pursuant to the terms of the policy, however, no action may be brought against Defendant unless the action is started within one year after the date of loss.  Exhibit 2 Section I – Conditions p. 10.

8.      Defendant did not do or say anything to prevent Plaintiff from filing a lawsuit against it. Exhibit 1 at 42-43.

9.      Plaintiff was represented by counsel as early as October 18, 2019 when she sat for an examination under oath, as authorized by the policy.  *Id*. at 40-41, *see also*, Exhibit 2 Section I – Conditions p. 8.

---

[1] Plaintiff originally named Liberty Mutual Insurance Company Property, Liberty Mutual Group, Inc., and Liberty Mutual Fire Insurance Company; however, on July 9, 2022 she amended her Complaint substituting Defendant as the party that issued the policy.  *See*, Amended Complaint (ECF 8)

**App.048**

Dated: October 19, 2023                          Respectfully submitted,


                                                 */s/ James C. Mehigan*
                                                 James C. Mehigan, Bar #: 480691
                                                 Mehigan Law Group PLLC
                                                 11921 Freedom Drive
                                                 Suite 550
                                                 Reston, Virginia  20190
                                                 (703) 774-7281
                                                 jmehigan@mehiganlawgroup.com


                                                 *Attorney for Defendant*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 19, 2023, a copy of the foregoing was served via ECF to all parties of record.

                                                 */s/ James C. Mehigan*
                                                 James C. Mehigan

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **PHANTA U. DARAMY-ANDREWS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No. 1:22-cv-01694-TJK** |
| | : | |
| **LIBERTY INSURANCE** | : | |
| **CORPORATION,** | : | |
| | : | |
| **Defendant.** | : | |

<u>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**MOTION FOR JUDGMENT**</u>

Defendant Liberty Insurance Corporation, by and through counsel, hereby sets forth the

following memorandum of points and authorities in support of its Motion for Summary

Judgment:

**I.     FACTS**

On April 21, 2019 Plaintiff suffered a pipe burst in the basement of her house that caused

damage to the dwelling, as well as some personal belongings. Deposition of Phanta Daramy-

Andrews (**Exhibit 1**) at 38-39.

At the time of the loss, Plaintiff had in place a homeowner's insurance policy issued by

Defendant that provided insurance coverage for damage to her home and personal property,

subject to the terms of the policy. Certified Copy of Policy (**Exhibit 2**)

After Plaintiff reported the loss, Defendant investigated the claim and determined

coverage for loss. It issued payment of $21,483.17 to remediate and repair the dwelling,

$6,069.51 to clean and repair her personal property affected by the loss, and $7,280.48 in

alternative living expenses to cover her living expenses for a reasonable period while the house

was being repaired.  Exhibit 1 at 47-53.

Plaintiff, however, was dissatisfied with Defendant's coverage determination, believing that the value to her personal property was $75,000 and the cost to repair her home would be in the range of $50,000 to $60,000. *Id*. at 60-64.

On or before October 18, 2019, Plaintiff retained counsel to represent her in her claim against Defendant. *Id*. at 40-41.

Because there was a dispute over coverage of the Plaintiff's personal property claim, Defendant requested an examination under oath, pursuant to the terms of the policy to inquire about her personal property claim. On October 18, 2019 Plaintiff appeared with her counsel for the EUO. *Id*.

Still dissatisfied with the outcome of her claim, Plaintiff initiated this lawsuit on April 4, 2022 in the Superior Court for the District of Columbia. *See*, District of Columbia Superior Court Certified Docket Report (ECF 7) at 4 and Original Complaint (ECF 1-1). The original Complaint erroneously named Liberty Mutual Insurance Company Property, Liberty Mutual Group, Inc., and Liberty Mutual Fire Insurance Company as the underwriters of her insurance policy (ECF 1-1). Defendant removed the case to this Court, and on July 9, 2022, Plaintiff amended the Complaint naming Defendant as the correct party to the insurance agreement. *See*, Amended Complaint (ECF 8).

The Amended Complaint claims three counts: breach of contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment (ECF 8).

Plaintiff, however, waited nearly three years to file suit against Defendant for the loss that occurred on April 21, 2019.

According to the terms of the policy, no action can be brought unless the action is started within one year from the date of loss. Exhibit 2 Section I – Conditions p. 10.

2

**App.051**

Defendant did nothing and said nothing to dissuade Plaintiff from filing suit at any time. Exhibit 1 at 42-43. Moreover, Defendant did not waive the limitation provision in the policy and did not concede liability or entertain settlement negotiations regarding her policy dispute.

Consequently, because Plaintiff waited nearly three years to file her lawsuit against Defendant, her claims are barred by the terms of the policy.  Defendant is therefore entitled to judgment as a matter of law.

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As this Court recently noted, "[s]ummary judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Barot v. Aldon Mgmt.*, Civil Action No. 18-140 (TJK), 2023 U.S. Dist. LEXIS 169743, at *6-8 (D.D.C. Sep. 22, 2023) quoting *Lopez v. Council on American-Islamic Rels. Action Network, Inc.*, 826 F.3d 492, 496, 423 U.S. App. D.C. 328 (D.C. Cir. 2016) (internal quotes omitted).

Moreover,  in order "[t]o survive summary judgment, the nonmoving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Barot v. Aldon Mgmt.*, Civil Action No. 18-140 (TJK), 2023 U.S. Dist. LEXIS 169743, at *8 quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotes omitted).

**App.052**

## III.    ARGUMENT

### A.    PLAINTIFF'S CLAIMS FAIL BECAUSE SHE FAILED TO FILE SUIT WITHIN ONE-YEAR CONTRACTUAL TIME LIMIT

Plaintiff's homeowner's insurance policy requires that any lawsuit against Defendant be started within one year of the date of the loss:

> **8.    Suit Against Us.**  No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

Exhibit 2 Section I – Conditions p. 10.

Here, the loss occurred on April 21, 2019 and Plaintiff waited to file suit until nearly three years later on April 4, 2022.  Plaintiff's case therefore is barred by the terms of the policy.

The District of Columbia enforces contractual limitations provisions. "Under District of Columbia law, contractual provisions limiting the period within which insurance policy-holders may validly initiate a lawsuit are generally enforceable." *Gardner v. Erie Ins. Co.*, Civil Action No. 22-1977 (RC), 2022 U.S. Dist. LEXIS 201746, at *8-9 (D.D.C. Nov. 4, 2022) quoting *Martinez v. Hartford Cas. Ins. Co.*, 429 F. Supp. 2d 52, 56 (D.D.C. 2006) (internal quotes omitted).  The general rule in the District of Columbia "is that an insurance company is not deemed to have waived a contractual limitations period, and is not estopped to assert the limitations period as a bar to a claim, unless the company has conceded liability and some discussion of a settlement offer has occurred." *Bailey v. Greenberg*, 516 A.2d 934, 938-39 (D.C. 1986). The Court in *Bailey* set forth the reason for the rule, stating "[Plaintiff] contends that the 12-month limitation period should be rejected as being contrary to public policy. We do not agree. The possibility of fraudulent claims regrettably looms ever-present in the realities of the insurance industry. While it is within the power of Congress to legislate in this area, it has not

**App.053**

done so, and we see no basis for our invalidating such a contractual provision." *Id*. at 651. Thus, under District Columbia law, insurance policy limitations periods are enforceable unless the insurance company has waived the provision or conceded liability for the contract claim and engaged in settlement discussions.

Here, Defendant did not waive the one-year limitations provision and did not concede liability or engage in settlement discussions with Plaintiff regarding the Plaintiff's claims for additional coverage. Defendant has made no offers in response to Plaintiff's lawsuit and has not agreed to mediation or any other form of alternative dispute resolution in this case.

The primary issue before the Courts in both *Bailey* and *Martinez*, however, was not whether the contractual limitations period is enforceable under District of Columbia law, for indeed it is, but whether the insurance company was estopped from benefiting from the provision by deliberately causing the insured party to delay filing suit and miss the contractual deadline for doing so. *Id*. and *Martinez* 429 F. Supp. 2d at 57. Under District of Columbia law, a statute of limitations defense can be deemed unenforceable under equitable estoppel principles if it is found that the insurance company lulled the insured party from filing suit within the contractual or statutory limitation period: "an insurance company is estopped from raising a contractual limitations period as an affirmative defense where the company has made misleading representations to the insured and the insured has relied on those representations to his or her detriment." *Id*. at 58 quoting *Bailey*, 516 A.2d at 939 n. 5 (internal quotations omitted).

Here, however, equitable estoppel does not apply as Defendant did nothing to lull Plaintiff from filing suit. At her deposition Plaintiff was specifically asked whether Defendant did anything to prevent her from filing suit:

Q        Did anybody at Liberty Mutual, including Brian Wallace and Ms.

Hawkins ever tell you not to bring a claim against Liberty Mutual?

*     *     *

A        The actions spoke.

Q        Okay.  Did Liberty Mutual ever dissuade you from filing suit with respect

to your April 21, 2019 claim?

A        Can you rephrase your question, sir?

Q        Okay. Did anybody at Liberty Mutual do anything or say anything that

would indicate that they were trying to prevent you from filing a lawsuit against

them?

A        I don't think they prevented me.  But I give them the benefit of the doubt

to do the right thing as my insurer.

Exhibit 1 at 42-43.  Thus, the evidence shows that Defendant did not attempt to lull Plaintiff into

delaying filing suit to miss the contractual limitations deadline.

Moreover, Plaintiff was represented by an attorney as early as October 18, 2019, which

made it even less likely that Plaintiff would have been lulled by Defendant into missing the

deadline:  "[a]lthough a claimant's representation by an attorney is not dispositive in determining

whether an insurance company is estopped because of misleading statements from asserting the

statute of limitations… courts generally are reluctant to find the claimant has been misled by the

insurance company where the claimant was sophisticated in business matters or had retained

legal counsel." *Bailey*, 516 A.2d at 939 citing *Sumrall v. City of Cypress*, 258 Cal. App. 2d 565,

65 Ca. Rptr. 755, 758 (1968).

6

Accordingly, because (1) the District of Columbia enforces contractual limitations terms in insurance contracts; (2) Defendant did not waive the one-year contractual limitations period in the subject insurance policy by accepting liability or entering into settlement negotiations; (3) Plaintiff was represented by an attorney months before expiration of the contractual limitations period; and (4) Defendant did nothing to lull Plaintiff into missing the deadline for filing suit, Plaintiff's case is barred by the applicable one-year limitation term in her insurance policy and Defendant is entitled to judgment as a matter of law.

**B.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS BECAUSE OF THE INSURANCE CONTRACT IN PLACE**

Plaintiff also asserts the quasi-contract claim of unjust enrichment. That claim, however, is unavailing because there is an actual contract governing the parties' rights and duties. The District of Columbia Court of Appeals has recognized that "[a]t common law there were cases in which the courts, in the absence of an actual contract, nevertheless imposed a duty . . . under certain conditions upon one party to requite another in order to avoid the former's unjust enrichment . . . . Unjust enrichment occurs when a person retains a benefit (usually money) which in justice and equity belongs to another . . . . [Restitution by finding unjust enrichment] is an obligation which the law creates, in the absence of any agreement, when and because of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it . . . ." *Harrington v. Trotman*, 983 A.2d 342, 346 (D.C. 2009) quoting *Jordan Keys & Jessamy, LLP v. St. Paul Fire and Marine Ins. Co.*, 870 A.2d 58, 63-64 (D.C. 2005) (internal quotes omitted).

Thus, while the theory of unjust enrichment may apply in the absence of a contract, it does not apply when there is an actual written contract.  "[T]here can be no claim for unjust enrichment when an express contract exists between the parties. *Harrington* 983 A.2d at 346

7

**App.056**

quoting *Schiff v. American Ass'n of Retired Persons*, 697 A.2d 1193, 1194 (D.C. 1997) (internal quotes omitted).

Here, Plaintiff claims that "[d]espite realizing substantial premium from plaintiff, Defendant has withheld the insurance payments owed to plaintiff… [and] therefore [has] been unjustly enriched at plaintiff's expense." *See,* Amended Complaint (ECF 8) at ¶¶ 27 & 28.  Her unjust enrichment claim fails, however, because there is an actual written insurance agreement between the parties.  Plaintiff's claim falls squarely inside the contract and therefore she cannot also bring a cause of action for unjust enrichment. Accordingly, because she is not entitled to recovery under a theory of unjust enrichment, her claim fails, and Defendant is entitled to judgment as a matter of law.

## IV.    CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant Liberty Insurance Corporation respectfully requests this honorable Court to GRANT its Motion for Summary Judgment.

Dated: October 19, 2023                                  Respectfully submitted,

                                                         */s/ James C. Mehigan*
                                                         James C. Mehigan, Bar #: 480691
                                                         Mehigan Law Group PLLC
                                                         11921 Freedom Drive
                                                         Suite 550
                                                         Reston, Virginia  20190
                                                         (703) 774-7281
                                                         jmehigan@mehiganlawgroup.com

                                                         *Attorney for Defendant*

**App.057**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 19, 2023, a copy of the foregoing was served via

ECF to all parties of record.

/s/ James C. Mehigan
James C. Mehigan

**App.058**

**Page 1**

```
            IN THE UNITED STATES DISTRICT COURT

              FOR THE DISTRICT OF COLUMBIA

-------------------------------X

PHANTA U. DARAMY-ANDREWS,        :

             Plaintiff,          :

      v.                    :Civil Action No.:

LIBERTY INSURANCE CORPORATION,   :1:22-cv-01694-TJK

             Defendant.          :

-------------------------------X


        Deposition of PHANTA DARAMY-ANDREWS

               Virtually Conducted

          Wednesday, August 9th, 2023

               10:00 a.m. (EST)










  Job No.: 500480

  Pages 1 - 69

  Reported by: Stefanie Towns, CCR
```

**Page 2**

```
          Deposition of PHANTA DARAMY-ANDREWS,

  Conducted Virtually:









          Pursuant to agreement, before Stefanie
  Towns, Notary Public in and for the District of
  Columbia.
```

**Page 3**

```
                    A P P E A R A N C E S


  ON BEHALF OF PLAINTIFF:

    CHARLES C. IWEANOGE, ESQUIRE

    THE IWEANOGES FIRM, P.C.

    1026 Monroe Street, NE

    Washington, D.C. 20017


  ON BEHALF OF DEFENDANT:

    JAMES C. MEHIGAN, ESQUIRE

    MEHIGAN LAW GROUP, PLLC

    11921 Freedom Drive

    Suite 550

    Reston, Virginia 20190

    703.774.7281

    jmehigan@mehiganlawgroup.com


  ALSO PRESENT:

    Dave Sullivan, Planet Depos Technician
```

**Page 4**

```
                    C O N T E N T S

  EXAMINATION OF PHANTA DARAMY-ANDREWS     PAGE

        By Mr. Mehigan                       5

        By Mr. Iweanoge                     66



                    E X H I B I T S

        (Retained by Counsel.)

                                          PAGE

  1    Liberty Mutual Policy               53

  2    Original Complaint                  37

  3    Amended Complaint                   45

  6    Examination Under Oath             39
```

Transcript of Phanta Daramy-Andrews
Conducted on August 9, 2023

---

**5**

1  Thereupon,

2        PHANTA DARAMY-ANDREWS,

3  called as a witness, and having been first duly

4  sworn, was examined and testified as follows:

5        EXAMINATION BY COUNSEL FOR THE DEFENDANT

6  BY MR. MEHIGAN:

7  Q.  Good morning.  Please state your name for the

8      record.

9  **A.  My name is Phanta Daramy-Andrews.**

10 Q.  Can you spell your last name for me?

11 **A.  Capital D-A-R-A-M-Y hyphen A-N-D-R-E-W-S.**

12 Q.  How do you pronounce the first part of your

13     last name?  I pronounced it Daramy.  Is that

14     incorrect?

15 **A.  I pronounce it Daramy.**

16 Q.  Daramy, okay.  Thank you.  Your date of

17     birth, Ms. Daramy-Andrews?

18 **A.  April 10, 1959.**

19 Q.  Your home address?

20 **A.  707 49th Place Northeast, Washington, D.C.**

21     **zip code 20019.**

22 Q.  And is that the same property or house that

---

**6**

1      forms the basis of this lawsuit?

2  **A.  That's always been.**

3  Q.  How long have you lived at this address?

4  **A.  Since 2012.**

5  Q.  I know you've had your examination under oath

6      done before, correct?

7  **A.  Could you please repeat yourself?**

8  Q.  Did you -- you had a deposition or an

9      examination under oath before --

10 **A.  Yes, sir.**

11 Q.  -- where you sat at a table and you were

12     asked questions by a lawyer with a court

13     reporter and everything that you said was

14     under oath, right?

15 **A.  She said she wasn't a court reporter.  Yes, I**

16     **did.**

17 Q.  Okay.  Well, you understand that this is a

18     deposition, right?

19 **A.  That's what I was told.**

20 Q.  Okay.  And I'm going to be asking you

21     questions.  I'm the lawyer for the insurance

22     company.  And I'm going to be asking you

---

**7**

1      questions, right?

2  **A.  Could you please identify yourself?**

3  Q.  Yeah, I'm Jim Mehigan.  I'm the lawyer for

4      the insurance company.

5  **A.  Thank you.**

6  Q.  Everything that we say here is being taken

7      down by the court reporter.  You understand

8      that, right?

9  **A.  Thank you.**

10 Q.  And I'm going to be asking you questions and

11     you're going to be providing answers.  You

12     understand that?

13 **A.  Yes, thank you.**

14 Q.  And your answers are under oath.  You

15     understand that as well, right?

16 **A.  Yes.  Thank you.**

17 Q.  So I'm going to be asking you questions about

18     your case, about this lawsuit, about what

19     your claims are.  I'm not going to be asking

20     you any trick questions.  And even if I did,

21     you have a very good lawyer with you who

22     would object, and would help you if I were to

---

**8**

1      ask you any untoward questions, but I'm just

2      trying to get to the bottom of what happened

3      and what your claims are.  So I'll be asking

4      you questions.

5        If you don't understand a question, all

6      you have to do is ask me to repeat it or

7      rephrase it and I'll do my best to repeat or

8      rephrase the question in a way that's

9      understandable.  Do you understand that?

10 **A.  Thank you, sir.**

11 Q.  If you answer my question, I'm going to

12     assume you understood it.  Is that okay?

13 **A.  Fair enough.**

14 Q.  We're doing this deposition remotely and I

15     see that you're wearing a very lovely Chanel

16     face mask and it's going to be very difficult

17     to make sure that we get everything on video

18     tape here and also taken down by the court

19     reporter stenographically.  Do you understand

20     that?

21 **A.  Yes, sir.**

22 Q.  So it's going to be very important for us to

---

Transcript of Phanta Daramy-Andrews
Conducted on August 9, 2023

37

1   don't know why it's not enlarging.  Dave, can
2   you hop on here and -- gone.
3        THE TECHNICIAN:  Yes.
4   (Discussion held off the record.)
5   Q.  All right.  Ms. Daramy-Andrews, do you
6   recognize this document?
7   A.  I can't see it clearly.
8        MR. MEHIGAN:  Can everybody else see it
9   clearly?
10       MR. IWEANOGE:  I believe this was the
11  complaint that was filed in D.C.
12       MR. MEHIGAN:  Can you pull up Exhibit
13  No. 2?
14       THE TECHNICIAN:  Exhibit No. 2 standby.
15  (Exhibit 2 was marked for identification and
16  is attached to the transcript.)
17  Q.  All right.  Ms. Daramy-Andrews, your attorney
18  has already identified this as the original
19  complaint that was filed.  Do you recognize
20  it?
21  A.  Well, I personally cannot see.  It's too
22  small for me to see.

38

1        MR. MEHIGAN:  Can you see that, Charles?
2        MR. IWEANOGE:  Yes, I can see that.
3        MR. MEHIGAN:  And if we can just scroll
4   down a little bit to where it goes into
5   factual background.  And down further.
6        THE TECHNICIAN:  Further?
7        MR. MEHIGAN:  Yeah, further.
8        THE TECHNICIAN:  Okay.
9        MR. MEHIGAN:  All right.  There.  Thank
10  you.
11  Q.  Okay.  So the complaint says that on or about
12  April 12th, 2019 the basement of the property
13  flooded due to a pipe break.  That's this
14  claim, right?
15  A.  Are you speaking to me, sir?
16       MR. IWEANOGE:  Yes.
17  Q.  Yes.
18  A.  Oh, okay.  2019, yes.  Yes, sir.
19  Q.  Okay.  So the claim that you're talking to me
20  about where the basement flooded and Brian
21  Wallace and Ms. Hawkins came out and there
22  was feces was this April 21, 2019 claim,

39

1   right?
2   A.  Yes, sir.
3   Q.  And that forms the basis of this lawsuit,
4   right?
5   A.  Yes, sir.
6   Q.  Okay.  And I understand that in connection
7   with this claim you sat for a deposition
8   under oath, right?
9   A.  Yes, sir.
10  Q.  Or examination under oath?
11  A.  Examination, yes.
12       MR. MEHIGAN:  Can we pull up Exhibit No.
13  number 6, Dave?
14       THE TECHNICIAN:  Standby.
15  (Exhibit 6 was marked for identification and
16  is attached to the transcript.)
17  Q.  Showing you what I previously marked as
18  Exhibit No. 6, which I'll represent to you is
19  a transcript of your examination under oath
20  dated October 18, 2019.  Do you recognize
21  that?
22  A.  I cannot see it clearly, sir.

40

1        THE TECHNICIAN:  Is that readable?
2        MR. MEHIGAN:  I can see it perfectly.  I
3   mean it's actually too big right now.  You
4   can only see part of the caption.  Charles,
5   can you see that?
6        MR. IWEANOGE:  Yes.
7        MR. MEHIGAN:  Can we stipulate that this
8   is a transcript of an examination under oath
9   that was done on October 18, 2019?
10       MR. IWEANOGE:  Okay.  From the -- from
11  the first see on the screen it appears to be.
12  I haven't had the full time to look at them.
13  I can only say that she has already said that
14  she sat for an oral examination under oath
15  and if that is the transcript, it's the
16  transcript.
17  Q.  All right.  When you sat for that deposition,
18  Mrs. Daramy-Andrews, did you appear by
19  yourself or did you have counsel with you?
20  A.  I had Mr. Charles.
21  Q.  You had Mr. Charles.  And the date of that --
22  that's your current attorney, right?

Transcript of Phanta Daramy-Andrews
Conducted on August 9, 2023

---

41

1  A.  Yes, sir.
2  Q.  And the date of that examination was Friday,
3     October 18, 2019.  Correct?
4  A.  I want to believe so, sir.
5  Q.  Well, I'm asking you.  I don't want you to
6     believe.  I want you to testify to within --
7     to the best of your recollection is that
8     true, that the deposition occurred on Friday,
9     October -- excuse me, the examination under
10    oath occurred on Friday, October 18, 2019?
11 A.  It's been a while.  I know I was there.
12 Q.  Do you have any reason to doubt that the
13    examination under oath did not take place on
14    October 18th --
15 A.  I am not --
16 Q.  Let me finish -- let me finish my question,
17    please.  Do you have any basis --
18 A.  I --
19 Q.  Do you have any basis --
20 A.  I am --
21 Q.  Can I finish my question?
22 A.  I'm sorry, sir.

---

42

1  Q.  Do you have any basis to say that an
2     examination under oath did not occur on
3     October 18, 2019?
4  A.  No, sir.
5  Q.  Did anybody at Liberty Mutual, including
6     Brian Wallace and Ms. Hawkins ever tell you
7     not to bring a claim against Liberty Mutual?
8        MR. IWEANOGE:  Objection as to can you
9     be more specific as to the claim that we was
10    talking about.
11       MR. MEHIGAN:  Fair enough.
12 Q.  You can answer if you can.
13 A.  The actions spoke.
14 Q.  Okay.  Did Liberty Mutual ever dissuade you
15    from filing suit with respect to your
16    April 21, 2019 claim?
17 A.  Can you rephrase your question, sir?
18 Q.  Okay.  Did anybody at Liberty Mutual do
19    anything or say anything that would indicate
20    that they were trying to prevent you from
21    filing a lawsuit against them?
22 A.  I don't think they prevented me.  But I give

---

43

1  them the benefit of the doubt to do the right
2  thing as my insurer.
3     MR. MEHIGAN:  Okay.  If we can bring up
4  -- actually let's go back to Exhibit 2, the
5  complaint.  And if we can go to the very top
6  of the complaint where the caption would
7  be -- actually a little lower, sorry.
8     THE TECHNICIAN:  All right.
9     MR. IWEANOGE:  I would have to object to
10 this line of questioning given that the --
11 that there's an amended complaint so we
12 supersede the original complaint.  So any
13 question made on the original complaint it's
14 not -- it's not the complaint in the case.
15    MR. MEHIGAN:  Thank you, Charles.  The
16 objection is noted.  I just have a quick
17 question to ask about this original complaint
18 and then I'm going to move on to the amended
19 complaint.  If we can go down just to the
20 beginning of the -- keep going.  Next page.
21 Next page.  Sorry.  Next page.  Next page. I
22 don't know why this is all on this complaint.

---

44

1  Q.  Okay.  All right.  On the screen is the civil
2     action sheet for the original complaint filed
3     in D.C. Superior Court with a date stamp of
4     April 28, 2022.  Is that the date that you
5     filed this lawsuit, as far as you know?
6  A.  Can you please repeat your question, sir?
7  Q.  Yeah.  On the screen --
8        MR. MEHIGAN:  And if we can go up maybe
9     just a half a click, Dave?  One more.  There
10    you go.
11 Q.  I'm showing you right now on the screen what
12    is called the civil division -- civil actions
13    branch information sheet.  Do you see that?
14 A.  I can only hear what you say.  I cannot see
15    clearly.
16 Q.  Okay.  Is there something wrong with your
17    eyes?  Do you need glasses or is there
18    something wrong with the screen that you
19    can't see it?
20 A.  The screen for me is blurry.
21 Q.  Okay.  Well, this indicates that the
22    complaint was filed -- the lawsuit was filed

---

Transcript of Phanta Daramy-Andrews
Conducted on August 9, 2023

---

**45**

1 in D.C. Superior Court on April 28th, 2022.
2 Is that correct?
3 **A. Yes, sir.**
4 Q. Is there a reason why you waited until
5 April 28th, 2022 to file this lawsuit?
6 **A. Yes, sir. I had given Liberty Mutual all of**
7 **the benefit of the doubt to do the right**
8 **thing and took advantage of me and my family.**
9 **And the same like -- they did not want to do**
10 **the right thing. And I had lost hope in my**
11 **insurer.**
12     MR. MEHIGAN: All right. Can we pull up
13 Exhibit 3, mended complaint?
14     THE TECHNICIAN: Stand by.
15 (Exhibit 3 was marked for identification and
16 is attached to the transcript.)
17 Q. All right. Ms. Daramy-Andrews I'm showing
18 you what's been marked as Exhibit 3, which
19 I'll represent to you is the amended
20 complaint that was filed in D.C. -- U.S.
21 District Court for the District of Columbia
22 on July 9th, 2022. Do you recognize this

**46**

1 document? Do you see it?
2 **A. If that what it says, then that's what it is.**
3 Q. Okay.
4 **A. I don't see clearly, as I said.**
5 Q. Fair enough. There are three claims that you
6 filed against Liberty Mutual. One is for
7 breach of contract; two is for breach of the
8 covenant of good faith and fair dealing; and
9 three is unjust enrichment. And I would like
10 to know -- well, what is the basis for your
11 breach of contract claim?
12 **A. I done everything in good faith to make**
13 **Liberty Mutual to do the right thing. I have**
14 **written almost everybody. I have pleaded**
15 **with everybody. I had almost 55 different**
16 **adjustors on my cases. And Mr. Dillan Noma**
17 (ph) seem like he wanted to bring closure.
18 Then, again, it went to the same old story
19 and I just felt abused.
20 Q. All right. You keep saying the right thing,
21 Liberty Mutual didn't do the right thing.
22 What was the right thing to do that they

**47**

1 didn't do according to you?
2 **A. Respect my policy.**
3 Q. Okay. Well, Liberty Mutual, as far as I can
4 tell, paid you $21,483.17 to fix your house.
5 They paid alternative living expenses of
6 $7280.48 --
7     MR. IWEANOGE: I have to object.
8 Counsel is testifying and not asking a
9 question.
10     MR. MEHIGAN: Okay. You got to let me
11 get it all out in order to hear the question,
12 okay? So now I got to repeat all this. I'd
13 ask that if you're going to object, that's
14 fine, but at least let me get the whole thing
15 out before you object.
16     MR. IWEANOGE: Okay.
17     MR. MEHIGAN: So I don't have to repeat
18 all this.
19 Q. All right. It looks to me like Liberty
20 Mutual paid $21,483.17 to fix your house.
21 They paid $7280.48 to live somewhere else
22 while the house was being repaired, and they

**48**

1 paid $6069.51 to repair or clean and replace
2 your personal property inside the house. How
3 is that unfair to you?
4     MR. IWEANOGE: Objection to this
5 question, because it's not specific to any of
6 the treatment here as to which claim you're
7 referring to.
8 **A. Sir, if you look at the amount of property**
9 **that was damaged in the house, even the**
10 **contractor that came, the amount does not**
11 **suffice the repair that should have been done**
12 **on the first place.**
13 Q. What contractor said that this was not
14 sufficient?
15 **A. Say, for example, 2015 the house was ripped**
16 **off, the ceiling fell in. There are**
17 **photographs to show this. There's a file,**
18 **there's a file for you to see the list of**
19 **things.**
20 Q. Okay. We're talking about 2000 -- the claim
21 in 2019, okay? What is your evidence that
22 the amount that Liberty Mutual paid you to

**49**

1   repair your house was insufficient?

2  A.  That's why I'm confused.  Because you said --

3     you mentioned 2015.  You mentioned 2018.  You

4     mentioned 2019.  And you speaking of $21,000,

5     you speaking of $7000.

6  Q.  Okay.  Well, the amount of money I just said

7     to you is how much was paid for your 2019

8     claim.  So my question to you is, how was

9     that not sufficient?  And what is your

10    evidence to support your claim that it is not

11    sufficient?

12 A.  You did not pay me $21,000 in 2019.  You did

13    not, sir.

14 Q.  How much did Liberty Mutual pay you for your

15    claim in 2019?

16 A.  I would have to look at my records because I

17    know I did not see any $21,000 from Liberty

18    Mutual in 2019.  No physical cash like that

19    was in my hand because --

20 Q.  How much --

21 A.  -- we --

22 Q.  How much --

**50**

1  A.  Can I speak, sir?

2  Q.  Please, sorry.

3  A.  Thank you.  Roto Rooter was paid.  The man

4    that -- Jimmy Gusky (ph) for the hot water

5    tank I took my $950.01 and paid him out of my

6    own checking.  Those Liberty Mutual send back

7    the $950.01 and still owe Gusky $947.50, they

8    still owe that amount.  There are other

9    people that they still owe, that they did not

10    pay.  So when they give me $21,000 they did

11    not give me no $21,000.  I don't know where

12    they got that amount from or where they give

13    you that information from.

14 Q.  So you dispute that they paid $21,483.17

15    towards your dwelling claim?

16 A.  To who?  Not to me, sir.

17 Q.  I'm asking, do you dispute that Liberty

18    Mutual paid that amount toward your dwelling

19    claim?

20       MR. IWEANOGE:  Objection.  Asked and

21    answered.

22       MR. MEHIGAN:  She just answered it with

**51**

1    a question so I just reasked it, so.

2  A.  What did you say, sir?

3  Q.  So you deny that Liberty Mutual paid

4    $21,483.17 towards your dwelling claim, is

5    that correct?

6  A.  You say I deny?

7  Q.  You deny that Liberty Mutual paid $21,483.17

8    toward your dwelling claim.  Is that correct?

9  A.  Sir, I'm not denying anything.  From what I

10    heard you say that Liberty Mutual gave me

11    $21,000.  Liberty Mutual did not put any

12    $21,000 in my hand.  So from what I

13    understood you to say, is I was given

14    $21,000.  I was not given $21,000.

15 Q.  Do you dispute that Liberty Mutual paid

16    $6769.51 towards your contents claim?

17 A.  So $6000 to what content claim?

18 Q.  Your personal property inside the house.

19 A.  Sir, there's no personal property content

20    that was specified to me, this is your bill

21    for personal property.  What was given to me,

22    if I'm not mistaken, was $6038 -- I can't

**52**

1    really remember but I think it was $6000 to

2    Ms. Green for the people to claim that

3    basement because it was molded.  So it was

4    not the personal property.  And the amount

5    that Ms. Green had asked for, they refused to

6    give the amount for my personal property.

7    They refused, so how can they sit there and

8    say they give me $6000 for my personal

9    property.  That wasn't even part of the

10    claim.

11 Q.  All right.  Do you deny that Liberty Mutual

12    paid $7280.48 in alternative living expenses?

13       MR. IWEANOGE:  Objection as to the

14    timeframe.  When was this?

15       MR. MEHIGAN:  Okay.  Fair enough.

16 Q.  For the April 2019 claim, did Liberty

17    Mutual -- do you deny that Liberty Mutual

18    paid you $7280.48 in alternative living

19    expenses?

20 A.  To live where?  Can I ask the question, to

21    live where?

22 Q.  Sure.  I don't know.  Do you deny that --

Transcript of Phanta Daramy-Andrews
Conducted on August 9, 2023

14 (53 to 56)

53

1  A.  I'm surprised because I can't remember that
2      amount to live anywhere.
3  Q.  Okay.  Do you deny that Liberty Mutual paid
4      alternative living expenses of $7280.48 for
5      your claim in 2019?
6  A.  Sir, I cannot remember.  I cannot remember.
7      I'm not denying anything but I cannot
8      remember that check from Liberty.
9  Q.  Okay.  Did you live elsewhere for a period of
10     time after you discovered the flood in April
11     of 2019?
12 A.  I didn't live anywhere in 2019.  The only two
13     places I lived was the Residence Inn of 333
14     Southwest and the Residence Inn on 15th
15     Street Northwest.  That's 120,000 we're
16     paying.
17        MR. MEHIGAN:  Can we pull up Exhibit No.
18     1, please, Dave?
19        THE TECHNICIAN:  Stand by.
20     (Exhibit 1 was marked for identification and
21     is attached to the transcript.)
22 Q.  All right.  I'm showing you what's been

54

1      marked as Exhibit 1, which I'll represent to
2      you is your Liberty Mutual insurance policy
3      for the period of January 26th, 2019 to
4      January 26th, 2020.  Do you recognize this
5      document?
6  A.  You said January '19?
7  Q.  Yes, January 26th, 2019 through January 26th,
8      2020, which is the policy period.  Do you
9      recognize this document?
10 A.  Well, like I said, I cannot see the document
11     clearly but like you're explaining --
12 Q.  Okay.
13        MR. MEHIGAN:  Charles, can you look at
14     this document and stipulate that this is the
15     applicable insurance policy?
16        MR. IWEANOGE:  There's no way I can
17     stipulate to the policy.  If this is policy
18     and the policy of Liberty Mutual this is
19     policy but I cannot stipulate to it because I
20     didn't receive this policy prior to this
21     lawsuit.  I was unaware of this exact
22     document.  But if this is our policy, it is

55

1      our policy.  So I understand you are
2      representing that this is a policy that was
3      provided by Liberty Mutual.  If this is our
4      policy, we agree to it that it's our policy.
5  Q.  All right.  Ms. Daramy-Andrews, do you have
6      any basis to dispute that this is the
7      applicable policy for the April 2019 claim?
8  A.  Well, I know I had policy.  So I don't know
9      if that's a specific policy but I know I had
10     a policy.
11 Q.  Okay.  Do you have any basis to say that this
12     is not the policy -- the policy in effect at
13     the time of the alleged incident?
14 A.  I wouldn't know, sir.  But I know that my
15     policies were all up to date.
16 Q.  Did you ever provide an inventory to Liberty
17     Mutual for your claims damage contents as a
18     result of the April 2019 flooding?
19 A.  Sir, if I may say 1-800-Packouts was sent by
20     Liberty Mutual.  They were responsible to
21     give account for what they took out of my
22     house.  So definitely they gave an inventory

56

1      list to Liberty Mutual.
2  Q.  Ms. Daramy-Andrews, did you ever provide
3      Liberty Mutual with an inventory of your lost
4      and/or damaged items as a result of the
5      April 2019 flooding incident?
6  A.  With all do respect, sir, the epidemic was in
7      place.  I was told to go to 1-800-Packouts
8      and gave an estimate of whatever to give a
9      listing, and I couldn't, because what was
10     sticking out of my house was all infected
11     with feces and the pandemic was on.  I tried
12     but I couldn't.
13 Q.  So what I'm hearing, and correct me if I'm
14     wrong, is that because of the pandemic and
15     for other reasons you were not able to
16     provide Liberty Mutual an inventory of your
17     claims damaged personal property, correct?
18 A.  Sir, if I can continue.  These properties are
19     still with 1-800-Packouts.  They have their
20     listing of what they took from my home.
21 Q.  Okay.  I appreciate, you know, you're saying
22     all this, but I'm asking a very specific

Transcript of Phanta Daramy-Andrews
Conducted on August 9, 2023

15 (57 to 60)

---

57

1  question. Did you, Ms. Daramy-Andrews, ever
2  provide Liberty Mutual with an inventory of
3  the contents that you claim was lost or
4  damaged as a result of the April 2019
5  flooding incident?
6  **A. I provided some because Liberty Mutual wanted**
7  **me to pay 1-800-Packouts for the days that I**
8  **would be going there to do the listing, and**
9  **the epidemic was also on. That was a high**
10 **risk. And I asked Liberty Mutual to please**
11 **send the adjuster with me or send the**
12 **adjuster to do it. They refused. And my**
13 **life was in jeopardy.**
14 Q. So is the answer to my question, no, you did
15 not provide an inventory to Liberty Mutual?
16 **A. Yes, I did but partial.**
17 Q. Okay. Do you have a copy of that here that
18 you can show me?
19 **A. Yes, I do. I have a copy of some.**
20 Q. Okay. I'm going to --
21     MR. IWEANOGE: Counselor, it was
22 provided in discovery and it was provided to

---

58

1  Liberty Mutual, which you have provided as
2  part of your own discovery packet.
3     MR. MEHIGAN: Okay.
4  Q. Getting back to the complaint, in addition to
5  the breach of contract claim, you also claim
6  that there was a breach of implied covenant
7  good faith and fair dealing. What do you
8  mean by that?
9     MR. IWEANOGE: Objection as to the legal
10 question, legal term.
11 **A. The breach of contract what I, as a lay**
12 **person, because I'm not too familiar with all**
13 **of the terminology of the insurance dealings.**
14 Q. Fair enough. Do you have any evidence to
15 support your claim that Liberty Mutual
16 breached its covenant of good faith and fair
17 dealing?
18 **A. Yes.**
19 Q. Why?
20 **A. How they treated my -- my claim.**
21 Q. Can you think of anything specific that they
22 did that was a breach of an implied covenant

---

59

1  of good faith and fair dealing?
2  **A. Look at how my home was treated. Look at how**
3  **my property is treated. Look at how they**
4  **refused to take care of 1-800-Packouts. Look**
5  **at how they refused the claims of any of my**
6  **properties during all of these instances.**
7  Q. All right. You make the claim of unjust
8  enrichment, do you know what that means?
9  **A. Well, in my little way it is unjust because**
10 **no one should be treated that way who have an**
11 **insurance policy. That the positive -- the**
12 **property should be protected by people that**
13 **they trust with the property. It shouldn't**
14 **be treated this way. And all of the claims**
15 **being mistreated. I can understand if one**
16 **policy is being mistreated. But, two, three,**
17 **same story. So many adjustors, same**
18 **behavior, who does that? Is it because of**
19 **what?**
20 Q. All right. What -- how much money do you
21 think you are owed by Liberty Mutual as a
22 result of your claim in April 2019?

---

60

1  **A. Sir, if you want to be a fair gentleman as**
2  **you are, I leave that into your court.**
3  Q. Okay. Well, let me ask you more
4  specifically, what are your damages as a
5  result of your claim that you believe that
6  you're owed?
7  **A. So many damages, sir.**
8  Q. Okay. What are they? Specifically what are
9  they?
10 **A. If I may say, sir, with all due respect, can**
11 **you go back and review all of those pictures**
12 **by Infinity, and all of those listings, sir,**
13 **and see what me and my family have suffered**
14 **and lost, the trauma, the abuse.**
15 Q. Ms. Daramy-Andrews, with all due respect,
16 this is your claim, right, that you have to
17 bring, and so I need you to tell me what are
18 your damages?
19 **A. Sir, for the three damages?**
20     MR. IWEANOGE: No. You need to do 2019.
21     THE WITNESS: Oh, is it 2019. Oh, is it
22 -- that's why I'm asking.

---

Transcript of Phanta Daramy-Andrews
Conducted on August 9, 2023

---

61

1    MR. IWEANOGE: From 2019.

2    THE WITNESS: That's why I'm --

3    MR. IWEANOGE: The question is specific

4    to 2019.

5    MR. MEHIGAN: The date of loss is

6    April 21, 2019.

7    THE WITNESS: Can I ask him,

8    Mr. Charles, please?

9    MR. IWEANOGE: Go ahead.

10 A.  **Sir, thank you for asking me that question.**

11    **And if I heard you right or if I didn't hear**

12    **you right, are you relating to 2019 or are**

13    **you relating to all of my problems?**

14 Q.  I'm asking with relation to your claim

15    arising from the incident on April 21, 2019

16    and what are your damages?

17 A.  **Well, my damages in 2019 for my personal**

18    **property?**

19 Q.  Well, we can start with personal property,

20    yeah, sure.

21 A.  **I will consider $75,000 for my personal**

22    **property.**

---

62

1 Q.  Okay. You'll consider that but what is the

2    basis for that?

3 A.  **Well, for all of what I have lost in 2019.**

4 Q.  All right. So what I'm hearing you say,

5    you're not prepared to give me a basis for

6    why you believe the value of the contents,

7    personal property, the value of the damage of

8    $75,000. Is that correct?

9 A.  **Can you please rephrase what you said there?**

10 Q.  Sure. What I'm hearing you say is that you

11    believe that you're entitled to $75,000 for

12    your loss of contents but you're not prepared

13    to give me a basis for why you think the

14    value of those contents is $75,000?

15    MR. IWEANOGE: I have to object but you

16    can answer.

17 Q.  Can you answer it?

18 A.  **Sir, I know what I spent on those things that**

19    **I bought.**

20 Q.  Okay.

21    MR. IWEANOGE: She is not finished.

22    MR. MEHIGAN: Sorry, go ahead.

---

63

1    MR. IWEANOGE: Answer him.

2 A.  **I know what I spent on those things that I**

3    **bought. My paintings, my clothes, my shoes,**

4    **my jeweleries in there. There's so many**

5    **things of value. So as you can see maybe if**

6    **you went on my Facebook page, you see how I**

7    **dress. I'm not just an ordinary casually**

8    **dressed person. I take value into my**

9    **presentation of myself. I keep a decent**

10    **home. I put value into what I love. If I**

11    **were to ask you, I would have asked for more,**

12    **but I think I'm just being a little**

13    **courteous.**

14 Q.  Can I ask the next question now?

15 A.  **Please, sir.**

16 Q.  All right. What damages are you claiming as

17    a result of this April 21, 2019 incident,

18    what damages are you claiming for the repair

19    of the dwelling?

20 A.  **I am claiming the property being repaired**

21    **from the inner part of it, where the place is**

22    **damaged. That it be repaired properly.**

---

64

1 Q.  Yeah. But how much? How much is that going

2    to cost?

3 A.  **Pardon me, sir?**

4 Q.  How much is that? How much is that going to

5    cost in your estimation?

6 A.  **In my estimation I would believe that it**

7    **would cost at least 50 to $60,000 to have it**

8    **properly done.**

9 Q.  Do you have an estimate to support that?

10 A.  **Yes, I will have an estimate for that.**

11    **Because materials are very costly. And it**

12    **has to be done properly.**

13 Q.  Do you have any basis to say that the amount

14    of alternative living expense that Liberty

15    Mutual provided for this April 21, 2019 claim

16    was not sufficient?

17 A.  **It's obvious, sir.**

18 Q.  Well, I'm asking you specifically what is

19    your evidence of that?

20 A.  **What is my what, sir?**

21 Q.  What is your evidence to support that claim?

22 A.  **What is my evidence --**

---

Transcript of Phanta Daramy-Andrews
Conducted on August 9, 2023

69

1    CERTIFICATE OF REPORTER - NOTARY PUBLIC
2      I, Stefanie Towns, the officer before whom the
3    foregoing deposition was taken, do hereby certify
4    that the foregoing transcript is a true and correct
5    record of the testimony given; that said testimony
6    was taken by me and thereafter reduced to
7    typewriting under my direction; that reading and
8    signing was requested; and that I am neither
9    counsel for, related to, nor employed by any of the
10   parties to this case and have no interest,
11   financial or otherwise, in its outcome.
12     IN WITNESS WHEREOF, I have hereunto set my
13   hand and affixed my notarial seal this 16th day of
14   August 2023.
15   My Commission Expires:
16
17
18   _Stefanie Towns_____
19   Stefanie Towns
20
21
22



Liberty Mutual Insurance
350 E 96th Street
Indianapolis, IN 46240

June 2, 2022

Manish Sharma
175 Berkeley Street
Boston, MA 02116

Insured Name:        Phanta Daramy-Andrews
Policy Number:       H3723866020940
Claim ID:            039740892
Date of Loss:        04/21/2019
Effective Date:      01/26/2019

I hereby certify that the attached is a true and accurate copy of the documents requested for the policy listed above as maintained by the Liberty Insurance Corporation in the usual and customary course  of its business.

Sincerely,

Michael Quiroz-Smith
Policy Copy
Support

MQS
Enclosures

PL Policy/Dec Request

**App.069**

 Questions about your Policy?
Call 1-301-262-5242 or
1-866-941-4012

Policy Number:
H37-238-660209-40 9 4

Report a Claim:
1-800-2CLAIMS or
LibertyMutual.com/Claims

 Liberty Mutual.
INSURANCE

ACTION REQUIRED:
PLEASE REVIEW AND KEEP FOR YOUR RECORDS.



# Policy Declarations
## Total 12 Month Premium:  $1,385.00

Reason for your new declarations page: Changes made to your policy
Please refer to the Change Detail section on page 3 for more information.
Effective date of this change: 03/14/2019

Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable.

Through your affiliation with the Community Options, Inc. your policy includes special group savings on your home insurance.

### Insurance Information

| | | | |
|---|---|---|---|
| Named Insured: | Phanta U Daramy-Andrews | Policy Number: | H37-238-660209-40 9 4 |
| Mailing Address: | 707 49th Pl Ne<br>Washington DC 20019-4805 | Policy Period: | 01/26/2019-01/26/2020 12:01 a.m.<br>standard time at the  address of the<br>Named Insured at Insured Location. |
| Insured Location: | Same as Mailing address above | Declarations Effective: | 03/14/2019 |

---

#### DISCOUNTS AND BENEFITS SECTION

Your discounts and benefits have been applied to your total policy premium.

- Inflation Protection Discount
- Claims Free Discount
- New Roof Discount
- Basic Home Safety
- New or Renovated Home Discount
- Early Shopper Discount
- Multi Policy Discount - Auto

---

## Coverage Information

Standard Policy with HomeProtector Plus ™

| SECTION I COVERAGES | LIMITS | PREMIUM |
|---|---|---|
| A. Dwelling with Expanded Replacement Cost | $     174,800 | |
| B. Other Structures on Insured Location | $      17,480 | |
| C. Personal Property with Replacement Cost | $     131,100 | |
| D. Loss of Use of Insured Location | Actual Loss Sustained | |



| Want to Add a Coverage? | Policy Number: | Report a Claim: |
|---|---|---|
| Call 1-301-262-5242 or 1-866-941-4012 to talk to your agent about the availability of this coverage and whether it meets your needs. | H37-238-660209-40 9 4 | 1-800-2CLAIMS or LibertyMutual.com/Claims |

# Coverage Information continued

| SECTION II COVERAGES | | LIMITS | PREMIUM |
|---|---|---|---|
| E. Personal Liability (each occurrence) | $ | 500,000 | |
| F. Medical Payments to Others (each person) | $ | 5,000 | |

### POLICY DEDUCTIBLES

Losses covered under Section I are subject to a deductible of : $1,000

| Total Standard Policy with HomeProtector Plus ™ | | $ | 1,374 |
|---|---|---|---|

| ADDITIONAL COVERAGES | DEDUCTIBLE | LIMITS | PREMIUM |
|---|---|---|---|
| Credit Card, Fund Transfer, Forgery | | $ 1,000 | $ 0 |
| Escape of Water (Building/Spec Contents) | $ 1,000 | $ 10,000 | INCL |
| Coverage E & F increased limit | | | $ 11 |
| Total Additional Coverages | | | $ 11 |

**Total 12 Month Policy Premium: $1,385.00**

### Additional Coverages and Products Available*

We've reviewed your policy and have identified additional optional coverages and products that can add valuable protection. Talk to your agent about purchasing the following coverages and products and whether they meet your needs.

- Home Computer and Smartphone: If your smartphone or other devices are not insured, repairing or replacing them can be expensive. Did you know you can insure multiple devices for up to $10,000 with a deductible of $50.00?

- Identity Fraud Expense: A stolen identity can be scary and expensive. We'll provide counseling, and pay up to $30,000 for expenses such as lost wages and attorney fees incurred to recover your identity.

*These optional coverages are subject to policy provisions, limitations, and exclusions. Daily limits or a deductible may apply. For a complete explanation, please consult your agent today.

**App.071**



| Questions about your Policy? Call 1-301-262-5242 or 1-866-941-4012 | Policy Number: H37-238-660209-40 9 4 | Report a Claim: 1-800-2CLAIMS or LibertyMutual.com/Claims |

## Mortgage Information

**Mortgagee 1:**
JPMORGAN CHASE
BANK, N.A. ISAOA
ITS SUCCESSORS
AND/OR ASSIGNS
LOAN NO. 4503578980
PO Box 47020
Atlanta, GA 30362

**Mortgagee 2:**
WASHINGTON DC, DHCD
C/O AMERINAT
LOAN NO. 100054241
PO Box 123
Downey, CA 90241-0123

## Change Detail

Changes made to your policy for: Policy Change 2
• Change Name PHANTA U DARAMY-ANDREWS

There is no premium increase for above changes.

## Policy Forms and Endorsements: The following forms and endorsements are applicable to your policy

LibertyGuard® Deluxe Homeowner Policy
(HO 00 03 04 91)

Home Protector Plus (FMHO-1183)

Credit Card, Fund Transfer, Forgery
(HO 04 53 04 91)

Protective Devices (FMHO 4172 1014)

Amendmt Pol Definitions (FMHO-2934 7/04)

Amendatory Mold End (FMHO 3370 1112)

Seepage Exclusion Endorsement (FMHO 3391 1112)

Inflation Protection (FMHO-2835)

No SecII/Limit I-Daycare (HO 04 96 04 91)

Lead Poisoning Exclusion (FMHO-976 05/92)

Fuel Storage Exclusion (FMHO-1097 1/97)

Special Provisions (FMHO6100DC 0217)

Escape of Water (Building/Spec Contents)
(FMHO 6500 1115)

## Important Messages

Flood Insurance: Your Homeowners policy does not provide coverage for damage caused by flood, even if the flood is caused by a storm surge. Liberty Mutual can help you obtain this coverage through the Federal Emergency Management Agency (FEMA) if your community participates in the National Flood Insurance Program. Please call your representative for more information.

A notice for our customers: Liberty Mutual may consider your claims and loss history when determining whether to renew your policy.



| Questions about your Policy?<br>Call 1-301-262-5242 or<br>1-866-941-4012 | Policy Number:<br>H37-238-660209-40 9 4 | Report a Claim:<br>1-800-2CLAIMS or<br>LibertyMutual.com/Claims |
|---|---|---|

LibertyGuard® Deluxe Homeowners Policy Declarations provided and underwritten by Liberty Insurance Corporation (a stock insurance company), Boston, MA.

David H. Long
President

Mark C. Touhey
Secretary

This policy, including endorsements listed above, is countersigned by:

Hamid Mirza
Authorized Representative

**App.073**

**Questions about your Policy?**
Call 1-301-262-5242 or
1-866-941-4012

**Policy Number:**
H37-238-660209-40 9 4

**Report a Claim:**
1-800-2CLAIMS or
LibertyMutual.com/Claims


**Liberty Mutual.**
INSURANCE

**ACTION REQUIRED:**
PLEASE REVIEW AND KEEP FOR YOUR RECORDS.

## Policy Declarations
## Total 12 Month Premium: $1,385.00

Reason for your new declarations page: Changes made to your policy
Please refer to the Change Detail section on page 3 for more information.
Effective date of this change: 03/05/2019

Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable.

Through your affiliation with the Community Options, Inc. your policy includes special group savings on your home insurance.

### Insurance Information

| | | | |
|---|---|---|---|
| Named Insured: | Phanta Daramy-Andrews | Policy Number: | H37-238-660209-40 9 4 |
| Mailing Address: | 707 49th Pl Ne<br>Washington DC 20019-4805 | Policy Period: | 01/26/2019-01/26/2020 12:01 a.m.<br>standard time at the  address of the<br>Named Insured at Insured Location. |
| Insured Location: | Same as Mailing address above | Declarations Effective: | 03/05/2019 |

---

#### DISCOUNTS AND BENEFITS SECTION

Your discounts and benefits have been applied to your total policy premium.

- Inflation Protection Discount
- Claims Free Discount
- New Roof Discount
- Basic Home Safety
- New or Renovated Home Discount
- Early Shopper Discount
- Multi Policy Discount - Auto

---

## Coverage Information

Standard Policy with HomeProtector Plus ™

| SECTION I COVERAGES | LIMITS | PREMIUM |
|---|---|---|
| A. Dwelling with Expanded Replacement Cost | $  174,800 | |
| B. Other Structures on Insured Location | $   17,480 | |
| C. Personal Property with Replacement Cost | $  131,100 | |
| D. Loss of Use of Insured Location | Actual Loss Sustained | |

App.074

**Want to Add a Coverage?**
Call 1-301-262-5242 or
1-866-941-4012 to talk to your
agent about the availability of
this coverage and whether it
meets your needs.

Policy Number:
H37-238-660209-40 9 4

Report a Claim:
1-800-2CLAIMS or
LibertyMutual.com/Claims



# Coverage Information continued

| SECTION II COVERAGES | | LIMITS | PREMIUM |
|---|---|---|---|
| E. Personal Liability (each occurrence) | $ | 500,000 | |
| F. Medical Payments to Others (each person) | $ | 5,000 | |

### POLICY DEDUCTIBLES

Losses covered under Section I are subject to a deductible of : $1,000

| Total Standard Policy with HomeProtector Plus ™ | | $ | 1,374 |
|---|---|---|---|

| ADDITIONAL COVERAGES | DEDUCTIBLE | LIMITS | PREMIUM |
|---|---|---|---|
| Credit Card, Fund Transfer, Forgery | | $ 1,000 | $ 0 |
| Escape of Water (Building/Spec Contents) | $ 1,000 | $ 10,000 | INCL |
| Coverage E & F increased limit | | | $ 11 |
| Total Additional Coverages | | | $ 11 |

## Total 12 Month Policy Premium: $1,385.00

### Additional Coverages and Products Available*

We've reviewed your policy and have identified additional optional coverages and products that can add valuable protection. Talk to your agent about purchasing the following coverages and products and whether they meet your needs.

- Home Computer and Smartphone: If your smartphone or other devices are not insured, repairing or replacing them can be expensive. Did you know you can insure multiple devices for up to $10,000 with a deductible of $50.00?

- Identity Fraud Expense: A stolen identity can be scary and expensive. We'll provide counseling, and pay up to $30,000 for expenses such as lost wages and attorney fees incurred to recover your identity.

*These optional coverages are subject to policy provisions, limitations, and exclusions. Daily limits or a deductible may apply. For a complete explanation, please consult your agent today.

**App.075**

| | | |
|---|---|---|
| **Questions about your Policy?** Call 1-301-262-5242 or 1-866-941-4012 | **Policy Number:** H37-238-660209-40 9 4 | **Report a Claim:** 1-800-2CLAIMS or LibertyMutual.com/Claims |



## Mortgage Information

**Mortgagee 1:**
JPMORGAN CHASE
BANK, N.A. ISAOA
ITS SUCCESSORS
AND/OR ASSIGNS
LOAN NO. 4503578980
PO Box 47020
Atlanta, GA 30362

**Mortgagee 2:**
WASHINGTON DC, DHCD
C/O AMERINAT
LOAN NO. 100054241
PO Box 123
Downey, CA 90241-0123

## Change Detail

Changes made to your policy for: Policy Change 1

• Change Mortgagee 2                    • Change Handling Requirements

There is no premium increase for above changes.

## Policy Forms and Endorsements: The following forms and endorsements are applicable to your policy

LibertyGuard® Deluxe Homeowner Policy
(HO 00 03 04 91)

Home Protector Plus (FMHO-1183)

Credit Card, Fund Transfer, Forgery
(HO 04 53 04 91)

Protective Devices (FMHO 4172 1014)

Amendmt Pol Definitions (FMHO-2934 7/04)

Amendatory Mold End (FMHO 3370 1112)

Seepage Exclusion Endorsement (FMHO 3391 1112)

Inflation Protection (FMHO-2835)

No SecII/Limit I-Daycare (HO 04 96 04 91)

Lead Poisoning Exclusion (FMHO-976 05/92)

Fuel Storage Exclusion (FMHO-1097 1/97)

Special Provisions (FMHO6100DC 0217)

Escape of Water (Building/Spec Contents)
(FMHO 6500 1115)

## Important Messages

Flood Insurance: Your Homeowners policy does not provide coverage for damage caused by flood, even if the flood is caused by a storm surge. Liberty Mutual can help you obtain this coverage through the Federal Emergency Management Agency (FEMA) if your community participates in the National Flood Insurance Program. Please call your representative for more information.

A notice for our customers: Liberty Mutual may consider your claims and loss history when determining whether to renew your policy.

**App.076**



Questions about your Policy?
Call 1-301-262-5242 or
1-866-941-4012

Policy Number:
H37-238-660209-40 9 4

Report a Claim:
1-800-2CLAIMS or
LibertyMutual.com/Claims

LibertyGuard® Deluxe Homeowners Policy Declarations provided and underwritten by Liberty Insurance Corporation (a stock insurance company), Boston, MA.

David H. Long
President

Mark C. Touhey
Secretary

This policy, including endorsements listed above,
is countersigned by:

Hamid Mirza
Authorized Representative

**Questions about your Policy?**
Call 1-301-262-5242 or
1-866-941-4012

Policy Number:
H37-238-660209-40 9 4

Report a Claim:
1-800-2CLAIMS or
LibertyMutual.com/Claims

**Liberty Mutual.**
INSURANCE

**ACTION REQUIRED:**
PLEASE REVIEW AND KEEP FOR YOUR RECORDS.

## Policy Declarations
## Total 12 Month Premium: $1,385.00



Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable.

Through your affiliation with the Community Options, Inc. your policy includes special group savings on your home insurance.

### Insurance Information

| | | | |
|---|---|---|---|
| Named Insured: | Phanta Daramy-Andrews | Policy Number: | H37-238-660209-40 9 4 |
| Mailing Address: | 707 49th Pl Ne<br>Washington DC 20019-4805 | Policy Period: | 01/26/2019-01/26/2020 12:01 a.m.<br>standard time at the address of the<br>Named Insured at Insured Location. |
| Insured Location: | Same as Mailing address above | Declarations Effective: | 01/26/2019 |

---

#### DISCOUNTS AND BENEFITS SECTION

Your discounts and benefits have been applied to your total policy premium.

- Inflation Protection Discount
- Claims Free Discount
- New Roof Discount
- Basic Home Safety
- New or Renovated Home Discount
- Early Shopper Discount
- Multi Policy Discount - Auto

---

## Coverage Information

Standard Policy with HomeProtector Plus ™

| SECTION I COVERAGES | LIMITS | PREMIUM |
|---|---|---|
| A. Dwelling with Expanded Replacement Cost | $ 174,800 | |
| B. Other Structures on Insured Location | $ 17,480 | |
| C. Personal Property with Replacement Cost | $ 131,100 | |
| D. Loss of Use of Insured Location | Actual Loss Sustained | |

| SECTION II COVERAGES | LIMITS | PREMIUM |
|---|---|---|
| E. Personal Liability (each occurrence) | $ 500,000 | |
| F. Medical Payments to Others (each person) | $ 5,000 | |



**?**  Want to Add a Coverage?
Call 1-301-262-5242 or
1-866-941-4012 to talk to your
agent about the availability of
this coverage and whether it
meets your needs.

Policy Number:
H37-238-660209-40 9 4

Report a Claim:
1-800-2CLAIMS or
LibertyMutual.com/Claims

# Coverage Information continued

### POLICY DEDUCTIBLES

Losses covered under Section I are subject to a deductible of : $1,000

| | |
|---|---|
| Total Standard Policy with HomeProtector Plus ™ | $ 1,374 |

| ADDITIONAL COVERAGES | DEDUCTIBLE | LIMITS | PREMIUM |
|---|---|---|---|
| Credit Card, Fund Transfer, Forgery | | $ 1,000 | $ 0 |
| Escape of Water (Building/Spec Contents) | $ 1,000 | $ 10,000 | INCL |
| Coverage E & F increased limit | | | $ 11 |
| Total Additional Coverages | | | $ 11 |

| |
|---|
| **Total 12 Month Policy Premium: $1,385.00** |

### Additional Coverages and Products Available*

We've reviewed your policy and have identified additional optional coverages and products that can add valuable protection. Talk to your agent about purchasing the following coverages and products and whether they meet your needs.

- Home Computer and Smartphone: If your smartphone or other devices are not insured, repairing or replacing them can be expensive. Did you know you can insure multiple devices for up to $10,000 with a deductible of $50.00?

- Identity Fraud Expense: A stolen identity can be scary and expensive. We'll provide counseling, and pay up to $30,000 for expenses such as lost wages and attorney fees incurred to recover your identity.

*These optional coverages are subject to policy provisions, limitations, and exclusions. Daily limits or a deductible may apply. For a complete explanation, please consult your agent today.

### Mortgage Information

Mortgagee 1:
JPMORGAN CHASE
BANK, N.A. ISAOA
ITS SUCCESSORS
AND/OR ASSIGNS
LOAN NO. 4503578980
PO Box 47020
Atlanta, GA 30362

Mortgagee 2:
DHCD
ISAOA ATIMA
C/o Greater Washington
Urban League
Washington, DC 20009

**App.079**



| Questions about your Policy?<br>Call 1-301-262-5242 or<br>1-866-941-4012 | Policy Number:<br>H37-238-660209-40 9 4 | Report a Claim:<br>1-800-2CLAIMS or<br>LibertyMutual.com/Claims |

---

**Policy Forms and Endorsements:** The following forms and endorsements are applicable to your policy

LibertyGuard® Deluxe Homeowner Policy
(HO 00 03 04 91)

Credit Card, Fund Transfer, Forgery
(HO 04 53 04 91)

Amendmt Pol Definitions (FMHO-2934 7/04)

Seepage Exclusion Endorsement (FMHO 3391 1112)

No SecII/Limit I-Daycare (HO 04 96 04 91)

Fuel Storage Exclusion (FMHO-1097 1/97)

Escape of Water (Building/Spec Contents)
(FMHO 6500 1115)

Home Protector Plus (FMHO-1183)

Protective Devices (FMHO 4172 1014)

Amendatory Mold End (FMHO 3370 1112)

Inflation Protection (FMHO-2835)

Lead Poisoning Exclusion (FMHO-976 05/92)

Special Provisions (FMHO6100DC 0217)

---

**Important Messages**

---

Flood Insurance: Your Homeowners policy does not provide coverage for damage caused by flood, even if the flood is caused by a storm surge. Liberty Mutual can help you obtain this coverage through the Federal Emergency Management Agency (FEMA) if your community participates in the National Flood Insurance Program. Please call your representative for more information.

A notice for our customers: Liberty Mutual may consider your claims and loss history when determining whether to renew your policy.

LibertyGuard® Deluxe Homeowners Policy Declarations provided and underwritten by Liberty Insurance Corporation (a stock insurance company), Boston, MA.

David H. Long
President

Mark C. Touhey
Secretary

This policy, including endorsements listed above,
is countersigned by:

Hamid Mirza
Authorized Representative

---

**App.080**

Liberty
Mutual.
INSURANCE

# LibertyGuard Deluxe Homeowners Policy

Please read your policy and each endorsement carefully.

**To serve you best...**

Liberty Mutual has over 350 service offices throughout the United States
and Canada.  Please contact your service office shown on your Declarations
Page to report losses, or for any changes or questions about your insurance.
Payments should be sent to the office indicated on your bill.

THIS POLICY IS NON ASSESSABLE



# LIBERTYGUARD DELUXE HOMEOWNERS POLICY
## HO 00 03 EDITION 04 91

**TABLE OF CONTENTS**      **Page**

Agreement............................................. 1
Definitions ........................................... 1
**SECTION I - PROPERTY COVERAGES**
  Coverage A Dwelling........................... 1
  Coverage B Other Structures ............... 2
  Coverage C Personal Property............... 2-3
  Coverage D Loss of Use....................... 3
  Additional Coverages........................... 3
    Debris Removal................................. 3
    Reasonable Repairs........................... 3-4
    Trees, Shrubs and Other Plants .......... 4
    Fire Department Service Charge.......... 4
    Property Removed ............................ 4
    Credit Card, Fund Transfer Card, Forgery
      and Counterfeit Money.................... 4
    Loss Assessment ............................. 4-5
    Collapse ......................................... 5
    Glass or Safety Glazing Material ......... 5
    Landlord's Furnishings ...................... 5-6
**SECTION I - PERILS INSURED AGAINST**
  Coverage A Dwelling and Coverage B
    Other Structures............................. 6
  Coverage C Personal Property............... 6-7
**SECTION I - EXCLUSIONS**
  Ordinance or Law................................ 7
  Earth Movement ................................. 7-8
  Water Damage .................................. 8
  Power Failure .................................... 8
  Neglect ............................................ 8
  War ................................................. 8
  Nuclear Hazard .................................. 8
  Intentional Loss ................................. 8
  Weather Conditions............................. 8
  Acts or Decisions............................... 8
  Faulty, Inadequate or Defective............ 8
**SECTION I - CONDITIONS**
  Insurable Interest and Limit of Liability ... 8
  Your Duties After Loss ........................ 8-9
  Loss Settlement.................................. 9-10
  Loss to a Pair or Set ........................... 10
  Glass Replacement ............................. 10
  Appraisal ......................................... 10

Other Insurance ................................. 10
Suit Against Us .................................. 10
Our Option ....................................... 10
Loss Payment.................................... 10
Abandonment of Property..................... 10
Mortgage Clause................................ 10
No Benefit To Bailee........................... 10
Nuclear Hazard Clause........................ 10-11
Recovered Property............................ 11
Volcanic Eruption Period ..................... 11
**SECTION II - LIABILITY COVERAGES**
  Coverage E Personal Liability ............... 11
  Coverage F Medical Payments to Others. 11
**SECTION II - EXCLUSIONS**
  Coverage E Personal Liability and Coverage F
    Medical Payments to Others ........... 11-13
  Coverage E Personal Liability ............... 13
  Coverage F Medical Payments to Others. 13
**SECTION II - ADDITIONAL COVERAGES**
  Claim Expenses ................................. 13
  First Aid Expenses ............................. 14
  Damage to Property of Others ............. 14
  Loss Assessment............................... 14
**SECTION II - CONDITIONS**
  Limit of Liability................................. 14
  Severability of Insurance ..................... 14
  Duties After Loss .............................. 14-15
  Duties of an Injured Person ................. 15
  Payment of Claim .............................. 15
  Suit Against Us ................................. 15
  Bankruptcy of an Insured .................... 15
  Other Insurance ................................. 15
**SECTIONS I AND II - CONDITIONS**
  Policy Period .................................... 15
  Concealment or Fraud ........................ 15
  Liberalization Clause .......................... 15
  Waiver or Change of Policy Provisions ... 15
  Cancellation ..................................... 15-16
  Non-Renewal ................................... 16
  Assignment ...................................... 16
  Subrogation ..................................... 16
  Death.............................................. 16
**\*MUTUAL POLICY CONDITIONS** ............. 16

\*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.



| HOMEOWNERS 00 03 04 91 |
|---|

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

| DEFINITIONS |
|---|

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.
2. "Business" includes trade, profession or occupation.
3. "Insured" means you and residents of your household who are:
   a. Your relatives; or
   b. Other persons under the age of 21 and in the care of any person named above.
   Under Section II, "insured" also means:
   c. With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3.a. or 3.b. above. A person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner is not an "insured";
   d. With respect to any vehicle to which this policy applies:
      (1) Persons while engaged in your employ or that of any person included in 3.a. or 3.b. above; or
      (2) Other persons using the vehicle on an "insured location" with your consent.
4. "Insured location" means:
   a. The "residence premises";
   b. The part of other premises, other structures and grounds used by you as a residence and:
      (1) Which is shown in the Declarations; or
      (2) Which is acquired by you during the policy period for your use as a residence;

   c. Any premises used by you in connection with a premises in 4.a. and 4.b. above;
   d. Any part of a premises:
      (1) Not owned by an "insured"; and
      (2) Where an "insured" is temporarily residing;
   e. Vacant land, other than farm land, owned by or rented to an "insured";
   f. Land owned by or rented to an "insured" on which a one or two family dwelling is being built as a residence for an "insured";
   g. Individual or family cemetery plots or burial vaults of an "insured"; or
   h. Any part of a premises occasionally rented to an "insured" for other than "business" use.
5. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
   a. "Bodily injury"; or
   b. "Property damage."
6. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.
7. "Residence employee" means:
   a. An employee of an "insured" whose duties are related to the maintenance or use of the "residence premises," including household or domestic services; or
   b. One who performs similar duties elsewhere not related to the "business" of an "insured."
8. "Residence premises" means:
   a. The one family dwelling, other structures, and grounds; or
   b. That part of any other building;
   where you reside and which is shown as the "residence premises" in the Declarations. "Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

| SECTION I - PROPERTY COVERAGES |
|---|

## COVERAGE A - Dwelling

We cover:

1. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

2. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises."

This coverage does not apply to land, including land on which the dwelling is located.



**COVERAGE B - Other Structures**

We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

We do not cover other structures:

1. Used in whole or in part for "business"; or
2. Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

**COVERAGE C - Personal Property**

We cover personal property owned or used by an "insured" while it is anywhere in the world.  At your request, we will cover personal property owned by:

1. Others while the property is on the part of the "residence premises" occupied by an "insured";
2. A guest or a "residence employee," while the property is in any residence occupied by an "insured."

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises," is 10% of the limit of liability for Coverage C, or $1000, whichever is greater.  Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Limits of Liability.**  These limits do not increase the Coverage C limit of liability.  The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.
2. $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps.  This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.
   This limit includes the cost to research, replace or restore the information from the lost or damaged material.
3. $1000 on watercraft, including their trailers, furnishings, equipment and outboard engines or motors.
4. $1000 on trailers not used with watercraft.
5. $1000 for loss by theft of jewelry, watches, furs, precious and semi-precious stones.
6. $2000 for loss by theft of firearms.
7. $2500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware.  This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.
8. $2500 on property, on the "residence premises," used at any time or in any manner for any "business" purpose.
9. $250 on property, away from the "residence premises," used at any time or in any manner for any "business" purpose.  However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits 10. and 11. below.
10. $1000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:
    a. Accessories or antennas; or
    b. Tapes, wires, records, discs or other media;
    for use with any electronic apparatus.
11. $1000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:
    a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;
    b. Is away from the "residence premises"; and
    c. Is used at any time or in any manner for any "business" purpose.
    Electronic apparatus includes:
    a. Accessories or antennas; or
    b. Tapes, wires, records, discs or other media;
    for use with any electronic apparatus.

**Property Not Covered.**  We do not cover:

1. Articles separately described and specifically insured in this or other insurance;
2. Animals, birds or fish;
3. Motor vehicles or all other motorized land conveyances.
   This includes:
   a. Their equipment and accessories; or
   b. Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances.
   Electronic apparatus includes:
   (1) Accessories or antennas; or



(2) Tapes, wires, records, discs or other media;

for use with any electronic apparatus. The exclusion of property described in 3.a. and 3.b. above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

a. Used to service an "insured's" residence; or

b. Designed for assisting the handicapped;

4. **Aircraft and parts.** Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

5. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

6. Property in an apartment regularly rented or held for rental to others by an "insured," except as provided in Additional Coverages 10.;

7. Property rented or held for rental to others off the "residence premises";

8. "Business" data, including such data stored in:

a. Books of account, drawings or other paper records; or

b. Electronic data processing tapes, wires, records, discs or other software media;

However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market; or

9. Credit cards or fund transfer cards except as provided in Additional Coverages 6.

**COVERAGE D - Loss Of Use**

The limit of liability for Coverage D is the total limit for all the coverages that follow.

1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover, at your choice, either of the following. However, if the "residence premises" is not your principal place of residence, we will not provide the option under paragraph b. below.

a. **Additional Living Expense,** meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or

b. **Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" where you reside less any expenses that do not continue while the premises is not fit to live in.

Payment under a. or b. will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle

elsewhere.

2. If a loss covered under this Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the:

**Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

3. If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense and Fair Rental Value loss as provided under 1. and 2. above for no more than two weeks.

The periods of time under 1., 2. and 3. above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

**ADDITIONAL COVERAGES**

1. **Debris Removal.** We will pay your reasonable expense for the removal of:

a. Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

We will also pay your reasonable expense, up to $500, for the removal from the "residence premises" of:

a. Your tree(s) felled by the peril of Windstorm or Hail;

b. Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or

c. A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

provided the tree(s) damages a covered structure. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage.

**App.085**



If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

This coverage:

a.  Does not increase the limit of liability that applies to the covered property;

b.  Does not relieve you of your duties, in case of a loss to covered property, as set forth in SECTION I - CONDITION 2.d.

3.  **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the "residence premises," for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the "residence premises," Vandalism or malicious mischief or Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

4.  **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

5.  **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6.  **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

We will pay up to $500 for:

a.  The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

b.  Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

c.  Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

d.  Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

We do not cover use of a credit card or fund transfer card:

a.  By a resident of your household;

b.  By a person who has been entrusted with either type of card; or

c.  If an "insured" has not complied with all terms and conditions under which the cards are issued.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of "business" use or dishonesty of an "insured."

This coverage is additional insurance. No deductible applies to this coverage.

Defense:

a.  We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

b.  If a suit is brought against an "insured" for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

c.  We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under the Forgery coverage.

7.  **Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under COVERAGE A - DWELLING, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises." We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $1000 is the most we will pay with respect to any one loss, regardless of the number of assessments.



Condition 1. Policy Period, under SECTIONS I AND II CONDITIONS, does not apply to this coverage.

8. **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:
   a. Perils Insured Against in COVERAGE C - PERSONAL PROPERTY. These perils apply to covered buildings and personal property for loss insured by this additional coverage;
   b. Hidden decay;
   c. Hidden insect or vermin damage;
   d. Weight of contents, equipment, animals or people;
   e. Weight of rain which collects on a roof; or
   f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

   Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e., and f. unless the loss is a direct result of the collapse of a building.

   Collapse does not include settling, cracking, shrinking, bulging or expansion.

   This coverage does not increase the limit of liability applying to the damaged covered property.

9. **Glass or Safety Glazing Material.**
   We cover:
   a. The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and
   b. Damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

   This coverage does not include loss on the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

   Loss for damage to glass will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

   This coverage does not increase the limit of liability that applies to the damaged property.

10. **Landlord's Furnishings.** We will pay up to $2500 for your appliances, carpeting and other household furnishings, in an apartment on the "residence premises" regularly rented or held for rental to others by an "insured," for loss caused only by the following Perils Insured Against:

a. **Fire or lightning.**
b. **Windstorm or hail.**
   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.
   This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.
c. **Explosion.**
d. **Riot or civil commotion.**
e. **Aircraft,** including self-propelled missiles and spacecraft.
f. **Vehicles.**
g. **Smoke,** meaning sudden and accidental damage from smoke.
   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.
h. **Vandalism or malicious mischief.**
i. **Falling objects.**
   This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.
j. **Weight of ice, snow or sleet** which causes damage to property contained in a building.
k. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.
   This peril does not include loss:
   (1) To the system or appliance from which the water or steam escaped;
   (2) Caused by or resulting from freezing except as provided in the peril of freezing below; or
   (3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."
   In this peril, a plumbing system does not include a sump, sump pump or related equipment.
l. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.
   We do not cover loss caused by or resulting from freezing under this peril.



m. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.
This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:
(1) Maintain heat in the building; or
(2) Shut off the water supply and drain the system and appliances of water.

n. **Sudden and accidental damage from artificially generated electrical current.**
This peril does not include loss to a tube, transistor or similar electronic component.
o. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.
The $2500 limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

## SECTION I - PERILS INSURED AGAINST

### COVERAGE A - DWELLING and COVERAGE B - OTHER STRUCTURES

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property.  We do not insure, however, for loss:

1. Involving collapse, other than as provided in Additional Coverage 8.;
2. Caused by:
   a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing.  This exclusion applies only while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:
      (1) Maintain heat in the building; or
      (2) Shut off the water supply and drain the system and appliances of water;
   b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:
      (1) Fence, pavement, patio or swimming pool;
      (2) Foundation, retaining wall, or bulkhead; or
      (3) Pier, wharf or dock;
   c. Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;
   d. Vandalism and malicious mischief if the dwelling has been vacant for more than 30 consecutive days immediately before the loss.  A dwelling being constructed is not considered vacant;
   e. Any of the following:
      (1) Wear and tear, marring, deterioration;
      (2) Inherent vice, latent defect, mechanical breakdown;
      (3) Smog, rust or other corrosion, mold, wet or dry rot;
      (4) Smoke from agricultural smudging or industrial operations;

      (5) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.
      Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed;
      (6) Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings;
      (7) Birds, vermin, rodents, or insects; or
      (8) Animals owned or kept by an "insured."
      If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance.  We do not cover loss to the system or appliance from which this water escaped.
3. Excluded under Section I - Exclusions.
Under items 1. and 2., any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

### COVERAGE C - PERSONAL PROPERTY

We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in SECTION I - EXCLUSIONS.

1. **Fire or lightning.**
2. **Windstorm or hail.**
   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow,



sleet, sand or dust enters through this opening. This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

3. **Explosion.**
4. **Riot or civil commotion.**
5. **Aircraft,** including self-propelled missiles and spacecraft.
6. **Vehicles.**
7. **Smoke,** meaning sudden and accidental damage from smoke.
   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.
8. **Vandalism or malicious mischief.**
9. **Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.
   This peril does not include loss caused by theft:
   a. Committed by an "insured";
   b. In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied; or
   c. From that part of a "residence premises" rented by an "insured" to other than an "insured."
      This peril does not include loss caused by theft that occurs off the "residence premises" of:
   a. Property while at any other residence owned by, rented to, or occupied by an "insured" except while an "insured" is temporarily living there.  Property of a student who is an "insured" is covered while at a residence away from home if the student has been there at any time during the 45 days immediately before the loss;
   b. Watercraft, and their furnishings, equipment and outboard engines or motors; or
   c. Trailers and campers.
10. **Falling objects.**
    This peril does not include loss to property

contained in a building unless the roof or an outside wall of the building is first damaged by a falling object.  Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.
12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.
    This peril does not include loss:
    a. To the system or appliance from which the water or steam escaped;
    b. Caused by or resulting from freezing except as provided in the peril of freezing below; or
    c. On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."
    In this peril, a plumbing system does not include a sump, sump pump or related equipment.
13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.
    We do not cover loss caused by or resulting from freezing under this peril.
14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.
    This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:
    a. Maintain heat in the building; or
    b. Shut off the water supply and drain the system and appliances of water.
15. **Sudden and accidental damage from artificially generated electrical current.**
    This peril does not include loss to a tube, transistor or similar electronic component.
16. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

---

## SECTION I - EXCLUSIONS

1. We do not insure for loss caused directly or indirectly by any of the following.  Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

   a. **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, unless specifically provided under this policy.

   b. **Earth Movement,** meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:
      (1) Fire;
      (2) Explosion; or
      (3) Breakage of glass or safety glazing material which is part of a building, storm door or storm window;

ensues and then we will pay only for the ensuing loss.
This exclusion does not apply to loss by theft.

c. **Water Damage,** meaning:
   (1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;
   (2) Water which backs up through sewers or drains or which overflows from a sump; or
   (3) Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.
   Direct loss by fire, explosion or theft resulting from water damage is covered.

d. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises." But, if a Peril Insured Against ensues on the "residence premises," we will pay only for that ensuing loss.

e. **Neglect,** meaning neglect of the "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

f. **War,** including the following and any consequence of any of the following:
   (1) Undeclared war, civil war, insurrection, rebellion or revolution;
   (2) Warlike act by a military force or military personnel; or

(3) Destruction, seizure or use for a military purpose.
Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

g. **Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of SECTION I - CONDITIONS.

h. **Intentional Loss,** meaning any loss arising out of any act committed:
   (1) By or at the direction of an "insured"; and
   (2) With the intent to cause a loss.

2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

a. **Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;

b. **Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body;

c. **Faulty, inadequate or defective:**
   (1) Planning, zoning, development, surveying, siting;
   (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
   (3) Materials used in repair, construction, renovation or remodeling; or
   (4) Maintenance;
   of part or all of any property whether on or off the "residence premises."

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:
   a. To the "insured" for more than the amount of the "insured's" interest at the time of loss; or
   b. For more than the applicable limit of liability.

2. **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:
   a. Give prompt notice to us or our agent;
   b. Notify the police in case of loss by theft;
   c. Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage;
   d. Protect the property from further damage. If repairs to the property are required, you must:

   (1) Make reasonable and necessary repairs to protect the property; and
   (2) Keep an accurate record of repair expenses;

e. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

f. As often as we reasonably require:
   (1) Show the damaged property;
   (2) Provide us with records and documents we request and permit us to make copies; and
   (3) Submit to examination under oath, while not in the presence of any other "insured," and sign the same;

g. Send to us, within 60 days after our request, your signed, sworn proof of loss

**App.090**



which sets forth, to the best of your knowledge and belief:

(1) The time and cause of loss;

(2) The interest of the "insured" and all others in the property involved and all liens on the property;

(3) Other insurance which may cover the loss;

(4) Changes in title or occupancy of the property during the term of the policy;

(5) Specifications of damaged buildings and detailed repair estimates;

(6) The inventory of damaged personal property described in 2.e. above;

(7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

(8) Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

**3. Loss Settlement.** Covered property losses are settled as follows:

a. Property of the following types:

(1) Personal property;

(2) Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

(3) Structures that are not buildings;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

b. Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

(1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

(a) The limit of liability under this policy that applies to the building;

(b) The replacement cost of that part of the building damaged for like construction and use on the same premises; or

(c) The necessary amount actually spent to repair or replace the damaged building.

(2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(a) The actual cash value of that part of the building damaged; or

(b) That proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

(3) To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

(a) Excavations, foundations, piers or any supports which are below the undersurface of the lowest basement floor;

(b) Those supports in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(c) Underground flues, pipes, wiring and drains.

(4) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of b.(1) and b.(2) above.

However, if the cost to repair or replace the damage is both:

(a) Less than 5% of the amount of insurance in this policy on the building; and

(b) Less than $2500;

we will settle the loss according to the provisions of b.(1) and b.(2) above whether or not actual repair or replacement is complete.

(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim



within 180 days after loss for any additional liability according to the provisions of this Condition 3. Loss Settlement.

4. **Loss to a Pair or Set.**  In case of loss to a pair or set we may elect to:
   a. Repair or replace any part to restore the pair or set to its value before the loss; or
   b. Pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.**  Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.**  If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss.  In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other.  The two appraisers will choose an umpire.  If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located.  The appraisers will separately set the amount of loss.  If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss.  If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

   Each party will:
   a. Pay its own appraiser; and
   b. Bear the other expenses of the appraisal and umpire equally.

7. **Other Insurance.**  If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.**  No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

9. **Our Option.**  If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.**  We will adjust all losses with you.  We will pay you unless some other person is named in the policy or is legally entitled to receive payment.  Loss will be payable 60 days after we receive your proof of loss and:

a. Reach an agreement with you;
b. There is an entry of a final judgement; or
c. There is a filing of an appraisal award with us.

11. **Abandonment of Property.**  We need not accept any property abandoned by an "insured."

12. **Mortgage Clause.**
    The word "mortgagee" includes trustee.
    If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear.  If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.
    If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:
    a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;
    b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and
    c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so.  Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.
    If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.
    If we pay the mortgagee for any loss and deny payment to you:
    a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or
    b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest.  In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.
    Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee.**  We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

14. **Nuclear Hazard Clause.**
    a. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **PHANTA U. DARAMY-ANDREWS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No. 1:22-cv-01694-TJK** |
| | : | |
| **LIBERTY INSURANCE** | : | |
| **CORPORATION,** | : | |
| | : | |
| **Defendant.** | : | |

## <u>ORDER</u>

In consideration of Defendant Liberty Insurance Corporation's Motion for Summary

Judgment, and any opposition thereto, it is this _____ day of _____ 2023

ORDERED that the motion be and is hereby GRANTED; and it is further

ORDERED that judgment is hereby entered in favor of Defendant, with costs assessed to

Plaintiff.

_____
Timothy J. Kelly
U.S. District Court Judge

Serve on:

Charles C. Iweanoge, Esquire
James C. Mehigan, Esquire

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **PHANTA U. DARAMY-ANDREWS** | \* |
| **Plaintiff** | \* |
| | \* |
| **v.** | **\*CASE #: 1:22-CV-01694-TJK** |
| | \* |
| **LIBERTY INSURANCE CORPORATION** | \* |
| **Defendant** | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NOW COMES, Plaintiff, Phanta U. Daramy-Andrews, by and through undersigned counsel, and moves this Honorable Court to deny Defendant's motion for summary judgment because Defendant forfeited and waived the affirmative defense of contractual limitation period by its actions, there are material facts in dispute, and Defendant is not entitled to judgment as a matter of law. Memorandum of points and authorities supporting Plaintiff's Opposition to Defendant's motion for summary judgment is attached hereto.

Respectfully submitted,
**THE IWEANOGES' FIRM, P.C.**


By:   */s/CharlesCIweanoge*
          Charles C. Iweanoge
          **IWEANOGE LAW CENTER**
          1026 Monroe Street, NE
           Washington, D.C. 20017
          Phone: (202) 347-7026
          Fax:   (202) 347-7108
          Email: cci@iweanogesfirm.com

**App.094**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **PHANTA U. DARAMY-ANDREWS** | \* |
| **Plaintiff** | \* |
| | \* |
| **v.** | **\*CASE #: 1:22-CV-01694-TJK** |
| | \* |
| **LIBERTY INSURANCE CORPORATION** | \* |
| **Defendant** | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORTS OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S SUMMARY JUDGMENT

### BACKGROUND FACTS

The Plaintiff is the owner of the property known as 707 49th Place, NE, Washington, DC, 20019 and purchased insurance coverage from the Defendant, Liberty Mutual Insurance Company starting in 2012. *See Exhibit 1: Liberty Mutual Insurance Policy Declarations.* The effective date of the annually renewed policy was January 26, 2019, through January 26, 2020.

On or about April 21, 2019, the basement of the property flooded due to pipe break resulting in feces and water causing extensive damages to the basement, and personal properties in the basement. Upon reporting the claim, Defendant contracted 1-800-Packout to come to Plaintiff's residence and remove all damaged and contaminated personal property for storage at their facility without cleaning. *See Exhibit 2: Email and Inventory.* I-800-Packout stored the personal property without cleaning as instructed by Defendant.

Upon requesting payment for personal property damaged, Defendant commenced insurance fraud investigation and hired an attorney to depose the Plaintiff. After Plaintiff's deposition on October 19, 2023, Defendant accepted liability for the loss and issued a letter dated November 1, 2019, addressing the issue of supplemental damages. *See Exhibit 3: Letter dated 11/1/2019*. Plaintiff requested that she be paid for her damaged personal property in the possession of 1-800-Packouts contracted by the Defendant for pickup and storage of her personal property. 1-800-Packouts identified some of the items as total loss and the remaining items were stored without cleaning the feces which resulted resulting molding. *See Exhibit 2: Email and Inventory*. Defendant requested that Plaintiff itemize all her personal property, although it was already provided by 1-800-Packout, resulting in Plaintiff spending two days at 1-800-Packouts going through items contaminated with feces in an effort to comply with Defendant's directive. Plaintiff's Affidavit ¶8.

Following the difficulties encountered in complying with Defendant's demand, on March 5, 2020, Defendant sent a letter to Plaintiff stating:

> "[W]e understand the insured's current hardships and we will wait until she is able to complete the required Proof of Loss for the 04/21/2019 water damage and provide a signed copy to us as discussed previously. We will then be able to complete the meeting that we started on 10/18/2019 and make final decision based on what is submitted and reviewed.

The letter further stated:

> At this time, our investigation is suspended. We will be happy to reopen the claim should the insured comply with the conditions of the policy and complete the signed proof of loss.

See Exhibit 4: Letter Dated March 5, 2020.

Nowhere in the letter did it state or suggest that notwithstanding the acceptance of liability and/or suspension of investigation that Defendant does not waive its right to the contractual limitation period. In addition, as a result of the COVID-19 Pandemic, closures, and associated health issues and precautions, Plaintiff was unable to visit 1-800-Packout storage facility to continue taking inventory of her molded and damaged personal properties in possession of 1-800-Packout. It is pertinent to note that on March 18, 2020, the Superior Court ordered that "all statutory and rules-based timelines in the D.C. Code" be "tolled" in response to the COVID-19 pandemic until May 15, 2020[1]. In a series of subsequent orders issued by the Chief Judge on March 19, 2020, May 14, 2020, June 19, 2020, August 13, 2020, November 5, 2020, and January 13, 2021, the limitation period for all civil cases were tolled from March 18, 2020, through March 30, 2021.

On April 4, 2022, Plaintiff filed the instant lawsuit in the Superior Court for the District of Columbia against Liberty Mutual Insurance affiliated and related entities because Plaintiff was not aware of the exact liberty Mutual entity that issued her policy. On June 2, 2022, Plaintiff through Counsel received a certified copy of the Plaintiff's insurance policy. Defendant removed the case to this court, Plaintiff filed an amended complaint naming the defendant, Liberty Insurance Corporation, as the proper defendant. The amended complaint asserted three counts, namely: breach of contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment. (ECF 8)

---

[1] See Amended Order, D.C. Super. Ct. (Mar. 18, 2020), https://tinyurl.com/26jdpzn6.

On July 15, 2022, Defendant filed an answer and did not assert as an affirmative defense that this action is time barred by the contractual statute of limitation. *Plaintiff's Exhibit 5: Defendant's Answer to Amended Complaint*. Since the filing of the answer, Defendant did not move the court for leave to amend its answer to include the contractual affirmative defense of contractual limitation period or disclose the affirmative defense in its answer to interrogatories prior to the filing of its motion for summary judgment. Exhibit 6: Plaintiff's Answer to Interrogatories.

## ARGUMENT
## STANDARD OF REVIEW

A court may dispose of a case on summary judgment before trial only where the pleadings, stipulations, affidavits, and admissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56(c) mandates the entry of summary judgment, only after adequate time for discovery against a party who fails to make a showing that is sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Joyce v. United States, 795 F. Supp. 1, 3 (D.D.C. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317). The standard test for summary judgment is "whether a fair minded jury could return a verdict for the [nonmovant] on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986); Shields v. Eli Lilly and Co., 895 F.2d 1463 (D.C. Cir. 1990). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his

favor." <u>Anderson</u>, 477 U.S. at 255; <u>Washington Post Co. v. U.S. Dept. of Health and Human Services</u>, 865 F.2d 320, 325 (D.C. Cir. 1989).  In addition, the court may not make credibility determinations or weigh the evidence. <u>Lytle v. Household Mfg., Inc</u>, 494 U.S. 545, 554-555, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990).

The party moving for summary judgment bears the burden of proving lack of any genuine issue of fact, and the court must view the available facts in the light most favorable to the non-moving party. <u>Minihan v. American Pharmaceutical Ass'n</u>, 812 F.2d 726, 727 (D.C. Cir. 1987).  The nonmoving party is "required to provide evidence that would permit a reasonable jury to find" in her favor. <u>Laninham v. U.S. Navy</u>, 813 F.2d 1236, 1242 (D.C. Cir. 1987). Nevertheless, the Supreme Court in <u>Anderson</u>, stated "credibility determination, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions not those of a judge." 477 U.S. at 255. Notwithstanding that the Court must view the record as a whole it must disregard all evidence favorable to the moving party that the jury is not required to believe. The court is only required to give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontroverted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." <u>Id.</u> at 300; <u>See also</u> <u>Zuchel v. Spinharney</u>, 890 F.2d 273 (10th Cir. 1989)(although the defendant presented the testimony of nine eyewitnesses tending to vindicate defendant's conduct, the court affirmed the denial of defendant's motion for summary judgment stating that "it made no

difference that defendant's view of the evidence is supported by the majority of the witnesses.").

## 1.    DEFENDANT FORFEITED AND/OR WAIVED THE AFFIRMATIVE DEFENSE OF CONTRACTUAL LIMITATION PERIOD.

### a).    Defendant Forfeited the Affirmative Defense of Contractual Statute of Limitation by Failing to Assert the Affirmative Defense in its Answer or Any Amendment

In the District of Columbia, insurance policy contractual limitation period has been found to be an affirmative defense. Defendant in its answer did not assert contractual limitation period as an affirmative defense.

It is well-settled that a party's failure to plead an affirmative defense result in the waiver of that defense and its exclusion from the case. Kapche v. Holder, 677 F.3d 454, 465 (D.C. Cir. 2012) (quoting Harris v. Secretary, U.S. Dep't of Veterans Affairs, 126 F.3d 339, 343 (D.C. Cir. 1997)); see also Fed. R. Civ. P. 8(c); Wright & Miller, Federal Practice and Procedure § 1270 (3d ed. 2004). Rule 8(c) of the Federal Rules of Civil Procedure provides that "[I]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense". The Supreme Court has explained that "[o]rdinarily in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer or in an amendment thereto." Day v. McDonough, 547 U.S. 198, 202, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006).

In this Circuit, the court held that "Rule 8(c) means what it says: a party must first raise its affirmative defenses in a responsive pleading before it can raise them in a dispositive motion." Harris 126 F.3d at 345. Federal Rule of Civil Procedure 8(c), is unambiguous that "[i]n responding to a pleading, a party must affirmatively state

any avoidance or affirmative defense, including ... statute of limitations." See also Smith-Haynie v. District of Columbia, 155 F.3d 575, 578 (D.C. Cir. 1998) (clarifying that an affirmative defense may also be raised in a pre-answer motion under Rule 12(b) "when the facts that give rise to the defense are clear from the face of the complaint"). The Supreme Court has instructed that "[a]n affirmative defense, once forfeited, is 'exclu[ded] from the case,' " Wood v. Milyard, 566 U.S. 463, 470, 132 S.Ct. 1826, 182 L.Ed.2d 733 (2012).

In this case, it is undisputed that the defendant did not assert the affirmative defense of contractual limitation period in its answer to Plaintiff's amended complaint. Defendant by failing to assert the affirmative defense in its July 15, 2022, answer to the Amended Complaint, forfeited and/or waived the defense of contractual limitation period of one year. See Plaintiff's Exhibit 5: Defendant's Answer to Amended Complaint. The failure of the Defendant to assert the affirmative defense of contractual limitation period, was prejudicial to the Plaintiff. As a result of Defendant's delay in asserting the limitation period as a defense, defendant did not engage in discovery in the area of the affirmative defense. Defendant in its answer also did not indicate that it intended to assert statute of limitation as a defense. Had Defendant asserted the affirmative defense in its answer or even discovery, Plaintiff would have conducted extensive discovery on the issue and the Plaintiff's other claims in from 2015 that was still being adjusted many years after the incident. The Plaintiff has incurred attorney's fees and cost from the failure of Defendant to assert the affirmative defense in its answer or motion to dismiss.

Defendant was aware of the affirmative defense at the time of the filing of its answer and intentionally and deliberately decided not to assert the defense. Moreover, if Defendant had asserted the contractual limitation period as an affirmative defense in its answer, Plaintiff would have conducted discovery into the issue of the contractual limitation period of one (1) year and how and when the policy document was provided to the Plaintiff as well as the various changes to the contractual limitation periods since she obtained the policy. Additionally, Plaintiff would have conducted discovery into the actions of the defendant that would have resulted in the waiver of contractual limitation period. Plaintiff would have prepared her defense based on the letters attached as Exhibits 3 and Exhibits 4, as well as other communication and actions that would demonstrate that Defendants waived any defense of contractual limitation period.

The United States Supreme Court has stated that "[F]orfeiture is the failure to make the timely assertion of a right [;] waiver is the 'intentional relinquishment or abandonment of a known right.' " United States v. Olano, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). It is the Plaintiff's position that Defendant intelligently abandoned its contractual limitation period defense because it was aware of the contractual limitation period in the Policy it provided to Plaintiff through counsel on June 22, 2022, yet it failed to assert the defense in its answer filed in July 2023 or in its discovery responses. The failure to assert the defense was deliberate and tactical. See Harris, 126 F.3d at 343 n.2 ("[t]he failure to plead need not be intentional for the party to lose its right to raise the defense").

Additionally, there is no foreseeable reason that Defendant did not assert the affirmative defense in its answer despite knowledge of the date of loss and the date the complaint was filed. See Harris 126 F.3d at 343 n.2. (the court clarified that "[f]ailure to plead an affirmative defense under Rule 8(c) constitutes failure to make a timely assertion of the defense.").

The law is clear that the failure to plead need not be intentional for the party to lose its right to raise the defense. See Harris, 126 F.3d at 343 n.2. Notwithstanding, Defendant was aware of its affirmative defense when the Plaintiff filed its answer, answered interrogatories and the parties filed a joint proposed summary judgment briefing schedule, yet it did not move for leave from the court to amend its answer to the Amended Complaint, demonstrating the deliberate and intentional nature of its failure to assert the affirmative defense.

The Court should deny the motion for summary judgment because Defendant waived the affirmative defense of contractual limitation period.

### 2).    **Defendant Waived the Contractual Limitation Period of One Year**.

"Under modern law, a waiver of the affirmative defense of the statute of limitations means to abandon, renounce, repudiate, or surrender the privilege or right under such statute of limitations." 1 C. CORMAN, LIMITATION OF ACTIONS, at 175 (1991). An insurer can waive or be estopped from asserting contractual limitation period when it fails to assert a contractual limitation provision or the "company has conceded liability, and some discussion of a settlement offer has

occurred." _Bailey v. Greenberg_, 516 A.2d 934, 938-939 (D.C. 1986); _see Toomey v. Cammack,_ 345 A.2d 453, 455 n. 6 (D.C.1975).

In this case, Defendant conceded liability as evidenced by Exhibit 3 and suspended action on the claim as stated in Exhibit 4. Liability is conceded and the only issue was for the Plaintiff to provide the value of her personal property in the storage. Defendant suspended all actions on the claim until Plaintiff provides the requested itemized list of her personal property in possession and custody of 1800-Packout. Defendant by its letter lulled the Plaintiff to reasonably believe that her claim would not be barred by statute of limitation because of its letter suspending the claim until additional information as to the value of the personal property was provided. Plaintiff's Affidavit ¶¶ 9-11. Moreover, the cause of conduct of the parties, including the continued adjudication of her 2015 and 2018 claims without any issue regarding the contractual limitation period led Plaintiff to reasonably believe that limitation period was not an issue until formal denial letter, or the parties are unable to agree on the value of her personal property. More importantly, Defendant's claim that it issued payment for $6,069.51 to clean and repair Plaintiff's personal property affected by the loss is incorrect since Defendant requested 1-800-Packout to only store the properties, not clean it.

It is well settled that a defendant is estopped from asserting limitation as a bar if plaintiff were lull into inaction. The letter by the Defendant did not advise Plaintiff that she must bring her claim within one year but instead gave Plaintiff the understanding that Defendant would adjust her claim as it did previously and thus,

she gave them the benefit of the doubt of performance.  Defendant's acceptance of liability and suspension of action occurred on March 5, 2020, before the one-year contractual limitation period of April 20, 2020, and was not rescinded prior to the end of the limitation period.

The Court should deny Defendant's motion for summary judgment based on contractual limitation period because (1) Defendant waived the one-year contractual limitation period by failing to plead it as an affirmative defense in its answer or assert the affirmative defense prior to filing its motion for summary judgment; (2) Defendant suspended the adjustment of Plaintiff's claim without notifying her that the suspension did not waive the contractual limitation period; (3) Defendant lulled Plaintiff into missing the deadline for filing suit by its letter dated March 5, 2020 letter; (4) Plaintiff did not receive the payments stated in its letter dated November 1, 2019 which the Plaintiff was expecting; and (5) Plaintiff was prejudiced by Defendant's failure to timely assert the affirmative defense of contractual limitation period.

2.  **PLAINTIFF'S CLAIM FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING IS NOT SUBJECT TO THE CONTRACTUAL LIMITATION PERIOD**

All contracts including insurance policies "contain an implied duty of good faith and fair dealing, which means that `neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" _Hais v. Smith_, 547 A.2d 986, 987 (D.C.1988)). "Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party;

it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness." _Allworth v. Howard University_, 890 A.2d 194, 201-02 (D.C. 2006) (quoting Restatement (Second) of Contracts § 205, cmt. a (1981)). Bad faith requires more than mere negligence; examples include lack of diligence, purposeful failure to perform, and interference with the other party's ability to perform. See Allworth, 890 A.2d at 202.

To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege either bad faith or conduct that is arbitrary and capricious. _See Alden v. Georgetown Univ_., 734 A.2d 1103, 1112 n. 11 (D.C.1999).

In this case Plaintiff's cause of action for breach of implied covenant of good faith and fair dealing is not subject to the one-year contractual limitation period because the bad faith actions that were arbitrary and capricious occurred during and after the contractual limitation period in the policy provided by the Defendant. Defendant has not stated in its motion for summary judgment that the contractual statute of limitation is applicable to Plaintiff's claim for breach of implied covenant of good faith and fair dealing, neither has Defendant advanced any argument regarding any other grounds for summary judgment on Plaintiff's claim for breach of implied covenant of good faith and fair dealing. Therefore, Defendant concedes that Plaintiff's claim for breach of implied covenant of good faith and fair dealing is proper.

The Court should deny Defendant's motion for summary judgment on Plaintiff's claim for breach of implied covenant of good faith and fair dealings.

### 3.  PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT IS PROPER AND SUMMARY JUDGMETN SHOULD NOT BE GRANTED

Unjust enrichment occurs when: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp., 944 A.2d 1055, 1076 (D.C. 2008). Therefore, "a claim for unjust enrichment accrues only when the enrichment actually becomes unlawful, i.e., where there has been a wrongful act giving rise to a duty of restitution." News World Communications, Inc. v. Thompsen, 878 A.2d 1218, 1225 (D.C. 2003)("[T]he statute of limitations begins to run when the plaintiff's last service has been rendered and compensation has been wrongfully withheld."); see also Bregman v. Perles, 747 F.3d 873 (D.C. Cir. 2014).

Although the general rule is that quasi-contractual claims, such as unjust enrichment, cannot arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests, a court may allow unjust enrichment claims when "there is evidence of fraud or bad faith, there has been a breach of contract or mutual recission of the contract, when recission is warranted, or when the express contract does not fully address a subject matter. While there is an actual written insurance policy providing coverage on Plaintiff's real and personal properties, Plaintiff's claim for unjust enrichment and right of recovery is based on the premiums that she paid to cover her loss. However, despite payment of her premium, Defendant did not cover her loss as required due to bad faith. Defendant cannot unjustly retain Plaintiff's premium knowing that it did not intend to

cover damages to her personal property. Plaintiff enriched Defendant by paying her premium. The enrichment became unjust when Defendant through bad faith damaged Plaintiff's persona property by storing them without cleaning and refused Plaintiff's request for payment of her damaged personal property. The claim of unjust enrichment asserted by Plaintiff is based on equitable principles, and it is not contingent upon the niceties of the law of contracts and is not based on breach of contract.

The Court should deny the summary judgment on the claim for unjust enrichment.

## <u>CONCLUSION</u>

The Court should deny Defendant's motion for summary judgment on the Amended Complaint based on the foregoing and any other reasons that may appear to the Court.

Respectfully submitted,
THE IWEANOGES' FIRM, PC

By:   /s/CharlesCIweanoge/s/
        Charles C. Iweanoge
        **Iweanoge Law Center**
        1026 Monroe Street, NE
        Washington, D.C. 20017
        Phone: (202) 347 – 7026
        Fax: (202) 347 – 7108
        Email: cci@iweanogesfirm.com

## CERTIFICATE OF FILING AND SERVICE

I, CERTIFY that that a true and correct copy of the foregoing was electronically filed this 28th day of November 2023 and Defendant's Counsel would be served by the Court's e-serve system.

_____/s/CharlesCIweanoge/s/___
Charles C. Iweanoge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **PHANTA U. DARAMY-ANDREWS** | \* |
| **Plaintiff** | \* |
| | \* |
| **v.** | **\*CASE #: 1:22-CV-01694-TJK** |
| | \* |
| **LIBERTY INSURANCE CORPORATION** | \* |
| **Defendant** | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN DISPUTE

1.      Plaintiff admits the allegation in paragraph 1 of Defendant's Statement of Material Facts not in dispute.

2.      Plaintiff admits the allegation in paragraph 2 of Defendant's Statement of Material Facts not in dispute but further states that Plaintiff did not receive a copy of the LibertyGuard Deluxe Homeowners Policy prior to June 2, 2022. *Plaintiff's Affidavit ¶2; See Exhibit 1: Liberty Mutual Insurance Policy Declarations*.

3.      Plaintiff admits that damage was done to the basement and personal properties in the basement, but the damages resulted from feces and water. Plaintiff's Affidavit ¶4. Defendant sent 1-800-Packout to remove all the personal property in Plaintiff's basement and store them without cleaning despite being contaminated with feces and the lack of cleaning resulted in molding of the items. *Plaintiff's Affidavit ¶¶4-6. Exhibit 2: Email dated 5/29/2019, Inventory Listing and Pictures.*

4.      Plaintiff disputes the allegation in paragraph 4 of Defendant's Statement of Material Facts not in dispute to the extent that it claims that $6,069.51 was paid for

the cleaning and repair of Plaintiff's personal property affected by the event. *Plaintiff's Affidavit ¶¶4-6. Exhibit 2: Email dated 5/29/2019, Inventory Listing and Pictures.* Plaintiff further assert that supplemental estimate was perform in after Plaintiff's deposition on November 1, 2019, that increased the amount but did not address the personal property loss already provided to Defendant by 1-800-Packout. *See Exhibit 3: Letter dated 11/1/2019.* Plaintiff did not receive any payment for her personal property damaged by feces and declared total loss by 1-800-Packout. *Plaintiff's Affidavit ¶¶12-13; See Defendant's Exhibit 1 at pg. 49, 51-53.*

5.      Plaintiff disputes the allegation in paragraph 5 of Defendant's Statement of Material Facts not in dispute because there was no determination done as to Plaintiff's personal household properties as is evident from Defendant's letter dated March 5, 2020. *See Plaintiff's Exhibit 3: Letter dated 11/1/2019; Plaintiff's Exhibit 4: Letter dated 3/5/2020.*

6.       Plaintiff admits the allegation in paragraph 6 of Defendant's Statement of Material Facts not in dispute.

7.      Plaintiff disputes the allegation in paragraph 7 because Defendant that provisions is inapplicable under the facts and circumstances of this case Defendant waived the defense when it failed to assert the affirmative defense of contractual limitation period in its answer to the amended complaint, Defendant accepted liability, Defendant advised Plaintiff that it would suspend the investigation of the claim until it received additional records, accepted liability and was negotiating resolution of the personal property claim. *See Plaintiff's Exhibit 5: Defendant's Answer*

*to Complaint (ECF 9); Plaintiff's Exhibit 6: Defendant's Answer to Interrogatories; Plaintiff's Exhibit 3: Letter dated 11/01/2019; Plaintiff's Exhibit 4: Latter dated 3/5/2020.*

8.    Plaintiff disputes the allegation in paragraph 8 of Defendant's Statement of Material Facts not in dispute because liability was already accepted, the value of the personal properties were being determined, and Plaintiff relied on the letter dated March 5, 2020. *Plaintiff's Exhibit 4: Letter dated 3/5/2020; Plaintiff's Affidavit ¶¶9-11.*

Also, Defendant waived the contractual statute of limitation by its failure to assert the defense in its answer to the complaint. *Plaintiff's Exhibit 5: Defendant's Answer to Complaint (ECF 9)*. I-800-Packout removed Plaintiff's personal properties in the basement for inventory, itemization and storage by on the instruction of the Defendant, which resulted in the items molding from uncleaned feces.

9.    Plaintiff admits that she was represented during her examination under oath and the Defendant also dealt directly with the Plaintiff as demonstrated in Plaintiff's Exhibits 3 and 4.

Respectfully submitted,
THE IWEANOGES' FIRM, PC

By:   /s/CharlesCIweanoge/s/
       Charles C. Iweanoge
       **Iweanoge Law Center**
       1026 Monroe Street, NE
       Washington, D.C. 20017
       Phone: (202) 347 – 7026
       Fax: (202) 347 – 7108
       Email: cci@iweanogesfirm.com

## CERTIFICATE OF FILING AND SERVICE

**I, CERTIFY** that that a true and correct copy of the foregoing was electronically filed this 28th day of November 2023 and Defendant's Counsel would be served by the Court's e-serve system.

_____/s/CharlesCIweanoge/s/___
Charles C. Iweanoge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **PHANTA U. DARAMY-ANDREWS** | * |
| **Plaintiff** | * |
| | * |
| **v.** | ***CASE #: 1:22-CV-01694-TJK** |
| | * |
| **LIBERTY INSURANCE CORPORATION** | * |
| **Defendant** | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**<u>AFFIDAVIT OF PHANTA U. DARAMY-ANDREWS IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO SUMMMARY JUDGMENT</u>**

I, Phanta Daramy-Andrews, an adult, affirm under penalty of perjury as allowed by 28 U.S.C.§1746(2) that the following statements are based on personal knowledge and are true to the best of my knowledge, belief and understanding:

1.      I am the owner of the property known as 707 49th Place, NE, Washington, DC, 20019. I purchased insurance coverage from the Defendant, Liberty Insurance Corporation with Policy Number H37-238-660209-40 8 4.

2.      My property has been insured with Liberty Insurance Company from about 2012 and has been renewed annually. The insurance policy for the relevant period was renewed effective January 26, 2019, with an expiration date of January 26, 2020. At the time of the insurance renewal, I only received the declaration page of the insurance policy without the LibertyGuard Deluxe Homeowners Policy.

3.      In 2019, Liberty Insurance was still adjusting and negotiating my personal property claims that occurred in 2015 and 2018.

4.      On or about April 21, 2019, the basement of the property flooded due to pipe break, which caused extensive feces damages to the basement, and most

of my personal properties in the basement.

5.    Liberty contacted 1-800-Packout to come to my residence and removed my personal properties damaged as a result.

6.    I-800-Packout declared pictures as total loss and stored the other items in boxes without cleaning based on the instruction of the insurance company.

7.    When I filed the claim, Defendant commenced insurance fraud investigation and hired an attorney to depose the Plaintiff. After my deposition on October 19, 2019, Defendant accepted liability for the loss and issued a letter dated November 1, 2019, addressing the issue of supplemental damages.

8.    I requested for payment of my personal property declared total loss by 1-800-Packout and Defendant requested that I itemize all my personal property in the possession and custody of 1-800-Packout. I went to the storage of 1-800-Packout on at least two occasions to itemize my personal property stored at that location, until COVID-19 Pandemic and closure of most businesses happened.

9.    On March 5, 2020, Defendant sent a letter to me advising that its investigation was being suspended and will reopen the claim when I submit the signed proof of loss.

10.    The letter did not advise me that my claim has been denied, neither did it inform me that despite the suspension that I must file a complaint prior to April 20, 2020 if I do not submit complete inventory list and signed proof of claim by that date or notify me that the insurance policy for which I only received the declaration page at the time of renewal provided that I must file a claim in court

within I year of the date of loss even though the claim has been accepted.

11.     My communication with Defendant led me to believe in good faith that my claim has been accepted and that the remaining issue was the value of my personal properties declared total loss after itemization which was delayed due to covid closure and the hazardous conditions of the stored personal properties.

12.     I did not receive any checks from the Defendant for payment of my personal property or cleaning of the basement.

13.     I have not been paid for my damaged personal property despite Liberty Insurance acknowledging personal property loss.

### AFFIRMATION

I SOLEMNLY AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE MATTERS AND FACTS CONTAINED IN THE FOREGOING ARE BASED ON PERSONAL KNOWLEDGE AND ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION, AND BELIEF.

_____
Phanta Daramy-Andrews

Page **3** of **3**

# Exhibit 1

*000001*
Liberty Mutual Office
PO Box 970
Mishawaka IN 46546


**Liberty Mutual**
INSURANCE

Phanta U Daramy-Andrews
707 49th Pl Ne
Washington DC 20019-4805

## Thank you for insuring with Liberty Mutual.

This package contains your updated policy declarations and documents that reflect changes made to your policy.

· Change Name PHANTA U
  DARAMY-ANDREWS

Please look over this information and keep it with your insurance documents.

Be sure to download our mobile app or visit LibertyMutual.com/register and check out our eService options. eService makes it easy to get information and manage your Liberty Mutual account online whenever you like.

If you have any questions about your coverage, available discounts or product offerings, please call us at 1-301-262-5242/ 1-866-941-4012.

Sincerely,

Your Liberty Mutual Service Team

**CONTACT US**

Questions About
Your Policy
**By Phone**
1-301-262-5242
1-866-941-4012

**Sign Up for eService**
- Pay your bill
- Go paperless
- View your policy
- File or view a claim
Manage your policy 24/7 at
LibertyMutual.com/
register

**Visit Us Online**
LibertyMutual.com

**To Report a Claim**
**By Phone**
1-800-2CLAIMS
(1-800-225-2467)

**Online**
LibertyMutual.com/Claims

**Lost your bill and need to make a payment?  Here is the address:**
Liberty Mutual Insurance
PO Box 1604
NEW YORK, NY 10116

4000000AH37238660209400000000

CONTINUE TO THE NEXT PAGE
FOR A GUIDE TO YOUR
HOME ENDORSEMENT
PACKET

THIS IS NOT YOUR HOME INSURANCE BILL. YOU WILL BE BILLED SEPARATELY.



## A GUIDE TO YOUR HOME ENDORSEMENT PACKET

| PAGE | SECTION |
|------|---------|
| 1 | **Policy Declarations**<br>Includes important information about your policy, including insurance information as well as your discounts and benefits. |
| 1 | **Coverage Information**<br>Includes important coverage information. Please review this section in detail to ensure you are fully covered. Contact us with any questions. |
| 5 | **Important Notices & Policy Forms**<br>This section includes any notices and policy forms that may change your coverages. |

**Named Insured:**
1. Phanta U
Daramy-Andrews

**Policy Number:**
H37-238-660209-40 9 4

**Policy Period:**
01/26/2019 to 01/26/2020

**Mailing Address:**
707 49th Pl Ne
Washington DC
20019-4805

**Affinity:**
Community Options, Inc.

THIS IS NOT YOUR HOME INSURANCE BILL. YOU WILL BE BILLED SEPARATELY.



| Questions about your Policy? | Policy Number: | Report a Claim: |
|---|---|---|
| Call 1-301-262-5242 or | H37-238-660209-40 9 4 | 1-800-2CLAIMS or |
| 1-866-941-4012 | | LibertyMutual.com/Claims |



**ACTION REQUIRED:**
PLEASE REVIEW AND KEEP FOR YOUR RECORDS.

## Policy Declarations
## Total 12 Month Premium:  $1,385.00

Reason for your new declarations page: Changes made to your policy.
Please refer to the **Change Detail** section on page 3 for more information.
**Effective date of this change: 03/14/2019**

Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable.

Through your affiliation with the Community Options, Inc. your policy includes special group savings on your home insurance.

### Insurance Information

| | | | |
|---|---|---|---|
| Named Insured: | Phanta U Daramy-Andrews | Policy Number: | H37-238-660209-40 9 4 |
| Mailing Address: | 707 49th Pl Ne Washington DC 20019-4805 | Policy Period: | 01/26/2019-01/26/2020 12:01 a.m. standard time at the  address of the Named Insured at Insured Location |
| Insured Location: | Same as Mailing address above | Declarations Effective: | 03/14/2019 |

---

### DISCOUNTS AND BENEFITS SECTION

Your discounts and benefits have been applied to your total policy premium.

- Inflation Protection Discount
- Claims Free Discount
- New Roof Discount
- Basic Home Safety
- New or Renovated Home Discount
- Early Shopper Discount
- Multi Policy Discount - Auto

## Coverage Information

### Standard Policy with HomeProtector Plus ™

| SECTION I COVERAGES | | LIMITS | PREMIUM |
|---|---|---|---|
| A. Dwelling with Expanded Replacement Cost | $ | 174,800 | |
| B. Other Structures on Insured Location | $ | 17,480 | |
| C. Personal Property with Replacement Cost | $ | 131,100 | |
| D. Loss of Use of Insured Location | Actual Loss Sustained | | |

---

FMHO 3047 05 16      **THIS IS NOT YOUR HOME INSURANCE BILL.** YOU WILL BE BILLED SEPARATELY.      Page 1 of 4



**Want to Add a Coverage?**
Call 1-301-262-5242 or
1-866-941-4012 to talk to your
agent about the availability of
this coverage and whether it
meets your needs.

**Policy Number:**
H37-238-660209-40 9 4

**Report a Claim:**
1-800-2CLAIMS or
LibertyMutual.com/Claims

## Coverage Information continued

| SECTION II COVERAGES | | LIMITS | PREMIUM |
|---|---|---|---|
| E. Personal Liability (each occurrence) | $ | 500,000 | |
| F. Medical Payments to Others (each person) | $ | 5,000 | |

### POLICY DEDUCTIBLES

Losses covered under Section I are subject to a deductible of : $1,000

| Total Standard Policy with HomeProtector Plus ℠ | $ | 1,374 |
|---|---|---|

| ADDITIONAL COVERAGES | DEDUCTIBLE | | LIMITS | | PREMIUM |
|---|---|---|---|---|---|
| Credit Card, Fund Transfer, Forgery | | $ | 1,000 | $ | 0 |
| Escape of Water (Building/Spec Contents) | $   1,000 | $ | 10,000 | | INCL |
| Coverage E & F increased limit | | | | $ | 11 |
| **Total Additional Coverages** | | | | $ | **11** |

**Total 12 Month Policy Premium:** $1,385.00

### Additional Coverages and Products Available*

We've reviewed your policy and have identified additional optional coverages and products that can add valuable protection. Talk to your agent about purchasing the following coverages and products and whether they meet your needs.

- **Home Computer and Smartphone:** If your smartphone or other devices are not insured, repairing or replacing them can be expensive. Did you know you can insure multiple devices for up to $10,000 with a deductible of $50.00?

- **Identity Fraud Expense:** A stolen identity can be scary and expensive. We'll provide counseling, and pay up to $30,000 for expenses such as lost wages and attorney fees incurred to recover your identity.

*These optional coverages are subject to policy provisions, limitations, and exclusions. Daily limits or a deductible may apply. For a complete explanation, please consult your agent today.

**App.120**

**Questions about your Policy?**
Call 1-301-262-5242 or
1-866-941-4012

**Policy Number:**
H37-238-660209-40 9 4

**Report a Claim:**
1-800-2CLAIMS or
LibertyMutual.com/Claims



## Mortgage Information

Mortgagee 1:
JPMORGAN CHASE
BANK, N.A. ISAOA
ITS SUCCESSORS
AND/OR ASSIGNS
LOAN NO. 4503578980
PO Box 47020
Atlanta, GA 30362

Mortgagee 2:
WASHINGTON DC, DHCD
C/O AMERINAT
LOAN NO. 100054241
PO Box 123
Downey, CA 90241-0123

## Change Detail

Changes made to your policy for: Policy Change 2
• Change Name PHANTA U DARAMY-ANDREWS

There is no premium increase for above changes.

## Policy Forms and Endorsements: The following forms and endorsements are applicable to your policy

LibertyGuard® Deluxe Homeowner Policy
(HO 00 03 04 91)

Home Protector Plus (FMHO-1183)

Credit Card, Fund Transfer, Forgery
(HO 04 53 04 91)

Protective Devices (FMHO 4172 1014)

Amendmt Pol Definitions (FMHO-2934 7/04)

Amendatory Mold End (FMHO 3370 1112)

Seepage Exclusion Endorsement (FMHO 3391 1112)

Inflation Protection (FMHO-2835)

No SecII/Limit I-Daycare (HO 04 96 04 91)

Lead Poisoning Exclusion (FMHO-976 05/92)

Fuel Storage Exclusion (FMHO-1097 1/97)

Special Provisions (FMHO6100DC 0217)

Escape of Water (Building/Spec Contents)
(FMHO 6500 1115)

## Important Messages

**Flood Insurance:** Your Homeowners policy **does not** provide coverage for damage caused by flood, even if the flood is caused by a storm surge. Liberty Mutual can help you obtain this coverage through the Federal Emergency Management Agency (FEMA) If your community participates in the National Flood Insurance Program. Please call your representative for more information.

**A notice for our customers:** Liberty Mutual may consider your claims and loss history when determining whether to renew your policy.

 **Questions about your Policy?**
Call 1-301-262-5242 or
1-866-941-4012

**Policy Number:**
H37-238-660209-40 9 4

**Report a Claim:**
1-800-2CLAIMS or
LibertyMutual.com/Claims



LibertyGuard® Deluxe Homeowners Policy Declarations provided and underwritten by Liberty Insurance
Corporation (a stock insurance company), Boston, MA.

**David H. Long**
President

**Mark C. Touhey**
Secretary

This policy, including endorsements listed above,
is countersigned by:

**Hamid Mirza**
Authorized Representative

**App.122**



## Important Information

The enclosed endorsement updates your policy and should be attached to it.

The premium adjustment, if any, for this change will be sent to you separately within a few days.

- Charges will be billed, or, if your account is being paid in installments, will be spread over the remaining installments.
- A check will be sent separately for credits on paid up accounts. On open balance accounts, credits will be spread over the remaining installments or applied to unpaid bills.

If you have any questions, please call or write your Liberty service office.

AUTO 1908 R1                    Liberty Mutual Insurance Group                    Page 1 of 1





## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ESCAPE OF WATER FROM A SUMP, SUMP PUMP OR DRAIN ON THE RESIDENCE PREMISES (BUILDING AND SPECIFIED CONTENTS)

### DEFINITIONS

The following definition is added:

"Household equipment and appliances" means only clothing washers and dryers, cooking ovens and ranges, dishwashers, permanently installed heating units, installed air conditioning units, installed carpeting and refrigeration units, not including contents;

### COVERED PROPERTY

We cover the dwelling on the "residence premises" and "household equipment and appliances". Covered property does not include materials and supplies or structures described by Coverage B — Other Structures.

### EXTENSION OF COVERAGE

For an additional premium, we cover accidental direct physical loss to property described above caused solely by water that escapes, overflows or discharges from a sump, sump pump, sump pump well or a drain or related plumbing appliance located on the "residence premises".

To the extent coverage is provided by this EXTENSION OF COVERAGE and up to the LIMIT OF LIABILITY described below, Section I — Exclusions, Water Damage, **1.**c.(4) and **1.**c.(5) do not apply. (This is Exclusions **3.**d. and **3.**e. in forms **HO 00 04** and **HO 00 06**.)

For purposes of coverage under this EXTENSION OF COVERAGE, a drain or related plumbing appliance does not include a roof drain, gutter, downspout or similar fixture or equipment.

### EXCLUSIONS

### THIS IS NOT FLOOD INSURANCE.

There shall be no coverage under this EXTENSION OF COVERAGE if water excluded under Section I— Exclusions, Water Damage, **1.**c.(1), **1.**c.(2) and **1.**c.(3) (This is Exclusions **3.**a., **3.**b. and **3.**c. in forms **HO 00 04** and **HO 00 06**.):

1. is concurrent with, in sequence with, or causes or contributes to the escape of water as described in this EXTENSION OF COVERAGE; and

2. damages property covered under Section I — Property Coverages by other than solely by escape, overflow or discharge from a sump, sump pump, sump pump well or a drain or related plumbing appliance on the "residence premises".

### LIMIT OF LIABILITY

We will pay no more than the amount shown in the Declarations for this EXTENSION OF COVERAGE.

### DEDUCTIBLE

We will pay only that part of the loss that exceeds $1,000. No other deductible applies.


All other provisions of this policy apply.

## ANSWERS TO THE MOST COMMON
## HOMEOWNER CLAIMS QUESTIONS

Coping with damage to your home and/or personal items can be difficult and disruptive. During this stressful time, you can count on Liberty Mutual Insurance to make the claims process as easy as possible.

**These FAQs will provide you with valuable information.**

### How can I find out my claim status?

**A** You can easily track your claim with your online account at **libertymutual.com/propertyclaim**. You can also sign up to receive updates via text and email.

### How do I know if my claim is covered by my policy?

**A** Your Claims Representative will review your policy with you and help you understand the coverage available for damages to your home and personal items.

### Is there a deductible?

**A** Your policy has a deductible, but the amount can vary depending on your policy and type of loss. Your deductible is the amount you pay out-of-pocket toward repair or replacement costs, which, in most cases, you'll pay directly to your contractor.

### How will you evaluate damages?

**A** If possible, we'll complete a review of your home and personal items over the phone, or via video chat with our convenient **RealTime Review™**. In some instances, we may need to come to your home to complete a thorough review of damages.

### What if I also have damage to my personal property?

**A** Your Claims Representative will ask you to put together a list of damaged personal items. Having photos, receipts, or manuals for the items will help us estimate the cost to repair or replace them. You can easily submit this information at **libertymutual.com/propertyclaim**. Or if you have the **Home Gallery® app**, you can just export your document file and submit via email or online.

We can also assist you in replacing certain items. For items that are damaged but only need to be cleaned, we have a restoration and/or dry cleaning company that can complete that cleaning for you. This may require the restoration company to pack up and move your contents to their facility for cleaning. Please don't dispose of any personal property items until we've authorized the disposal of the contents.



**App.127**

## How will I be paid?

**A**



Actual Cash Value

$$\underset{\substack{\text{Your Payment}\\\text{Amount}}}{\text{A}} = \underset{\substack{\text{Replacement}\\\text{Cost Value}}}{\text{B}} - \underset{\text{Depreciation*}}{\text{C}} - \underset{\text{Deductible}}{\text{E}}$$

A. **Your Payment Amount** – the amount issued in your first check
B. **Replacement Cost Value** – what you would pay to repair or replace the item at today's cost
C. **Depreciation*** – reduction in property value over time due to age, use, and condition of item
   **Actual Cash Value** – what you would pay to repair or replace the item at today's cost minus depreciation
E. **Deductible** – amount you pay out-of-pocket toward repair costs

View our **Understanding Your Property Claim Payment** document to walk through a couple of examples using realistic scenarios and the equation above.

*Some depreciation may be recoverable based on the loss settlement provisions in your policy

## How do I request Recoverable Depreciation?

**A** Once the repairs are completed or the items have been replaced, you'll need to submit proof of purchase or repairs (receipts or invoices). This can be uploaded to your online account. We'll then review and send you a check for the applicable recoverable depreciation, or the amount of depreciation reimbursable based on our estimate of repairs and/or replacement costs.

## What if I have a mortgage on my home?

**A** If you experience damage to your home, please notify your mortgage company as soon as possible. If you have a mortgage loan, both you and your lender have a legal interest in your property and have money at risk if your home is not repaired. If you have a mortgage on your home, we will likely put both your name and the name of your lender on the check to protect the financial interests of both parties.

**Some important things to remember:**

• If your mortgage company is named on the claims check, they will need to endorse it by signing the back of the check
• Contact your mortgage company about releasing the funds to you for repairs
• Continue making mortgage payments as usual
• If your mortgage company has changed or the name we have in our records isn't accurate, please contact Liberty Mutual at **800-2-CLAIMS (800-225-2467)**

## Can you help me find a contractor?

**A** Yes. Liberty Mutual likely has relationships with experienced contractors in your area. Your Claims Representative can provide a recommendation and the contractor's contact information. If you prefer to find a contractor on your own, be sure to read through our **Need a Contractor? We've Got You Covered** guide.



### What if I can't live in my home until repairs are completed?

**A** If your home is not livable during repairs, your Claims Representative can help you find temporary housing and explain how we might cover additional living expenses.

### What happens if I begin the repairs and then find additional damage?

**A** You or your contractor should contact your Claims Representative immediately and hold off on making any new repairs until you speak with them. Depending on the nature of the damage, we may need to reinspect your home first. If we find the additional damage is related to your claim, we'll update the repair estimate.

### I'm thinking of doing additional remodeling while my home is being repaired. How does this impact my claim?

**A** Your policy provides payment for the repair or replacement of damaged property with materials or items of similar kind. We can't pay for the increased cost or any additional living expenses incurred as a result of any remodeling or upgrades, which may result in extended repair time. If you choose to remodel or upgrade your home, please coordinate with your contractor directly at your own expense.

### What if my loss was caused by a natural disaster?

**A** In addition to your Claims Representative, who will help you every step of the way, here are some resources to help during this difficult time:

- **Federal Emergency Management Agency:** 800-621-FEMA (3362) or fema.gov
- **American Red Cross:** 800-RED-CROSS (733-2767) or redcross.org
- **U.S. Small Business Administration:** 800-659-2955 or sba.gov
- **Insurance Institute for Business & Home Safety:** disastersafety.org

**Tap into our online tools to make your claim easier.**

- Access your online account at **libertymutual.com/propertyclaim** to track your claim and upload claim-related documents and photos
- Email documents directly to your Claims Representative
- Download our **Home Gallery®** app from the App Store or Google Play to quickly and easily create an inventory of your belongings

 

This document is not intended to be a complete summary of Liberty Mutual's claims handling practices and standards, nor does it address all claims scenarios. The application of any information within this document will depend on specific facts, circumstances, policy language, and applicable law. Any failure to quote or refer to any specific policy provision in the body of this letter or otherwise is not a waiver of those provisions.
Not all services are available in all geographic locations. You are in no way obligated to use our Water Mitigation Program Vendors.
Android, Google Play, and the Google Play logo are trademarks of Google Inc. Apple and the Apple logo are trademarks of Apple Inc., registered in the U.S. and other countries. App Store is a service mark of Apple Inc.
©2017 Liberty Mutual Insurance



LMPPHOME3 2017/02 V1

**App.129**

The claim process can be confusing at times. But it doesn't have to be. This detailed guide simplifies each step, so you can get back to normal as soon as possible.

**We're always here for you**

You can easily track your claim's progress anytime with your online account at **libertymutual.com/propertyclaim**, or by signing up to receive text and email updates. Your Claims Representative is also available every step of the way to answer any questions.

## 4 STAGES OF THE CLAIM PROCESS

 Creating Your Claim    Reviewing Damage    Receiving Your Payment    Completing Your Claim

Creating Your Claim



### What we're doing

- We'll review your policy and coverage together and will determine if you're covered for damages to your home and personal items.
- We'll help you choose an emergency service vendor¹ if you need assistance with protecting your home from further damage.
- We'll help you find temporary housing if your home is unlivable.
- We can send you a copy of *Answers to the Most Common Homeowner Claims Questions*.

### What we may need from you

- Take photos or videos to document damages to your home and personal items. Please send us this documentation via your online account or email. If you have the **Home Gallery®** app, you can export your home inventory file and submit online or via email.
- Have water damage? Consider using a Liberty Mutual Program Vendor. Our Water Mitigation Unit will coordinate and monitor the process to help get you back to normal faster.¹ We can also send you a copy of our *Have Water Damage? Benefits of Our Vendor Program*, which outlines the main benefits of using our vendors.



### Reviewing Damage

**What we're doing**



- We may need to come to your home to complete a thorough review of damages. If possible, we'll complete a review of your home and personal items over the phone, or via video chat with our convenient **RealTime Review™**.

- We'll estimate the costs to repair the damages to your home. To make sure you understand the estimate, we'll send you a copy of *Understanding Your Property Claim Estimate*.

- We'll estimate the cost to repair or replace any personal items that were damaged. We'll also guide you through repair and replacement options.

**What we may need from you**

- Send us a detailed list of any personal items that were damaged, including the make, model, age, and condition of each item. Photos, receipts, or manuals for damaged items are also helpful.

- Send us any other important documentation, including estimates from contractors, reports from experts such as plumbers, or receipts for any emergency repairs. See below for the online tools that can help you submit this information.

 **Tap into our online tools to make your claim easier.**

- Access your online account at **libertymutual.com/propertyclaim** to track your claim and upload claim-related documents and photos.

- Email documents directly to your Claims Representative.

- Download our **Home Gallery® app** from the App Store or Google Play to quickly and easily create an inventory of your belongings.

 

 **Save time with RealTime Review™.**

With this video chat feature, your Claims Representative can collect information about your damage in greater detail and settle your claim more quickly.

Android, Google Play, and the Google Play logo are trademarks of Google Inc. Apple and the Apple logo are trademarks of Apple Inc., registered in the U.S. and other countries. App Store is a service mark of Apple Inc.



LIBERTY STANDS WITH YOU™

Page 2 of 4

*000001*
Liberty Mutual Office
2200 Defense Hwy Ste 101
Crofton MD 21114



Phanta Daramy
707 49th Pl Ne
Washington DC 20019-4805

40000011H37238660209400000000



**CONTACT US**

**Questions About
Your Policy**

**By Phone**
1-301-262-5242
1-866-941-4012
Mon - Fri 8AM-10PM EST
Sat 8AM-8PM EST
Sun 11AM-5PM EST

**Liberty Mutual Office**
2200 Defense Hwy Ste 101
Crofton MD 21114

**Visit Us Online**
LibertyMutual.com

**To Report a Claim**

**By Phone**
1-800-2CLAIMS
(1-800-225-2467)

**Online**
LibertyMutual.com/Claims

**Sign Up for eService**

- Pay your bill
- Go paperless
- View your policy
- File or view a claim
Manage your policy 24/7 at
LibertyMutual.com/
register

# Thank you for being a Liberty Mutual Home Customer since 2012!

This package contains your homeowners renewal. Please look over this information and keep it with your important documents. Also, you are receiving special group savings through your affiliation with the SunTrust Bank.

Remember, you can download our mobile app or visit LibertyMutual.com/register 24 hours a day to get information and manage your Liberty Mutual account.

If you have any questions about your coverage, available discounts or product offerings, please call us at 1-301-262-5242/ 1-866-941-4012.

Sincerely,

Your Liberty Mutual Service Team

**CONTINUE TO THE NEXT PAGE**
FOR A GUIDE TO YOUR
HOME RENEWAL PACKET

THIS IS NOT YOUR HOME INSURANCE BILL. YOU WILL BE BILLED SEPARATELY.



---

## A GUIDE TO YOUR HOME RENEWAL PACKET

| PAGE | SECTION |
|---|---|
| 1 | **Policy Declarations**<br>Includes important information about your policy, including insurance information as well as your discounts and benefits. |
| 1 | **Coverage Information**<br>Includes important coverage information. Please review this section in detail to ensure you are fully covered. Contact us with any questions. |
| 4-19 | **Important Notices & Policy Forms**<br>This section includes any notices and policy forms that may change your coverages. |



**Named Insured:**
1. Phanta Daramy

**Policy Number:**
H37-238-660209-40 8 4

**Policy Period:**
01/26/2018 to 01/26/2019

**Mailing Address:**
707 49th Pl Ne
Washington DC
20019-4805

**Affinity:**
SunTrust Bank

THIS IS NOT YOUR HOME INSURANCE BILL. YOU WILL BE BILLED SEPARATELY.

**App.134**



**Questions about your Policy?**
Call 1-301-262-5242 or
1-866-941-4012

**Policy Number:**
H37-238-660209-40 8 4

**Report a Claim:**
1-800-2CLAIMS or
LibertyMutual.com/Claims





**ACTION REQUIRED:**
PLEASE REVIEW AND KEEP FOR YOUR RECORDS.

## Policy Declarations
## Total 12 Month Premium: $1,369.00

Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable.

Through your affiliation with the SunTrust Bank your policy includes special group savings on your home insurance.

### Insurance Information

| | | | |
|---|---|---|---|
| Named Insured: | Phanta Daramy | Policy Number: | H37-238-660209-40 8 4 |
| Mailing Address: | 707 49th Pl Ne<br>Washington DC 20019-4805 | Policy Period: | 01/26/2018-01/26/2019 12:01 a.m. standard time at the address of the Named Insured at Insured Location. |

Insured Location: Same as Mailing address above    Declarations Effective: 01/26/2018

---

### DISCOUNTS AND BENEFITS SECTION

Your discounts and benefits have been applied to your total policy premium.

- Inflation Protection Discount
- Claims Free Discount
- New Roof Discount
- Basic Home Safety
- New or Renovated Home Discount
- Early Shopper Discount

---

## Coverage Information

### Standard Policy with HomeProtector Plus ™

| SECTION I COVERAGES | LIMITS | PREMIUM |
|---|---|---|
| A. Dwelling with Expanded Replacement Cost | $ 169,200 | |
| B. Other Structures on Insured Location | $ 16,920 | |
| C. Personal Property with Replacement Cost | $ 126,900 | |
| D. Loss of Use of Insured Location | Actual Loss Sustained | |

| SECTION II COVERAGES | LIMITS | PREMIUM |
|---|---|---|
| E. Personal Liability (each occurrence) | $ 500,000 | |
| F. Medical Payments to Others (each person) | $ 5,000 | |

---



**Want to Add a Coverage?**
Call 1-301-262-5242 or
1-866-941-4012 to talk to your
agent about the availability of
this coverage and whether it
meets your needs.

**Policy Number:**
H37-238-660209-40 8 4

**Report a Claim:**
1-800-2CLAIMS or
LibertyMutual.com/Claims



## Coverage Information continued

### POLICY DEDUCTIBLES

Losses covered under Section I are subject to a deductible of : $1,000

| Total Standard Policy with HomeProtector Plus ™ | | | $ | 1,358 |
|---|---|---|---|---|

| ADDITIONAL COVERAGES | DEDUCTIBLE | LIMITS | PREMIUM |
|---|---|---|---|
| Credit Card, Fund Transfer, Forgery | $ | 1,000 $ | 0 |
| Escape of Water (Building/Spec Contents) | $ 1,000 $ | 10,000 | INCL |
| Coverage E & F increased limit | | $ | 11 |
| **Total Additional Coverages** | | **$** | **11** |

**Total 12 Month Policy Premium: $1,369.00**

### Additional Coverages and Products Available*

We've reviewed your policy and have identified additional optional coverages and products that can add valuable protection. Talk to your agent about purchasing the following coverages and products and whether they meet your needs.

- **Multi-Policy Discounts:** Having more than one insurance policy with Liberty Mutual can save you time and money. Learn more about how you can bundle your auto, home, renters, or condo insurance.

- **Home Computer and Smartphone:** If your smartphone or other devices are not insured, repairing or replacing them can be expensive. Did you know you can insure multiple devices for up to $10,000 with a deductible of $50.00?

- **Identity Fraud Expense:** A stolen identity can be scary and expensive. We'll provide counseling, and pay up to $30,000 for expenses such as lost wages and attorney fees incurred to recover your identity.

*These optional coverages are subject to policy provisions, limitations, and exclusions. Daily limits or a deductible may apply. For a complete explanation, please consult your agent today.

### Mortgage Information

Mortgagee 1:
JPMORGAN CHASE
BANK, N.A. ITS
SUCCESSORS
ITS SUCCESSORS
AND/OR ASSIGNS
LOAN NO. 4503578980
PO Box 47020
Atlanta, GA 30362

Mortgagee 2:
DHCD
ISAOA ATIMA
C/o Greater Washington
Urban League
Washington, DC 20009

App.136



**Questions about your Policy?**
Call 1-301-262-5242 or
1-866-941-4012

**Policy Number:**
H37-238-660209-40 8 4

**Report a Claim:**
1-800-2CLAIMS or
LibertyMutual.com/Claims



---

**Policy Forms and Endorsements:** The following forms and endorsements are applicable to your policy

LibertyGuard® Deluxe Homeowner Policy
(HO 00 03 04 91)

Home Protector Plus (FMHO-1183)

Credit Card, Fund Transfer, Forgery
(HO 04 53 04 91)

Protective Devices (FMHO 4172 1014)

Amendmt Pol Definitions (FMHO-2934 7/04)

Amendatory Mold End (FMHO 3370 1112)

Seepage Exclusion Endorsement (FMHO 3391 1112)

Inflation Protection (FMHO-2835)

No SecII/Limit I-Daycare (HO 04 96 04 91)

Lead Poisoning Exclusion (FMHO-976 05/92)

Fuel Storage Exclusion (FMHO-1097 1/97)

Special Provisions (FMHO6100DC 0217)

Escape of Water (Building/Spec Contents)
(FMHO 6500 1115)

---

**Important Messages**

**Flood Insurance:** Your Homeowners policy **does not** provide coverage for damage caused by flood, even if the flood is caused by a storm surge. Liberty Mutual can help you obtain this coverage through the Federal Emergency Management Agency (FEMA) if your community participates in the National Flood Insurance Program. Please call your representative for more information.

**A notice for our customers**: Liberty Mutual may consider your claims and loss history when determining whether to renew your policy.

LibertyGuard® Deluxe Homeowners Policy Declarations provided and underwritten by Liberty Insurance Corporation (a stock insurance company), Boston, MA.

**David H. Long**
President

**Mark C. Touhey**
Secretary

This policy, including endorsements listed above, is countersigned by:

**Hamid Mirza**
Authorized Representative



**Important Information -**
**Flood Coverage Not Included in the Standard Homeowners, Condominium, Dwelling Fire, or Renters Insurance Policy**

**Your policy does NOT cover losses caused by flood.**

Generally, the standard homeowners, condominium, dwelling fire, or renters policy (hereafter referred to as "homeowners") does not provide coverage for flooding, surface water that enters the home, or rising water.

Here are some important facts you should know:

- Coverage for flood may be available through the Federal Government's National Flood Insurance Program (NFIP) for an additional premium, or through other sources.

- You must complete a separate application in order to purchase flood insurance; it is not part of your homeowners application.

- You can obtain information about the National Flood Insurance Program by contacting your customer service representative, by visiting www.FloodSmart.gov, or by calling 1-800-427-4661.

- Because flood insurance through the NFIP is regulated by federal law, flood claims are adjusted and paid in a differently than private homeowners insurance claims.

- Please consult with National Flood Insurance Program; the District Department of the Environment; the District Department of Insurance, Securities, and Banking; or your mortgage lender about the risks of flooding, and the potential costs and benefits of flood insurance.

*The above statements shall not be considered a replacement for the terms of and shall not have the effect of altering the coverage afforded by your homeowners policy, and shall not confer new or additional rights beyond those expressly provided for in your homeowners policy. The above statements are only provided as guidance to you in understanding the terms of your homeowners insurance policy with us.*

App.138



Important Information -
**Sewer-Line Back Up Coverage Not Included in the Standard Homeowners, Condominium, Dwelling Fire, or Renters Insurance Policy**

**Your policy does NOT cover losses caused by sewer-line back up.**

Generally, the standard homeowners, condominium, dwelling fire, or renters policy (hereafter referred to as "homeowners") do not provide coverage for sewer-line back up.

Here are some important facts you should know:

- Coverage for sewer-line back up (which occurs off the residence premises) may be available for an additional premium.

- You must complete a separate application in order to purchase sewer-line back up insurance; it is not part of your homeowners application.

- You can obtain information about sewer-line back up by contacting a customer service representative at the telephone number shown on your policy Declarations.

- A claim for sewer-line back up may be adjusted and paid differently from other homeowners insurance claims.

- Please consult the District Department of Insurance, Securities, and Banking, or your mortgage lender about the risks of sewer-line backup, and the potential costs and benefits of adding sewer-line back up to your homeowners policy.

*The above statements shall not be considered a replacement for the terms of and shall not have the effect of altering the coverage afforded by your homeowners policy, and shall not confer new or additional rights beyond those expressly provided for in your homeowners policy. The above statements are only provided as guidance to you in understanding the terms of your homeowners insurance policy with us.*

App.139



## Important Information Regarding Changes to Your Homeowners Policy

Please review the changes to your homeowners' policy as detailed below. These changes are included in the Special Provisions endorsement provided with your enclosed renewal. This revised endorsement replaces the previous Special Provisions effective with this renewal.

*The summary that follows is for information purposes only and does not provide coverage. We have described the changes we believe are most significant. Your new Special Provisions, combined with the previous policy forms you received, provide complete details of your coverage. If the below summary conflicts with the applicable policy language, the policy language prevails.*

The following highlights the changes to your policy :

- The definition of "business" is revised to allow for small incidental business exposures and to state that short-term rental is not considered a business;

- "Short-term rental" is added as a defined term. Rental is considered short-term if the total number of days rented during the policy period does not exceed 31;

- Vandalism and Malicious Mischief is revised to include arson. In addition, the allowable vacancy is extended from 30 to 60 days.

- The Water Damage exclusion is updated to specifically state seiche, storm surge and water released from a dam, levee or dike are not covered. Water driven by wind is updated to include hurricane or similar storms.

- Your personal property is covered when located in the residence including the portion of the residence rented as a short-term rental, provided the total number of days rented during the policy period does not exceed 31 days.

  Property in your home that is currently occupied by a long-term tenant continues to be covered.

- Coverage D – Loss of Use is updated to state how coverage applies under specific conditions, such as a short-term rental. In addition, $5,000 of coverage is added for rent you may lose due to cancellation of short-term rental reservations in place at the time of loss.

- Debris Removal is updated to cover debris removal expenses only if they are actually incurred.

- Personal Liability and Medical Payments to Others is covered for up to two roomers and boarders when a portion of your residence is rented to others for use as a private residence. The policy is now updated to specifically include short-term rentals as part of this coverage.

- Damage to Property of Others is updated to provide up to $500 damage to property of a short-term renter when a covered loss occurs.

If you have any questions or would like to review the changes to your policy, your Liberty Mutual representative will be happy to assist you. Please contact us at the number on the enclosed Declarations page.

Thank you for insuring with Liberty Mutual. We appreciate your business.

App.140



## Important Information Regarding Changes to Optional Coverage Endorsements

Please take some time to review the changes to optional coverages offered with our homeowners' policy. Changes to each endorsement are summarized below. To determine if your policy includes one or more of these optional coverages, please refer to the endorsements listed on the Declarations page.

*The summary that follows is for information purposes only and does not provide coverage. We have described the changes we believe are most significant. Your new special provisions, combined with the previous policy forms you received, provide complete details of your coverage. If the below summary conflicts with the applicable policy language, the policy language prevails.*

### BACK UP OF SEWER AND SUMP PUMP OVERFLOW COVERAGE

**Escape of Water From A Sump, Sump Pump Or Drain On The Residence Premises (Building/Specified Contents)**

(formerly: Backup of Sewer and Sump Pump Overflow)

- Changes are intended to provide specific explanations of the coverages and limitations.
- Coverage is provided for building and specified contents such as household appliances and equipment.
- The policy is updated to specify that the sump pump, sump pump well, drain or related plumbing appliance must be located on the residence premises for coverage to apply.

### Landlord Endorsement.

- The definition of "business" is updated as a result of other contract changes being made.
- The definition of "insured" is updated to recognize your relatives or other persons under the age of 21 and in your care or custody as insureds so long as they remain residents of your household.
- Coverage for personal property can no longer be extended to a guest or servant while on the premises.
- Property not covered is defined to specifically state items that do not have coverage under this endorsement.
- Coverage D is updated to state how coverage applies under specific conditions.
- Theft coverage is included under Coverages A and B for building property that is a part of any building or structure.

If you have any questions or would like to review the changes to your policy, your Liberty Mutual representative will be happy to assist you. Please contact us at the number on the enclosed Declarations page.

Thank you for insuring with Liberty Mutual. We appreciate your business.

App.141



## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ESCAPE OF WATER FROM A SUMP, SUMP PUMP OR DRAIN ON THE RESIDENCE PREMISES (BUILDING AND SPECIFIED CONTENTS)

### DEFINITIONS

The following definition is added:

"Household equipment and appliances" means only clothing washers and dryers, cooking ovens and ranges, dishwashers, permanently installed heating units, installed air conditioning units, installed carpeting and refrigeration units, not including contents;

### COVERED PROPERTY

We cover the dwelling on the "residence premises" and "household equipment and appliances". Covered property does not include materials and supplies or structures described by Coverage B — Other Structures.

### EXTENSION OF COVERAGE

For an additional premium, we cover accidental direct physical loss to property described above caused solely by water that escapes, overflows or discharges from a sump, sump pump, sump pump well or a drain or related plumbing appliance located on the "residence premises".

To the extent coverage is provided by this EXTENSION OF COVERAGE and up to the LIMIT OF LIABILITY described below, Section I — Exclusions, Water Damage, 1.c.(4) and 1.c.(5) do not apply. (This is Exclusions 3.d. and 3.e. in forms **HO 00 04** and **HO 00 06**.)

For purposes of coverage under this EXTENSION OF COVERAGE, a drain or related plumbing appliance does not include a roof drain, gutter, downspout or similar fixture or equipment.

### EXCLUSIONS

### THIS IS NOT FLOOD INSURANCE.

There shall be no coverage under this EXTENSION OF COVERAGE if water excluded under Section I— Exclusions, Water Damage, 1.c.(1), 1.c.(2) and 1.c.(3) (This is Exclusions **3.a.**, **3.b.** and **3.c.** in forms **HO 00 04** and **HO 00 06**.):

1. is concurrent with, in sequence with, or causes or contributes to the escape of water as described in this EXTENSION OF COVERAGE; and

2. damages property covered under Section I — Property Coverages by other than solely by escape, overflow or discharge from a sump, sump pump, sump pump well or a drain or related plumbing appliance on the "residence premises".

### LIMIT OF LIABILITY

We will pay no more than the amount shown in the Declarations for this EXTENSION OF COVERAGE.

### DEDUCTIBLE

We will pay only that part of the loss that exceeds $1,000. No other deductible applies.

All other provisions of this policy apply.



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SPECIAL PROVISIONS – DISTRICT OF COLUMBIA

### DEFINITIONS

Item **2.** "Business" is deleted and replaced by the following:

**2.** "Business" includes:

    a.  A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

    b.  Any other activity engaged in for money or other compensation, except the following:

        (1)  One or more activities, not described in (2) or (3) below, for which no "insured" receives more than $3,000 in total compensation for the 12 months before the beginning of the policy period.

        (2)  Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity; or

        (3)  A "short term rental".

Under **4.** "Insured location" item e. is deleted and replaced by the following:

    e.  Vacant land, including that which is vacant except for a fence, owned by or rented to an "insured" other than farmland;

The following definition is added:

    "Short term rental" means one or more rentals, in whole or in part, of the "residence premises" for up to a combined total of 31 days during the policy period.

### SECTION I - PROPERTY COVERAGES

#### COVERAGE A – Dwelling

For form **HO 00 03**, item **1.** is amended as follows:

We cover:

**1.** The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling, and attached wall-to-wall carpeting;

#### COVERAGE B – Other Structures

In all forms other than **HO 00 04** and **HO 00 06**, item **2.** is deleted and replaced by the following:

**2.** Rented to any person not a tenant of the dwelling, unless used solely as a private garage.

#### COVERAGE C - Personal Property

The following is added under items **1.** and **2.**:

However, we will not cover personal property owned by tenants or guests if the tenants or guests have compensated the "insured" for use of the "residence premises".

#### Special Limits of Liability

For form **HO 00 03**, the introductory paragraph of **Special Limits of Liability** is amended to read:

These do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category. If personal property can reasonably be considered a part of two or more of the groups listed below, the lowest limit will apply.

Items **10.** and **11.** are deleted and replaced by the following (these are Items **7.** and **8.** in Form **HO 00 08**):

**10.** $1,000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power.



Electronic apparatus includes:

a.   Accessories or antennas; or

b.   Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this item **10**.

11. $1,000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

a.   Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

b.   Is away from the "residence premises"; and

c.   Is used at any time or in any manner for any "business" purpose.

Electronic apparatus includes:

a.   Accessories or antennas; or

b.   Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this item **11**.

For form **HO 00 03**, the following limits are added:

12. $5000 on electronic data processing system equipment and the recording or storage media or accessories used with that equipment.

13. $5000 on any one article and $10000 in the aggregate for loss by theft of any rug, carpet (excluding attached wall-to-wall carpet), tapestry, wall-hanging or other similar article.

14. $2500 in the aggregate for loss of any of the following whether or not they are part of a collection: trading cards, comic books, figurines, stamps, advertising materials, stuffed animals, dolls, sports and entertainment memorabilia, toys, games, militaria, and books.

15. $1200 for any one electrical appliance for loss by sudden and accidental damage from artificially generated electrical currents. This special limit does not apply to electronic data processing equipment or storage media.

In the event Landlord Endorsement FMHO 6502 is part of this policy, the above coverage contained in Special Limits of Liability introductory paragraph and Subparagraphs **10.** through **15.** are deleted and do not apply.

**Property Not Covered**

Item **3.b.** is deleted and replaced by the following:

3.   Motor vehicle or all other motorized land conveyances. This includes:

a.   Their equipment and accessories; or

b.   Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

(1)  Accessories or antennas; or

(2)  Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this item **3.b.**

The exclusion of property described in **3.a.** and **3.b.** above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

a.   Used to service an "insured's" residence; or

b.   Designed for assisting the handicapped;

In the event Landlord Endorsement FMHO 6502 is part of this policy, the above coverage contained in the final two Subparagraphs of Item **3.** (a. and b.) are deleted.

**App.144**



Item **6.** is deleted and replaced by the following:

**6.** Property in a location on the "residence premises", when the location is rented to others by an "insured".

This exclusion does not apply to property of an "insured":

a. located on the "residence premises" when the "residence premises" is rented in whole or in part as a "short term rental"; or

b. located in a sleeping room rented to others by an "insured" on the "residence premises".

For form **HO 00 03**, the following item is added as personal property items not covered:

**10.** Water or steam

**COVERAGE D – Loss Of Use** is deleted and replaced by the following:

**COVERAGE D - Loss of Use**

The limit of liability for Coverage D is the total limit for all the coverages that follow.

**1.** If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover Additional Living Expense. Additional Living Expense means any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or to permanently relocate your household elsewhere.

**2.** If a loss covered under this Section makes that part of the "residence premises" rented to others by you not fit to live in, we cover your Loss of Rent. Loss of Rent means the rental income to you of that part of the "residence premises" rented to others at the time of loss, less any expenses that do not continue while the premises is not fit to live in.

This coverage does not apply to:

a. The "residence premises" or that part of the "insured location" that is not rented or leased at the time of the loss; or

b. to any increase in rent or lease payment that occurs after the time of the loss.

We will pay up to $5,000 to reimburse your Loss of Rent when a "short term rental" is cancelled because of a covered loss.

Payment will be for the shortest time required to repair or replace that part of the premises rented.

**3.** If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense and Loss of Rent as provided under **1.** and **2.** above for no more than two weeks.

The periods of time under **1.**, **2.** and **3.** above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement, other than a "short term rental" as provided under **2.** above

In the event Landlord Endorsement FMHO 6502 is part of this policy, the above coverages contained in Coverage D - Loss of Use are deleted and do not apply.

For Forms **HO 00 04** and **HO 00 06**, Item **1.** is deleted and replaced by the following:

**1.** If a loss by a Peril Insured Against under this policy to covered property or the building containing the property makes the "residence premises" not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

**ADDITIONAL COVERAGES**

Item **1. Debris Removal** is deleted and replaced by the following:

App.145



1. **Debris Removal.** We will pay the reasonable expense you incur for the removal of:

   a. Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

   b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

   We will also pay the reasonable expense you incur, up to $500, for the removal from the "residence premises" of:

   a. Your tree(s) felled by the peril of Windstorm or Hail;

   b. Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or

   c. A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

   provided the tree(s) damages a covered structure. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

For form **HO 00 03**, item **7. Loss Assessment** is deleted in its entirety.

For form **HO 00 03**, the following is added to Item **8. Collapse.**

   With respect to this Additional Coverage:

   (1) Collapse means the sudden and entire falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied or used for its current intended purpose.

   (2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

   (3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

   (4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

9. **Glass Or Safety Glazing Material** is deleted and replaced by the following:

9. **Glass Or Safety Glazing Material**

   a. We cover:

   (1) For all forms other than **HO 00 04** and **HO 00 06**, the breakage of glass or safety glazing material which is part of a covered building, storm door or storm window, and for:

   (a) Form **HO 00 04**, the breakage of glass or safety glazing material which is part of a building, storm door or storm window, and covered as Building Additions And Alterations; and

   (b) Form **HO 00 06**, the breakage of glass or safety glazing material which is part of a building, storm door or storm window, and covered under Coverage **A**; and

   (2) For all forms other than **HO 00 04** and **HO 00 06**, the breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a covered building, storm door or storm window, and for:

   (a) Form **HO 00 04**, the breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a building, storm door or storm window, and covered as Building Additions And Alterations; and

   (b) Form **HO 00 06**, the breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a building, storm door or storm window, and covered under Coverage **A**; and



(3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

b. This coverage does not include loss:

(1) To covered property which results because the glass or safety glazing material has been broken, except as provided in a.(3) above; or

(2) On the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss, except when the breakage results directly from Earth Movement as provided for in a.(2) above. A dwelling being constructed is not considered vacant.

Loss to glass covered under this Additional Coverage **9.** will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

For Forms **HO 00 01** and **HO 00 08**, we will pay up to $100 for loss under this coverage.

This coverage does not increase the limit of liability that applies to the damaged property.

(This is Additional Coverage **8.** in Forms **HO 00 01** and **HO 00 08**.)

For form **HO 00 03**, item **10. Landlord's Furnishings** is deleted in its entirety.

The following Additional Coverage is added to all forms except **HO 00 08**. With respect to Form **HO 00 04**, the words 'covered building' used below refer to property covered under Additional Coverage **10.** Buildings Additions and Alterations.

**12. Ordinance or Law**

a. You may use up to 10% of the limit of liability that applies to COVERAGE **A** (or for form **HO 00 04**, you may use up to 10% of the limit of liability that applies to Building Additions and Alterations) for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a **Peril Insured Against**;

(2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a **Peril Insured Against** to another part of that covered building or other structure; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a **Peril Insured Against**.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

c. We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

(This is **Additional Coverage 11.** In forms **HO 00 01** and **HO 00 06**.)

**SECTION I - PERILS INSURED AGAINST**

**App.147**



**COVERAGE A – DWELLING and COVERAGE B – OTHER STRUCTURES**

For form **HO 00 03**, the following is added to item **2.b**

(4) Footing(s)

For all forms other than **HO 00 04** and **HO 00 06**, item **2.d.** is deleted and replaced by the following:

d. Vandalism and malicious mischief, including fire caused by arson and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

For form **HO 00 03**, the following is added to item **2.e.**:

(10) Growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of the ground;

(11) Exterior color or finishing mismatch between undamaged material and new material used to replace old, weathered or oxidized damaged material.

For form **HO 00 03**, the final paragraph of Item **2.** is further revised as follows:

If any of these cause sudden and accidental water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

**SECTION I - EXCLUSIONS**

Item **1. Ordinance or Law** is deleted and replaced by the following:

1. **Ordinance or Law**, meaning any ordinance or law:

a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **1.a.** in all forms other than **HO 00 03**, and **1.a.(1)** in Form **HO 00 03**, does not apply to the amount of coverage that may be provided for under ADDITIONAL COVERAGES, Glass or Safety Glazing Material or Ordinance or Law;

b. The requirements of which result in a loss in value to property; or

c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion applies whether or not the property has been physically damaged.

(This is exclusion **1.a.** in form **HO 00 03**.)

Item **2. Earth Movement** is deleted and replaced by the following:

2. **Earth Movement**, meaning movement of the earth, whether combined with water or not, in any direction, including but not limited to:

a. Earthquake, including land shock waves or tremors before, during, or after a volcanic eruption;

b. Landslide, mud slide, or mud flow;

c. Subsidence or sinkhole; or

d. Any other earth movement, including earth sinking, rising, shifting, expanding, contracting, or eroding;

caused by or resulting from manmade, animal, or natural actions, events, or conditions.

If direct loss by fire or explosion ensues, we will pay only for the ensuing loss.

This exclusion does not apply to loss by theft.



(This is Exclusion **1.b.** in Form **HO 00 03**.)

Item **3. Water Damage** is deleted and replaced by the following:

**3. Water Damage,** meaning:

    a. (1) Flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, storm surge or spray from any of these, whether or not driven by wind, including hurricane or similar storm; or

      (2) release of water held by a dam, levee, dike or by a water or flood control device or structure;

    b. Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

    c. Water which escapes or overflows from sewers or drains located off the "residence premises";

    d. Water which escapes or overflows from drains or related plumbing appliances on the "residence premises". However, this exclusion does not apply to overflow and escape caused by malfunction on the "residence premises", or obstruction on the residence premises, of a drain or plumbing appliance on the "residence premises"; or

    e. Water which escapes or overflows or discharges, for any reason, from within a sump pump, sump pump well or any other system designed to remove water which is drained from the foundation area.

    Water includes any water borne materials.

    This exclusion applies whether the water damage is caused by or resulting from human or animal forces or any act of nature.

    Direct loss by fire, explosion or theft resulting from water damage is covered.

    (This is exclusion **1.c.** in Form **HO 00 03**.)

Item **4. Power Failure** is deleted and replaced by the following:

**4. Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises." But if the failure of power or other utility service results in a loss, from a PERIL INSURED AGAINST on the "residence premises," we will pay for the loss or damage caused by that PERIL INSURED AGAINST.

    (This is exclusion **1.d.** in form **HO 00 03**.)

For form **HO 00 03**, the following is added as item **2.d.**

**d. Cosmetic Loss or Damage,** meaning any loss that alters only the physical appearance of the metal roof covering but:

    (1) does not result in the penetration of water through the metal roof covering; or

    (2) does not result in the failure of the metal roof covering to perform its intended function of keeping out the elements over an extended period of time.

Metal roof covering means the metal roofing material exposed to the weather; the underlayments applied for moisture protection; and all flashings required in the replacement of a metal roof covering.

We do cover loss or damage by hail to roof coverings that allow the penetration of water through the roof covering or that results in the failure of the roof covering to perform its intended function of keeping out the elements over an extended period of time.

**SECTION I – CONDITIONS**

**2. Your Duties After Loss**

    Paragraph a. is deleted and replaced by the following:

    a. Give prompt notice to us or our agent. With respect to a loss caused by the peril of windstorm or hail, that notice must occur no later than 365 days after the date of loss.

**3. Loss Settlement.** Under form **HO 00 06**, item b.(2) is deleted and replaced by the following:



(2) If the damage is not repaired or replaced within a reasonable time, at actual cash value but not more than the amount required to repair or replace.

The following paragraph is added and applies to this policy and to any Loss Settlement provision in any other endorsement applicable to this policy:

Loss Settlement does not include payment for any actual or perceived decrease in market or resale value resulting from loss to or repair of your covered property.

### SECTION II - EXCLUSIONS

Under **1.** COVERAGE E - Personal Liability and COVERAGE F - Medical Payments to Others

Item a. is deleted and replaced by the following:

a. Which is expected or intended the "insured", even if the resulting "bodily injury" or "property damage"

 (1) is of a different kind, quality, or degree than initially expected or intended; or

 (2) is sustained by a different person, entity, real or personal property, than initially expected or intended.

 However, this exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Item c. is deleted and replaced by the following:

c. Arising out of the rental or holding for rental of any part of any premises by an "insured." This exclusion does not apply to the rental or holding for rental of the "residence premises":

 (1) As a "short term rental" for use only as a residence;

 (2) In part, unless intended for use as a residence more than two roomers or boarders; or

 (3) In part, as an office, school, studio or private garage;

### SECTION II – ADDITIONAL COVERAGES

For form **HO 00 03**, Item 1.c. under **Claims Expenses** is amended as follows:

c. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit.

Under **3. Damage to Property to Others**, item **d.** is deleted and replaced by the following:

d. To property owned by or rented to a tenant of an "insured" or a resident in your household. This does not apply to "short term rentals"; or

For form **HO 00 03**, Item **4. Loss Assessment** is deleted in its entirety.

### SECTIONS II - CONDITIONS

**1. Limit of Liability** is deleted and replaced by the following:

**1. Limit of Liability**

a. Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E Limit of Liability shown on the Declarations. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

b. **Sub-limit Of Liability**

 Subject to Paragraph a. above, our total liability under Coverage **E** for the value of services required to contribute to the rehabilitation of a child or minor for damages for which an "insured" is legally liable because of vicarious liability is $10,000. This applies whether or not the vicarious liability is statutorily imposed, for the actions of a child or minor, if such vicarious liability is not otherwise excluded. This special limit does not increase the Coverage **E** Limit of Liability.



c. The limit of liability in a. above and the special limit in b. above apply regardless of the number of "insureds", claims made or persons injured.

d. Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as a result of one accident will not be more than the Coverage F Limit of Liability shown in the Declarations.

However, this condition does not apply to losses that covered under the Home Business Endorsement **HO 05 90 03 97.**

## SECTIONS I AND II - CONDITIONS

2. **Concealment or Fraud** is deleted and replaced by the following:

2. **Concealment or Fraud**

a. Under SECTION **I** – PROPERTY COVERAGES, with respect to all "insureds" covered under this policy, we provide no coverage for loss under SECTION **I** - PROPERTY COVERAGES if, whether before or after a loss, one or more "insureds" have:

(1) Intentionally concealed or misrepresented any material fact or circumstance;

(2) Engaged in fraudulent conduct; or

(3) Made false statements;

relating to this insurance.

b. Under SECTION **II** – LIABILITY COVERAGES, we do not provide coverage to one or more "insureds" who, whether before or after a loss, have:

(1) Intentionally concealed or misrepresented any material fact or circumstance;

(2) Engaged in fraudulent conduct; or

(2) Made false statements;

relating to this insurance

5. **Cancellation**, paragraph b. is deleted and replaced by the following:

b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you or mailed to you at your mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

(1) When this policy has been in effect for 30 days or less and is not a renewal with us, we may cancel for any reason by letting you know at least 30 days before the date cancellation takes effect.

(2) When this policy has been in effect for more than 30 days, or at any time if it is a renewal with us, we may cancel for one or more of the following reasons by letting you know at least 30 days before the date cancellation takes effect.

(a) You have not paid a premium due;

(b) You have made a material and willful misstatement or omission of fact to us in connection with any application to or claim against us;

(c) Your property or other interest has been transferred to another person, unless the transfer is permissible under the terms of the policy; or

(d) Your property or its interest or use has materially changed with respect to its insurability.

All other provisions of this policy apply.



## Information about Homeowners Rate Determination

When determining your premium, we consider many factors, such as your credit history, claims history, and property characteristics. You may request that Liberty Mutual re-evaluate your current homeowners insurance rate with up-to-date information using the same factors prior to your policy's expiration. If your community adds new fire protection (fire stations) or access to new hydrants close to your home, you should contact us to evaluate possible saving opportunities.

Policy rate re-evaluation is limited to one request per policy period, and may result in a quoted premium either higher or lower. If you would like your policy re-evaluated, please call us at  1-301-262-5242/ 1-866-941-4012 and a representative will be happy to assist you.

FMHO 3057 02 11                                                                                  Page 1 of 1



## Notice of Privacy Policy

Liberty Mutual* values you as a customer and takes your personal privacy seriously. When you request a rate quotation, apply for insurance, request changes to your insurance policy or submit a claim, you disclose information about yourself or members of your family. This notice tells you how we treat the information we collect about you.

### 1. INFORMATION WE MAY COLLECT

We collect information about you from:

- Applications or other forms you complete, and information you provide to us over the telephone;
- Your business dealings with us and other companies;
- Your employer or association for Liberty Mutual Group products;
- Consumer reporting agencies, Motor Vehicle Departments, inspection services and medical providers; and
- Visits to our Liberty Mutual website.

### 2. TYPES OF INFORMATION WE MAY DISCLOSE

We may disclose the following about you:

- Information from your application or other forms, such as your name, date of birth, address, social security number, vehicle and driver information;
- Information about your transactions with us, our affiliates or others, such as your insurance coverages, payment history, and certain claims information; and
- Information we receive from third parties, such as your motor vehicle records and claims history.

### 3. TO WHOM INFORMATION MAY BE DISCLOSED

We do not disclose personal information about you to anyone unless allowed by law. We are allowed by law to provide information to:

- A third party that performs services for us, such as claims investigations, medical examinations, inspections, and appraisals or for roadside assistance or the repair of your vehicle if you have a claim;
- Our affiliated companies and reinsurers;
- Insurance regulators and reporting agencies;
- Consumer reporting agencies to obtain loss history information, motor vehicle reports, or credit report information where permitted by law;
- State Motor Vehicle Departments to obtain a report of any accidents or convictions or to confirm your compliance with compulsory motor vehicle liability insurance laws;
- Law enforcement agencies or other government authorities to report suspected illegal activities;
- A person or organization conducting insurance actuarial, or research studies;
- Companies that provide marketing services on our behalf, or as part of a joint marketing agreement with banks, credit unions, and affinity partners, or providers of annuity and financial products and services offered through us to our customers; and
- As otherwise permitted by law.

### 4. HOW WE PROTECT INFORMATION

We maintain physical, electronic, and procedural safeguards to protect your nonpublic personal information. These safeguards comply with applicable laws. We retain your information for as long as required by law or regulation. The only employees or agents who have access to your information are those who must have it to provide products or services to you. We do not sell your information to mass marketing or telemarketing companies. Any information we share with third parties, such as those organizations which perform a service for us or market our products, is subject to appropriate confidentiality protections and may be used only for the purposes intended.

*This privacy notice is provided on behalf of the following Liberty Mutual companies and affiliates that provide personal automobile, homeowners, life insurance and annuities: Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, LM Insurance Corporation, The First Liberty Insurance Corporation, Liberty Insurance Company of America, Liberty Northwest Insurance Corporation, Liberty Life Assurance Company of Boston, Liberty County Mutual Insurance Company (Texas only), Liberty Lloyds of Texas Insurance Company, LM Property and Casualty Insurance Company, Liberty Mutual Personal Insurance Company, Liberty Personal Insurance Company, Liberty Mutual Mid-Atlantic Insurance Company, LM General Insurance Company, American States Preferred Insurance Company, Consolidated Insurance Company, Wausau General Insurance Company, Wausau Underwriters Insurance Company, Wausau Business Insurance Company and Montgomery Mutual Insurance Company.

 Gmail

Phanta Daramy-Andrews <phanta29andrews@gmail.com>

## Updated Inventory Listings from 1800 Packouts of DC - Awaiting instruction from Insurance Company

5 messages

**Akia. Turner** <Akia.Turner@1800packoutsofdc.com>                    Wed, May 29, 2019 at 12:44 PM
To: Phanta Daramy-Andrews <phanta29andrews@gmail.com>
Cc: Lidia Zambilovici <Lidia.Zambilovici@1800packoutsofdc.com>

Good Morning Ms. Andrews~!

Please see below for details on the attachments to this email:

- **Phanta Inventory Listing by Tag #** | A listing of all items we removed from your residence

- **Phanta Picture Inventory by Tag #** | contains pictures of all items we removed from residence

- **Phanta Bagged Items Picture Inventory** | contains general pictures of contents from each bag removed from residence

- **Phanta Total Loss Picture Inventory** | contains pictures of all items removed from residence that are non-salvageable.

These same documents were provided to your insurance company for their review and documentation purposes.

Your insurance company has instructed us to not do anything with your items beyond store them.

Your insurance company also stated they will contact us soon to discuss next steps or actions needed with your items.

Should your insurance company authorize us to clean/service your contents – we can then do a more detailed inventory at that time to document the condition of each piece/item.

As soon as I hear back from your insurance company, I will definitely let you know.

Thanks,

Akia Turner | Customer Service Rep

# PHANTA ANDREWS

## Inventory Listing by Tag # ao 05/10/2019

707 49th Place NE
Washington  20019
USA

Date of Loss:
Type of Job: Contents
Type of Loss:
Claim #: 039740892
Insurance Company: Liberty Mutual
Adjuster:
Prepared On: May 10, 2019



1-800-Packouts of DC

950 South Pickett Street, Alexandria, Virginia, US 22304

Phone:(703) 461-6425

1-800-Packouts of DC      Case 1:22-cv-01694-TJK    Document 23-4    Filed 11/28/23    Page 2 of 57    267 PHANTA ANDREWS (PHANTA ANDREWS) / Claim # 039740892

707 49th Place NE, Washington  20019          May 10, 2019

| Description | Qty | UOM | Category | Condition | Room | Tag |
|---|---|---|---|---|---|---|
| Total loss | 1 | EA | | Total Loss | Basement | |
| Tray | 1 | EA | | | Basement | 1 |
| Muffin Pan | 1 | EA | | | Basement | 2 |
| PBO | 1 | EA | | | Basement | 3 |
| PBO | 1 | EA | | | Basement | 4 |
| PBO | 1 | EA | | | Basement | 5 |
| PBO | 1 | EA | | | Basement | 6 |
| PBO | 1 | EA | | | Basement | 7 |
| PBO | 1 | EA | | | Basement | 8 |
| PBO | 1 | EA | | | Basement | 9 |
| PBO | 1 | EA | | | Basement | 10 |
| PBO | 1 | EA | | | Basement | 11 |
| PBO | 1 | EA | | | Basement | 12 |
| PBO | 1 | EA | | | Basement | 13 |
| PBO | 1 | EA | | | Basement | 14 |
| PBO | 1 | EA | | | Basement | 15 |
| PBO | 1 | EA | | | Basement | 16 |
| PBO | 1 | EA | | | Basement | 17 |
| PBO | 1 | EA | | | Basement | 18 |
| PBO | 1 | EA | | | Basement | 19 |
| PBO | 1 | EA | | | Basement | 20 |
| PBO | 1 | EA | | | Basement | 21 |
| PBO | 1 | EA | | | Basement | 22 |
| PBO | 1 | EA | | | Basement | 23 |
| PBO | 1 | EA | | | Basement | 24 |
| PBO | 1 | EA | | | Basement | 25 |
| PBO | 1 | EA | | | Basement | 26 |
| PBO | 1 | EA | | | Basement | 27 |
| PBO | 1 | EA | | | Basement | 28 |
| PBO | 1 | EA | | | Basement | 29 |
| PBO | 1 | EA | | | Basement | 30 |
| PBO | 1 | EA | | | Basement | 31 |
| PBO | 1 | EA | | | Basement | 32 |

**App.157**

| Description | Qty | UOM | Category | Condition | Room | Tag |
|---|---|---|---|---|---|---|
| PBO | 1 | EA | | | Basement | 33 |
| PBO | 1 | EA | | | Basement | 34 |
| PBO | 1 | EA | | | Basement | 35 |
| PBO | 1 | EA | | | Basement | 36 |
| PBO | 1 | EA | | | Basement | 37 |
| PBO | 1 | EA | | | Basement | 38 |
| PBO | 1 | EA | | | Basement | 39 |
| PBO | 1 | EA | | | Basement | 40 |
| PBO | 1 | EA | | | Basement | 41 |
| PBO | 1 | EA | | | Basement | 42 |
| PBO | 1 | EA | | | Basement | 43 |
| PBO | 1 | EA | | | Basement | 44 |
| PBO | 1 | EA | | | Basement | 45 |
| PBO | 1 | EA | | | Basement | 46 |
| Suitcase | 1 | EA | | | Basement | 47 |
| Suitcase | 1 | EA | | | Basement | 48 |
| Suitcase | 1 | EA | | | Basement | 49 |
| PBO | 1 | EA | | | Basement | 50 |
| PBO | 1 | EA | | | Basement | 51 |
| PBO | 1 | EA | | | Basement | 52 |
| PBO | 1 | EA | | | Basement | 53 |
| PBO | 1 | EA | | | Basement | 54 |
| PBO | 1 | EA | | | Basement | 55 |
| PBO | 1 | EA | | | Basement | 56 |
| PBO | 1 | EA | | | Basement | 57 |
| PBO | 1 | EA | | | Basement | 58 |
| PBO | 1 | EA | | | Basement | 59 |
| PBO | 1 | EA | | | Basement | 61 |
| PBO | 1 | EA | | | Basement | 63 |
| PBO | 1 | EA | | | Basement | 64 |
| Clothes | 1 | EA | | | Basement | 65 |
| Clothes/Linen | 1 | EA | | | Basement | 66 |
| Clothes | 1 | EA | | | Basement | 67 |

**App.158**

| Description | Qty | UOM | Category | Condition | Room | Tag |
|---|---|---|---|---|---|---|
| Clothes | 1 | EA | | | Basement | 68 |
| PBO | 1 | EA | | | Basement | 69 |
| Clothes/Linen | 1 | EA | | | Basement | 70 |
| Shoes | 1 | EA | | | Basement | 71 |
| Suitcase of clothes | 1 | EA | | | Basement | 72 |
| Linen | 1 | EA | | | Basement | 73 |
| Clothes | 1 | EA | | | Basement | 74 |
| Clothes | 1 | EA | | | Basement | 75 |
| Linen | 1 | EA | | | Basement | 76 |
| Clothes | 1 | EA | | | Basement | 77 |
| Clothes/Linen | 1 | EA | | | Basement | 78 |
| Clothes/Linen/shoes | 1 | EA | | | Basement | 79 |
| Linen | 1 | EA | | | Basement | 80 |
| PBO | 1 | EA | | | Basement | 81 |
| Clothes | 1 | EA | | | Basement | 82 |
| PBO | 1 | EA | | | Basement | 83 |
| Clothes | 1 | EA | | | Basement | 84 |
| Clothes | 1 | EA | | | Basement | 85 |
| Giant blanket cushion | 1 | EA | | | Basement | 86 |
| Clothes | 1 | EA | | | Basement | 87 |
| PBO | 1 | EA | | | Basement | 88 |
| PBO | 1 | EA | | | Basement | 89 |
| PBO | 1 | EA | | | Basement | 90 |
| PBO | 1 | EA | | | Basement | 91 |
| Clothes | 1 | EA | | | Basement | 92 |
| PBO | 1 | EA | | | Basement | 93 |
| Clothes | 1 | EA | | | Basement | 94 |
| Clothes | 1 | EA | | | Basement | 95 |
| PBO | 1 | EA | | | Basement | 96 |
| Clothes | 1 | EA | | | Basement | 97 |
| PBO | 1 | EA | | | Basement | 98 |
| PBO | 1 | EA | | | Basement | 99 |
| PBO | 1 | EA | | | Basement | 100 |

**App.159**

1-800-Packouts of DC                                                                        267 PHANTA ANDREWS (PHANTA ANDREWS) / Claim # 039740892

707 49th Place NE, Washington  20019                                                                                                                May 10, 2019

| Description | Qty | UOM | Category | Condition | Room | Tag |
|---|---|---|---|---|---|---|
| Linen | 1 | EA | | | Basement | 101 |
| PBO | 1 | EA | | | Basement | 102 |
| Suitcase | 1 | EA | | | Basement | 103 |
| Shoes | 1 | EA | | | Basement | 104 |
| Bags and linen | 1 | EA | | | Basement | 105 |
| Suitcase | 1 | EA | | | Basement | 106 |
| Rug/Matt | 1 | EA | | | Basement | 107 |
| PBO | 1 | EA | | | Basement | 108 |
| Styrofoam head and Linen | 1 | EA | | | Basement | 109 |
| PBO | 1 | EA | | | Basement | 110 |
| Boxes and clothes | 1 | EA | | | Basement | 111 |
| PBO | 1 | EA | | | Basement | 112 |
| Linen | 1 | EA | | | Basement | 113 |
| PBO | 1 | EA | | | Basement | 114 |
| Clothes | 1 | EA | | | Basement | 116 |
| PBO | 1 | EA | | | Basement | 117 |
| Dolls | 1 | EA | | | Basement | 118 |
| Tote with books and shower hose | 1 | EA | | | Basement | 119 |
| Tote | 1 | EA | | | Basement | 120 |
| PBO | 1 | EA | | | Basement | 122 |
| Clothes | 1 | EA | | | Basement | 123 |
| Comforter | 1 | EA | | | Basement | 125 |
| Heater | 1 | EA | | | Basement | 135 |
| Lamp | 1 | EA | | | Basement | 137 |
| Heater | 1 | EA | | | Basement | 138 |
| PBO lock box | 1 | EA | | | Basement | 139 |
| Air Conditioner | 1 | EA | Appliances | | Basement | 140 |
| Air conditioner | 1 | EA | | | Basement | 141 |
| Glass top | 1 | EA | | | Basement | 145 |
| Chair | 1 | EA | | | Basement | 152 |
| Chair | 1 | EA | | | Basement | 153 |
| Coat rack | 1 | EA | | | Basement | 154 |
| Coat rack | 1 | EA | | | Basement | 155 |

**App.160**

1-800-Packouts of DC

Case 1:22-cv-01694-TJK    Document 23-4    Filed 11/28/23    Page 7 of 57    267 PHANTA ANDREWS (PHANTA ANDREWS) / Claim # 039740892

707 49th Place NE, Washington  20019

May 10, 2019

| Description | Qty | UOM | Category | Condition | Room | Tag |
|---|---|---|---|---|---|---|
| Coat rack | 1 | EA | | | Basement | 156 |
| Lamp | 1 | EA | | | Basement | 158 |
| Tote | 1 | EA | | | Basement | 161 |
| Poles | 1 | EA | | | Basement | 162 |
| Saw | 1 | EA | | | Basement | 163 |
| CDs | 1 | EA | | | Basement | 164 |
| Guitar | 1 | EA | | | Basement | 172 |
| Glasses | 1 | EA | | | Basement | Box 60 |
| Glasses | 1 | EA | | | Basement | Box 62 |
| Clothes | 1 | EA | | | Basement | Box 115 |
| Clothes | 1 | EA | | | Basement | Box 121 |
| Clothes | 1 | EA | | | Basement | Box 124 |
| Baskets, record Player | 1 | EA | | | Basement | Box 126 |
| Books, Glasses, Baskets | 1 | EA | | | Basement | Box 127 |
| Bags, Clothes, and papers | 1 | EA | | | Basement | Box 128 |
| Clothes | 1 | EA | | | Basement | Box 129 |
| Lamp, toy, light | 1 | EA | | | Basement | Box 130 |
| Glasses and Pans | 1 | EA | | | Basement | Box 131 |
| Glass, plates , cups | 1 | EA | | | Basement | Box 132 |
| Books , DVD player, lights | 1 | EA | | | Basement | Box 133 |
| Clothes | 1 | EA | | | Basement | Box 134 |
| Clothes | 1 | EA | | | Basement | Box 136 |
| Silverware | 1 | EA | | | Basement | Box 142 |
| Toys, books, speakers | 1 | EA | | | Basement | Box 143 |
| Books | 1 | EA | | | Basement | Box 144 |
| Bag, toys, Books | 1 | EA | | | Basement | Box 146 |
| Glass, cups, pictures | 1 | EA | | | Basement | Box 147 |
| Glass, Books | 1 | EA | | | Basement | Box 148 |
| Books | 1 | EA | | | Basement | Box 149 |
| Books | 1 | EA | | | Basement | Box 150 |
| Books | 1 | EA | | | Basement | Box 151 |
| Clothes and shoes | 1 | EA | | | Basement | Box 157 |
| Cd's, Books | 1 | EA | | | Basement | Box 159 |

**App.161**

1-800-Packouts of DC                                                                     267 PHANTA ANDREWS (PHANTA ANDREWS) / Claim # 039740892

707 49th Place NE, Washington  20019                                                                                      May 10, 2019

| Description | Qty | UOM | Category | Condition | Room | Tag |
|---|---|---|---|---|---|---|
| CDs and DVDs | 1 | EA | | | Basement | Box 160 |
| Stuff under the stairs | 1 | EA | | | Basement | Box 165 |
| Stuff under the stairs | 1 | EA | | | Basement | Box 166 |
| Stuff under the stairs | 1 | EA | | | Basement | Box 167 |
| Stuff from under stairs | 1 | EA | | | Basement | Box 168 |
| CDs and DVDs | 1 | EA | | | Basement | Box 169 |
| CDs and DVDs | 1 | EA | | | Basement | Box 170 |
| Bag of files | 1 | EA | | | Basement | Box 171 |

**Items:**                                                                                                                                    **139**
**Boxes:**                                                                                                                                    **34**

**Sign-Off**

I/We confirm that all information on
above list is correct and complete.

Customer _____                          Contractor _____

Date _____                                Date _____

**App.162**

# PHANTA ANDREWS

## Picture Inventory by Tag # ao 05/10/2019

707 49th Place NE
Washington  20019
USA


Date of Loss:
Type of Job: Contents
Type of Loss:
Claim #: 039740892
Insurance Company: Liberty Mutual
Adjuster:
Prepared On: May 10, 2019



1-800-Packouts of DC
950 South Pickett Street, Alexandria, Virginia, US 22304
Phone:(703) 461-6425

1-800-Packouts of DC

Case 1:22-cv-01694-TJK    Document 23-4    Filed 11/29/23    Page 10 of 57
(STEPHANIYA ANDREWS/STEPHANIA ANDREWS) / Claim # 039740892

707 49th Place NE, Washington  20019

May 10, 2019

## Total loss

**1 | EA**

| | |
|---|---|
| Condition | **Total Loss** |
| Notes | **Pictures and paintings that was sitting in the water** |
| | **Wood and cardboard on each frame feels damp** |
| Room | **Basement** |
| Location | **Loss Location** |





## Tray

**1 | EA**

| | |
|---|---|
| Tag | **1** |
| Room | **Basement** |
| Location | **Loss Location** |



## Muffin Pan

**1 | EA**

| | |
|---|---|
| Tag | **2** |
| Room | **Basement** |
| Location | **Loss Location** |



## PBO

**1 | EA**

| | |
|---|---|
| Tag | **3** |
| Room | **Basement** |
| Location | **Loss Location** |



1-800-Packouts of DC     Case 1:22-cv-01694-TJK     Document 23-4     Filed 11/29/23     Page 11 of 57     (STEPHAN & ANDREWS) / Claim #
039740892

707 49th Place NE, Washington 20019           May 10, 2019

## PBO

**1 | EA**

| | |
|---:|:---|
| Tag | **4** |
| Room | **Basement** |
| Location | **Loss Location** |



## PBO

**1 | EA**

| | |
|---:|:---|
| Tag | **5** |
| Room | **Basement** |
| Location | **Loss Location** |



## PBO

**1 | EA**

| | |
|---:|:---|
| Tag | **6** |
| Room | **Basement** |
| Location | **Loss Location** |



## PBO

**1 | EA**

| | |
|---:|:---|
| Tag | **7** |
| Room | **Basement** |
| Location | **Loss Location** |



## PBO

**1 | EA**

Tag **8**
Room **Basement**
Location **Loss Location**



## PBO

**1 | EA**

Tag **9**
Room **Basement**
Location **Loss Location**

 

## PBO

**1 | EA**

Tag **10**
Room **Basement**
Location **Loss Location**



## PBO

**1 | EA**

Tag **11**
Room **Basement**
Location **Loss Location**

 

707 49th Place NE, Washington  20019        May 10, 2019

### PBO

**1 | EA**

| | |
|---|---|
| Tag | **12** |
| Room | **Basement** |
| Location | **Loss Location** |



### PBO

**1 | EA**

| | |
|---|---|
| Tag | **13** |
| Room | **Basement** |
| Location | **Loss Location** |



### PBO

**1 | EA**

| | |
|---|---|
| Tag | **14** |
| Room | **Basement** |
| Location | **Loss Location** |



### PBO

**1 | EA**

| | |
|---|---|
| Tag | **15** |
| Room | **Basement** |
| Location | **Loss Location** |



1-800-Packouts of DC      Case 1:22-cv-01694-TJK    Document 23-4    Filed 11/29/23    Page 14 of 57  (PHANTA ANDREWS) / Claim # 039740892

707 49th Place NE, Washington  20019          May 10, 2019

### PBO

**1 | EA**

| | |
|---|---|
| Tag | **16** |
| Room | **Basement** |
| Location | **Loss Location** |



### PBO

**1 | EA**

| | |
|---|---|
| Tag | **17** |
| Room | **Basement** |
| Location | **Loss Location** |



### PBO

**1 | EA**

| | |
|---|---|
| Tag | **18** |
| Room | **Basement** |
| Location | **Loss Location** |



### PBO

**1 | EA**

| | |
|---|---|
| Tag | **19** |
| Room | **Basement** |
| Location | **Loss Location** |



**App.168**

1-800-Packouts of DC    Case 1:22-cv-01694-TJK    Document 23-4    Filed 11/29/23    Page 15 of 57 (PHANTA ANDREWS) / Claim # 039740892

707 49th Place NE, Washington  20019      May 10, 2019

## PBO

**1 | EA**

| | |
|---|---|
| Tag | **20** |
| Room | **Basement** |
| Location | **Loss Location** |



## PBO

**1 | EA**

| | |
|---|---|
| Tag | **21** |
| Room | **Basement** |
| Location | **Loss Location** |



## PBO

**1 | EA**

| | |
|---|---|
| Tag | **22** |
| Room | **Basement** |
| Location | **Loss Location** |



## PBO

**1 | EA**

| | |
|---|---|
| Tag | **23** |
| Room | **Basement** |
| Location | **Loss Location** |



707 49th Place NE, Washington  20019

May 10, 2019

**PBO**

**1 | EA**

Tag **24**
Room **Basement**
Location **Loss Location**




**PBO**

**1 | EA**

Tag **25**
Room **Basement**
Location **Loss Location**



**PBO**

**1 | EA**

Tag **26**
Room **Basement**
Location **Loss Location**



**PBO**

**1 | EA**

Tag **27**
Room **Basement**
Location **Loss Location**



1-800-Packouts of DC     Case 1:22-cv-01694-TJK     Document 23-4     Filed 11/29/23     Page 17 of 57 (PHANTA ANDREWS) / Claim #
039740892

707 49th Place NE, Washington  20019             May 10, 2019

## PBO

**1 | EA**

| | |
|---|---|
| Tag | **28** |
| Room | **Basement** |
| Location | **Loss Location** |



## PBO

**1 | EA**

| | |
|---|---|
| Tag | **29** |
| Room | **Basement** |
| Location | **Loss Location** |



## PBO

**1 | EA**

| | |
|---|---|
| Tag | **30** |
| Room | **Basement** |
| Location | **Loss Location** |



## PBO

**1 | EA**

| | |
|---|---|
| Tag | **31** |
| Room | **Basement** |
| Location | **Loss Location** |



**App.171**

## PBO

**1 | EA**

Tag **32**
Room **Basement**
Location **Loss Location**



## PBO

**1 | EA**

Tag **33**
Room **Basement**
Location **Loss Location**



## PBO

**1 | EA**

Tag **34**
Room **Basement**
Location **Loss Location**



## PBO

**1 | EA**

Tag **35**
Room **Basement**
Location **Loss Location**



**App.172**

**PBO**

**1 | EA**

Tag **36**
Room **Basement**
Location **Loss Location**



**PBO**

**1 | EA**

Tag **37**
Room **Basement**
Location **Loss Location**



**PBO**

**1 | EA**

Tag **38**
Room **Basement**
Location **Loss Location**



**PBO**

**1 | EA**

Tag **39**
Room **Basement**
Location **Loss Location**



**App.173**

1-800-Packouts of DC

Case 1:22-cv-01694-TJK    Document 23-4    Filed 11/29/23    Page 20 of 57
(ZOE PHAN / A ANDREWS)(STEPHAN / A ANDREWS) / Claim # 039740892

707 49th Place NE, Washington  20019                                                    May 10, 2019

## PBO

**1 | EA**

Tag **40**
Room **Basement**
Location **Loss Location**



## PBO

**1 | EA**

Tag **41**
Room **Basement**
Location **Loss Location**



## PBO

**1 | EA**

Tag **42**
Room **Basement**
Location **Loss Location**




## PBO

**1 | EA**

Tag **43**
Room **Basement**
Location **Loss Location**



**App.174**

## PBO

**1 | EA**

|  |  |
|---|---|
| Tag | **44** |
| Room | **Basement** |
| Location | **Loss Location** |



## PBO

**1 | EA**

|  |  |
|---|---|
| Tag | **45** |
| Room | **Basement** |
| Location | **Loss Location** |



## PBO

**1 | EA**

|  |  |
|---|---|
| Tag | **46** |
| Room | **Basement** |
| Location | **Loss Location** |



## Suitcase

**1 | EA**

|  |  |
|---|---|
| Tag | **47** |
| Room | **Basement** |
| Location | **Loss Location** |

 

  

707 49th Place NE, Washington  20019

May 10, 2019

## Suitcase

### 1 | EA

| | |
|---|---|
| Tag | **48** |
| Room | **Basement** |
| Location | **Loss Location** |








## Suitcase

### 1 | EA

| | |
|---|---|
| Tag | **49** |
| Room | **Basement** |
| Location | **Loss Location** |








## PBO

### 1 | EA

| | |
|---|---|
| Tag | **50** |
| Room | **Basement** |
| Location | **Loss Location** |




**App.176**

707 49th Place NE, Washington  20019

May 10, 2019

## PBO

**1 | EA**

Tag **51**
Room **Basement**
Location **Loss Location**



## PBO

**1 | EA**

Tag **52**
Room **Basement**
Location **Loss Location**



## PBO

**1 | EA**

Tag **53**
Room **Basement**
Location **Loss Location**



## PBO

**1 | EA**

Tag **54**
Room **Basement**
Location **Loss Location**



**App.177**

707 49th Place NE, Washington 20019        May 10, 2019

## PBO

**1 | EA**

Tag **55**
Room **Basement**
Location **Loss Location**

 

## PBO

**1 | EA**

Tag **56**
Room **Basement**
Location **Loss Location**



## PBO

**1 | EA**

Tag **57**
Room **Basement**
Location **Loss Location**



## PBO

**1 | EA**

Tag **58**
Room **Basement**
Location **Loss Location**

 

**PBO**

**1 | EA**

Tag **59**
Room **Basement**
Location **Loss Location**

 

**PBO**

**1 | EA**

Tag **61**
Room **Basement**
Location **Loss Location**

 

**PBO**

**1 | EA**

Tag **63**
Room **Basement**
Location **Loss Location**



**PBO**

**1 | EA**

Tag **64**
Room **Basement**
Location **Loss Location**

 

707 49th Place NE, Washington  20019          May 10, 2019

## Clothes

### 1 | EA

| | |
|---:|:---|
| Tag | **65** |
| Room | **Basement** |
| Location | **Loss Location** |



## Clothes/Linen

### 1 | EA

| | |
|---:|:---|
| Tag | **66** |
| Room | **Basement** |
| Location | **Loss Location** |



## Clothes

### 1 | EA

| | |
|---:|:---|
| Tag | **67** |
| Room | **Basement** |
| Location | **Loss Location** |



## Clothes

### 1 | EA

| | |
|---:|:---|
| Tag | **68** |
| Room | **Basement** |
| Location | **Loss Location** |



1-800-Packouts of DC
707 49th Place NE, Washington  20019

## PBO

**1 | EA**

Tag **69**
Room **Basement**
Location **Loss Location**

 

## Clothes/Linen

**1 | EA**

Tag **70**
Room **Basement**
Location **Loss Location**



## Shoes

**1 | EA**

Tag **71**
Room **Basement**
Location **Loss Location**

 

## Suitcase of clothes

**1 | EA**

Tag **72**
Room **Basement**
Location **Loss Location**



**App.181**

707 49th Place NE, Washington  20019                                                                      May 10, 2019

## Linen

### 1 | EA

     Tag **73**
   Room **Basement**
Location **Loss Location**



## Clothes

### 1 | EA

     Tag **74**
   Room **Basement**
Location **Loss Location**



## Clothes

### 1 | EA

     Tag **75**
   Room **Basement**
Location **Loss Location**



## Linen

### 1 | EA

     Tag **76**
   Room **Basement**
Location **Loss Location**



**App.182**

Case 1:22-cv-01694-TJK    Document 23-4    Filed 11/29/23    Page 29 of 57

707 49th Place NE, Washington  20019

## Clothes

**1 | EA**

|   |   |
|---|---|
| Tag | **77** |
| Room | **Basement** |
| Location | **Loss Location** |



## Clothes/Linen

**1 | EA**

|   |   |
|---|---|
| Tag | **78** |
| Room | **Basement** |
| Location | **Loss Location** |



## Clothes/Linen/shoes

**1 | EA**

|   |   |
|---|---|
| Tag | **79** |
| Room | **Basement** |
| Location | **Loss Location** |






## Linen

**1 | EA**

|   |   |
|---|---|
| Tag | **80** |
| Room | **Basement** |
| Location | **Loss Location** |



707 49th Place NE, Washington  20019

May 10, 2019

## PBO

**1 | EA**

| | |
|---:|:---|
| Tag | **81** |
| Room | **Basement** |
| Location | **Loss Location** |

 

## Clothes

**1 | EA**

| | |
|---:|:---|
| Tag | **82** |
| Room | **Basement** |
| Location | **Loss Location** |



## PBO

**1 | EA**

| | |
|---:|:---|
| Tag | **83** |
| Room | **Basement** |
| Location | **Loss Location** |

 

## Clothes

**1 | EA**

| | |
|---:|:---|
| Tag | **84** |
| Room | **Basement** |
| Location | **Loss Location** |



## Clothes

**1 | EA**

| | |
|---:|:---|
| Tag | **85** |
| Room | **Basement** |
| Location | **Loss Location** |



## Giant blanket cushion

**1 | EA**

| | |
|---:|:---|
| Tag | **86** |
| Room | **Basement** |
| Location | **Loss Location** |



## Clothes

**1 | EA**

| | |
|---:|:---|
| Tag | **87** |
| Room | **Basement** |
| Location | **Loss Location** |



## PBO

**1 | EA**

| | |
|---:|:---|
| Tag | **88** |
| Room | **Basement** |
| Location | **Loss Location** |

 

707 49th Place NE, Washington  20019                                                          May 10, 2019

## PBO

**1 | EA**

Tag **89**
Room **Basement**
Location **Loss Location**



## PBO

**1 | EA**

Tag **90**
Room **Basement**
Location **Loss Location**



## PBO

**1 | EA**

Tag **91**
Room **Basement**
Location **Loss Location**



## Clothes

**1 | EA**

Tag **92**
Room **Basement**
Location **Loss Location**



1-800-Packouts of DC

Case 1:22-cv-01694-TJK    Document 23-4    Filed 11/29/23    Page 23 of 57    (STEPHANIA ANDREWS / STEPHANIA ANDREWS) / Claim # 039740892

707 49th Place NE, Washington  20019                                    May 10, 2019

## PBO

### 1 | EA

| | |
|---|---|
| Tag | **93** |
| Room | **Basement** |
| Location | **Loss Location** |



## Clothes

### 1 | EA

| | |
|---|---|
| Tag | **94** |
| Room | **Basement** |
| Location | **Loss Location** |



## Clothes

### 1 | EA

| | |
|---|---|
| Tag | **95** |
| Room | **Basement** |
| Location | **Loss Location** |



## PBO

### 1 | EA

| | |
|---|---|
| Tag | **96** |
| Room | **Basement** |
| Location | **Loss Location** |

 

1-800-Packouts of DC

Case 1:22-cv-01694-TJK    Document 23-4    Filed 11/29/23    Page 34 of 57
(607 PHANTA ANDREWS/SUPHANTA ANDREWS) / Claim #
039740892

707 49th Place NE, Washington  20019

May 10, 2019

### Clothes

**1 | EA**

Tag **97**
Room **Basement**
Location **Loss Location**



### PBO

**1 | EA**

Tag **98**
Room **Basement**
Location **Loss Location**



### PBO

**1 | EA**

Tag **99**
Room **Basement**
Location **Loss Location**



### PBO

**1 | EA**

Tag **100**
Room **Basement**
Location **Loss Location**

 



## Linen

**1 | EA**

| | |
|---|---|
| Tag | **101** |
| Room | **Basement** |
| Location | **Loss Location** |



## PBO

**1 | EA**

| | |
|---|---|
| Tag | **102** |
| Room | **Basement** |
| Location | **Loss Location** |

## Suitcase

**1 | EA**

| | |
|---|---|
| Tag | **103** |
| Room | **Basement** |
| Location | **Loss Location** |



## Shoes

**1 | EA**

| | |
|---|---|
| Tag | **104** |
| Room | **Basement** |
| Location | **Loss Location** |



707 49th Place NE, Washington  20019

## Bags and linen

**1 | EA**

| | |
|---|---|
| Tag | **105** |
| Room | **Basement** |
| Location | **Loss Location** |





## Suitcase

**1 | EA**

| | |
|---|---|
| Tag | **106** |
| Room | **Basement** |
| Location | **Loss Location** |





## Rug/Matt

**1 | EA**

| | |
|---|---|
| Tag | **107** |
| Room | **Basement** |
| Location | **Loss Location** |








**App.190**

707 49th Place NE, Washington  20019                                             May 10, 2019

## PBO

**1 | EA**

Tag **108**
Room **Basement**
Location **Loss Location**



## Styrofoam head and Linen

**1 | EA**

Tag **109**
Room **Basement**
Location **Loss Location**



## PBO

**1 | EA**

Tag **110**
Room **Basement**
Location **Loss Location**



## Boxes and clothes

**1 | EA**

Tag **111**
Room **Basement**
Location **Loss Location**




**App.191**

## PBO

**1 | EA**

|  |  |
|---|---|
| Tag | **112** |
| Room | **Basement** |
| Location | **Loss Location** |



## Linen

**1 | EA**

|  |  |
|---|---|
| Tag | **113** |
| Room | **Basement** |
| Location | **Loss Location** |



## PBO

**1 | EA**

|  |  |
|---|---|
| Tag | **114** |
| Room | **Basement** |
| Location | **Loss Location** |



## Clothes

**1 | EA**

|  |  |
|---|---|
| Tag | **116** |
| Room | **Basement** |
| Location | **Loss Location** |



707 49th Place NE, Washington  20019                                                    May 10, 2019

## PBO

**1 | EA**

| | |
|---|---|
| Tag | **117** |
| Room | **Basement** |
| Location | **Loss Location** |



## Dolls

**1 | EA**

| | |
|---|---|
| Tag | **118** |
| Room | **Basement** |
| Location | **Loss Location** |



## Tote with books and shower hose

**1 | EA**

| | |
|---|---|
| Tag | **119** |
| Room | **Basement** |
| Location | **Loss Location** |

 



## Tote

**1 | EA**

| | |
|---|---|
| Tag | **120** |
| Room | **Basement** |
| Location | **Loss Location** |

 

### PBO

**1 | EA**

| | |
|---:|:---|
| Tag | **122** |
| Room | **Basement** |
| Location | **Loss Location** |

 

### Clothes

**1 | EA**

| | |
|---:|:---|
| Tag | **123** |
| Room | **Basement** |
| Location | **Loss Location** |



### Comforter

**1 | EA**

| | |
|---:|:---|
| Tag | **125** |
| Room | **Basement** |
| Location | **Loss Location** |



### Heater

**1 | EA**

| | |
|---:|:---|
| Tag | **135** |
| Room | **Basement** |
| Location | **Loss Location** |



707 49th Place NE, Washington  20019

May 10, 2019

## Lamp

**1 | EA**

| | |
|---|---|
| Tag | **137** |
| Room | **Basement** |
| Location | **Loss Location** |



## Heater

**1 | EA**

| | |
|---|---|
| Tag | **138** |
| Room | **Basement** |
| Location | **Loss Location** |



## PBO lock box

**1 | EA**

| | |
|---|---|
| Tag | **139** |
| Room | **Basement** |
| Location | **Loss Location** |



## Air Conditioner

**1 | EA**

| | |
|---|---|
| Tag | **140** |
| Category | **Appliances** |
| Room | **Basement** |
| Location | **Loss Location** |



### Air conditioner

**1 | EA**

| | |
|---|---|
| Tag | **141** |
| Room | **Basement** |
| Location | **Loss Location** |



### Glass top

**1 | EA**

| | |
|---|---|
| Tag | **145** |
| Room | **Basement** |
| Location | **Loss Location** |



### Chair

**1 | EA**

| | |
|---|---|
| Tag | **152** |
| Room | **Basement** |
| Location | **Loss Location** |



### Chair

**1 | EA**

| | |
|---|---|
| Tag | **153** |
| Room | **Basement** |
| Location | **Loss Location** |




707 49th Place NE, Washington  20019

May 10, 2019

## Coat rack

### 1 | EA

| | |
|---:|:---|
| Tag | **154** |
| Room | **Basement** |
| Location | **Loss Location** |



## Coat rack

### 1 | EA

| | |
|---:|:---|
| Tag | **155** |
| Room | **Basement** |
| Location | **Loss Location** |







## Coat rack

### 1 | EA

| | |
|---:|:---|
| Tag | **156** |
| Room | **Basement** |
| Location | **Loss Location** |







707 49th Place NE, Washington  20019

May 10, 2019

### Lamp

**1 | EA**

| | |
|---|---|
| Tag | **158** |
| Room | **Basement** |
| Location | **Loss Location** |



### Tote

**1 | EA**

| | |
|---|---|
| Tag | **161** |
| Room | **Basement** |
| Location | **Loss Location** |

 

### Poles

**1 | EA**

| | |
|---|---|
| Tag | **162** |
| Room | **Basement** |
| Location | **Loss Location** |



### Saw

**1 | EA**

| | |
|---|---|
| Tag | **163** |
| Room | **Basement** |
| Location | **Loss Location** |

 

## CDs

**1 | EA**

|  |  |
|---|---|
| Tag | **164** |
| Room | **Basement** |
| Location | **Loss Location** |

 

## Guitar

**1 | EA**

|  |  |
|---|---|
| Tag | **172** |
| Room | **Basement** |
| Location | **Loss Location** |



## Glasses

**1 | EA**

|  |  |
|---|---|
| Tag | **Box 60** |
| Box Size | **Medium Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 

  

## Glasses

**1 | EA**

|  |  |
|---|---|
| Tag | **Box 62** |
| Box Size | **Medium Box** |
| Room | **Basement** |
| Location | **Loss Location** |



**App.199**

707 49th Place NE, Washington  20019                                                    May 10, 2019

### Clothes

**1 | EA**

|            |                   |
|-----------:|:------------------|
| Tag        | **Box 115**       |
| Box Size   | **Wardrobe Box**  |
| Room       | **Basement**      |
| Location   | **Loss Location** |

 

### Clothes

**1 | EA**

|            |                   |
|-----------:|:------------------|
| Tag        | **Box 121**       |
| Box Size   | **Wardrobe Box**  |
| Room       | **Basement**      |
| Location   | **Loss Location** |

 

 

### Clothes

**1 | EA**

|            |                   |
|-----------:|:------------------|
| Tag        | **Box 124**       |
| Box Size   | **Wardrobe Box**  |
| Room       | **Basement**      |
| Location   | **Loss Location** |

 

### Baskets, record Player

**1 | EA**

|            |                   |
|-----------:|:------------------|
| Tag        | **Box 126**       |
| Box Size   | **X-Large Box**   |
| Room       | **Basement**      |
| Location   | **Loss Location** |



## Books, Glasses, Baskets

**1 | EA**

| | |
|---|---|
| Tag | **Box 127** |
| Box Size | **X-Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 

## Bags, Clothes, and papers

**1 | EA**

| | |
|---|---|
| Tag | **Box 128** |
| Box Size | **X-Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 

## Clothes

**1 | EA**

| | |
|---|---|
| Tag | **Box 129** |
| Box Size | **Wardrobe Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 



## Lamp, toy, light

**1 | EA**

| | |
|---|---|
| Tag | **Box 130** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 

1-800-Packouts of DC

707 49th Place NE, Washington  20019

Case 1:22-cv-01694-TJK    Document 23-4    Filed 11/29/23    Page 48 of 57

207 PHANTA ANDREWS (PHANTA ANDREWS) / Claim #
039740892

May 10, 2019

## Glasses and Pans

**1 | EA**

| | |
|---|---|
| Tag | **Box 131** |
| Box Size | **X-Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 

## Glass, plates , cups

**1 | EA**

| | |
|---|---|
| Tag | **Box 132** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |



## Books , DVD player, lights

**1 | EA**

| | |
|---|---|
| Tag | **Box 133** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 

## Clothes

**1 | EA**

| | |
|---|---|
| Tag | **Box 134** |
| Box Size | **Wardrobe Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 



1-800-Packouts of DC

Case 1:22-cv-01694-TJK    Document 23-4    Filed 11/29/23    Page 40 of 57

(STEPHANIA ANDREWS/STEPHANIA ANDREWS) / Claim #
039740892

707 49th Place NE, Washington  20019

May 10, 2019

### Clothes

**1 | EA**

| | |
|---|---|
| Tag | **Box 136** |
| Box Size | **Wardrobe Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 



### Silverware

**1 | EA**

| | |
|---|---|
| Tag | **Box 142** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 

### Toys, books, speakers

**1 | EA**

| | |
|---|---|
| Tag | **Box 143** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 

### Books

**1 | EA**

| | |
|---|---|
| Tag | **Box 144** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 

707 49th Place NE, Washington  20019                                                                May 10, 2019

## Bag, toys, Books

**1 | EA**

| | |
|---|---|
| Tag | **Box 146** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 

## Glass, cups, pictures

**1 | EA**

| | |
|---|---|
| Tag | **Box 147** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 



## Glass, Books

**1 | EA**

| | |
|---|---|
| Tag | **Box 148** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 

## Books

**1 | EA**

| | |
|---|---|
| Tag | **Box 149** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 



## Books

**1 | EA**

| | |
|---|---|
| Tag | **Box 150** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 

## Books

**1 | EA**

| | |
|---|---|
| Tag | **Box 151** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 

## Clothes and shoes

**1 | EA**

| | |
|---|---|
| Tag | **Box 157** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 

## Cd's, Books

**1 | EA**

| | |
|---|---|
| Tag | **Box 159** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 

1-800-Packouts of DC     Case 1:22-cv-01694-TJK     Document 23-4     Filed 11/29/23     Page 53 of 57 (STEPHANIE M ANDREWS) / Claim # 039740892

707 49th Place NE, Washington  20019          May 10, 2019

## CDs and DVDs

### 1 | EA

| | |
|---|---|
| Tag | **Box 160** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 

## Stuff under the stairs

### 1 | EA

| | |
|---|---|
| Tag | **Box 165** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 

 

## Stuff under the stairs

### 1 | EA

| | |
|---|---|
| Tag | **Box 166** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 

## Stuff under the stairs

### 1 | EA

| | |
|---|---|
| Tag | **Box 167** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 



---

## Stuff from under stairs

**1 | EA**

| | |
|---|---|
| Tag | **Box 168** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 

---

## CDs and DVDs

**1 | EA**

| | |
|---|---|
| Tag | **Box 169** |
| Box Size | **Large Dish Box** |
| Room | **Basement** |
| Location | **Loss Location** |



---

## CDs and DVDs

**1 | EA**

| | |
|---|---|
| Tag | **Box 170** |
| Box Size | **Large Dish Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 

---

## Bag of files

**1 | EA**

| | |
|---|---|
| Tag | **Box 171** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 

| Items: | 139 |
| Boxes: | 34 |

**Sign-Off**

I/We confirm that all information on above list is correct and complete.

_____
Customer

_____
Date

_____
Contractor

_____
Date

# PHANTA ANDREWS

## Total Loss Picture Inventory ao 05/10/2019

707 49th Place NE
Washington  20019
USA

Date of Loss:
Type of Job: Contents
Type of Loss:
Claim #: 039740892
Insurance Company: Liberty Mutual
Adjuster:
Prepared On: May 10, 2019



1-800-Packouts of DC
950 South Pickett Street, Alexandria, Virginia, US 22304
Phone:(703) 461-6425

707 49th Place NE, Washington  20019                                                    May 10, 2019

## Total loss

### 1 | EA

| | |
|---|---|
| Condition | **Total Loss** |
| Notes | **Pictures and paintings that was sitting in the water** |
| | **Wood and cardboard on each frame feels damp** |
| Room | **Basement** |
| Location | **Loss Location** |

 

   

| | |
|---|---|
| **Items:** | **1** |
| **Boxes:** | **0** |

### Sign-Off

I/We confirm that all information on above list is correct and complete.

Customer _____

Date _____

Contractor _____

Date _____



**1-800-Packouts**
722-5688
f 𝕏 ⓜ in ▣ ▦

PKS182857

## AUTHORIZATION AND PERMISSION FOR DIRECT PAY
## FOR CONTENTS SERVICES AND OR CLEANING SERVICES

THIS AGREEMENT BETWEEN MADE AND ENTERED INTO THIS **9TH** DAY OF **MAY** 1800 Packouts of DC. (1800 Packouts of DC) AND **PHANTA ANDREWS** PROPERTY OWNER OR FIRM REPRESENTATIVE. 1800 Packouts of DC AGREES TO PERFORM SERVICES WHICH ARE LISTED BELOW. OWNER OR REPRESENTATIVE UNDERSTANDS THAT THEY HAVE THE RIGHT TO HIRE ANYONE OF THEIR CHOICE AND HEREBY GIVES AUTHORIZATION TO 1800 Packouts of DC TO PROCEED WITH NECESSARY SERVICES WHICH MAY INCLUDE ANY OR ALL OF THE FOLLOWING SERVICES.

| | | | |
|---|---|---|---|
| *EMERGENCY SERVICES | *CLEANING OF CONTENTS | *MOVEBACK CONTENTS | ✓ |
| *INVENTORY SURVEY ✓ | *REPACKING CONTENTS | *UNPACKING CONTENTS ✓ | |
| *PACKAGING CONTENTS ✓ | *STORAGE OF CONTENTS | | |
| *OTHER ...... | | | |

AS SECURITY FOR CONTRACTOR'S FEE, THE OWNER OR REPRESENTATIVE HEREBY AUTHORIZES PAYMENT DIRECTLY TO 1800 Packouts of DC FOR SERVICES RENDERED. **SHOULD THE INSURANCE COMPANY NOT PAY ANY PORTION OF THIS CLAIM IT IS THE RESPONSIBILITY OF THE UNDERSIGNED OWNER OR REPRESENTATIVE TO PAY ALL CHARGES IN FULL TO** 1800 Packouts of DC.

I UNDERSTAND THAT 1800 Packouts of DC WILL PERFORM ALL WORK IN A PROFESSIONAL MANNER AND WILL COMPLETE ANY REQUIRED CONTENTS SERVICE TO THE BEST OF ITS ABILITY. HOWEVER, 1800 Packouts of DC IN NO WAY WARRANTS OR GUARANTEES THE COMPLETE REMOVAL OF MICROBIAL, PATHOGEN AND / OR HAZARDOUS MATERIALS FROM SAID CONTENTS. THE UNDERSIGNED HEREBY RELEASES, INDEMNIFIES AND HOLDS HARMLESS, 1800 Packouts of DC AND ITS OFFICERS, AGENTS AND EMPLOYEES FROM ANY AND ALL LIABILITY FOR DAMAGE CAUSED BY MOISTURE, MOLD, MILDEW, BIO HAZARD AND / OR HAZARDOUS SUBSTANCES WHICH REMAIN, OCCUR OR REOCCUR IN THE CONTENTS AFTER 1800 Packouts of DC HAS PERFORMED ALL REQUIRED WORK IN A PROFESSIONAL MANNER AND COMPLETED THE CONTENTS PROCESS TO THE BEST OF ITS ABILITY

I AGREE TO ALLOW 1800 Packouts of DC TO USE PHOTOS, VIDEOS, AND IMAGES OF THE WORK PERFORMED AT THE FACILITY/RESIDENCE AND TO INDEMNIFY AND HOLD HARMLESS 1800 Packouts of DC FOR ANY AND ALL CLAIMS ARISING FROM THE USE OF THE PHOTOS, VIDEOS, AND IMAGES FOR MARKETING PURPOSES.

I GRANT TO 1800 Packouts of DC THE AUTHORITY TO EXERCISE ITS JUDGMENT TO INVENOTRY, PACK, CLEAN AND STORE CONTENTS. 1800 Packouts of DC HAS AUTHORITY TO USE CHEMICALS RELATED TO CLEANING AND DEODERIZATION AND I INDEMNIFY AND HOLD HARMLESS 1800 Packouts of DC FOR ANY AND ALL CLAIMS ARISING FROM SAID AUTHORITY, INCLUDING ANY MONETARY LOSS AS A DIRECT OR INDIRECT RESULT OF THE WORK PERFORMED AT FACILITY/RESIDENCE. I AGREE TO KEEP MY CURRENT CONTENTS INSURANCE POLICY ON ALL AFFECTED CONTENTS DURING THE ENTIRE CLAIM.

THE UNDERSIGNED OWNER OR REPRESENTATIVE IS TO REMOVE ANY AND ALL PERSONAL ITEMS THAT IT DOES NOT WANT 1800 Packouts of DC TO HANDLE ON OR BEFORE 1800 Packouts of DC BEGINS WORK ON THE PROPERTY. OWNER OR REPRESENTATIVE SHALL REMOVE ANY AND ALL PRESCRIPTION DRUGS, JEWELRY, FIREARMS, ALCOHOLIC BEVERAGES, AND LEASED ITEMS. OWNER OR REPRESENTATIVE HEREBY HOLDS 1800 Packouts of DC HARMLESS FROM ANY AND ALL CLAIMS OF ANY VARIETY REGARDING THE ABOVE LISTED ITEMS, SAVE ANY INTENTIONAL DAMAGE CAUSED BY 1800 Packouts of DC. 1800 Packouts of DC SHALL NOT RETURN ANY CONTENTS TO THE PROPERTY UNTIL 1800 Packouts of DC HAS BEEN PAID IN FULL. 1800 Packouts of DC MAY REPLACE, REPAIR OR DISCARD ANY AND ALL ITEM(S) THAT 1800 Packouts of DC DEEMS TO BE EITHER DAMAGED OR MISSING. 1800 Packouts of DC WILL MAKE PAYABLE TO POLICY HOLDER FOR DAMAGED ITEM(S) OF RECIEPT SUPPLIED BY POLICY HOLDER UP TO A ONE TIME MAXIMUM OF FIVE HUNDRED DOLLARS FOR SAID DAMAGED ITEM / ITEMS AND UPON PAYMENT TO ME, I SHALL RELEASE 1800 Packouts of DC FROM ANY AND ALL CLAIMS ARISING FROM SUCH ALLEGED DAMAGE.

**I UNDERSTAND THAT 1800 Packouts of DC IS NOT RESPONSIBLE FOR ANY DAMAGE THAT MAY OCCUR TO THE DRIVEWAY FROM VEHICLES OR HEAVY EQUIPMENT.** I AGREE TO INDEMNIFY AND HOLD HARMLESS 1800 Packouts of DC FOR ANY AND ALL CLAIMS ARISING FROM THESE SERVICES PERFORMED BY 1800 Packouts of DC AND/OR ALL 1800 Packouts of DC CONTRACTORS, EMPLOYEES OR SUBCONTRACTORS. I AUTHORIZE 1800 Packouts of DC TO RETURN, DISCARD OR DONATE ANY OF MY CONTENTS THAT REMAIN IN THE CUSTODY OF 1800 Packouts of DC AFTER 12 MONTHS FROM THE DATE HEREOF, AT 1800 Packouts of DC DISCRETION.

**I UNDERSTAND AND AGREE THAT UPON THE RETURN OF MY PERSONAL ITEMS THAT IT IS MY DUTY TO INSPECT ALL ITEMS FOR CONDITION AT THE TIME THEY ARE RETURNED.** I FURTHER UNDERSTAND THAT 1800 Packouts of DC WILL NOT BE RESPONSIBLE FOR ANY ITEMS LEFT IN BOXES AND/OR WRAPPED THAT YOU OR YOUR DESIGNATED REPRESENTATIVE DID NOT INSPECT. I FURTHER UNDERSTAND THAT 1800 Packouts of DC WILL NOT BE RESPONSIBLE FOR DAMAGES TO ITEMS THAT WERE NOT INSPECTED AND WILL BE HELD HARMLESS FROM ANY AND ALL FUTURE CLAIMS RISING FROM THOSE ITEMS NOT INSPECTED AT THE TIME OF RETURN. ANY ITEMS FOUND TO BE DAMAGED AT THE TIME OF INSPECTION WILL BE NOTED AND ADDRESSED ACCORDING.

**THE TERMS HEREOF ARE CONTRACTUAL IN NATURE AND NOT A MERE RECITAL.** BY SIGNING, I HAVE READ AND UNDERSTAND THIS DOCUMENT.

THIS AGREEMENT SIGNED THIS **9TH** DAY OF **MAY** 2019.

_____
**1800 Packouts of DC**

_____
**PROPERTY OWNER OR REPRESENTATIVE**

Mosunmola Adeyemi
**PRINT NAME AND E-MAIL ADDRESS**

Phanta 29 andrews@gmail.com

**Exhibit 3**



Liberty
Mutual.
INSURANCE

November 01, 2019

Phanta U Daramy-andrews
707 49th Pl Ne
Washington, DC 20019-4805

Claim Number: 039740892-01
Date of Incident:    4/21/2019

Dear Phanta U Daramy-Andrews,

We are writing you to share the latest information about your claim
for supplemental damages, which are the additional damages discovered while
repairs were being completed. After a thorough review of the damages, we have
issued you a payment based on our findings.

**How Your Payment Was Calculated**
We want to make sure you understand how we arrived at your payment amount.
Here's how we calculated it

| | | |
|---|---|---|
| $ | 26,216.31 | Dwelling/Home |
| $ | 6,769.51 | Personal Property |
| $ | 32,985.82 | CLAIM TOTAL (prior to the following adjustments, as applicable) |
| $ | (4,845.59) | Less applicable recoverable depreciation |
| $ | (892.34) | Less Paid When Incurred (PWI) |
| $ | (25,297.88) | Less prior payment(s) |
| $ | (1,000.00) | Less applicable deductible, which was applied to a previous payment |
| $ | 950.01 | Amount paid to you |

Please review the information provided below to better understand your payment and the claim process.

**For Damage to Your Home**

- To protect your property, please begin the repair process as soon as possible.
- Before starting repairs, make sure your contractor emails me their estimate (if different from the Liberty Mutual Insurance estimate) and any photos, before to starting any repairs.



CONTACT US

**By phone**
Tel: (407) 562-0362

Fax: 800-792-2614

**By E-mail**
bryan.wallace@libertymutual.com

**Liberty Insurance Corporation**
Mailing Address:
P.O. Box 515097
Los Angeles, CA 90051-5097
Telephone: (866) 542-2287
Fax: (866) 791-7490

**Visit us online**
LibertyMutual.com

**About Claims Process**

Libertymutual.com/claims-
center/home-insurance-claims
**Mobile**

**App.212**



**Depreciation**
- If non-recoverable depreciation has been applied to a portion of your loss, your policy requires that property of this type be settled at actual cash value (depreciation applied).
- If recoverable depreciation has been applied, your policy allows for reimbursement for those depreciated items not exceeding the total amount it cost to repair or replace. Once the repairs are completed or the items have been replaced, please submit your receipt(s) to Liberty Mutual for review.
- The following conditions are required prior to reimbursement of recoverable depreciation:
    1. The structure must be repaired or property must be replaced
    2. You must have documentation to support that you have paid for the repairs or replacement of property.
    3. You must make claim for recoverable depreciation within 6 months of the later:
        a) The last date you received a payment for actual cash value; or
        b) The date of entry of a final order of a court of competent jurisdiction declaring your right to replacement cost.

        (Certain Policy Forms and Endorsements may amend the general terms and conditions for claiming recoverable depreciation. For a complete explanation, please refer to your policy or ask your Claims Representative.)

**Requesting Recoverable Depreciation**
- Once the repairs are completed or the items have been replaced, please submit paid bills, receipts and/or cancelled checks for the repairs or replacement, including claim number, and the corresponding line number from your itemized list of contents to the mailing address or fax number listed above. Documents can also be submitted online at www.libertymutual.com. We will then consider payment of the difference between your incurred repair or replacement cost and the actual cash value of the loss. A reinspection of the repairs may be required.
- When submitting receipts for the replacement of personal property, please indicate on the receipt the corresponding item number from the personal property worksheet.

**Understanding Your Payment**
We believe you should be fully informed throughout the entire claims process. That includes learning about your payment. I can review this with you personally or you can ask me for the **Understanding Your Property Claim Payment** guide.

**Here to Help**
If you have any questions, feel free to email or call me. I can assist you more quickly if you reference your claim number in all communications.

Thank you for trusting Liberty Mutual with all your needs.

Sincerely,


Bryan Wallace
Your Liberty Mutual Claims Team

**Exhibit 4**




CONTACT US

**By Phone**
Direct:    (972) 808-4351
Toll Free: (800) 225-2467
Ext.       26752

**By E-mail**
neather.feagin@
libertymutual.com

March 05, 2020

**Liberty Insurance Corporation**
P.O. Box 515097
Los Angeles, CA 90051-5097

Phanta U. Daramy-Andrews
707 49th Pl NE
Washington DC 20019-4805

**Visit us online**
LibertyMutual.com

**About Claims Process**
Libertymutual.com/claims-
insurance/about-claims-process

| Insured: | Phanta U. Daramy-Andrews |
|---|---|
| Claimant: | Phanta U. Daramy-Andrews |
| Claim Number: | HD000-039740892-01 |
| Date of Loss: | 04/21/2019 |
| Policy Number: | H37-238-660209-40 |

**Mobile**
Scan QR Code with your
iPhone or Android
smartphone to download
the claims app or download
a free reader app at
www.i-nigma.mobi

Dear Phanta Daramy-Andrews,

I wanted to reach out and follow up regarding your recent request for the policy to send a vendor out to conduct an inventory and inspection of the insured's personal property for the claim. Per the conditions of the policy, we are unable to do so as it is the insured's duty after loss to provide the details needed for our investigation. As the insured's conditions and duties after loss have not been met, and the required documentation and details have not been provided, we are unable to proceed with the claim process at this time.



We understand the insured's current hardships and we will wait until she is able to complete the required Proof of Loss for the 04/21/2019 water damage and provide a signed copy to us as discussed previously. We will then be able to complete the meeting that was started on 10/18/2019 and make a final coverage decision based on what is submitted and reviewed. I have included the applicable policy language regarding the insured's duties after loss and documentation that must be provided to us.

SECTION I – CONDITIONS

2. Your Duties After Loss. In case of a loss to covered property, you must see that the following are done:

e. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

f. As often as we reasonably require:

(2) Provide us with records and documents we request and permit us to make copies; and



(3) Submit to examination under oath, while not in the presence of any other "insured," and sign the same;

g. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1) The time and cause of loss;

(2) The interest of the "insured" and all others in the property involved and all liens on the property;

(3) Other insurance which may cover the loss;

(4) Changes in title or occupancy of the property during the term of the policy;

(5) Specifications of damaged buildings and detailed repair estimates;

(6) The inventory of damaged personal property described in 2.e. above;

(7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

(8) Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

At this time, our investigation is suspended. We will be happy to reopen the claim should the insured comply with the conditions of the policy and complete the signed proof of loss.

Sincerely,
Heather Feagin
Claims Department

**App.215**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PHANTA U. DARAMY-ANDREWS,     :

      Plaintiff,     :

v.     :      Civil Action No. 1:22-cv-01694-TJK

LIBERTY INSURANCE     :
CORPORATION,     :

      Defendant.     :

## ANSWER TO COMPLAINT

Defendant Liberty Insurance Corporation, by and through counsel, answers the Complaint as follows:

1. Defendant is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 1 of the Complaint. To the extent that a response is required, Defendant denies the allegations of this paragraph.

2. The allegations of this paragraph are conclusions of law regarding jurisdiction to which no responsive pleading is required. To the extent that a response is required, Defendant denies the allegations contained in paragraph 2.

3. The allegations of this paragraph are conclusions of law regarding jurisdiction to which no responsive pleading is required. To the extent that a response is required, Defendant denies the allegations contained in paragraph 3.

4. The allegations of this paragraph are conclusions of law regarding venue to which no responsive pleading is required. To the extent that a response is required, Defendant denies the allegations contained in paragraph 4.

1

5.      Defendant is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 5 of the Complaint. To the extent that a response is required, Defendant denies the allegations of this paragraph.

6.      Defendant admits that it is an insurance company organized under the laws of the state of Illinois and authorized to conduct business in the District of Columbia. Defendant denies any remaining averments contained in this paragraph.

7.      Defendant admits that it issued a policy of insurance to Plaintiff relating to the property known as 707 49th Place, NE, Washington, DC  20019-4805 with a policy period of 1/26/19 to 1/26/20. Defendant denies any remaining averments contained in this paragraph.

8.      Defendant is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 8 of the Complaint. To the extent that a response is required, Defendant denies the allegations of this paragraph.

9.      Defendant is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 9 of the Complaint. To the extent that a response is required, Defendant denies the allegations of this paragraph.

10.      Defendant denies the allegations contained in Paragraph 10 of the Complaint.

11.      Defendant denies the allegations contained in Paragraph 11 of the Complaint.

12.      Defendant admits that it retained 1800 Packouts to clean and salvage Plaintiff's personal property. Defendant denies any remaining averments contained in this paragraph.

13.      Defendant admits that Plaintiff filed a claim under her homeowner's policy; and that Defendant conducted Plaintiff's examination under oath pursuant to the terms of the policy. Defendant denies any remaining averments contained in this paragraph.

14.      Defendant denies the allegations contained in Paragraph 14 of the Complaint.

2

15.   Defendant denies the allegations contained in Paragraph 15 of the Complaint.

16.   Defendant denies the allegations contained in Paragraph 16 of the Complaint.

17.   Defendant denies the allegations contained in Paragraph 17 of the Complaint.

### FIRST CAUSE OF ACTION: BREACH OF CONTRACT

18.   Defendant repeats and incorporates its responses to paragraphs 1-17 of Plaintiff's

Complaint as if fully set forth herein.

19.   Defendant denies the allegations contained in Paragraph 19 of the Complaint.

20.   Defendant denies the allegations contained in Paragraph 20 of the Complaint.

### SECOND CAUSE OF ACTION:
### BREACH OF IMPLIED COVENT OF GOOD FAITH AND FAIR DEALING

21.   Defendant repeats and incorporates its responses to paragraphs 1-20 of Plaintiff's

Complaint as if fully set forth herein.

22.   The allegations of this paragraph are conclusions of law to which no responsive

pleading is required.  To the extent that a response is required, Defendant denies the allegations

contained in paragraph 22.

23.   Defendant denies the allegations contained in Paragraph 23 of the Complaint.

24.   Defendant denies the allegations contained in Paragraph 24 of the Complaint.

25.   Defendant denies the allegations contained in Paragraph 25 of the Complaint.

### THIRD CAUSE OF ACTION: UNJUST ENRICHMENT

26.   Defendant repeats and incorporates its responses to paragraphs 1-25 of Plaintiff's

Complaint as if fully set forth herein.

27.   Defendant denies the allegations contained in Paragraph 27 of the Complaint.

28.   Defendant denies the allegations contained in Paragraph 28 of the Complaint.

3

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are limited or barred by her failure to mitigate her damages.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff has failed to show that Defendant breached any duty owed to her.

### THIRD AFFIRMATIVE DEFENSE

The Complaint is barred by the Doctrine of Avoidable Consequences.

### FOURTH AFFIRMATIVE DEFENSE

The incident alleged in the Complaint is not sole or proximate cause of Plaintiff's

damages.

### FIFTH AFFIRMATIVE DEFENSE

Any alleged damages of Plaintiff were caused by an intervening or superseding cause.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to attorney's fees.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to punitive damages.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to prejudgment interest.

### NINETH AFFIRMATIVE DEFENSE

Defendant hereby reserves the right to supplement its affirmative defenses at any time

prior trial.

4

Dated: July 15, 2022                          Respectfully submitted,


                                              /s/ James C. Mehigan
                                              James C. Mehigan, Bar #: 480691
                                              Mehigan Law Group PLLC
                                              11921 Freedom Drive
                                              Suite 550
                                              Reston, Virginia  20190
                                              (703) 774-7281
                                              jmehigan@mehiganlawgroup.com

                                              *Attorney for Defendant*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 15, 2022, a copy of the foregoing was served via ECF

to all parties of record.


                                              /s/ James C. Mehigan
                                              James C. Mehigan


5

**App.220**

# Exhibit 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PHANTA U. DARAMY-ANDREWS, | : |
| | : |
| **Plaintiff,** | : |
| | : |
| v. | :    **Civil Action No. 1:22-cv-01694-TJK** |
| | : |
| **LIBERTY INSURANCE** | : |
| **CORPORATION,** | : |
| | : |
| **Defendant.** | : |

## DEFENDANT'S ANSWERS TO INTERROGATORIES

Defendant, through counsel, hereby answers Plaintiff's interrogatories, stating:

A.    The information in these Answers is not based solely on the knowledge of the answering party, but includes the knowledge of the party, its agents, representatives, and unless privileged, its attorneys.

B.    The word usage and sentence structure may be that of the attorney assisting in the preparation of these Answers and this does not necessarily purport to be the precise language of the answering party.

C.    The answering party reserves the right to amend, modify or supplement the Answers made herein upon receipt of new or different information obtained as a result of discovery and/or investigation undertaken on his or her behalf.

## GENERAL OBJECTIONS

The answering party objects to these Interrogatories to the extent that:

A.    They call for the disclosure of information either:  a) prepared or compiled in anticipation of litigation, and for which the party seeking the information has no substantial need

1

for same or is able to obtain same without undue hardship, or b) contains mental impressions, conclusions, opinions, or legal theories of counsel.

    B.    They call for a legal conclusion and would necessarily require him or her to disclose the content of conversations with counsel.

    C.    They are overbroad and unduly burdensome with respect to the scope of information sought.

    D.    The information sought is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

    E.    The Interrogatory is convoluted, vague, unintelligible, and impossible to answer as framed.

    F.    They request information which is duplicative of that sought by previous Interrogatories.

### ANSWERS TO INTERROGATORIES

Without waiving any of the foregoing objections, the answering party offers the following Answers to Interrogatories:

**INTERROGATORY NO. 1**: Identify all persons with knowledge relative to this lawsuit (including occurrence witnesses, fact witnesses, or people otherwise having knowledge of facts pertinent to this action) and for each person identified provide a summary of the topics or issues relative to this lawsuit on which the person is knowledgeable.

**ANSWER:**  Plaintiff – has knowledge about this claim and her prior claims; as well as her prior conviction for insurance fraud.

Defendant and its representatives, including, but not limited to, adjusters Bryan Wallace, Brittanya Hawkins, and Charles Rogers have knowledge concerning the adjustment

2

of Plaintiff's insurance claim. Defendant and its representatives also have information relating to Plaintiff's prior claims.

All vendors retained in connection with Plaintiff's insurance, including but not limited to, ALE Solutions and Taylor Hendricks; Kerri Rapisardi and American Leak Detection, Inc.; Lidia Zambilovici, Akia Turner and 1800 Packouts; Kristen Pumphrey and Melinda Ragusa and Three Rivers Builders, LLC; Aleksandra (Ola) Wypuch and Rainbow International Restoration; Sigesmond Hart and Rotor Rooter; and Jimmy Gusky and Jimmy Gusky, LLC. The vendors have knowledge relating to the scope of their work in connection with Plaintiff's claim.

All individuals identified in discovery by any party. Defendant reserves the right to supplement this response upon the development of relevant information through discovery.

**INTERROGATORY NO. 2.**: Identify all persons participating in the preparation of answers to these interrogatories and requests for production and specify which answers or responses each person contributed to.

**ANSWER:** Bryan Wallace, with the assistance of counsel.

**INTERROGATORY NO. 3**: Please provide all disclosures required by Rule 26(a)(2) regarding retained experts or other witnesses expected to provide testimony under Evidence Rule 702, 703, or 705.

**ANSWER**: Defendant will disclose its experts in accordance with the court's scheduling order.

**INTERROGATORY NO. 4**: Please describe the process used and steps taken to review Phanta Daramy-Andrews' claim, including approval or rejection, for real property damages.

3

**ANSWER:**  Objection. This interrogatory is vague and requires detail that is too burdensome to provide in a written answer to an interrogatory. Without waiving any objection, Defendant states that the adjustment of Plaintiff's claim, like any claim, involved, but is not limited to, investigating the facts of the claim, damage mitigation, determining whether any damaged contents can be restored, investigating and determining coverage, determining the scope and cost of repair, determining the value of lost contents, making coverage and value determinations, and when appropriate, issuing payment.

**INTERROGATORY NO. 5**: Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, supporting the adjuster's denial of Plaintiff's claim for personal property losses.

**ANSWER:** Defendant did not deny Plaintiff's claim for personal property losses.

**INTERROGATORY NO. 6**: Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of the allegations in paragraph 9 of the amended complaint.

**ANSWER**: Objection. This interrogatory calls for legal conclusions regarding coverage. Without waiving any objection, the policy speaks for itself. Furthermore, Defendant does not have facts to affirm or deny the primary purpose of Plaintiff's basement. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 7**: Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of the allegations in paragraph 10 of the amended complaint.

**ANSWER**: Objection. This interrogatory calls for legal conclusions and interpretation of specific policy language. Without waiving any objection, the policy speaks for itself. Furthermore, Defendant did not deny the claim.

4

**INTERROGATORY NO. 8**: Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of the allegations in paragraph 11 of the amended complaint.

**ANSWER**: Objection. This interrogatory calls for legal conclusions regarding coverage. Without waiving any objection, the policy speaks for itself. Furthermore, based on Defendant's investigation, Plaintiff's contents claim did not amount to "a total loss entitling plaintiff to the full insurable amount shown on her policy for personal property." Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 9**: Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of many of the allegations in paragraph 12 of the amended complaint.

**ANSWER**: Objection. This interrogatory calls for legal conclusions regarding coverage. Without waiving any objection, the policy speaks for itself. Furthermore, it is Plaintiff's responsibility to make her claim, including providing an inventory of the contents she claims were lost or damaged as a result of the loss. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 10**: Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of many of the allegations in paragraph 13 of the amended complaint.

**ANSWER**: Objection. This interrogatory calls for legal conclusions regarding coverage. Without waiving any objection, the policy speaks for itself. Furthermore, it is Plaintiff's responsibility to make her claim, including providing an inventory of the contents she claims were lost or damaged as a result of the loss, which she did not do. Defendant reserves

5

the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 11:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of the allegations in paragraph 14 of the amended complaint.

**ANSWER:** Objection. This interrogatory calls for legal conclusions regarding coverage. Without waiving any objection, the policy speaks for itself. Furthermore, it is Plaintiff's responsibility to make her claim, including providing an inventory of the contents she claims were lost or damaged as a result of the loss, which she did not do. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 12:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of the allegations in paragraph 15 of the amended complaint.

**ANSWER:** Objection. This interrogatory calls for legal conclusions regarding coverage. Without waiving any objection, the policy speaks for itself. Furthermore, it is Plaintiff's responsibility to make her claim, including providing an inventory of the contents she claims were lost or damaged as a result of the loss, which she did not do. It is also her responsibility to show that the damage was caused by the April 21, 2019 loss, and not from her prior claims. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

6

**INTERROGATORY NO. 13:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of the allegations in paragraph 16 of the amended complaint.

**ANSWER**: Objection. This interrogatory contains false facts and calls for legal conclusions regarding coverage. Without waiving any objection, the policy speaks for itself. Furthermore, it is Plaintiff's responsibility to make her claim, including providing an inventory of the contents she claims were lost or damaged as a result of the loss, which she did not do. Moreover, Defendant did not refuse to may any payment. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 14:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of the allegations in paragraph 17 of the amended complaint.

**ANSWER**: Objection. This interrogatory contains false facts, calls for legal conclusions regarding coverage, and seeks to shift the burden of proof, which is Plaintiff's responsibility to bear. Without waiving any objection, the policy speaks for itself. Furthermore, it is Plaintiff's responsibility to make her claim and prove breach, including providing an inventory of the contents she claims were lost or damaged as a result of the loss, which she did not do. Moreover, Defendant did not refuse to may any payment. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 15:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of the allegations in paragraph 19 of the amended complaint.

**ANSWER**: Objection. This interrogatory contains false facts, calls for legal conclusions regarding coverage, and seeks to shift the burden of proof, which is Plaintiff's responsibility to bear. Without waiving any objection, the policy speaks for itself. Furthermore, it is Plaintiff's

7

responsibility to make her claim and prove breach, including providing an inventory of the contents she claims were lost or damaged as a result of the loss, which she did not do. Moreover, Defendant did not refuse to may any payment. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 16:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of the allegations in paragraph 20 of the amended complaint.

**ANSWER**: Objection. This interrogatory contains false facts, calls for legal conclusions regarding coverage, and seeks to shift the burden of proof, which is Plaintiff's responsibility to bear. Without waiving any objection, the policy speaks for itself. Furthermore, it is Plaintiff's responsibility to make her claim and prove breach, including providing an inventory of the contents she claims were lost or damaged as a result of the loss, which she did not do. Moreover, Defendant did not refuse to may any payment. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 17:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of the allegations in paragraph 22 of the amended complaint.

**ANSWER:** Objection. This interrogatory calls for legal conclusions regarding coverage, and seeks to shift the burden of proof, which is Plaintiff's responsibility to bear. Without waiving any objection, Paragraph 22 of the Amended Complaint contains a statement of law to which no response is required. Furthermore, the policy speaks for itself. Furthermore, it is Plaintiff's responsibility to make her claim and prove breach, including providing an inventory of the contents she claims were lost or damaged as a result of the loss, which she did not do. Moreover, Defendant denies that it treated Plaintiff unfairly or not in good faith. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

8

**INTERROGATORY NO. 18:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of the allegations in paragraph 23 of the amended complaint.

**ANSWER**: Objection. This interrogatory calls for legal conclusions regarding coverage and the application of the covenant of good faith and fair dealing, and seeks to shift the burden of proof, which is Plaintiff's responsibility to bear. Without waiving any objection, Paragraph 23 of the Amended Complaint contains erroneous allegations of facts and a statement of law to which no response is required. Furthermore, the policy speaks for itself. Furthermore, it is Plaintiff's responsibility to make her claim and prove breach, including providing an inventory of the contents she claims were lost or damaged as a result of the loss, which she did not do. Moreover, Defendant denies that it denied Plaintiff the fruit and benefit of her insurance contract. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 19:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of the allegations in paragraph 24 of the amended complaint.

**ANSWER**: Objection. This interrogatory calls for legal conclusions regarding coverage and the application of the covenant of good faith and fair dealing, and seeks to shift the burden of proof, which is Plaintiff's responsibility to bear. Without waiving any objection, Paragraph 24 of the Amended Complaint contains erroneous allegations of facts and a statement of law to which no response is required. Furthermore, the policy speaks for itself. Furthermore, it is Plaintiff's responsibility to make her claim and prove breach, including providing an inventory of the contents she claims were lost or damaged as a result of the loss, which she did not do. Moreover, Defendant denies that it breached the implied covenant of good faith and fair dealing

9

and deprived Plaintiff the bargained value of her insurance contract. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 20:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of the allegations in paragraph 25 of the amended complaint.

**ANSWER**: Objection. This interrogatory calls for legal conclusions regarding coverage and the application of the covenant of good faith and fair dealing, and seeks to shift the burden of proof, which is Plaintiff's responsibility to bear. Without waiving any objection, Paragraph 25 of the Amended Complaint contains erroneous allegations of facts and a statement of law to which no response is required. Furthermore, the policy speaks for itself. Furthermore, it is Plaintiff's responsibility to make her claim and prove breach, including providing an inventory of the contents she claims were lost or damaged as a result of the loss, which she did not do. Moreover, Defendant denies that it denied Plaintiff the fruit and benefit of her insurance contract. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 21:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of the allegations in paragraph 27 of the amended complaint.

**ANSWER**: Objection. This interrogatory calls for legal conclusions regarding coverage and the application of the subject policy, and seeks to shift the burden of proof, which is Plaintiff's responsibility to bear. Without waiving any objection, Paragraph 27 of the Amended Complaint contains erroneous allegations of facts to which no response is required. Furthermore, the policy speaks for itself. Furthermore, it is Plaintiff's responsibility to make

10

her claim and prove breach, including providing an inventory of the contents she claims were lost or damaged as a result of the loss, which she did not do. Moreover, Defendant denies that it withheld insurance payments. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 22:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of the allegations in paragraph 28 of the amended complaint.

**ANSWER:**   Objection. This interrogatory calls for legal conclusions regarding coverage and the application of the legal theory of unjust enrichment, and seeks to shift the burden of proof, which is Plaintiff's responsibility to bear. Without waiving any objection, Paragraph 28 of the Amended Complaint contains erroneous allegations of facts and a conclusion of law to which no response is required. Furthermore, the policy speaks for itself. Furthermore, it is Plaintiff's responsibility to make her claim and prove breach, including providing an inventory of the contents she claims were lost or damaged as a result of the loss, which she did not do. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 23:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, which support your first affirmative defense that the claims are limited or barred by her failure to mitigate her damages.

**ANSWER:** Plaintiff had an obligation to protect her property and provide Defendant with an inventory of her contents, which she did not do. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 24:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, which support your

11

second affirmative defense that Plaintiff has failed to show that Defendant breached any duty owed to her.

**ANSWER**: Objection. This interrogatory calls for legal conclusions regarding coverage, and seeks to shift the burden of proof, which is Plaintiff's responsibility to bear. Without waiving any objection, Plaintiff failed to establish that she is entitled to additional benefit for her loss, as she has failed to provide documentation of her damages. Furthermore, the policy speaks for itself. Furthermore, it is Plaintiff's responsibility to make her claim and prove breach, including providing an inventory of the contents she claims were lost or damaged as a result of the loss, which she did not do. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 25:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, which support your third affirmative defense that the complaint is barred by the Doctrine of Avoidable Consequences.

**ANSWER**: Objection. This interrogatory calls for legal conclusions regarding the applicability of the doctrine of avoidable consequences. Without waiving any objection, Plaintiff, among other things, failed protect her property from further damage after her April 4, 2015 water damage claim the August 16, 2018 basement flood claim. Additionally, Plaintiff failed to provide an inventory of the contents she claims were lost or damaged as a result of the loss. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 26:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, which support your fourth affirmative defense that the incident alleged in the Complaint is not sole or proximate cause of Plaintiff's damages.

12

**ANSWER**: Objection. This interrogatory calls for legal conclusions regarding causation. Without waiving any objection, Plaintiff, among other things, failed protect her property from further damage after her April 4, 2015 water damage claim the August 16, 2018 basement flood claim. Additionally, Plaintiff failed to provide an inventory of the contents she claims were lost or damaged as a result of the loss. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 27:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, which support your fifth affirmative defense that any alleged damages of Plaintiff were caused by an intervening or superseding cause.

**ANSWER**: Objection. This interrogatory calls for legal conclusions regarding the applicability of the doctrine of avoidable consequences. Without waiving any objection, Plaintiff, among other things, failed protect her property from further damage after her April 4, 2015 water damage claim and the August 16, 2018 basement flood claim. Additionally, Plaintiff failed to provide an inventory of the contents she claims were lost or damaged as a result of the loss. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

13

I, Bryan Wallace, designated representative for Liberty Insurance Corporation, believe based upon reasonable inquiry that the foregoing answers are true to the best of my knowledge, information, and belief.


Bryan Wallace

14

/s/ James C. Mehigan
James C. Mehigan, Bar #: 480691
Mehigan Law Group PLLC
11921 Freedom Drive
Suite 550
Reston, Virginia 20190
(703) 774-7281
jmehigan@mehiganlawgroup.com

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing filing was served by electronic and regular

first-class mail on this 10th day of May 2023, to:

Charles C. Iweanoge, Esquire
THE IWEANOGES' FIRM P.C.
1026 Monroe Street, NE
Washington, DC 20017

/s/ James C. Mehigan
James C. Mehigan

15

**App.235**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**PHANTA U. DARAMY-ANDREWS**                                *
          **Plaintiff**                                               *
                                                                          *
          **v.**                                                      *CASE #: 1:22-CV-01694-TJK
                                                                          *
**LIBERTY INSURANCE CORPORATION**                     *
          **Defendant**                                            *
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## <u>ORDER</u>

**UPON CONSIDERATION** of Defendant's Motion for Summary Judgment and

Plaintiff's Opposition filed thereto, it is this _____ day of _____ 2023,

     **ORDERED** that Defendant's Motion be and is hereby **DENIED**; and it is

     **IT IS SO ORDERED**.

                                          _____
                                          Judge Timothy J. Kelly
                                          U.S. District Court Judge

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **PHANTA U. DARAMY-ANDREWS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No. 1:22-cv-01694-TJK** |
| | : | |
| **LIBERTY INSURANCE** | : | |
| **CORPORATION,** | : | |
| | : | |
| **Defendant.** | : | |

### <u>DEFENDANT'S MOTION FOR LEAVE TO FILE AMENDED ANSWER</u>

Defendant Liberty Insurance Corporation, Pursuant to Rule 15 of the Federal Rules of Civil Procedure and Local Rule 7(i), hereby respectfully moves this honorable Court for leave to file the attached First Amended Answer, and for reasons states:

1.    Rule 15 provides that "a party may amend its pleading [with] the court's leave" and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Defendant moves to file the attached First Amended Answer in order to articulate the affirmative defense of contractual limitations, which is clearly reserved in the insurance contract that forms the basis of Plaintiff's claims.  Thus, the requested amendment does not add any new or novel defenses, as the proposed amendment comes directly from the contract terms.  Defendant therefore contends that granting leave to file its Amended Answer would serve justice and promote judicial efficiency. Furthermore, there would be no substantial or undue prejudice, bad faith, undue delay, or futility.

2.    "The federal policy of liberality in permitting amendments to pleadings, as embodied in [Fed. R. Civ. P. 15], is self-evident." *Davenport v. Ralph N. Peters & Co.*, 386 F.2d 199, 204 (4th Cir. 1967). "[T]he general rule is that leave to amend a complaint under Federal Rule of Civil Procedure 15(a) should be freely given, see *Foman v. Davis*, 371 U.S. 178, 182

(1962), unless the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile," *Steinburg v. Chesterfield County Planning Com'n*, 527 F.3d 377, 390 (4th Cir. 2008)," (citing *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)) (internal quotation marks omitted). *See also*, *Zapata v. Flooring*, Civil Action No. 18-1134 (TJK), 2019 U.S. Dist. LEXIS 251975 (D.D.C. Jan. 16, 2019).

3.      The Court has said that in order "[t]o show prejudice from a proposed amended pleading, an "opposing party must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely." *Miller v. Gray*, Civil Action No. 13-cv-2018 (BAH), 2016 U.S. Dist. LEXIS 174695, at *7 (D.D.C. Dec. 16, 2016) quoting *In re Vitamins Antitrust Litig.*, 217 F.R.D. 30, 32 (D.D.C. 2003) (quotations omitted).

4.      Here, there is no bad faith or undue delay, and the proposed amendment to the Answer does not prejudice Plaintiff. Defendant simply seeks to add specificity to its contractual limitations defense in a situation where Plaintiff is aware of the circumstances giving rise to the defense and the basis for the defense is clearly stated in the subject insurance contract.  *See, Matrix Capital Management Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 195 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.1999) (noting that merely adding specificity generally does not cause prejudice to the opposing party); *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir.1980) ( "Because defendant was from the outset made fully aware of the events giving rise to the action, an allowance of the amendment could not in any way prejudice the preparation of defendant's case."). As detailed in Defendant's motion for summary judgment, discovery verified that Plaintiff failed to bring her lawsuit within the one-

**App.238**

year contractual time period for filing suit and Defendant did nothing to prevent Plaintiff from timely filing her lawsuit. *See*, Statement of Material Facts Not in Dispute (ECF 20-1) 7–9. The basis for the proposed amendment to add the contractual limitations defense is derived directly from the insurance contract that Plaintiff relies on in her Complaint. Moreover, the facts and evidence that support the defense come directly from discovery, and the proposed amendment does not deprive Plaintiff from presenting any facts or evidence. Thus, because the proposed amendment comes from the subject contract that Plaintiff seeks to enforce and does not deprive her from presenting facts or evidence, it does not prejudice Plaintiff.

5.    Furthermore, in its original Answer, Affirmative Defense Nine, Defendant expressly reserved the right to supplement its affirmative defenses before trial. (ECF 9 at 4). Thus, Plaintiff was notified that Defendant would be seeking amendment to the Answer.

6.    Additionally, the proposed amended Answer is not futile, as it pleads a viable defense to Plaintiff's Complaint.

7.    Moreover, in the spirit of fairness, granting Defendant leave to amend its Answer here is appropriate, as Defendant has previously consented to Plaintiff's amendment of the pleadings allowing her to name the correct Defendant, rather than moving to dismiss the Complaint. (ECF 6).

8.    Accordingly, in light of the settled precedent liberally applying the dictate of Fed. R. Civ. P. 15(a)(2) that "[t]he court should freely give leave when justice so requires," Defendant respectfully requests that this Honorable Court enter an order granting Defendant leave to file an amended Answer and accepting the filing of the proposed First Amended Answer accompanying this Motion.

**App.239**

WHEREFORE, for the foregoing reasons, Defendant Liberty Insurance Corporation respectfully request this honorable Court to grant its Motion for Leave to File Amended Answer.

Dated: December 5, 2023                    Respectfully submitted,


                                           /s/ James C. Mehigan
                                           James C. Mehigan, Bar #: 480691
                                           Mehigan Law Group PLLC
                                           11921 Freedom Drive
                                           Suite 550
                                           Reston, Virginia  20190
                                           (703) 774-7281
                                           jmehigan@mehiganlawgroup.com

                                           *Attorney for Defendant*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 5, 2023, a copy of the foregoing was served via ECF to all parties of record.


                                           /s/ James C. Mehigan
                                           James C. Mehigan

**App.240**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **PHANTA U. DARAMY-ANDREWS,** | **:** | |
| | **:** | |
| **Plaintiff,** | **:** | |
| | **:** | |
| **v.** | **:** | **Civil Action No. 1:22-cv-01694-TJK** |
| | **:** | |
| **LIBERTY INSURANCE** | **:** | |
| **CORPORATION,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

### FIRST AMENDED ANSWER TO COMPLAINT

Defendant Liberty Insurance Corporation, by and through counsel, hereby files this First Amended Answer as follows:

1.      Defendant is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 1 of the Complaint.  To the extent that a response is required, Defendant denies the allegations of this paragraph.

2.      The allegations of this paragraph are conclusions of law regarding jurisdiction to which no responsive pleading is required.  To the extent that a response is required, Defendant denies the allegations contained in paragraph 2.

3.      The allegations of this paragraph are conclusions of law regarding jurisdiction to which no responsive pleading is required.  To the extent that a response is required, Defendant denies the allegations contained in paragraph 3.

4.      The allegations of this paragraph are conclusions of law regarding venue to which no responsive pleading is required.  To the extent that a response is required, Defendant denies the allegations contained in paragraph 4.

5.    Defendant is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 5 of the Complaint.  To the extent that a response is required, Defendant denies the allegations of this paragraph.

6.    Defendant admits that it is an insurance company organized under the laws of the state of Illinois and authorized to conduct business in the District of Columbia.  Defendant denies any remaining averments contained in this paragraph.

7.    Defendant admits that it issued a policy of insurance to Plaintiff relating to the property known as 707 49th Place, NE, Washington, DC  20019-4805 with a policy period of 1/26/19 to 1/26/20. Defendant denies any remaining averments contained in this paragraph.

8.    Defendant is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 8 of the Complaint.  To the extent that a response is required, Defendant denies the allegations of this paragraph.

9.    Defendant is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 9 of the Complaint.  To the extent that a response is required, Defendant denies the allegations of this paragraph.

10.    Defendant denies the allegations contained in Paragraph 10 of the Complaint.

11.    Defendant denies the allegations contained in Paragraph 11 of the Complaint.

12.    Defendant admits that it retained 1800 Packouts to clean and salvage Plaintiff's personal property. Defendant denies any remaining averments contained in this paragraph.

13.    Defendant admits that Plaintiff filed a claim under her homeowner's policy; and that Defendant conducted Plaintiff's examination under oath pursuant to the terms of the policy. Defendant denies any remaining averments contained in this paragraph.

14.    Defendant denies the allegations contained in Paragraph 14 of the Complaint.

**App.242**

15.     Defendant denies the allegations contained in Paragraph 15 of the Complaint.

16.     Defendant denies the allegations contained in Paragraph 16 of the Complaint.

17.     Defendant denies the allegations contained in Paragraph 17 of the Complaint.

**FIRST CAUSE OF ACTION: BREACH OF CONTRACT**

18.     Defendant repeats and incorporates its responses to paragraphs 1-17 of Plaintiff's Complaint as if fully set forth herein.

19.     Defendant denies the allegations contained in Paragraph 19 of the Complaint.

20.     Defendant denies the allegations contained in Paragraph 20 of the Complaint.

**SECOND CAUSE OF ACTION:**
**BREACH OF IMPLIED COVENT OF GOOD FAITH AND FAIR DEALING**

21.     Defendant repeats and incorporates its responses to paragraphs 1-20 of Plaintiff's Complaint as if fully set forth herein.

22.     The allegations of this paragraph are conclusions of law to which no responsive pleading is required.  To the extent that a response is required, Defendant denies the allegations contained in paragraph 22.

23.     Defendant denies the allegations contained in Paragraph 23 of the Complaint.

24.     Defendant denies the allegations contained in Paragraph 24 of the Complaint.

25.     Defendant denies the allegations contained in Paragraph 25 of the Complaint.

**THIRD CAUSE OF ACTION: UNJUST ENRICHMENT**

26.     Defendant repeats and incorporates its responses to paragraphs 1-25 of Plaintiff's Complaint as if fully set forth herein.

27.     Defendant denies the allegations contained in Paragraph 27 of the Complaint.

28.     Defendant denies the allegations contained in Paragraph 28 of the Complaint.

**App.243**

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are limited or barred by her failure to mitigate her damages.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff has failed to show that Defendant breached any duty owed to her.

### THIRD AFFIRMATIVE DEFENSE

The Complaint is barred by the Doctrine of Avoidable Consequences.

### FOURTH AFFIRMATIVE DEFENSE

The incident alleged in the Complaint is not sole or proximate cause of Plaintiff's damages.

### FIFTH AFFIRMATIVE DEFENSE

Any alleged damages of Plaintiff were caused by an intervening or superseding cause.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to attorney's fees.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to punitive damages.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to prejudgment interest.

### NINETH AFFIRMATIVE DEFENSE

Defendant hereby reserves the right to supplement its affirmative defenses at any time prior trial.

**App.244**

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by her failing to file her action within the one-year contractual time limit.

Dated: December 5, 2023                              Respectfully submitted,

                                        _/s/ James C. Mehigan_
                                        James C. Mehigan, Bar #: 480691
                                        Mehigan Law Group PLLC
                                        11921 Freedom Drive
                                        Suite 550
                                        Reston, Virginia  20190
                                        (703) 774-7281
                                        jmehigan@mehiganlawgroup.com

                                        *Attorney for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 5, 2023, a copy of the foregoing was served via ECF to all parties of record.

                                        _/s/ James C. Mehigan_
                                        James C. Mehigan

**App.245**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **PHANTA U. DARAMY-ANDREWS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Civil Action No. 1:22-cv-01694-TJK** |
| | : | |
| **LIBERTY INSURANCE** | : | |
| **CORPORATION,** | : | |
| | : | |
| **Defendant.** | : | |

## <u>ORDER</u>

IN CONSIDERATION OF Defendant Liberty Insurance Corporation's Motion for Leave to File Amended Answer, and any opposition thereto, it is this ____ day of December 2023 hereby

ORDERED that the motion be and is hereby GRANTED; and it is further

ORDERED that the First Amended Answer attached to Defendant's motion is hereby deemed filed as of the date of this Order.

_____
Timothy J. Kelly
United States District Court Judge

Copies by ECF to:

Charles C. Iweanoge, Esquire

James C. Mehigan, Esquire

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **PHANTA U. DARAMY-ANDREWS** | \* |
| **Plaintiff** | \* |
| | \* |
| **v.** | **\*CASE #: 1:22-CV-01694-TJK** |
| | \* |
| **LIBERTY INSURANCE CORPORATION** | \* |
| **Defendant** | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION FOR LEAVE TO FILE AMENDED ANSWER

NOW COMES, Plaintiff, Phanta U. Daramy-Andrews, by and through undersigned counsel, and moves this Honorable Court to deny Defendant's motion for leave to file amended answer and in support states:

### 1.    BACKGROUND FACTS

On or about April 21, 2019, the basement of the subject property flooded due to pipe break resulting in feces and water causing extensive damages to the basement, and personal properties in the basement. Plaintiff disputes that she received the policy containing the limitation period of one year.

Defendant accepted liability for the loss and issued a letter dated November 1, 2019, addressing the issue of supplemental damages. Following the difficulties encountered in complying with Defendant's demand, on March 5, 2020, Defendant sent a letter to Plaintiff suspending the investigation.

On April 4, 2022, Plaintiff filed the instant lawsuit in the Superior Court for the District of Columbia against Liberty Mutual Insurance affiliated and related entities

because Plaintiff was not aware of the exact liberty Mutual entity that issued her policy. On June 2, 2022, Plaintiff through Counsel received a certified copy of the Plaintiff's insurance policy. Defendant removed the case to this court, Plaintiff filed an amended complaint naming the defendant, Liberty Insurance Corporation, as the proper defendant. The amended complaint asserted three counts, namely: breach of contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment. (ECF 8)

On July 15, 2022, Defendant filed an answer and did not assert as an affirmative defense that this action is time barred by the contractual statute of limitation. Since the filing of the answer, Defendant did not move the court for leave to amend its answer to include the contractual affirmative defense of contractual limitation period or disclose the affirmative defense in its answer to interrogatories prior to the filing of its motion for summary judgment. Exhibit 1: Plaintiff's Answer to Interrogatories.

## ARGUMENT
## STANDARD OF REVIEW

"A party may amend its pleading once as a matter of course within" certain time periods, and "[i]n all other cases a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(1). This rule instructs that "[t]he court should freely give leave when justice so requires," *id.*, but "the grant or denial of leave to amend is committed to a district court's discretion," *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). The Supreme Court has

stressed that "the leave sought should, as the rules require, be 'freely given,'" unless a reason exists for denial, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The D.C. Circuit has indicated that "undue delay is a sufficient reason for denying leave to amend," but that a district court "should generally take into account the actions of other parties and the possibility of any resulting prejudice" in determining whether a delay is in fact undue. *Atchinson v. D.C.*, 73 F.3d 418, 426 (D.C. Cir. 1996).

In this case, Defendant seeks to amend its complaint to avoid the waiver of the affirmative defense of contractual limitation period in its answer to Plaintiff's amended complaint. The failure of the Defendant to assert the affirmative defense of contractual limitation period, is prejudicial to the Plaintiff. As a result of Defendant's delay in asserting the limitation period as a defense, Plaintiff did not conduct discovery on the contractual statute of limitation which at this stage of the proceeding is prejudicial to the Plaintiff because discovery has closed. Plaintiff would have conducted extensive discovery on the issue and the Plaintiff's other claims from 2015 that was still being adjusted many years after the incident. Additionally, Plaintiff in her affidavit averred that she did not receive the policy that provided the contractual statute of limitation. See Exhibit 2: Plaintiff's Affidavit ¶2. Interestingly, the most recent

renewal documents provided to the Plaintiff also does not include the policy document providing the limitation period.

Worthy of note is that Defendant had many opportunities to amend its answer to assert the contractual statute of limitation, even prior to the close of discovery but intentionally failed to do so most likely as a tactical advantage. Defendant in response to Plaintiff's interrogatories number 23 through 27 requesting policy requirement or provisions relating to affirmative defenses pled in its answer, had the opportunity to disclose the contractual limitation period but failed to do so. Additionally, it is inconceivable that Defendant became aware of the contractual limitation affirmative defense after the Plaintiff raised the waiver issue in her opposition to Defendant's motion for summary judgment. As a matter of fact, Defendant in paragraph 4 of its motion concedes that it was aware of its contractual limitation affirmative defense but did not assert the defense until it verified the defense through discovery. However, verification of an affirmative defense is not a precondition for asserting the affirmative defense in Defendant's answer. Worthy of note is that if Defendant who authored the policy with that alleged provision was not aware of it until it was verified through discovery, then how likely is it that Plaintiff was made aware of it in any policy document that Plaintiff as stated that she did not received.

Moreover, the deposition was conducted on August 9, 2023, but Defendant did not move to amend its answer prior to the close of discovery or the filing of its motion for summary judgment, demonstrating that the failure to assert the defense

was intentional and in bad faith. *See Atchinson v. D.C.,* 73 F.3d 418, 426 (D.C. Cir. 1996) (The court opined that the "undue delay is a sufficient reason for denying leave to amend," but that a district court "should generally take into account the actions of other parties and the possibility of any resulting prejudice" in determining whether a delay is in fact undue). It is reasonable to infer from Defendant's motion for leave to amend that Defendant was aware of its contractual statute of limitation defense at the time Defendant filed an answer but tactically decided to raise the defense so that Plaintiff would corner for tactical advantage. Defendant intentionally concealed the affirmative defense, till the filing of the motion for summary judgment. Defendant has not claimed that the affirmative defense was revealed during discovery but instead assert that the defense was verified at deposition. It defies logic that a provision of the policy which Defendant now relies on requires verification through deposition, when all facts were available to the Defendant at the time the answer was filed.

To show prejudice from a proposed amended pleading, an "opposing party must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely." *In re Vitamins Antitrust Litig.,* 217 F.R.D. 30, 32 (D.D.C. 2003). As discussed above, the prejudice to the Plaintiff is that discovery has closed, and Plaintiff did not conduct discovery on facts relevant to the issue of limitation and the defenses waiver relevant thereto. To allow amendment would require reopening discovery for Plaintiff to

conduct discovery on the contractual statute of limitation. As stated in Plaintiff's opposition to Defendant's motion for summary judgment, discovery could have been conducted to reveal other actions by the defendant that demonstrate waiver of the contractual statute of limitation defense. Additionally, Plaintiff would have conducted discovery into the issue of the contractual limitation period of one (1) year and how and when the policy document was provided to the Plaintiff as well as the various changes to the contractual limitation periods since she obtained the policy which would reveal if it may have been contained in the original policy issued in 2012 or any subsequent addendum, if at all.

Additionally, Plaintiff would have conducted discovery into the actions of the defendant that would have resulted in the waiver of contractual limitation period. Plaintiff would have prepared her defenses to the contractual statute of limitation, as well as other communication and actions that would demonstrate that Defendants waived any defense of contractual limitation period. Moreover, had Defendant asserted the affirmative defense in its answer or even before the close of discovery, Plaintiff would have conducted extensive discovery on the issue and the Plaintiff's other claims in from 2015 that was still being adjusted many years after the incident despite Defendant's allegation regarding one-year contractual limitation period. Moreover, Plaintiff has incurred attorney's fees and cost from the failure of Defendant to assert the affirmative defense in its answer or had filed a motion to dismiss based on contractual statute of limitation.

Defendant was aware of the affirmative defense at the time of the filing of its answer and intentionally and deliberately decided not to assert the defense and thus have waived it. Moreover, if Defendant had asserted the contractual limitation period as an affirmative defense in its answer, Plaintiff would have conducted discovery into the issue of the contractual limitation period of one (1) year and how and when the policy document was provided to the Plaintiff as well as the various changes to the contractual limitation periods since she obtained the policy.

Defendant's motion for leave to amend demonstrate that there is no rational reason, other than tactical advantage, that Defendant did not assert the affirmative defense in its answer despite knowledge of the date of loss and the date the complaint was filed. Defendant was aware of its affirmative defense when the Defendant filed its answer, answered interrogatories and the parties filed a joint proposed summary judgment briefing schedule, yet it did not move for leave from the court to amend its answer to the Amended Complaint, demonstrating the deliberate and intentional nature of its failure to assert the affirmative defense.

The Court should deny the motion for leave to amend answer to Plaintiff's amended complaint.

## <u>CONCLUSION</u>

The Court should deny Defendant's motion for leave to file amended answer based on the foregoing and any other reasons that may appear to the Court.

Respectfully submitted,
**THE IWEANOGES' FIRM, PC**

By:   /s/CharlesCIweanoge/s/
        Charles C. Iweanoge
        **Iweanoge Law Center**
        1026 Monroe Street, NE
        Washington, D.C. 20017
        Phone: (202) 347 – 7026
        Fax: (202) 347 – 7108
        Email: cci@iweanogesfirm.com

**CERTIFICATE OF FILING AND SERVICE**

I, CERTIFY that that a true and correct copy of the foregoing was electronically filed this 4th day of January 2024 and Defendant's Counsel would be served by the Court's e-serve system.

       /s/CharlesCIweanoge/s/
        Charles C. Iweanoge

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PHANTA U. DARAMY-ANDREWS, | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Civil Action No. 1:22-cv-01694-TJK** |
| | : | |
| **LIBERTY INSURANCE** | : | |
| **CORPORATION,** | : | |
| | : | |
| **Defendant.** | : | |

## DEFENDANT'S ANSWERS TO INTERROGATORIES

Defendant, through counsel, hereby answers Plaintiff's interrogatories, stating:

A.     The information in these Answers is not based solely on the knowledge of the answering party, but includes the knowledge of the party, its agents, representatives, and unless privileged, its attorneys.

B.     The word usage and sentence structure may be that of the attorney assisting in the preparation of these Answers and this does not necessarily purport to be the precise language of the answering party.

C.     The answering party reserves the right to amend, modify or supplement the Answers made herein upon receipt of new or different information obtained as a result of discovery and/or investigation undertaken on his or her behalf.

## GENERAL OBJECTIONS

The answering party objects to these Interrogatories to the extent that:

A.     They call for the disclosure of information either:  a) prepared or compiled in anticipation of litigation, and for which the party seeking the information has no substantial need

1

for same or is able to obtain same without undue hardship, or b) contains mental impressions, conclusions, opinions, or legal theories of counsel.

B.      They call for a legal conclusion and would necessarily require him or her to disclose the content of conversations with counsel.

C.      They are overbroad and unduly burdensome with respect to the scope of information sought.

D.      The information sought is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

E.      The Interrogatory is convoluted, vague, unintelligible, and impossible to answer as framed.

F.      They request information which is duplicative of that sought by previous Interrogatories.

## ANSWERS TO INTERROGATORIES

Without waiving any of the foregoing objections, the answering party offers the following Answers to Interrogatories:

**INTERROGATORY NO. 1**: Identify all persons with knowledge relative to this lawsuit (including occurrence witnesses, fact witnesses, or people otherwise having knowledge of facts pertinent to this action) and for each person identified provide a summary of the topics or issues relative to this lawsuit on which the person is knowledgeable.

**ANSWER:**  Plaintiff – has knowledge about this claim and her prior claims; as well as her prior conviction for insurance fraud.

Defendant and its representatives, including, but not limited to, adjusters Bryan Wallace, Brittanya Hawkins, and Charles Rogers have knowledge concerning the adjustment

2

of Plaintiff's insurance claim. Defendant and its representatives also have information relating to Plaintiff's prior claims.

All vendors retained in connection with Plaintiff's insurance, including but not limited to, ALE Solutions and Taylor Hendricks; Kerri Rapisardi and American Leak Detection, Inc.; Lidia Zambilovici, Akia Turner and 1800 Packouts; Kristen Pumphrey and Melinda Ragusa and Three Rivers Builders, LLC; Aleksandra (Ola) Wypuch and Rainbow International Restoration; Sigesmond Hart and Rotor Rooter; and Jimmy Gusky and Jimmy Gusky, LLC. The vendors have knowledge relating to the scope of their work in connection with Plaintiff's claim.

All individuals identified in discovery by any party. Defendant reserves the right to supplement this response upon the development of relevant information through discovery.

**INTERROGATORY NO. 2.**: Identify all persons participating in the preparation of answers to these interrogatories and requests for production and specify which answers or responses each person contributed to.

**ANSWER:** Bryan Wallace, with the assistance of counsel.

**INTERROGATORY NO. 3**: Please provide all disclosures required by Rule 26(a)(2) regarding retained experts or other witnesses expected to provide testimony under Evidence Rule 702, 703, or 705.

**ANSWER**: Defendant will disclose its experts in accordance with the court's scheduling order.

**INTERROGATORY NO. 4**: Please describe the process used and steps taken to review Phanta Daramy-Andrews' claim, including approval or rejection, for real property damages

3

**ANSWER:**  Objection. This interrogatory is vague and requires detail that is too burdensome to provide in a written answer to an interrogatory. Without waiving any objection, Defendant states that the adjustment of Plaintiff's claim, like any claim, involved, but is not limited to, investigating the facts of the claim, damage mitigation, determining whether any damaged contents can be restored, investigating and determining coverage, determining the scope and cost of repair, determining the value of lost contents, making coverage and value determinations, and when appropriate, issuing payment.

**INTERROGATORY NO. 5**: Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, supporting the adjuster's denial of Plaintiff's claim for personal property losses.

**ANSWER:** Defendant did not deny Plaintiff's claim for personal property losses.

**INTERROGATORY NO. 6**: Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of the allegations in paragraph 9 of the amended complaint.

**ANSWER**: Objection. This interrogatory calls for legal conclusions regarding coverage. Without waiving any objection, the policy speaks for itself. Furthermore, Defendant does not have facts to affirm or deny the primary purpose of Plaintiff's basement. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 7**: Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of the allegations in paragraph 10 of the amended complaint.

**ANSWER**: Objection. This interrogatory calls for legal conclusions and interpretation of specific policy language. Without waiving any objection, the policy speaks for itself. Furthermore, Defendant did not deny the claim.

4

**INTERROGATORY NO. 8**: Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of the allegations in paragraph 11 of the amended complaint.

**ANSWER**: Objection. This interrogatory calls for legal conclusions regarding coverage. Without waiving any objection, the policy speaks for itself. Furthermore, based on Defendant's investigation, Plaintiff's contents claim did not amount to "a total loss entitling plaintiff to the full insurable amount shown on her policy for personal property." Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 9**: Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of many of the allegations in paragraph 12 of the amended complaint.

**ANSWER**: Objection. This interrogatory calls for legal conclusions regarding coverage. Without waiving any objection, the policy speaks for itself. Furthermore, it is Plaintiff's responsibility to make her claim, including providing an inventory of the contents she claims were lost or damaged as a result of the loss. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 10**: Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of many of the allegations in paragraph 13 of the amended complaint.

**ANSWER**: Objection. This interrogatory calls for legal conclusions regarding coverage. Without waiving any objection, the policy speaks for itself. Furthermore, it is Plaintiff's responsibility to make her claim, including providing an inventory of the contents she claims were lost or damaged as a result of the loss, which she did not do. Defendant reserves

5

the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 11:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of the allegations in paragraph 14 of the amended complaint.

**ANSWER:**    Objection. This interrogatory calls for legal conclusions regarding coverage. Without waiving any objection, the policy speaks for itself. Furthermore, it is Plaintiff's responsibility to make her claim, including providing an inventory of the contents she claims were lost or damaged as a result of the loss, which she did not do. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 12:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of the allegations in paragraph 15 of the amended complaint.

**ANSWER:** Objection. This interrogatory calls for legal conclusions regarding coverage. Without waiving any objection, the policy speaks for itself. Furthermore, it is Plaintiff's responsibility to make her claim, including providing an inventory of the contents she claims were lost or damaged as a result of the loss, which she did not do. It is also her responsibility to show that the damage was caused by the April 21, 2019 loss, and not from her prior claims. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

6

**INTERROGATORY NO. 13:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of the allegations in paragraph 16 of the amended complaint.

**ANSWER:** Objection. This interrogatory contains false facts and calls for legal conclusions regarding coverage. Without waiving any objection, the policy speaks for itself. Furthermore, it is Plaintiff's responsibility to make her claim, including providing an inventory of the contents she claims were lost or damaged as a result of the loss, which she did not do. Moreover, Defendant did not refuse to may any payment. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 14:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of the allegations in paragraph 17 of the amended complaint.

**ANSWER:** Objection. This interrogatory contains false facts, calls for legal conclusions regarding coverage, and seeks to shift the burden of proof, which is Plaintiff's responsibility to bear. Without waiving any objection, the policy speaks for itself. Furthermore, it is Plaintiff's responsibility to make her claim and prove breach, including providing an inventory of the contents she claims were lost or damaged as a result of the loss, which she did not do. Moreover, Defendant did not refuse to may any payment. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 15:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of the allegations in paragraph 19 of the amended complaint.

**ANSWER:** Objection. This interrogatory contains false facts, calls for legal conclusions regarding coverage, and seeks to shift the burden of proof, which is Plaintiff's responsibility to bear. Without waiving any objection, the policy speaks for itself. Furthermore, it is Plaintiff's

7

responsibility to make her claim and prove breach, including providing an inventory of the contents she claims were lost or damaged as a result of the loss, which she did not do. Moreover, Defendant did not refuse to may any payment. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 16:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of the allegations in paragraph 20 of the amended complaint.

**ANSWER:** Objection. This interrogatory contains false facts, calls for legal conclusions regarding coverage, and seeks to shift the burden of proof, which is Plaintiff's responsibility to bear. Without waiving any objection, the policy speaks for itself. Furthermore, it is Plaintiff's responsibility to make her claim and prove breach, including providing an inventory of the contents she claims were lost or damaged as a result of the loss, which she did not do. Moreover, Defendant did not refuse to may any payment. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 17:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of the allegations in paragraph 22 of the amended complaint.

**ANSWER:** Objection. This interrogatory calls for legal conclusions regarding coverage, and seeks to shift the burden of proof, which is Plaintiff's responsibility to bear. Without waiving any objection, Paragraph 22 of the Amended Complaint contains a statement of law to which no response is required. Furthermore, the policy speaks for itself. Furthermore, it is Plaintiff's responsibility to make her claim and prove breach, including providing an inventory of the contents she claims were lost or damaged as a result of the loss, which she did not do. Moreover, Defendant denies that it treated Plaintiff unfairly or not in good faith. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

8

**INTERROGATORY NO. 18:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of the allegations in paragraph 23 of the amended complaint.

**ANSWER**: Objection. This interrogatory calls for legal conclusions regarding coverage and the application of the covenant of good faith and fair dealing, and seeks to shift the burden of proof, which is Plaintiff's responsibility to bear. Without waiving any objection, Paragraph 23 of the Amended Complaint contains erroneous allegations of facts and a statement of law to which no response is required. Furthermore, the policy speaks for itself. Furthermore, it is Plaintiff's responsibility to make her claim and prove breach, including providing an inventory of the contents she claims were lost or damaged as a result of the loss, which she did not do. Moreover, Defendant denies that it denied Plaintiff the fruit and benefit of her insurance contract. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 19:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of the allegations in paragraph 24 of the amended complaint.

**ANSWER**: Objection. This interrogatory calls for legal conclusions regarding coverage and the application of the covenant of good faith and fair dealing, and seeks to shift the burden of proof, which is Plaintiff's responsibility to bear. Without waiving any objection, Paragraph 24 of the Amended Complaint contains erroneous allegations of facts and a statement of law to which no response is required. Furthermore, the policy speaks for itself. Furthermore, it is Plaintiff's responsibility to make her claim and prove breach, including providing an inventory of the contents she claims were lost or damaged as a result of the loss, which she did not do. Moreover, Defendant denies that it breached the implied covenant of good faith and fair dealing

9

and deprived Plaintiff the bargained value of her insurance contract. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 20:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of the allegations in paragraph 25 of the amended complaint.

**ANSWER:** Objection. This interrogatory calls for legal conclusions regarding coverage and the application of the covenant of good faith and fair dealing, and seeks to shift the burden of proof, which is Plaintiff's responsibility to bear. Without waiving any objection, Paragraph 25 of the Amended Complaint contains erroneous allegations of facts and a statement of law to which no response is required. Furthermore, the policy speaks for itself. Furthermore, it is Plaintiff's responsibility to make her claim and prove breach, including providing an inventory of the contents she claims were lost or damaged as a result of the loss, which she did not do. Moreover, Defendant denies that it denied Plaintiff the fruit and benefit of her insurance contract. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 21:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of the allegations in paragraph 27 of the amended complaint.

**ANSWER:** Objection. This interrogatory calls for legal conclusions regarding coverage and the application of the subject policy, and seeks to shift the burden of proof, which is Plaintiff's responsibility to bear. Without waiving any objection, Paragraph 27 of the Amended Complaint contains erroneous allegations of facts to which no response is required. Furthermore, the policy speaks for itself. Furthermore, it is Plaintiff's responsibility to make

10

her claim and prove breach, including providing an inventory of the contents she claims were lost or damaged as a result of the loss, which she did not do. Moreover, Defendant denies that it withheld insurance payments. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 22:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, for the denial of the allegations in paragraph 28 of the amended complaint.

**ANSWER:** Objection. This interrogatory calls for legal conclusions regarding coverage and the application of the legal theory of unjust enrichment, and seeks to shift the burden of proof, which is Plaintiff's responsibility to bear. Without waiving any objection, Paragraph 28 of the Amended Complaint contains erroneous allegations of facts and a conclusion of law to which no response is required. Furthermore, the policy speaks for itself. Furthermore, it is Plaintiff's responsibility to make her claim and prove breach, including providing an inventory of the contents she claims were lost or damaged as a result of the loss, which she did not do. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 23:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, which support your first affirmative defense that the claims are limited or barred by her failure to mitigate her damages.

**ANSWER:** Plaintiff had an obligation to protect her property and provide Defendant with an inventory of her contents, which she did not do. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 24:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, which support your

11

second affirmative defense that Plaintiff has failed to show that Defendant breached any duty owed to her.

**ANSWER**: Objection. This interrogatory calls for legal conclusions regarding coverage, and seeks to shift the burden of proof, which is Plaintiff's responsibility to bear. Without waiving any objection, Plaintiff failed to establish that she is entitled to additional benefit for her loss, as she has failed to provide documentation of her damages. Furthermore, the policy speaks for itself. Furthermore, it is Plaintiff's responsibility to make her claim and prove breach, including providing an inventory of the contents she claims were lost or damaged as a result of the loss, which she did not do. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 25:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, which support your third affirmative defense that the complaint is barred by the Doctrine of Avoidable Consequences.

**ANSWER:** Objection. This interrogatory calls for legal conclusions regarding the applicability of the doctrine of avoidable consequences. Without waiving any objection, Plaintiff, among other things, failed protect her property from further damage after her April 4, 2015 water damage claim the August 16, 2018 basement flood claim. Additionally, Plaintiff failed to provide an inventory of the contents she claims were lost or damaged as a result of the loss. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 26:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, which support your fourth affirmative defense that the incident alleged in the Complaint is not sole or proximate cause of Plaintiff's damages.

12

**ANSWER**: Objection. This interrogatory calls for legal conclusions regarding causation. Without waiving any objection, Plaintiff, among other things, failed protect her property from further damage after her April 4, 2015 water damage claim the August 16, 2018 basement flood claim. Additionally, Plaintiff failed to provide an inventory of the contents she claims were lost or damaged as a result of the loss. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

**INTERROGATORY NO. 27:** Please describe in detail the factual basis, including but not limited to the specific insurance policy requirement or provisions, which support your fifth affirmative defense that any alleged damages of Plaintiff were caused by an intervening or superseding cause.

**ANSWER:**  Objection. This interrogatory calls for legal conclusions regarding the applicability of the doctrine of avoidable consequences. Without waiving any objection, Plaintiff, among other things, failed protect her property from further damage after her April 4, 2015 water damage claim and the August 16, 2018 basement flood claim. Additionally, Plaintiff failed to provide an inventory of the contents she claims were lost or damaged as a result of the loss. Defendant reserves the right to supplement this response upon the development of relevant information in discovery.

13

I, Bryan Wallace, designated representative for Liberty Insurance Corporation, believe based upon reasonable inquiry that the foregoing answers are true to the best of my knowledge, information, and belief.

Bryan Wallace

14

/s/ James C. Mehigan
James C. Mehigan, Bar #: 480691
Mehigan Law Group PLLC
11921 Freedom Drive
Suite 550
Reston, Virginia 20190
(703) 774-7281
jmehigan@mehiganlawgroup.com

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing filing was served by electronic and regular

first-class mail on this 10th day of May 2023, to:

Charles C. Iweanoge, Esquire
THE IWEANOGES' FIRM P.C.
1026 Monroe Street, NE
Washington, DC 20017

/s/ James C. Mehigan
James C. Mehigan

15

**Exhibit 2**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA
### Civil Division

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **PHANTA U. DARAMY-ANDREWS** | \* |
| **Plaintiff** | \* |
| | \* |
| **v.** | \***CASE #: 1:22-CV-01694-TJK** |
| | \* |
| **LIBERTY INSURANCE CORPORATION** | \* |
| **Defendant** | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### AFFIDAVIT OF PHANTA U. DARAMY-ANDREWS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT

I, Phanta Daramy-Andrews, an adult, affirm under penalty of perjury as allowed by 28 U.S.C.§1746(2) that the following statements are based on personal knowledge and are true to the best of my knowledge, belief and understanding:

1.     I am the owner of the property known as 707 49th Place, NE, Washington, DC, 20019. I purchased insurance coverage from the Defendant, Liberty Insurance Corporation with Policy Number H37-238-660209-40 8 4.

2.     My property has been insured with Liberty Insurance Company from about 2012 and has been renewed annually. The insurance policy for the relevant period was renewed effective January 26, 2019, with an expiration date of January 26, 2020. At the time of the insurance renewal, I only received the declaration page of the insurance policy without the LibertyGuard Deluxe Homeowners Policy.

3.     In 2019, Liberty Insurance was still adjusting and negotiating my personal property claims that occurred in 2015 and 2018.

4.     On or about April 21, 2019, the basement of the property flooded due to pipe break, which caused extensive feces damages to the basement, and most

of my personal properties in the basement.

5.      Liberty contacted 1-800-Packout to come to my residence and removed my personal properties damaged as a result.

6.      I-800-Packout declared pictures as total loss and stored the other items in boxes without cleaning based on the instruction of the insurance company.

7.      When I filed the claim, Defendant commenced insurance fraud investigation and hired an attorney to depose the Plaintiff. After my deposition on October 19, 2019, Defendant accepted liability for the loss and issued a letter dated November 1, 2019, addressing the issue of supplemental damages.

8.      I requested for payment of my personal property declared total loss by 1-800-Packout and Defendant requested that I itemize all my personal property in the possession and custody of 1-800-Packout. I went to the storage of 1-800-Packout on at least two occasions to itemize my personal property stored at that location, until COVID-19 Pandemic and closure of most businesses happened.

9.      On March 5, 2020, Defendant sent a letter to me advising that its investigation was being suspended and will reopen the claim when I submit the signed proof of loss.

10.     The letter did not advise me that my claim has been denied, neither did it inform me that despite the suspension that I must file a complaint prior to April 20, 2020 if I do not submit complete inventory list and signed proof of claim by that date or notify me that the insurance policy for which I only received the declaration page at the time of renewal provided that I must file a claim in court

Page **2** of **3**

within I year of the date of loss even though the claim has been accepted.

11.     My communication with Defendant led me to believe in good faith that my claim has been accepted and that the remaining issue was the value of my personal properties declared total loss after itemization which was delayed due to covid closure and the hazardous conditions of the stored personal properties.

12.     I did not receive any checks from the Defendant for payment of my personal property or cleaning of the basement.

13.     I have not been paid for my damaged personal property despite Liberty Insurance acknowledging personal property loss.

## AFFIRMATION

I SOLEMNLY AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE MATTERS AND FACTS CONTAINED IN THE FOREGOING ARE BASED ON PERSONAL KNOWLEDGE AND ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION, AND BELIEF.

_____
Phanta Daramy-Andrews

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### Civil Division

**************************************************************************

| | |
|---|---|
| **PHANTA U. DARAMY-ANDREWS** | * |
| **Plaintiff** | * |
| | * |
| **v.** | **\*CASE #: 1:22-CV-01694-TJK** |
| | * |
| **LIBERTY INSURANCE CORPORATION** | * |
| **Defendant** | * |

**************************************************************************

### ORDER

**UPON CONSIDERATION** of Defendant's Motion for Leave to File Amended Answer and Plaintiff's Opposition filed thereto, it is this _____ day of _____ 2024,

**ORDERED** that Defendant's Motion be and is hereby **DENIED**; and it is

**IT IS SO ORDERED.**

_____
Judge Timothy J. Kelly
U.S. District Court Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **PHANTA U. DARAMY-ANDREWS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No. 1:22-cv-01694-TJK** |
| | : | |
| **LIBERTY INSURANCE** | : | |
| **CORPORATION,** | : | |
| | : | |
| **Defendant.** | : | |

**REPLY TO PLAINTIFF'S OPPOSITION TO**
**DEFENDANT'S MOTION FOR LEAVE TO FILE AMENDED ANSWER**

Defendant Liberty Insurance Corporation, by and through counsel, hereby files this Reply to Plaintiff's Opposition to Defendant's Motion for Leave to File Amended Answer, and for reasons, states:

1.     Plaintiff falsely argues that granting the motion would cause undue delay; and that she would be prejudiced by the proposed Amended Answer because she would have engaged in more discovery had she known that Defendant would rely on the contractual limitations term.  In fact, Plaintiff was not prohibited from seeking any discovery. Plaintiff had ample time and opportunity to engage in whatever discovery she pleased.  She chose, however, not to take any depositions or engage in any other discovery beyond written discovery, even after the Court granted the parties' joint request for discovery extension. (ECF 14).  Moreover, Plaintiff's argument that she was caused to incur additional attorney's fees and expenses rings hollow, since she conducted very little discovery.  Thus, because the requested amendment does not cause delay or prejudice to Plaintiff, Defendant asks that the motion be granted.

2.     Additionally, Plaintiff falsely argues that Defendant did not engage in discovery on the limitations issue. As pointed out in its Motion for Summary Judgment, Defendant deposed

Plaintiff and asked specific questions regarding facts surrounding the contractual limitations issue, in particular whether Defendant engaged in any activity that prevented or dissuaded Plaintiff from timely filing suit.  (ECF 20-2 at 6). Thus, while Plaintiff should have been aware of the contractual limitations provision when she purchased the policy and agreed to the terms, she specifically would have been aware of Defendant's intention to enforce that term when she was deposed on August 9, 2023.  Thus, because Defendant did in fact engage in discovery on the contractual limitations issue, Plaintiff's objections to the proposed amendment to the Complaint have no merit and Defendant asks that the motion be granted.

3.      Accordingly, because Plaintiff will not be prejudiced by the proposed amendment to the Complaint, her objections have no merit and Defendant's motion should be granted.

WHEREFORE for the foregoing reasons, Defendant Liberty Insurance Corporation respectfully requests that this honorable Court GRANT its Motion for Leave to File Amended Complaint.

Dated: January 11, 2024                    Respectfully submitted,

_/s/ James C. Mehigan_
James C. Mehigan, Bar #: 480691
Mehigan Law Group PLLC
11921 Freedom Drive
Suite 550
Reston, Virginia  20190
(703) 774-7281
jmehigan@mehiganlawgroup.com

*Attorney for Defendant*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on January 11, 2024, a copy of the foregoing was served via ECF to all parties of record.

*/s/ James C. Mehigan*
James C. Mehigan

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **PHANTA U. DARAMY-ANDREWS,** | **:** | |
| | **:** | |
| **Plaintiff,** | **:** | |
| | **:** | |
| **v.** | **:** | **Civil Action No. 1:22-cv-01694-TJK** |
| | **:** | |
| **LIBERTY INSURANCE** | **:** | |
| **CORPORATION,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

### DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

Defendant Liberty Insurance Corporation, by and through counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby renews its motion for summary judgment as to all claims on the basis that no disputed material fact exists, and that Defendant is entitled to judgment as a matter of law. In support of this motion, Defendant respectfully refers this honorable Court to the attached Statement of Material Facts Not in Dispute and Memorandum of Points and Authorities, attached hereto and incorporated herein.

WHEREFORE for the foregoing reasons, Defendant Liberty Insurance Corporation respectfully requests that this honorable Court GRANT its Motion for Summary Judgment.

Dated: August 20, 2024                                  Respectfully submitted,

*/s/ James C. Mehigan*
James C. Mehigan, Bar #: 480691
Mehigan Law Group PLLC
11921 Freedom Drive
Suite 550
Reston, Virginia  20190
(703) 774-7281
jmehigan@mehiganlawgroup.com

*Attorney for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 19, 2023, a copy of the foregoing was served via ECF to all parties of record.

*/s/ James C. Mehigan*
James C. Mehigan

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **PHANTA U. DARAMY-ANDREWS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No. 1:22-cv-01694-TJK** |
| | : | |
| **LIBERTY INSURANCE** | : | |
| **CORPORATION,** | : | |
| | : | |
| **Defendant.** | : | |

## DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Defendant Liberty Insurance Corporation, by and through counsel, hereby sets forth the following statement of material facts not in dispute in support of its Motion for Summary Judgment:

1.      Plaintiff owns the house located at 707 49th Place, NE, Washington, DC  20019 that forms the basis of this Dispute. Deposition of Phanta Daramy-Andrews (**Exhibit 1**) 5-6. *See also,* Amended Complaint (ECF 8) ¶ 7.

2.      Plaintiff purchased a homeowner's insurance policy from Defendant that provides insurance coverage for damage to her house and personal belongings inside the house, subject to the terms of the policy. This policy was in effect for the period of January 26, 2019 through January 26, 2020. Certified Copy of Policy (**Exhibit 2**).

3.      On April 21, 2019, the basement of Plaintiff's house incurred damage as the result of a water leak in the basement caused by a pipe burst. Exhibit 1 at 38-9.

4.      Defendant determined coverage for the loss in accordance with the terms of the policy and paid $21,483.17 to remediate and repair the dwelling, $6,069.51 clean and repair her

personal property affected by the event, and $7,280.48 in alternative living expenses for a reasonable time while the dwelling was being repaired. *Id.* at 47-53.

5.      Plaintiff, however, disputes Defendant's determination regarding the value of her claim, and contends that she is entitled to $75,000 for her personal property; and that the cost to repair the house is at least $50,000 to $60,000. *Id*. at 60-64.

6.      On April 4, 2022, nearly three years after the date of loss, Plaintiff first filed suit against Defendant[1] claiming damages under the policy for the April 21, 2019 loss. *See*, District of Columbia Superior Court Certified Docket Report (ECF 7) at 4 and Original Complaint (ECF 1-1).

7.      Pursuant to the terms of the policy, however, no action may be brought against Defendant unless the action is started within one year after the date of loss. Exhibit 2 Section I – Conditions p. 10.

8.      Defendant did not do or say anything to prevent Plaintiff from filing a lawsuit against it. Exhibit 1 at 42-43.

9.      Plaintiff was represented by counsel as early as October 18, 2019 when she sat for an examination under oath, as authorized by the policy. *Id*. at 40-41, *see also*, Exhibit 2 Section I – Conditions p. 8.

---

[1] Plaintiff originally named Liberty Mutual Insurance Company Property, Liberty Mutual Group, Inc., and Liberty Mutual Fire Insurance Company; however, on July 9, 2022 she amended her Complaint substituting Defendant as the party that issued the policy. *See*, Amended Complaint (ECF 8)

**App.280**

Dated: August 20, 2024                    Respectfully submitted,


                                          */s/ James C. Mehigan*
                                          James C. Mehigan, Bar #: 480691
                                          Mehigan Law Group PLLC
                                          11921 Freedom Drive
                                          Suite 550
                                          Reston, Virginia  20190
                                          (703) 774-7281
                                          jmehigan@mehiganlawgroup.com


                                          *Attorney for Defendant*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 20, 2024, a copy of the foregoing was served via ECF to all parties of record.


                                          */s/ James C. Mehigan*
                                          James C. Mehigan

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **PHANTA U. DARAMY-ANDREWS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No. 1:22-cv-01694-TJK** |
| | : | |
| **LIBERTY INSURANCE** | : | |
| **CORPORATION,** | : | |
| | : | |
| **Defendant.** | : | |

<u>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**</u>
<u>**MOTION FOR JUDGMENT**</u>

Defendant Liberty Insurance Corporation, by and through counsel, hereby sets forth the following memorandum of points and authorities in support of its Motion for Summary Judgment:

**I.    FACTS**

On April 21, 2019 Plaintiff suffered a pipe burst in the basement of her house that caused damage to the dwelling, as well as some personal belongings. Deposition of Phanta Daramy-Andrews (**Exhibit 1**) at 38-39.

At the time of the loss, Plaintiff had in place a homeowner's insurance policy issued by Defendant that provided insurance coverage for damage to her home and personal property, subject to the terms of the policy. Certified Copy of Policy (**Exhibit 2**)

After Plaintiff reported the loss, Defendant investigated the claim and determined coverage for loss. It issued payment of $21,483.17 to remediate and repair the dwelling, $6,069.51 to clean and repair her personal property affected by the loss, and $7,280.48 in alternative living expenses to cover her living expenses for a reasonable period while the house was being repaired.  Exhibit 1 at 47-53.

Plaintiff, however, was dissatisfied with Defendant's coverage determination, believing that the value to her personal property was $75,000 and the cost to repair her home would be in the range of $50,000 to $60,000.  *Id*. at 60-64.

On or before October 18, 2019, Plaintiff retained counsel to represent her in her claim against Defendant. *Id*. at 40-41.

Because there was a dispute over coverage of the Plaintiff's personal property claim, Defendant requested an examination under oath, pursuant to the terms of the policy to inquire about her personal property claim. On October 18, 2019 Plaintiff appeared with her counsel for the EUO. *Id*.

Still dissatisfied with the outcome of her claim, Plaintiff initiated this lawsuit on April 4, 2022 in the Superior Court for the District of Columbia.  *See*, District of Columbia Superior Court Certified Docket Report (ECF 7) at 4 and Original Complaint (ECF 1-1). The original Complaint erroneously named Liberty Mutual Insurance Company Property, Liberty Mutual Group, Inc., and Liberty Mutual Fire Insurance Company as the underwriters of her insurance policy (ECF 1-1).  Defendant removed the case to this Court, and on July 9, 2022, Plaintiff amended the Complaint naming Defendant as the correct party to the insurance agreement. *See*, Amended Complaint (ECF 8).

The Amended Complaint claims three counts: breach of contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment (ECF 8).

Plaintiff, however, waited nearly three years to file suit against Defendant for the loss that occurred on April 21, 2019.

According to the terms of the policy, no action can be brought unless the action is started within one year from the date of loss. Exhibit 2 Section I – Conditions p. 10.

**App.283**

Defendant did nothing and said nothing to dissuade Plaintiff from filing suit at any time. Exhibit 1 at 42-43. Moreover, Defendant did not waive the limitation provision in the policy and did not concede liability or entertain settlement negotiations regarding her policy dispute.

Consequently, because Plaintiff waited nearly three years to file her lawsuit against Defendant, her claims are barred by the terms of the policy. Defendant is therefore entitled to judgment as a matter of law.

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As this Court recently noted, "[s]ummary judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Barot v. Aldon Mgmt.*, Civil Action No. 18-140 (TJK), 2023 U.S. Dist. LEXIS 169743, at *6-8 (D.D.C. Sep. 22, 2023) quoting *Lopez v. Council on American-Islamic Rels. Action Network, Inc.*, 826 F.3d 492, 496, 423 U.S. App. D.C. 328 (D.C. Cir. 2016) (internal quotes omitted).

Moreover,  in order "[t]o survive summary judgment, the nonmoving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Barot v. Aldon Mgmt.*, Civil Action No. 18-140 (TJK), 2023 U.S. Dist. LEXIS 169743, at *8 quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotes omitted).

III.     ARGUMENT

A.     PLAINTIFF'S CLAIMS FAIL BECAUSE SHE FAILED TO
FILE SUIT WITHIN ONE-YEAR CONTRACTUAL TIME LIMIT

Plaintiff's homeowner's insurance policy requires that any lawsuit against Defendant be

started within one year of the date of the loss:

**8.     Suit Against Us.**  No action can be brought unless the policy provisions
have been complied with and the action is started within one year after the
date of loss.

Exhibit 2 Section I – Conditions p. 10.

Here, the loss occurred on April 21, 2019 and Plaintiff waited to file suit until nearly

three years later on April 4, 2022.  Plaintiff's case therefore is barred by the terms of the policy.

The District of Columbia enforces contractual limitations provisions. "Under District of

Columbia law, contractual provisions limiting the period within which insurance policy-holders

may validly initiate a lawsuit are generally enforceable." *Gardner v. Erie Ins. Co.*, Civil Action

No. 22-1977 (RC), 2022 U.S. Dist. LEXIS 201746, at *8-9 (D.D.C. Nov. 4, 2022) quoting

*Martinez v. Hartford Cas. Ins. Co.*, 429 F. Supp. 2d 52, 56 (D.D.C. 2006) (internal quotes

omitted).  The general rule in the District of Columbia "is that an insurance company is not

deemed to have waived a contractual limitations period, and is not estopped to assert the

limitations period as a bar to a claim, unless the company has conceded liability and some

discussion of a settlement offer has occurred." *Bailey v. Greenberg*, 516 A.2d 934, 938-39 (D.C.

1986). The Court in *Bailey* set forth the reason for the rule, stating "[Plaintiff] contends that the

12-month limitation period should be rejected as being contrary to public policy. We do not

agree. The possibility of fraudulent claims regrettably looms ever-present in the realities of the

insurance industry. While it is within the power of Congress to legislate in this area, it has not

done so, and we see no basis for our invalidating such a contractual provision." *Id*. at 651. Thus,

**App.285**

under District Columbia law, insurance policy limitations periods are enforceable unless the insurance company has waived the provision or conceded liability for the contract claim and engaged in settlement discussions.

Here, Defendant did not waive the one-year limitations provision and did not concede liability or engage in settlement discussions with Plaintiff regarding the Plaintiff's claims for additional coverage. Defendant has made no offers in response to Plaintiff's lawsuit and has not agreed to mediation or any other form of alternative dispute resolution in this case.

The primary issue before the Courts in both *Bailey* and *Martinez*, however, was not whether the contractual limitations period is enforceable under District of Columbia law, for indeed it is, but whether the insurance company was estopped from benefiting from the provision by deliberately causing the insured party to delay filing suit and miss the contractual deadline for doing so. *Id*. and *Martinez* 429 F. Supp. 2d  at 57.  Under District of Columbia law, a statute of limitations defense can be deemed unenforceable under equitable estoppel principles if it is found that the insurance company lulled the insured party from filing suit within the contractual or statutory limitation period: "an insurance company is estopped from raising a contractual limitations period as an affirmative defense where the company has made misleading representations to the insured and the insured has relied on those representations to his or her detriment." *Id*. at 58 quoting  *Bailey*, 516 A.2d at 939 n. 5 (internal quotations omitted).

Here, however, equitable estoppel does not apply as Defendant did nothing to lull Plaintiff from filing suit. At her deposition Plaintiff was specifically asked whether Defendant did anything to prevent her from filing suit:

Q    Did anybody at Liberty Mutual, including Brian Wallace and Ms. Hawkins ever tell you not to bring a claim against Liberty Mutual?

**App.286**

*       *       *

A       The actions spoke.

Q       Okay.  Did Liberty Mutual ever dissuade you from filing suit with respect

to your April 21, 2019 claim?

A       Can you rephrase your question, sir?

Q       Okay. Did anybody at Liberty Mutual do anything or say anything that

would indicate that they were trying to prevent you from filing a lawsuit against

them?

A       I don't think they prevented me.  But I give them the benefit of the doubt

to do the right thing as my insurer.

Exhibit 1 at 42-43.  Thus, the evidence shows that Defendant did not attempt to lull Plaintiff into

delaying filing suit to miss the contractual limitations deadline.

Moreover, Plaintiff was represented by an attorney as early as October 18, 2019, which

made it even less likely that Plaintiff would have been lulled by Defendant into missing the

deadline:  "[a]lthough a claimant's representation by an attorney is not dispositive in determining

whether an insurance company is estopped because of misleading statements from asserting the

statute of limitations… courts generally are reluctant to find the claimant has been misled by the

insurance company where the claimant was sophisticated in business matters or had retained

legal counsel." *Bailey*, 516 A.2d at 939 citing *Sumrall v. City of Cypress*, 258 Cal. App. 2d 565,

65 Ca. Rptr. 755, 758 (1968).

Accordingly, because (1) the District of Columbia enforces contractual limitations terms

in insurance contracts; (2) Defendant did not waive the one-year contractual limitations period in

the subject insurance policy by accepting liability or entering into settlement negotiations; (3)

6

**App.287**

Plaintiff was represented by an attorney months before expiration of the contractual limitations period; and (4) Defendant did nothing to lull Plaintiff into missing the deadline for filing suit, Plaintiff's case is barred by the applicable one-year limitation term in her insurance policy and Defendant is entitled to judgment as a matter of law.

### B.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS BECAUSE OF THE INSURANCE CONTRACT IN PLACE

Plaintiff also asserts the quasi-contract claim of unjust enrichment. That claim, however, is unavailing because there is an actual contract governing the parties' rights and duties. The District of Columbia Court of Appeals has recognized that "[a]t common law there were cases in which the courts, in the absence of an actual contract, nevertheless imposed a duty . . . under certain conditions upon one party to requite another in order to avoid the former's unjust enrichment . . . . Unjust enrichment occurs when a person retains a benefit (usually money) which in justice and equity belongs to another . . . . [Restitution by finding unjust enrichment] is an obligation which the law creates, in the absence of any agreement, when and because of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it . . . ." *Harrington v. Trotman*, 983 A.2d 342, 346 (D.C. 2009) quoting *Jordan Keys & Jessamy, LLP v. St. Paul Fire and Marine Ins. Co.*, 870 A.2d 58, 63-64 (D.C. 2005) (internal quotes omitted).

Thus, while the theory of unjust enrichment may apply in the absence of a contract, it does not apply when there is an actual written contract.  "[T]here can be no claim for unjust enrichment when an express contract exists between the parties. *Harrington* 983 A.2d at 346 quoting *Schiff v. American Ass'n of Retired Persons*, 697 A.2d 1193, 1194 (D.C. 1997) (internal quotes omitted).

**App.288**

Here, Plaintiff claims that "[d]espite realizing substantial premium from plaintiff, Defendant has withheld the insurance payments owed to plaintiff… [and] therefore [has] been unjustly enriched at plaintiff's expense." *See,* Amended Complaint (ECF 8) at ¶¶ 27 & 28.  Her unjust enrichment claim fails, however, because there is an actual written insurance agreement between the parties.  Plaintiff's claim falls squarely inside the contract and therefore she cannot also bring a cause of action for unjust enrichment. Accordingly, because she is not entitled to recovery under a theory of unjust enrichment, her claim fails, and Defendant is entitled to judgment as a matter of law.

## IV.    CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant Liberty Insurance Corporation respectfully requests this honorable Court to GRANT its Motion for Summary Judgment.


Dated: August 20, 2024                          Respectfully submitted,


                                                                 */s/ James C. Mehigan*
                                                                 James C. Mehigan, Bar #: 480691
                                                                 Mehigan Law Group PLLC
                                                                 11921 Freedom Drive
                                                                 Suite 550
                                                                 Reston, Virginia  20190
                                                                 (703) 774-7281
                                                                 jmehigan@mehiganlawgroup.com


                                                                 *Attorney for Defendant*

**App.289**

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on August 20, 2024, a copy of the foregoing was served via

ECF to all parties of record.

*/s/ James C. Mehigan*
James C. Mehigan

**1**

```
1        IN THE UNITED STATES DISTRICT COURT
2          FOR THE DISTRICT OF COLUMBIA
3    -------------------------------X
4    PHANTA U. DARAMY-ANDREWS,    :
5              Plaintiff,         :
6         v.               :Civil Action No.:
7    LIBERTY INSURANCE CORPORATION,   :1:22-cv-01694-TJK
8              Defendant.    :
9    -------------------------------X
10
11       Deposition of PHANTA DARAMY-ANDREWS
12             Virtually Conducted
13        Wednesday, August 9th, 2023
14            10:00 a.m. (EST)
15
16
17
18
19
20   Job No.: 500480
21   Pages 1 - 69
22   Reported by: Stefanie Towns, CCR
```

**2**

```
1        Deposition of PHANTA DARAMY-ANDREWS,
2    Conducted Virtually:
3
4
5
6
7
8
9
10
11
12
13         Pursuant to agreement, before Stefanie
14   Towns, Notary Public in and for the District of
15   Columbia.
16
17
18
19
20
21
22
```

**3**

```
1              A P P E A R A N C E S
2
3    ON BEHALF OF PLAINTIFF:
4       CHARLES C. IWEANOGE, ESQUIRE
5       THE IWEANOGES FIRM, P.C.
6       1026 Monroe Street, NE
7       Washington, D.C. 20017
8
9    ON BEHALF OF DEFENDANT:
10      JAMES C. MEHIGAN, ESQUIRE
11      MEHIGAN LAW GROUP, PLLC
12      11921 Freedom Drive
13      Suite 550
14      Reston, Virginia 20190
15      703.774.7281
16      jmehigan@mehiganlawgroup.com
17
18
19   ALSO PRESENT:
20   Dave Sullivan, Planet Depos Technician
21
22
```

**4**

```
1              C O N T E N T S
2    EXAMINATION OF PHANTA DARAMY-ANDREWS    PAGE
3       By Mr. Mehigan                    5
4       By Mr. Iweanoge                   66
5
6
7              E X H I B I T S
8         (Retained by Counsel.)
9                                     PAGE
10   1    Liberty Mutual Policy          53
11   2    Original Complaint             37
12   3    Amended Complaint              45
13   6    Examination Under Oath         39
14
15
16
17
18
19
20
21
22
```

Transcript of Phanta Daramy-Andrews
Conducted on August 9, 2023

---

5

1  Thereupon,

2      PHANTA DARAMY-ANDREWS,

3  called as a witness, and having been first duly

4  sworn, was examined and testified as follows:

5      EXAMINATION BY COUNSEL FOR THE DEFENDANT

6  BY MR. MEHIGAN:

7  Q.  Good morning.  Please state your name for the

8      record.

9  **A.  My name is Phanta Daramy-Andrews.**

10 Q.  Can you spell your last name for me?

11 **A.  Capital D-A-R-A-M-Y hyphen A-N-D-R-E-W-S.**

12 Q.  How do you pronounce the first part of your

13     last name?  I pronounced it Daramy.  Is that

14     incorrect?

15 **A.  I pronounce it Daramy.**

16 Q.  Daramy, okay.  Thank you.  Your date of

17     birth, Ms. Daramy-Andrews?

18 **A.  April 10, 1959.**

19 Q.  Your home address?

20 **A.  707 49th Place Northeast, Washington, D.C.**

21     **zip code 20019.**

22 Q.  And is that the same property or house that

---

6

1      forms the basis of this lawsuit?

2  **A.  That's always been.**

3  Q.  How long have you lived at this address?

4  **A.  Since 2012.**

5  Q.  I know you've had your examination under oath

6      done before, correct?

7  **A.  Could you please repeat yourself?**

8  Q.  Did you -- you had a deposition or an

9      examination under oath before --

10 **A.  Yes, sir.**

11 Q.  -- where you sat at a table and you were

12     asked questions by a lawyer with a court

13     reporter and everything that you said was

14     under oath, right?

15 **A.  She said she wasn't a court reporter.  Yes, I**

16 **did.**

17 Q.  Okay.  Well, you understand that this is a

18     deposition, right?

19 **A.  That's what I was told.**

20 Q.  Okay.  And I'm going to be asking you

21     questions.  I'm the lawyer for the insurance

22     company.  And I'm going to be asking you

---

7

1      questions, right?

2  **A.  Could you please identify yourself?**

3  Q.  Yeah, I'm Jim Mehigan.  I'm the lawyer for

4      the insurance company.

5  **A.  Thank you.**

6  Q.  Everything that we say here is being taken

7      down by the court reporter.  You understand

8      that, right?

9  **A.  Thank you.**

10 Q.  And I'm going to be asking you questions and

11     you're going to be providing answers.  You

12     understand that?

13 **A.  Yes, thank you.**

14 Q.  And your answers are under oath.  You

15     understand that as well, right?

16 **A.  Yes.  Thank you.**

17 Q.  So I'm going to be asking you questions about

18     your case, about this lawsuit, about what

19     your claims are.  I'm not going to be asking

20     you any trick questions.  And even if I did,

21     you have a very good lawyer with you who

22     would object, and would help you if I were to

---

8

1      ask you any untoward questions, but I'm just

2      trying to get to the bottom of what happened

3      and what your claims are.  So I'll be asking

4      you questions.

5          If you don't understand a question, all

6      you have to do is ask me to repeat it or

7      rephrase it and I'll do my best to repeat or

8      rephrase the question in a way that's

9      understandable.  Do you understand that?

10 **A.  Thank you, sir.**

11 Q.  If you answer my question, I'm going to

12     assume you understood it.  Is that okay?

13 **A.  Fair enough.**

14 Q.  We're doing this deposition remotely and I

15     see that you're wearing a very lovely Chanel

16     face mask and it's going to be very difficult

17     to make sure that we get everything on video

18     tape here and also taken down by the court

19     reporter stenographically.  Do you understand

20     that?

21 **A.  Yes, sir.**

22 Q.  So it's going to be very important for us to

---

Transcript of Phanta Daramy-Andrews
Conducted on August 9, 2023

---

37

1    don't know why it's not enlarging. Dave, can
2    you hop on here and -- gone.
3        THE TECHNICIAN: Yes.
4    (Discussion held off the record.)
5    Q.  All right. Ms. Daramy-Andrews, do you
6    recognize this document?
7 A.  **I can't see it clearly.**
8        MR. MEHIGAN: Can everybody else see it
9    clearly?
10       MR. IWEANOGE: I believe this was the
11   complaint that was filed in D.C.
12       MR. MEHIGAN: Can you pull up Exhibit
13   No. 2?
14       THE TECHNICIAN: Exhibit No. 2 standby.
15   (Exhibit 2 was marked for identification and
16   is attached to the transcript.)
17 Q.  All right. Ms. Daramy-Andrews, your attorney
18   has already identified this as the original
19   complaint that was filed. Do you recognize
20   it?
21 A.  **Well, I personally cannot see. It's too**
22   **small for me to see.**

---

38

1        MR. MEHIGAN: Can you see that, Charles?
2        MR. IWEANOGE: Yes, I can see that.
3        MR. MEHIGAN: And if we can just scroll
4    down a little bit to where it goes into
5    factual background. And down further.
6        THE TECHNICIAN: Further?
7        MR. MEHIGAN: Yeah, further.
8        THE TECHNICIAN: Okay.
9        MR. MEHIGAN: All right. There. Thank
10   you.
11 Q.  Okay. So the complaint says that on or about
12   April 12th, 2019 the basement of the property
13   flooded due to a pipe break. That's this
14   claim, right?
15 A.  **Are you speaking to me, sir?**
16       MR. IWEANOGE: Yes.
17 Q.  Yes.
18 A.  **Oh, okay. 2019, yes. Yes, sir.**
19 Q.  Okay. So the claim that you're talking to me
20   about where the basement flooded and Brian
21   Wallace and Ms. Hawkins came out and there
22   was feces was this April 21, 2019 claim,

---

39

1    right?
2 A.  **Yes, sir.**
3 Q.  And that forms the basis of this lawsuit,
4    right?
5 A.  **Yes, sir.**
6 Q.  Okay. And I understand that in connection
7    with this claim you sat for a deposition
8    under oath, right?
9 A.  **Yes, sir.**
10 Q.  Or examination under oath?
11 A.  **Examination, yes.**
12       MR. MEHIGAN: Can we pull up Exhibit No.
13   number 6, Dave?
14       THE TECHNICIAN: Standby.
15   (Exhibit 6 was marked for identification and
16   is attached to the transcript.)
17 Q.  Showing you what I previously marked as
18   Exhibit No. 6, which I'll represent to you is
19   a transcript of your examination under oath
20   dated October 18, 2019. Do you recognize
21   that?
22 A.  **I cannot see it clearly, sir.**

---

40

1        THE TECHNICIAN: Is that readable?
2        MR. MEHIGAN: I can see it perfectly. I
3    mean it's actually too big right now. You
4    can only see part of the caption. Charles,
5    can you see that?
6        MR. IWEANOGE: Yes.
7        MR. MEHIGAN: Can we stipulate that this
8    is a transcript of an examination under oath
9    that was done on October 18, 2019?
10       MR. IWEANOGE: Okay. From the -- from
11   the first see on the screen it appears to be.
12   I haven't had the full time to look at them.
13   I can only say that she has already said that
14   she sat for an oral examination under oath
15   and if that is the transcript, it's the
16   transcript.
17 Q.  All right. When you sat for that deposition,
18   Mrs. Daramy-Andrews, did you appear by
19   yourself or did you have counsel with you?
20 A.  **I had Mr. Charles.**
21 Q.  You had Mr. Charles. And the date of that --
22   that's your current attorney, right?

---

Transcript of Phanta Daramy-Andrews
Conducted on August 9, 2023

**41**

1  A.  Yes, sir.

2  Q.  And the date of that examination was Friday,

3      October 18, 2019.  Correct?

4  A.  I want to believe so, sir.

5  Q.  Well, I'm asking you.  I don't want you to

6      believe.  I want you to testify to within --

7      to the best of your recollection is that

8      true, that the deposition occurred on Friday,

9      October -- excuse me, the examination under

10     oath occurred on Friday, October 18, 2019?

11 A.  It's been a while.  I know I was there.

12 Q.  Do you have any reason to doubt that the

13     examination under oath did not take place on

14     October 18th --

15 A.  I am not --

16 Q.  Let me finish -- let me finish my question,

17     please.  Do you have any basis --

18 A.  I --

19 Q.  Do you have any basis --

20 A.  I am --

21 Q.  Can I finish my question?

22 A.  I'm sorry, sir.

**42**

1  Q.  Do you have any basis to say that an

2      examination under oath did not occur on

3      October 18, 2019?

4  A.  No, sir.

5  Q.  Did anybody at Liberty Mutual, including

6      Brian Wallace and Ms. Hawkins ever tell you

7      not to bring a claim against Liberty Mutual?

8      MR. IWEANOGE:  Objection as to can you

9      be more specific as to the claim that we was

10     talking about.

11     MR. MEHIGAN:  Fair enough.

12 Q.  You can answer if you can.

13 A.  The actions spoke.

14 Q.  Okay.  Did Liberty Mutual ever dissuade you

15     from filing suit with respect to your

16     April 21, 2019 claim?

17 A.  Can you rephrase your question, sir?

18 Q.  Okay.  Did anybody at Liberty Mutual do

19     anything or say anything that would indicate

20     that they were trying to prevent you from

21     filing a lawsuit against them?

22 A.  I don't think they prevented me.  But I give

**43**

1  them the benefit of the doubt to do the right

2  thing as my insurer.

3      MR. MEHIGAN:  Okay.  If we can bring up

4  -- actually let's go back to Exhibit 2, the

5  complaint.  And if we can go to the very top

6  of the complaint where the caption would

7  be -- actually a little lower, sorry.

8      THE TECHNICIAN:  All right.

9      MR. IWEANOGE:  I would have to object to

10 this line of questioning given that the --

11 that there's an amended complaint so we

12 supersede the original complaint.  So any

13 question made on the original complaint it's

14 not -- it's not the complaint in the case.

15     MR. MEHIGAN:  Thank you, Charles.  The

16 objection is noted.  I just have a quick

17 question to ask about this original complaint

18 and then I'm going to move on to the amended

19 complaint.  If we can go down just to the

20 beginning of the -- keep going.  Next page.

21 Next page.  Sorry.  Next page.  Next page. I

22 don't know why this is all on this complaint.

**44**

1  Q.  Okay.  All right.  On the screen is the civil

2      action sheet for the original complaint filed

3      in D.C. Superior Court with a date stamp of

4      April 28, 2022.  Is that the date that you

5      filed this lawsuit, as far as you know?

6  A.  Can you please repeat your question, sir?

7  Q.  Yeah.  On the screen --

8      MR. MEHIGAN:  And if we can go up maybe

9      just a half a click, Dave?  One more.  There

10     you go.

11 Q.  I'm showing you right now on the screen what

12     is called the civil division -- civil actions

13     branch information sheet.  Do you see that?

14 A.  I can only hear what you say.  I cannot see

15     clearly.

16 Q.  Okay.  Is there something wrong with your

17     eyes?  Do you need glasses or is there

18     something wrong with the screen that you

19     can't see it?

20 A.  The screen for me is blurry.

21 Q.  Okay.  Well, this indicates that the

22     complaint was filed -- the lawsuit was filed

45

1  in D.C. Superior Court on April 28th, 2022.
2  Is that correct?
3  **A.  Yes, sir.**
4  Q.  Is there a reason why you waited until
5  April 28th, 2022 to file this lawsuit?
6  **A.  Yes, sir.  I had given Liberty Mutual all of**
7  **the benefit of the doubt to do the right**
8  **thing and took advantage of me and my family.**
9  **And the same like -- they did not want to do**
10 **the right thing.  And I had lost hope in my**
11 **insurer.**
12     MR. MEHIGAN:  All right.  Can we pull up
13 Exhibit 3, mended complaint?
14     THE TECHNICIAN:  Stand by.
15 (Exhibit 3 was marked for identification and
16 is attached to the transcript.)
17 Q.  All right.  Ms. Daramy-Andrews I'm showing
18 you what's been marked as Exhibit 3, which
19 I'll represent to you is the amended
20 complaint that was filed in D.C. -- U.S.
21 District Court for the District of Columbia
22 on July 9th, 2022.  Do you recognize this

46

1  document?  Do you see it?
2  **A.  If that what it says, then that's what it is.**
3  Q.  Okay.
4  **A.  I don't see clearly, as I said.**
5  Q.  Fair enough.  There are three claims that you
6  filed against Liberty Mutual.  One is for
7  breach of contract; two is for breach of the
8  covenant of good faith and fair dealing; and
9  three is unjust enrichment.  And I would like
10 to know -- well, what is the basis for your
11 breach of contract claim?
12 **A.  I done everything in good faith to make**
13 **Liberty Mutual to do the right thing.  I have**
14 **written almost everybody.  I have pleaded**
15 **with everybody.  I had almost 55 different**
16 **adjustors on my cases.  And Mr. Dillan Noma**
17 (ph) seem like he wanted to bring closure.
18 Then, again, it went to the same old story
19 and I just felt abused.
20 Q.  All right.  You keep saying the right thing,
21 Liberty Mutual didn't do the right thing.
22 What was the right thing to do that they

47

1  didn't do according to you?
2  **A.  Respect my policy.**
3  Q.  Okay.  Well, Liberty Mutual, as far as I can
4  tell, paid you $21,483.17 to fix your house.
5  They paid alternative living expenses of
6  $7280.48 --
7     MR. IWEANOGE:  I have to object.
8  Counsel is testifying and not asking a
9  question.
10    MR. MEHIGAN:  Okay.  You got to let me
11 get it all out in order to hear the question,
12 okay?  So now I got to repeat all this.  I'd
13 ask that if you're going to object, that's
14 fine, but at least let me get the whole thing
15 out before you object.
16    MR. IWEANOGE:  Okay.
17    MR. MEHIGAN:  So I don't have to repeat
18 all this.
19 Q.  All right.  It looks to me like Liberty
20 Mutual paid $21,483.17 to fix your house.
21 They paid $7280.48 to live somewhere else
22 while the house was being repaired, and they

48

1  paid $6069.51 to repair or clean and replace
2  your personal property inside the house.  How
3  is that unfair to you?
4     MR. IWEANOGE:  Objection to this
5  question, because it's not specific to any of
6  the treatment here as to which claim you're
7  referring to.
8  **A.  Sir, if you look at the amount of property**
9  **that was damaged in the house, even the**
10 **contractor that came, the amount does not**
11 **suffice the repair that should have been done**
12 **on the first place.**
13 Q.  What contractor said that this was not
14 sufficient?
15 **A.  Say, for example, 2015 the house was ripped**
16 **off, the ceiling fell in.  There are**
17 **photographs to show this.  There's a file,**
18 **there's a file for you to see the list of**
19 **things.**
20 Q.  Okay.  We're talking about 2000 -- the claim
21 in 2019, okay?  What is your evidence that
22 the amount that Liberty Mutual paid you to

Transcript of Phanta Daramy-Andrews
Conducted on August 9, 2023

49

1  repair your house was insufficient?

2  **A.  That's why I'm confused.  Because you said --**

3  **you mentioned 2015.  You mentioned 2018.  You**

4  **mentioned 2019.  And you speaking of $21,000,**

5  **you speaking of $7000.**

6  Q.   Okay.  Well, the amount of money I just said

7  to you is how much was paid for your 2019

8  claim.  So my question to you is, how was

9  that not sufficient?  And what is your

10  evidence to support your claim that it is not

11  sufficient?

12 **A.   You did not pay me $21,000 in 2019.  You did**

13  **not, sir.**

14 Q.   How much did Liberty Mutual pay you for your

15  claim in 2019?

16 **A.   I would have to look at my records because I**

17  **know I did not see any $21,000 from Liberty**

18  **Mutual in 2019.  No physical cash like that**

19  **was in my hand because --**

20 Q.  How much --

21 **A.   -- we --**

22 Q.  How much --

50

1  **A.   Can I speak, sir?**

2  Q.  Please, sorry.

3  **A.   Thank you.  Roto Rooter was paid.  The man**

4  that -- Jimmy Gusky (ph) for the hot water

5  tank I took my $950.01 and paid him out of my

6  own checking.  Those Liberty Mutual send back

7  the $950.01 and still owe Gusky $947.50, they

8  still owe that amount.  There are other

9  people that they still owe, that they did not

10  pay.  So when they give me $21,000 they did

11  not give me no $21,000.  I don't know where

12  they got that amount from or where they give

13  you that information from.

14 Q.   So you dispute that they paid $21,483.17

15  towards your dwelling claim?

16 **A.   To who?  Not to me, sir.**

17 Q.   I'm asking, do you dispute that Liberty

18  Mutual paid that amount toward your dwelling

19  claim?

20      MR. IWEANOGE:  Objection.  Asked and

21  answered.

22      MR. MEHIGAN:  She just answered it with

51

1  a question so I just reasked it, so.

2  **A.   What did you say, sir?**

3  Q.   So you deny that Liberty Mutual paid

4  $21,483.17 towards your dwelling claim, is

5  that correct?

6  **A.   You say I deny?**

7  Q.   You deny that Liberty Mutual paid $21,483.17

8  toward your dwelling claim.  Is that correct?

9  **A.   Sir, I'm not denying anything.  From what I**

10  **heard you say that Liberty Mutual gave me**

11  **$21,000.  Liberty Mutual did not put any**

12  **$21,000 in my hand.  So from what I**

13  **understood you to say, is I was given**

14  **$21,000.  I was not given $21,000.**

15 Q.   Do you dispute that Liberty Mutual paid

16  $6769.51 towards your contents claim?

17 **A.   So $6000 to what content claim?**

18 Q.   Your personal property inside the house.

19 **A.   Sir, there's no personal property content**

20  **that was specified to me, this is your bill**

21  **for personal property.  What was given to me,**

22  **if I'm not mistaken, was $6038 -- I can't**

52

1  **really remember but I think it was $6000 to**

2  **Ms. Green for the people to claim that**

3  **basement because it was molded.  So it was**

4  **not the personal property.  And the amount**

5  **that Ms. Green had asked for, they refused to**

6  **give the amount for my personal property.**

7  **They refused, so how can they sit there and**

8  **say they give me $6000 for my personal**

9  **property.  That wasn't even part of the**

10  **claim.**

11 Q.   All right.  Do you deny that Liberty Mutual

12  paid $7280.48 in alternative living expenses?

13      MR. IWEANOGE:  Objection as to the

14  timeframe.  When was this?

15      MR. MEHIGAN:  Okay.  Fair enough.

16 Q.   For the April 2019 claim, did Liberty

17  Mutual -- do you deny that Liberty Mutual

18  paid you $7280.48 in alternative living

19  expenses?

20 **A.   To live where?  Can I ask the question, to**

21  **live where?**

22 Q.   Sure.  I don't know.  Do you deny that --

Transcript of Phanta Daramy-Andrews
Conducted on August 9, 2023

14 (53 to 56)

---

53

1  A.  I'm surprised because I can't remember that
2      amount to live anywhere.
3  Q.  Okay.  Do you deny that Liberty Mutual paid
4      alternative living expenses of $7280.48 for
5      your claim in 2019?
6  A.  Sir, I cannot remember.  I cannot remember.
7      I'm not denying anything but I cannot
8      remember that check from Liberty.
9  Q.  Okay.  Did you live elsewhere for a period of
10     time after you discovered the flood in April
11     of 2019?
12 A.  I didn't live anywhere in 2019.  The only two
13     places I lived was the Residence Inn of 333
14     Southwest and the Residence Inn on 15th
15     Street Northwest.  That's 120,000 we're
16     paying.
17        MR. MEHIGAN:  Can we pull up Exhibit No.
18     1, please, Dave?
19        THE TECHNICIAN:  Stand by.
20     (Exhibit 1 was marked for identification and
21     is attached to the transcript.)
22 Q.  All right.  I'm showing you what's been

---

54

1      marked as Exhibit 1, which I'll represent to
2      you is your Liberty Mutual insurance policy
3      for the period of January 26th, 2019 to
4      January 26th, 2020.  Do you recognize this
5      document?
6  A.  You said January '19?
7  Q.  Yes, January 26th, 2019 through January 26th,
8      2020, which is the policy period.  Do you
9      recognize this document?
10 A.  Well, like I said, I cannot see the document
11     clearly but like you're explaining --
12 Q.  Okay.
13        MR. MEHIGAN:  Charles, can you look at
14     this document and stipulate that this is the
15     applicable insurance policy?
16        MR. IWEANOGE:  There's no way I can
17     stipulate to the policy.  If this is policy
18     and the policy of Liberty Mutual this is
19     policy but I cannot stipulate to it because I
20     didn't receive this policy prior to this
21     lawsuit.  I was unaware of this exact
22     document.  But if this is our policy, it is

---

55

1      our policy.  So I understand you are
2      representing that this is a policy that was
3      provided by Liberty Mutual.  If this is our
4      policy, we agree to it that it's our policy.
5  Q.  All right.  Ms. Daramy-Andrews, do you have
6      any basis to dispute that this is the
7      applicable policy for the April 2019 claim?
8  A.  Well, I know I had policy.  So I don't know
9      if that's a specific policy but I know I had
10     a policy.
11 Q.  Okay.  Do you have any basis to say that this
12     is not the policy -- the policy in effect at
13     the time of the alleged incident?
14 A.  I wouldn't know, sir.  But I know that my
15     policies were all up to date.
16 Q.  Did you ever provide an inventory to Liberty
17     Mutual for your claims damage contents as a
18     result of the April 2019 flooding?
19 A.  Sir, if I may say 1-800-Packouts was sent by
20     Liberty Mutual.  They were responsible to
21     give account for what they took out of my
22     house.  So definitely they gave an inventory

---

56

1      list to Liberty Mutual.
2  Q.  Ms. Daramy-Andrews, did you ever provide
3      Liberty Mutual with an inventory of your lost
4      and/or damaged items as a result of the
5      April 2019 flooding incident?
6  A.  With all do respect, sir, the epidemic was in
7      place.  I was told to go to 1-800-Packouts
8      and gave an estimate of whatever to give a
9      listing, and I couldn't, because what was
10     sticking out of my house was all infected
11     with feces and the pandemic was on.  I tried
12     but I couldn't.
13 Q.  So what I'm hearing, and correct me if I'm
14     wrong, is that because of the pandemic and
15     for other reasons you were not able to
16     provide Liberty Mutual an inventory of your
17     claims damaged personal property, correct?
18 A.  Sir, if I can continue.  These properties are
19     still with 1-800-Packouts.  They have their
20     listing of what they took from my home.
21 Q.  Okay.  I appreciate, you know, you're saying
22     all of this, but I'm asking a very specific

---

Transcript of Phanta Daramy-Andrews
Conducted on August 9, 2023

15 (57 to 60)

57

1  question.  Did you, Ms. Daramy-Andrews, ever
2  provide Liberty Mutual with an inventory of
3  the contents that you claim was lost or
4  damaged as a result of the April 2019
5  flooding incident?
6  A.  I provided some because Liberty Mutual wanted
7     me to pay 1-800-Packouts for the days that I
8     would be going there to do the listing, and
9     the epidemic was also on.  That was a high
10    risk.  And I asked Liberty Mutual to please
11    send the adjuster with me or send the
12    adjuster to do it.  They refused.  And my
13    life was in jeopardy.
14 Q.  So is the answer to my question, no, you did
15    not provide an inventory to Liberty Mutual?
16 A.  Yes, I did but partial.
17 Q.  Okay.  Do you have a copy of that here that
18    you can show me?
19 A.  Yes, I do.  I have a copy of some.
20 Q.  Okay.  I'm going to --
21     MR. IWEANOGE:  Counselor, it was
22     provided in discovery and it was provided to

58

1  Liberty Mutual, which you have provided as
2  part of your own discovery packet.
3     MR. MEHIGAN:  Okay.
4  Q.  Getting back to the complaint, in addition to
5     the breach of contract claim, you also claim
6     that there was a breach of implied covenant
7     good faith and fair dealing.  What do you
8     mean by that?
9     MR. IWEANOGE:  Objection as to the legal
10    question, legal term.
11 A.  The breach of contract what I, as a lay
12    person, because I'm not too familiar with all
13    of the terminology of the insurance dealings.
14 Q.  Fair enough.  Do you have any evidence to
15    support your claim that Liberty Mutual
16    breached its covenant of good faith and fair
17    dealing?
18 A.  Yes.
19 Q.  Why?
20 A.  How they treated my -- my claim.
21 Q.  Can you think of anything specific that they
22    did that was a breach of an implied covenant

59

1  of good faith and fair dealing?
2  A.  Look at how my home was treated.  Look at how
3     my property is treated.  Look at how they
4     refused to take care of 1-800-Packouts.  Look
5     at how they refused the claims of any of my
6     properties during all of these instances.
7  Q.  All right.  You make the claim of unjust
8     enrichment, do you know what that means?
9  A.  Well, in my little way it is unjust because
10    no one should be treated that way who have an
11    insurance policy.  That the positive -- the
12    property should be protected by people that
13    they trust with the property.  It shouldn't
14    be treated this way.  And all of the claims
15    being mistreated.  I can understand if one
16    policy is being mistreated.  But, two, three,
17    same story.  So many adjustors, same
18    behavior, who does that?  Is it because of
19    what?
20 Q.  All right.  What -- how much money do you
21    think you are owed by Liberty Mutual as a
22    result of your claim in April 2019?

60

1  A.  Sir, if you want to be a fair gentleman as
2     you are, I leave that into your court.
3  Q.  Okay.  Well, let me ask you more
4     specifically, what are your damages as a
5     result of your claim that you believe that
6     you're owed?
7  A.  So many damages, sir.
8  Q.  Okay.  What are they?  Specifically what are
9     they?
10 A.  If I may say, sir, with all due respect, can
11    you go back and review all of those pictures
12    by Infinity, and all of those listings, sir,
13    and see what me and my family have suffered
14    and lost, the trauma, the abuse.
15 Q.  Ms. Daramy-Andrews, with all due respect,
16    this is your claim, right, that you have to
17    bring, and so I need you to tell me what are
18    your damages?
19 A.  Sir, for the three damages?
20     MR. IWEANOGE:  No.  You need to do 2019.
21     THE WITNESS:  Oh, is it 2019.  Oh, is it
22     -- that's why I'm asking.

Transcript of Phanta Daramy-Andrews
Conducted on August 9, 2023

16 (61 to 64)

---

61

1        MR. IWEANOGE:  From 2019.

2        THE WITNESS:  That's why I'm --

3        MR. IWEANOGE:  The question is specific

4    to 2019.

5        MR. MEHIGAN:  The date of loss is

6    April 21, 2019.

7        THE WITNESS:  Can I ask him,

8    Mr. Charles, please?

9        MR. IWEANOGE:  Go ahead.

10 A.  **Sir, thank you for asking me that question.**

11     **And if I heard you right or if I didn't hear**

12     **you right, are you relating to 2019 or are**

13     **you relating to all of my problems?**

14 Q.  I'm asking with relation to your claim

15     arising from the incident on April 21, 2019

16     and what are your damages?

17 A.  **Well, my damages in 2019 for my personal**

18     **property?**

19 Q.  Well, we can start with personal property,

20     yeah, sure.

21 A.  **I will consider $75,000 for my personal**

22     **property.**

---

62

1  Q.  Okay.  You'll consider that but what is the

2      basis for that?

3  A.  **Well, for all of what I have lost in 2019.**

4  Q.  All right.  So what I'm hearing you say,

5      you're not prepared to give me a basis for

6      why you believe the value of the contents,

7      personal property, the value of the damage of

8      $75,000.  Is that correct?

9  A.  **Can you please rephrase what you said there?**

10 Q.  Sure.  What I'm hearing you say is that you

11     believe that you're entitled to $75,000 for

12     your loss of contents but you're not prepared

13     to give me a basis for why you think the

14     value of those contents is $75,000?

15        MR. IWEANOGE:  I have to object but you

16     can answer.

17 Q.  Can you answer it?

18 A.  **Sir, I know what I spent on those things that**

19     **I bought.**

20 Q.  Okay.

21        MR. IWEANOGE:  She is not finished.

22        MR. MEHIGAN:  Sorry, go ahead.

---

63

1        MR. IWEANOGE:  Answer him.

2  A.  **I know what I spent on those things that I**

3      **bought.  My paintings, my clothes, my shoes,**

4      **my jeweleries in there.  There's so many**

5      **things of value.  So as you can see maybe if**

6      **you went on my Facebook page, you see how I**

7      **dress.  I'm not just an ordinary casually**

8      **dressed person.  I take value into my**

9      **presentation of myself.  I keep a decent**

10     **home.  I put value into what I love.  If I**

11     **were to ask you, I would have asked for more,**

12     **but I think I'm just being a little**

13     **courteous.**

14 Q.  Can I ask the next question now?

15 A.  **Please, sir.**

16 Q.  All right.  What damages are you claiming as

17     a result of this April 21, 2019 incident,

18     what damages are you claiming for the repair

19     of the dwelling?

20 A.  **I am claiming the property being repaired**

21     **from the inner part of it, where the place is**

22     **damaged.  That it be repaired properly.**

---

64

1  Q.  Yeah.  But how much?  How much is that going

2      to cost?

3  A.  **Pardon me, sir?**

4  Q.  How much is that?  How much is that going to

5      cost in your estimation?

6  A.  **In my estimation I would believe that it**

7      **would cost at least 50 to $60,000 to have it**

8      **properly done.**

9  Q.  Do you have an estimate to support that?

10 A.  **Yes, I will have an estimate for that.**

11     **Because materials are very costly.  And it**

12     **has to be done properly.**

13 Q.  Do you have any basis to say that the amount

14     of alternative living expense that Liberty

15     Mutual provided for this April 21, 2019 claim

16     was not sufficient?

17 A.  **It's obvious, sir.**

18 Q.  Well, I'm asking you specifically what is

19     your evidence of that?

20 A.  **What is my what, sir?**

21 Q.  What is your evidence to support that claim?

22 A.  **What is my evidence --**

---

Transcript of Phanta Daramy-Andrews
Conducted on August 9, 2023

69

1    CERTIFICATE OF REPORTER - NOTARY PUBLIC
2       I, Stefanie Towns, the officer before whom the
3    foregoing deposition was taken, do hereby certify
4    that the foregoing transcript is a true and correct
5    record of the testimony given; that said testimony
6    was taken by me and thereafter reduced to
7    typewriting under my direction; that reading and
8    signing was requested; and that I am neither
9    counsel for, related to, nor employed by any of the
10   parties to this case and have no interest,
11   financial or otherwise, in its outcome.
12       IN WITNESS WHEREOF, I have hereunto set my
13   hand and affixed my notarial seal this 16th day of
14   August 2023.
15   My Commission Expires:
16
17
18   _Stefanie Towns_____
19   Stefanie Towns
20
21
22



Liberty Mutual Insurance
350 E 96th Street
Indianapolis, IN 46240

June 2, 2022

Manish Sharma
175 Berkeley Street
Boston, MA 02116

| | |
|---|---|
| Insured Name: | Phanta Daramy-Andrews |
| Policy Number: | H3723866020940 |
| Claim ID: | 039740892 |
| Date of Loss: | 04/21/2019 |
| Effective Date: | 01/26/2019 |

I hereby certify that the attached is a true and accurate copy of the documents requested for the policy listed above as maintained by the Liberty Insurance Corporation in the usual and customary course of its business.

Sincerely,

Michael Quiroz-Smith
Policy Copy
Support

MQS
Enclosures

PL Policy/Dec Request

**App.301**

 Questions about your Policy?
Call 1-301-262-5242 or
1-866-941-4012

Policy Number:
H37-238-660209-40 9 4

Report a Claim:
1-800-2CLAIMS or
LibertyMutual.com/Claims

 Liberty Mutual. INSURANCE

 ACTION REQUIRED:
PLEASE REVIEW AND KEEP FOR YOUR RECORDS.

## Policy Declarations
## Total 12 Month Premium: $1,385.00



Reason for your new declarations page: Changes made to your policy
Please refer to the Change Detail section on page 3 for more information.
Effective date of this change: 03/14/2019

Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable.

Through your affiliation with the Community Options, Inc. your policy includes special group savings on your home insurance.

### Insurance Information

| | | | |
|---|---|---|---|
| Named Insured: | Phanta U Daramy-Andrews | Policy Number: | H37-238-660209-40 9 4 |
| Mailing Address: | 707 49th Pl Ne<br>Washington DC 20019-4805 | Policy Period: | 01/26/2019-01/26/2020 12:01 a.m.<br>standard time at the address of the<br>Named Insured at Insured Location. |
| Insured Location: | Same as Mailing address above | Declarations Effective: | 03/14/2019 |

---

#### DISCOUNTS AND BENEFITS SECTION

Your discounts and benefits have been applied to your total policy premium.

- Inflation Protection Discount
- Claims Free Discount
- New Roof Discount
- Basic Home Safety

- New or Renovated Home Discount
- Early Shopper Discount
- Multi Policy Discount - Auto

---

## Coverage Information

Standard Policy with HomeProtector Plus ™

| SECTION I COVERAGES | | LIMITS | PREMIUM |
|---|---|---|---|
| A. Dwelling with Expanded Replacement Cost | $ | 174,800 | |
| B. Other Structures on Insured Location | $ | 17,480 | |
| C. Personal Property with Replacement Cost | $ | 131,100 | |
| D. Loss of Use of Insured Location | Actual Loss Sustained | | |

App.302



**?** Want to Add a Coverage?
Call 1-301-262-5242 or
1-866-941-4012 to talk to your
agent about the availability of
this coverage and whether it
meets your needs.

Policy Number:
H37-238-660209-40 9 4

Report a Claim:
1-800-2CLAIMS or
LibertyMutual.com/Claims

## Coverage Information continued

| SECTION II COVERAGES | | LIMITS | PREMIUM |
|---|---|---|---|
| E. Personal Liability (each occurrence) | $ | 500,000 | |
| F. Medical Payments to Others (each person) | $ | 5,000 | |

**POLICY DEDUCTIBLES**

Losses covered under Section I are subject to a deductible of : $1,000

| Total Standard Policy with HomeProtector Plus ™ | | $ | 1,374 |
|---|---|---|---|

| ADDITIONAL COVERAGES | DEDUCTIBLE | LIMITS | PREMIUM |
|---|---|---|---|
| Credit Card, Fund Transfer, Forgery | | $ 1,000 | $ 0 |
| Escape of Water (Building/Spec Contents) | $ 1,000 | $ 10,000 | INCL |
| Coverage E & F increased limit | | | $ 11 |
| Total Additional Coverages | | | $ 11 |

**Total 12 Month Policy Premium: $1,385.00**

**Additional Coverages and Products Available***

We've reviewed your policy and have identified additional optional coverages and products that can add valuable protection. Talk to your agent about purchasing the following coverages and products and whether they meet your needs.

- Home Computer and Smartphone: If your smartphone or other devices are not insured, repairing or replacing them can be expensive. Did you know you can insure multiple devices for up to $10,000 with a deductible of $50.00?

- Identity Fraud Expense: A stolen identity can be scary and expensive. We'll provide counseling, and pay up to $30,000 for expenses such as lost wages and attorney fees incurred to recover your identity.

*These optional coverages are subject to policy provisions, limitations, and exclusions. Daily limits or a deductible may apply. For a complete explanation, please consult your agent today.

**App.303**



| Questions about your Policy? Call 1-301-262-5242 or 1-866-941-4012 | Policy Number: H37-238-660209-40 9 4 | Report a Claim: 1-800-2CLAIMS or LibertyMutual.com/Claims |

## Mortgage Information

**Mortgagee 1:**
JPMORGAN CHASE
BANK, N.A. ISAOA
ITS SUCCESSORS
AND/OR ASSIGNS
LOAN NO. 4503578980
PO Box 47020
Atlanta, GA 30362

**Mortgagee 2:**
WASHINGTON DC, DHCD
C/O AMERINAT
LOAN NO. 100054241
PO Box 123
Downey, CA 90241-0123

## Change Detail

Changes made to your policy for: Policy Change 2
• Change Name PHANTA U DARAMY-ANDREWS

There is no premium increase for above changes.

## Policy Forms and Endorsements: The following forms and endorsements are applicable to your policy

LibertyGuard® Deluxe Homeowner Policy
(HO 00 03 04 91)

Home Protector Plus (FMHO-1183)

Credit Card, Fund Transfer, Forgery
(HO 04 53 04 91)

Protective Devices (FMHO 4172 1014)

Amendmt Pol Definitions (FMHO-2934 7/04)

Amendatory Mold End (FMHO 3370 1112)

Seepage Exclusion Endorsement (FMHO 3391 1112)

Inflation Protection (FMHO-2835)

No SecII/Limit I-Daycare (HO 04 96 04 91)

Lead Poisoning Exclusion (FMHO-976 05/92)

Fuel Storage Exclusion (FMHO-1097 1/97)

Special Provisions (FMHO6100DC 0217)

Escape of Water (Building/Spec Contents)
(FMHO 6500 1115)

## Important Messages

Flood Insurance: Your Homeowners policy does not provide coverage for damage caused by flood, even if the flood is caused by a storm surge. Liberty Mutual can help you obtain this coverage through the Federal Emergency Management Agency (FEMA) if your community participates in the National Flood Insurance Program. Please call your representative for more information.

A notice for our customers: Liberty Mutual may consider your claims and loss history when determining whether to renew your policy.

Questions about your Policy?
Call 1-301-262-5242 or
1-866-941-4012

Policy Number:
H37-238-660209-40 9 4

Report a Claim:
1-800-2CLAIMS or
LibertyMutual.com/Claims



LibertyGuard® Deluxe Homeowners Policy Declarations provided and underwritten by Liberty Insurance Corporation (a stock insurance company), Boston, MA.

David H. Long
President

Mark C. Touhey
Secretary

This policy, including endorsements listed above, is countersigned by:

Hamid Mirza
Authorized Representative

 **Questions about your Policy?**
Call 1-301-262-5242 or
1-866-941-4012

**Policy Number:**
H37-238-660209-40 9 4

**Report a Claim:**
1-800-2CLAIMS or
LibertyMutual.com/Claims

 **Liberty Mutual.** INSURANCE



**ACTION REQUIRED:**
PLEASE REVIEW AND KEEP FOR YOUR RECORDS.

## Policy Declarations
## Total 12 Month Premium:  $1,385.00

Reason for your new declarations page: Changes made to your policy
Please refer to the Change Detail section on page 3 for more information.
Effective date of this change: 03/05/2019

Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable.

Through your affiliation with the Community Options, Inc. your policy includes special group savings on your home insurance.

### Insurance Information

| | | | |
|---|---|---|---|
| Named Insured: | Phanta Daramy-Andrews | Policy Number: | H37-238-660209-40 9 4 |
| Mailing Address: | 707 49th Pl Ne<br>Washington DC 20019-4805 | Policy Period: | 01/26/2019-01/26/2020 12:01 a.m.<br>standard time at the address of the<br>Named Insured at Insured Location. |
| Insured Location: | Same as Mailing address above | Declarations Effective: | 03/05/2019 |

---

### DISCOUNTS AND BENEFITS SECTION

Your discounts and benefits have been applied to your total policy premium.

· Inflation Protection Discount
· Claims Free Discount
· New Roof Discount
· Basic Home Safety
· New or Renovated Home Discount
· Early Shopper Discount
· Multi Policy Discount - Auto

---

## Coverage Information

Standard Policy with HomeProtector Plus ™

| SECTION I COVERAGES | LIMITS | PREMIUM |
|---|---|---|
| A. Dwelling with Expanded Replacement Cost | $    174,800 | |
| B. Other Structures on Insured Location | $     17,480 | |
| C. Personal Property with Replacement Cost | $    131,100 | |
| D. Loss of Use of Insured Location | Actual Loss Sustained | |

**App.306**



**Want to Add a Coverage?**
Call 1-301-262-5242 or
1-866-941-4012 to talk to your
agent about the availability of
this coverage and whether it
meets your needs.

Policy Number:
H37-238-660209-40 9 4

Report a Claim:
1-800-2CLAIMS or
LibertyMutual.com/Claims

## Coverage Information continued

| SECTION II COVERAGES | | LIMITS | PREMIUM |
|---|---|---|---|
| E. Personal Liability (each occurrence) | $ | 500,000 | |
| F. Medical Payments to Others (each person) | $ | 5,000 | |

POLICY DEDUCTIBLES

Losses covered under Section I are subject to a deductible of : $1,000

| Total Standard Policy with HomeProtector Plus ™ | $ | 1,374 |
|---|---|---|

| ADDITIONAL COVERAGES | DEDUCTIBLE | | LIMITS | | PREMIUM |
|---|---|---|---|---|---|
| Credit Card, Fund Transfer, Forgery | | $ | 1,000 | $ | 0 |
| Escape of Water (Building/Spec Contents) | $ 1,000 | $ | 10,000 | | INCL |
| Coverage E & F increased limit | | | | $ | 11 |
| Total Additional Coverages | | | | $ | 11 |

**Total 12 Month Policy Premium: $1,385.00**

Additional Coverages and Products Available*

We've reviewed your policy and have identified additional optional coverages and products that can add valuable protection. Talk to your agent about purchasing the following coverages and products and whether they meet your needs.

- Home Computer and Smartphone: If your smartphone or other devices are not insured, repairing or replacing them can be expensive. Did you know you can insure multiple devices for up to $10,000 with a deductible of $50.00?

- Identity Fraud Expense: A stolen identity can be scary and expensive. We'll provide counseling, and pay up to $30,000 for expenses such as lost wages and attorney fees incurred to recover your identity.

*These optional coverages are subject to policy provisions, limitations, and exclusions. Daily limits or a deductible may apply. For a complete explanation, please consult your agent today.



## Mortgage Information

Mortgagee 1:
JPMORGAN CHASE
BANK, N.A. ISAOA
ITS SUCCESSORS
AND/OR ASSIGNS
LOAN NO. 4503578980
PO Box 47020
Atlanta, GA 30362

Mortgagee 2:
WASHINGTON DC, DHCD
C/O AMERINAT
LOAN NO. 100054241
PO Box 123
Downey, CA 90241-0123

## Change Detail

Changes made to your policy for: Policy Change 1

• Change Mortgagee 2

• Change Handling Requirements

There is no premium increase for above changes.

## Policy Forms and Endorsements: The following forms and endorsements are applicable to your policy

LibertyGuard® Deluxe Homeowner Policy
(HO 00 03 04 91)

Home Protector Plus (FMHO-1183)

Credit Card, Fund Transfer, Forgery
(HO 04 53 04 91)

Protective Devices (FMHO 4172 1014)

Amendmt Pol Definitions (FMHO-2934 7/04)

Amendatory Mold End (FMHO 3370 1112)

Seepage Exclusion Endorsement (FMHO 3391 1112)

Inflation Protection (FMHO-2835)

No SecII/Limit I-Daycare (HO 04 96 04 91)

Lead Poisoning Exclusion (FMHO-976 05/92)

Fuel Storage Exclusion (FMHO-1097 1/97)

Special Provisions (FMHO6100DC 0217)

Escape of Water (Building/Spec Contents)
(FMHO 6500 1115)

## Important Messages

Flood Insurance: Your Homeowners policy does not provide coverage for damage caused by flood, even if the flood is caused by a storm surge. Liberty Mutual can help you obtain this coverage through the Federal Emergency Management Agency (FEMA) if your community participates in the National Flood Insurance Program. Please call your representative for more information.

A notice for our customers: Liberty Mutual may consider your claims and loss history when determining whether to renew your policy.

App.308

| Questions about your Policy? Call 1-301-262-5242 or 1-866-941-4012 | Policy Number: H37-238-660209-40 9 4 | Report a Claim: 1-800-2CLAIMS or LibertyMutual.com/Claims |  |

LibertyGuard® Deluxe Homeowners Policy Declarations provided and underwritten by Liberty Insurance Corporation (a stock insurance company), Boston, MA.

David H. Long
President

Mark C. Touhey
Secretary

This policy, including endorsements listed above, is countersigned by:

Hamid Mirza
Authorized Representative

**Questions about your Policy?**
Call 1-301-262-5242 or
1-866-941-4012

**Policy Number:**
H37-238-660209-40 9 4

**Report a Claim:**
1-800-2CLAIMS or
LibertyMutual.com/Claims

**Liberty Mutual.**
INSURANCE

**ACTION REQUIRED:**
PLEASE REVIEW AND KEEP FOR YOUR RECORDS.

## Policy Declarations
## Total 12 Month Premium: $1,385.00



Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable.

Through your affiliation with the Community Options, Inc. your policy includes special group savings on your home insurance.

### Insurance Information

| | | | |
|---|---|---|---|
| Named Insured: | Phanta Daramy-Andrews | Policy Number: | H37-238-660209-40 9 4 |
| Mailing Address: | 707 49th Pl Ne<br>Washington DC 20019-4805 | Policy Period: | 01/26/2019-01/26/2020 12:01 a.m.<br>standard time at the  address of the<br>Named Insured at Insured Location. |
| Insured Location: | Same as Mailing address above | Declarations Effective: | 01/26/2019 |

---

#### DISCOUNTS AND BENEFITS SECTION

Your discounts and benefits have been applied to your total policy premium.

· Inflation Protection Discount
· Claims Free Discount
· New Roof Discount
· Basic Home Safety

· New or Renovated Home Discount
· Early Shopper Discount
· Multi Policy Discount - Auto

---

## Coverage Information

Standard Policy with HomeProtector Plus ™

| SECTION I COVERAGES | LIMITS | PREMIUM |
|---|---|---|
| A. Dwelling with Expanded Replacement Cost | $  174,800 | |
| B. Other Structures on Insured Location | $   17,480 | |
| C. Personal Property with Replacement Cost | $  131,100 | |
| D. Loss of Use of Insured Location | Actual Loss Sustained | |

| SECTION II COVERAGES | LIMITS | PREMIUM |
|---|---|---|
| E. Personal Liability (each occurrence) | $  500,000 | |
| F. Medical Payments to Others (each person) | $    5,000 | |

**App.310**



**Want to Add a Coverage?**
Call 1-301-262-5242 or
1-866-941-4012 to talk to your
agent about the availability of
this coverage and whether it
meets your needs.

Policy Number:
H37-238-660209-40 9 4

Report a Claim:
1-800-2CLAIMS or
LibertyMutual.com/Claims

## Coverage Information continued

POLICY DEDUCTIBLES

Losses covered under Section I are subject to a deductible of : $1,000

| | |
|---|---|
| Total Standard Policy with HomeProtector Plus ™ | $    1,374 |

| ADDITIONAL COVERAGES | DEDUCTIBLE | LIMITS | PREMIUM |
|---|---|---|---|
| Credit Card, Fund Transfer, Forgery | | $    1,000 | $    0 |
| Escape of Water (Building/Spec Contents) | $    1,000 | $    10,000 | INCL |
| Coverage E & F increased limit | | | $    11 |
| Total Additional Coverages | | | $    11 |

**Total 12 Month Policy Premium: $1,385.00**

Additional Coverages and Products Available*

We've reviewed your policy and have identified additional optional coverages and products that can add valuable protection. Talk to your agent about purchasing the following coverages and products and whether they meet your needs.

- Home Computer and Smartphone: If your smartphone or other devices are not insured, repairing or replacing them can be expensive. Did you know you can insure multiple devices for up to $10,000 with a deductible of $50.00?

- Identity Fraud Expense: A stolen identity can be scary and expensive. We'll provide counseling, and pay up to $30,000 for expenses such as lost wages and attorney fees incurred to recover your identity.

*These optional coverages are subject to policy provisions, limitations, and exclusions. Daily limits or a deductible may apply. For a complete explanation, please consult your agent today.

Mortgage Information

Mortgagee 1:
JPMORGAN CHASE
BANK, N.A. ISAOA
ITS SUCCESSORS
AND/OR ASSIGNS
LOAN NO. 4503578980
PO Box 47020
Atlanta, GA 30362

Mortgagee 2:
DHCD
ISAOA ATIMA
C/o Greater Washington
Urban League
Washington, DC 20009

**App.311**



| Questions about your Policy? Call 1-301-262-5242 or 1-866-941-4012 | Policy Number: H37-238-660209-40 9 4 | Report a Claim: 1-800-2CLAIMS or LibertyMutual.com/Claims |
|---|---|---|

**Policy Forms and Endorsements:** The following forms and endorsements are applicable to your policy

LibertyGuard® Deluxe Homeowner Policy
(HO 00 03 04 91)

Home Protector Plus (FMHO-1183)

Credit Card, Fund Transfer, Forgery
(HO 04 53 04 91)

Protective Devices (FMHO 4172 1014)

Amendmt Pol Definitions (FMHO-2934 7/04)

Amendatory Mold End (FMHO 3370 1112)

Seepage Exclusion Endorsement (FMHO 3391 1112)

Inflation Protection (FMHO-2835)

No SecII/Limit I-Daycare (HO 04 96 04 91)

Lead Poisoning Exclusion (FMHO-976 05/92)

Fuel Storage Exclusion (FMHO-1097 1/97)

Special Provisions (FMHO6100DC 0217)

Escape of Water (Building/Spec Contents)
(FMHO 6500 1115)

**Important Messages**

Flood Insurance: Your Homeowners policy does not provide coverage for damage caused by flood, even if the flood is caused by a storm surge. Liberty Mutual can help you obtain this coverage through the Federal Emergency Management Agency (FEMA) if your community participates in the National Flood Insurance Program. Please call your representative for more information.

A notice for our customers: Liberty Mutual may consider your claims and loss history when determining whether to renew your policy.

LibertyGuard® Deluxe Homeowners Policy Declarations provided and underwritten by Liberty Insurance Corporation (a stock insurance company), Boston, MA.

David H. Long
President

Mark C. Touhey
Secretary

This policy, including endorsements listed above,
is countersigned by:

Hamid Mirza
Authorized Representative



# LibertyGuard Deluxe Homeowners Policy

Please read your policy and each endorsement carefully.

**To serve you best...**

Liberty Mutual has over 350 service offices throughout the United States and Canada.  Please contact your service office shown on your Declarations Page to report losses, or for any changes or questions about your insurance. Payments should be sent to the office indicated on your bill.

THIS POLICY IS NON ASSESSABLE



# LIBERTYGUARD DELUXE HOMEOWNERS POLICY
## HO 00 03 EDITION 04 91

**TABLE OF CONTENTS**          **Page**

Agreement............................................... 1
Definitions ............................................... 1
**SECTION I - PROPERTY COVERAGES**
  Coverage A Dwelling............................ 1
  Coverage B Other Structures ................ 2
  Coverage C Personal Property............... 2-3
  Coverage D Loss of Use....................... 3
  Additional Coverages........................... 3
    Debris Removal................................. 3
    Reasonable Repairs........................... 3-4
    Trees, Shrubs and Other Plants .......... 4
    Fire Department Service Charge.......... 4
    Property Removed ............................. 4
    Credit Card, Fund Transfer Card, Forgery
      and Counterfeit Money................... 4
    Loss Assessment ............................. 4-5
    Collapse ......................................... 5
    Glass or Safety Glazing Material ......... 5
    Landlord's Furnishings ...................... 5-6
**SECTION I - PERILS INSURED AGAINST**
  Coverage A Dwelling and Coverage B
    Other Structures............................ 6
  Coverage C Personal Property............... 6-7
**SECTION I - EXCLUSIONS**
  Ordinance or Law................................ 7
  Earth Movement ................................. 7-8
  Water Damage ................................... 8
  Power Failure .................................... 8
  Neglect ............................................ 8
  War ................................................. 8
  Nuclear Hazard .................................. 8
  Intentional Loss ................................. 8
  Weather Conditions............................. 8
  Acts or Decisions............................... 8
  Faulty, Inadequate or Defective............. 8
**SECTION I - CONDITIONS**
  Insurable Interest and Limit of Liability ... 8
  Your Duties After Loss ........................ 8-9
  Loss Settlement................................. 9-10
  Loss to a Pair or Set ........................... 10
  Glass Replacement ............................. 10
  Appraisal ......................................... 10

Other Insurance ................................. 10
Suit Against Us .................................. 10
Our Option ....................................... 10
Loss Payment.................................... 10
Abandonment of Property..................... 10
Mortgage Clause................................ 10
No Benefit To Bailee............................ 10
Nuclear Hazard Clause ......................... 10-11
Recovered Property............................. 11
Volcanic Eruption Period ...................... 11
**SECTION II - LIABILITY COVERAGES**
  Coverage E Personal Liability ................ 11
  Coverage F Medical Payments to Others. 11
**SECTION II - EXCLUSIONS**
  Coverage E Personal Liability and Coverage F
    Medical Payments to Others ............ 11-13
  Coverage E Personal Liability ................ 13
  Coverage F Medical Payments to Others. 13
**SECTION II - ADDITIONAL COVERAGES**
  Claim Expenses ................................. 13
  First Aid Expenses ............................. 14
  Damage to Property of Others .............. 14
  Loss Assessment............................... 14
**SECTION II - CONDITIONS**
  Limit of Liability................................. 14
  Severability of Insurance ..................... 14
  Duties After Loss .............................. 14-15
  Duties of an Injured Person ................. 15
  Payment of Claim .............................. 15
  Suit Against Us ................................. 15
  Bankruptcy of an Insured .................... 15
  Other Insurance ................................ 15
**SECTIONS I AND II - CONDITIONS**
  Policy Period .................................... 15
  Concealment or Fraud ........................ 15
  Liberalization Clause ......................... 15
  Waiver or Change of Policy Provisions ... 15
  Cancellation ..................................... 15-16
  Non-Renewal ................................... 16
  Assignment ..................................... 16
  Subrogation ..................................... 16
  Death.............................................. 16
**\*MUTUAL POLICY CONDITIONS** ............. 16

\*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

**Liberty Mutual®**
INSURANCE

| HOMEOWNERS 00 03 04 91 |
|---|

**AGREEMENT**

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

| DEFINITIONS |
|---|

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.
2. "Business" includes trade, profession or occupation.
3. "Insured" means you and residents of your household who are:
   a. Your relatives; or
   b. Other persons under the age of 21 and in the care of any person named above.
   Under Section II, "insured" also means:
   c. With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3.a. or 3.b. above. A person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner is not an "insured";
   d. With respect to any vehicle to which this policy applies:
      (1) Persons while engaged in your employ or that of any person included in 3.a. or 3.b. above; or
      (2) Other persons using the vehicle on an "insured location" with your consent.
4. "Insured location" means:
   a. The "residence premises";
   b. The part of other premises, other structures and grounds used by you as a residence:
      (1) Which is shown in the Declarations; or
      (2) Which is acquired by you during the policy period for your use as a residence;

   c. Any premises used by you in connection with a premises in 4.a. and 4.b. above;
   d. Any part of a premises:
      (1) Not owned by an "insured"; and
      (2) Where an "insured" is temporarily residing;
   e. Vacant land, other than farm land, owned by or rented to an "insured";
   f. Land owned by or rented to an "insured" on which a one or two family dwelling is being built as a residence for an "insured";
   g. Individual or family cemetery plots or burial vaults of an "insured"; or
   h. Any part of a premises occasionally rented to an "insured" for other than "business" use.
5. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
   a. "Bodily injury"; or
   b. "Property damage."
6. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.
7. "Residence employee" means:
   a. An employee of an "insured" whose duties are related to the maintenance or use of the "residence premises," including household or domestic services; or
   b. One who performs similar duties elsewhere not related to the "business" of an "insured."
8. "Residence premises" means:
   a. The one family dwelling, other structures, and grounds; or
   b. That part of any other building;
   where you reside and which is shown as the "residence premises" in the Declarations.
   "Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

| SECTION I - PROPERTY COVERAGES |
|---|

**COVERAGE A - Dwelling**
We cover:
1. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

2. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises."
This coverage does not apply to land, including land on which the dwelling is located.

App.315

Page 1 of 16



## COVERAGE B - Other Structures

We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

We do not cover other structures:

1. Used in whole or in part for "business"; or
2. Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

## COVERAGE C - Personal Property

We cover personal property owned or used by an "insured" while it is anywhere in the world. At your request, we will cover personal property owned by:

1. Others while the property is on the part of the "residence premises" occupied by an "insured";
2. A guest or a "residence employee," while the property is in any residence occupied by an "insured."

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises," is 10% of the limit of liability for Coverage C, or $1000, whichever is greater. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Limits of Liability.** These limits do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.
2. $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.
   This limit includes the cost to research, replace or restore the information from the lost or damaged material.
3. $1000 on watercraft, including their trailers, furnishings, equipment and outboard engines or motors.
4. $1000 on trailers not used with watercraft.
5. $1000 for loss by theft of jewelry, watches, furs, precious and semi-precious stones.
6. $2000 for loss by theft of firearms.
7. $2500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.
8. $2500 on property, on the "residence premises," used at any time or in any manner for any "business" purpose.
9. $250 on property, away from the "residence premises," used at any time or in any manner for any "business" purpose. However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits 10. and 11. below.
10. $1000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:
    a. Accessories or antennas; or
    b. Tapes, wires, records, discs or other media; for use with any electronic apparatus.
11. $1000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:
    a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;
    b. Is away from the "residence premises"; and
    c. Is used at any time or in any manner for any "business" purpose.
    Electronic apparatus includes:
    a. Accessories or antennas; or
    b. Tapes, wires, records, discs or other media;
    for use with any electronic apparatus.

**Property Not Covered.** We do not cover:

1. Articles separately described and specifically insured in this or other insurance;
2. Animals, birds or fish;
3. Motor vehicles or all other motorized land conveyances.
   This includes:
   a. Their equipment and accessories; or
   b. Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:
      (1) Accessories or antennas; or

**App.316**

(2) Tapes, wires, records, discs or other media;

for use with any electronic apparatus. The exclusion of property described in 3.a. and 3.b. above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

a. Used to service an "insured's" residence; or

b. Designed for assisting the handicapped;

4. Aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

5. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

6. Property in an apartment regularly rented or held for rental to others by an "insured," except as provided in Additional Coverages 10.;

7. Property rented or held for rental to others off the "residence premises";

8. "Business" data, including such data stored in:

a. Books of account, drawings or other paper records; or

b. Electronic data processing tapes, wires, records, discs or other software media;

However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market; or

9. Credit cards or fund transfer cards except as provided in Additional Coverages 6.

**COVERAGE D - Loss Of Use**

The limit of liability for Coverage D is the total limit for all the coverages that follow.

1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover, at your choice, either of the following. However, if the "residence premises" is not your principal place of residence, we will not provide the option under paragraph b. below.

a. **Additional Living Expense,** meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or

b. **Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" where you reside less any expenses that do not continue while the premises is not fit to live in.

Payment under a. or b. will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle

elsewhere.

2. If a loss covered under this Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the:

**Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

3. If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense and Fair Rental Value loss as provided under 1. and 2. above for no more than two weeks.

The periods of time under 1., 2. and 3. above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

**ADDITIONAL COVERAGES**

1. **Debris Removal.** We will pay your reasonable expense for the removal of:

a. Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

We will also pay your reasonable expense, up to $500, for the removal from the "residence premises" of:

a. Your tree(s) felled by the peril of Windstorm or Hail;

b. Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or

c. A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

provided the tree(s) damages a covered structure. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage.



If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

This coverage:

a. Does not increase the limit of liability that applies to the covered property;

b. Does not relieve you of your duties, in case of a loss to covered property, as set forth in SECTION I - CONDITION 2.d.

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the "residence premises," for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the "residence premises," Vandalism or malicious mischief or Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

We will pay up to $500 for:

a. The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

b. Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

c. Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

d. Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

We do not cover use of a credit card or fund transfer card:

a. By a resident of your household;

b. By a person who has been entrusted with either type of card; or

c. If an "insured" has not complied with all terms and conditions under which the cards are issued.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of "business" use or dishonesty of an "insured."

This coverage is additional insurance. No deductible applies to this coverage.

Defense:

a. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

b. If a suit is brought against an "insured" for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

c. We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under COVERAGE A - DWELLING, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises." We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $1000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

App.318



Condition 1. Policy Period, under SECTIONS I AND II CONDITIONS, does not apply to this coverage.

8. **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:
   a. Perils Insured Against in COVERAGE C - PERSONAL PROPERTY. These perils apply to covered buildings and personal property for loss insured by this additional coverage;
   b. Hidden decay;
   c. Hidden insect or vermin damage;
   d. Weight of contents, equipment, animals or people;
   e. Weight of rain which collects on a roof; or
   f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

   Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e., and f. unless the loss is a direct result of the collapse of a building.

   Collapse does not include settling, cracking, shrinking, bulging or expansion.

   This coverage does not increase the limit of liability applying to the damaged covered property.

9. **Glass or Safety Glazing Material.**
   We cover:
   a. The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and
   b. Damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

   This coverage does not include loss on the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

   Loss for damage to glass will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

   This coverage does not increase the limit of liability that applies to the damaged property.

10. **Landlord's Furnishings.** We will pay up to $2500 for your appliances, carpeting and other household furnishings, in an apartment on the "residence premises" regularly rented or held for rental to others by an "insured," for loss caused only by the following Perils Insured Against:

a. **Fire or lightning.**
b. **Windstorm or hail.**
   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.
   This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.
c. **Explosion.**
d. **Riot or civil commotion.**
e. **Aircraft,** including self-propelled missiles and spacecraft.
f. **Vehicles.**
g. **Smoke,** meaning sudden and accidental damage from smoke.
   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.
h. **Vandalism or malicious mischief.**
i. **Falling objects.**
   This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a failing object. Damage to the falling object itself is not included.
j. **Weight of ice, snow or sleet** which causes damage to property contained in a building.
k. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.
   This peril does not include loss:
   (1) To the system or appliance from which the water or steam escaped;
   (2) Caused by or resulting from freezing except as provided in the peril of freezing below; or
   (3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."
   In this peril, a plumbing system does not include a sump, sump pump or related equipment.
l. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.
   We do not cover loss caused by or resulting from freezing under this peril.



m. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.
This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:
(1) Maintain heat in the building; or
(2) Shut off the water supply and drain the system and appliances of water.

n. **Sudden and accidental damage from artificially generated electrical current.**
This peril does not include loss to a tube, transistor or similar electronic component.

o. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.
The $2500 limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

## SECTION I - PERILS INSURED AGAINST

### COVERAGE A - DWELLING and COVERAGE B - OTHER STRUCTURES

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss:

1. Involving collapse, other than as provided in Additional Coverage 8.;
2. Caused by:
   a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:
      (1) Maintain heat in the building; or
      (2) Shut off the water supply and drain the system and appliances of water;
   b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:
      (1) Fence, pavement, patio or swimming pool;
      (2) Foundation, retaining wall, or bulkhead; or
      (3) Pier, wharf or dock;
   c. Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;
   d. Vandalism and malicious mischief if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;
   e. Any of the following:
      (1) Wear and tear, marring, deterioration;
      (2) Inherent vice, latent defect, mechanical breakdown;
      (3) Smog, rust or other corrosion, mold, wet or dry rot;
      (4) Smoke from agricultural smudging or industrial operations;
      (5) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.
      Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;
      (6) Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings;
      (7) Birds, vermin, rodents, or insects; or
      (8) Animals owned or kept by an "insured."
      If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.
3. Excluded under Section I - Exclusions.

Under items 1. and 2., any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

### COVERAGE C - PERSONAL PROPERTY

We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in SECTION I - EXCLUSIONS.

1. **Fire or lightning.**
2. **Windstorm or hail.**
   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow,

**App.320**



sleet, sand or dust enters through this opening. This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

3. **Explosion.**
4. **Riot or civil commotion.**
5. **Aircraft,** including self-propelled missiles and spacecraft.
6. **Vehicles.**
7. **Smoke,** meaning sudden and accidental damage from smoke.
   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.
8. **Vandalism or malicious mischief.**
9. **Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.
   This peril does not include loss caused by theft:
   a. Committed by an "insured";
   b. In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied; or
   c. From that part of a "residence premises" rented by an "insured" to other than an "insured."
      This peril does not include loss caused by theft that occurs off the "residence premises" of:
   a. Property while at any other residence owned by, rented to, or occupied by an "insured" except while an "insured" is temporarily living there.  Property of a student who is an "insured" is covered while at a residence away from home if the student has been there at any time during the 45 days immediately before the loss;
   b. Watercraft, and their furnishings, equipment and outboard engines or motors; or
   c. Trailers and campers.
10. **Falling objects.**
    This peril does not include loss to property

contained in a building unless the roof or an outside wall of the building is first damaged by a falling object.  Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.
12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.
    This peril does not include loss:
    a. To the system or appliance from which the water or steam escaped;
    b. Caused by or resulting from freezing except as provided in the peril of freezing below; or
    c. On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."
    In this peril, a plumbing system does not include a sump, sump pump or related equipment.
13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.
    We do not cover loss caused by or resulting from freezing under this peril.
14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.
    This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:
    a. Maintain heat in the building; or
    b. Shut off the water supply and drain the system and appliances of water.
15. **Sudden and accidental damage from artificially generated electrical current.**
    This peril does not include loss to a tube, transistor or similar electronic component.
16. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

---

## SECTION I - EXCLUSIONS

1. We do not insure for loss caused directly or indirectly by any of the following.  Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

   a. **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, unless specifically provided under this policy.

   b. **Earth Movement,** meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:
      (1) Fire;
      (2) Explosion; or
      (3) Breakage of glass or safety glazing material which is part of a building, storm door or storm window;



ensues and then we will pay only for the ensuing loss.
This exclusion does not apply to loss by theft.

c. **Water Damage,** meaning:

(1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

(2) Water which backs up through sewers or drains or which overflows from a sump; or

(3) Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

Direct loss by fire, explosion or theft resulting from water damage is covered.

d. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises." But, if a Peril Insured Against ensues on the "residence premises," we will pay only for that ensuing loss.

e. **Neglect,** meaning neglect of the "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

f. **War,** including the following and any consequence of any of the following:

(1) Undeclared war, civil war, insurrection, rebellion or revolution;

(2) Warlike act by a military force or military personnel; or

(3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

g. **Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of SECTION I - CONDITIONS.

h. **Intentional Loss,** meaning any loss arising out of any act committed:

(1) By or at the direction of an "insured"; and

(2) With the intent to cause a loss.

2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

a. **Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;

b. **Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body;

c. **Faulty, inadequate or defective:**

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property whether on or off the "residence premises."

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

a. To the "insured" for more than the amount of the "insured's" interest at the time of loss; or

b. For more than the applicable limit of liability.

2. **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

a. Give prompt notice to us or our agent;

b. Notify the police in case of loss by theft;

c. Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage;

d. Protect the property from further damage. If repairs to the property are required, you must:

(1) Make reasonable and necessary repairs to protect the property; and

(2) Keep an accurate record of repair expenses;

e. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

f. As often as we reasonably require:

(1) Show the damaged property;

(2) Provide us with records and documents we request and permit us to make copies; and

(3) Submit to examination under oath, while not in the presence of any other "insured," and sign the same;

g. Send to us, within 60 days after our request, your signed, sworn proof of loss

**App.322**



which sets forth, to the best of your knowledge and belief:

(1) The time and cause of loss;

(2) The interest of the "insured" and all others in the property involved and all liens on the property;

(3) Other insurance which may cover the loss;

(4) Changes in title or occupancy of the property during the term of the policy;

(5) Specifications of damaged buildings and detailed repair estimates;

(6) The inventory of damaged personal property described in 2.e. above;

(7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

(8) Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss Settlement.** Covered property losses are settled as follows:

a. Property of the following types:

(1) Personal property;

(2) Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

(3) Structures that are not buildings;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

b. Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

(1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

(a) The limit of liability under this policy that applies to the building;

(b) The replacement cost of that part of the building damaged for like construction and use on the same premises; or

(c) The necessary amount actually spent to repair or replace the damaged building.

(2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(a) The actual cash value of that part of the building damaged; or

(b) That proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

(3) To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

(a) Excavations, foundations, piers or any supports which are below the undersurface of the lowest basement floor;

(b) Those supports in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(c) Underground flues, pipes, wiring and drains.

(4) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of b.(1) and b.(2) above.

However, if the cost to repair or replace the damage is both:

(a) Less than 5% of the amount of insurance in this policy on the building; and

(b) Less than $2500;

we will settle the loss according to the provisions of b.(1) and b.(2) above whether or not actual repair or replacement is complete.

(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim



within 180 days after loss for any additional liability according to the provisions of this Condition 3. Loss Settlement.

4. **Loss to a Pair or Set.**  In case of loss to a pair or set we may elect to:
   a. Repair or replace any part to restore the pair or set to its value before the loss; or
   b. Pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.**  Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.**  If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss.  In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other.  The two appraisers will choose an umpire.  If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located.  The appraisers will separately set the amount of loss.  If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss.  If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.
   Each party will:
   a. Pay its own appraiser; and
   b. Bear the other expenses of the appraisal and umpire equally.

7. **Other Insurance.**  If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.**  No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

9. **Our Option.**  If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.**  We will adjust all losses with you.  We will pay you unless some other person is named in the policy or is legally entitled to receive payment.  Loss will be payable 60 days after we receive your proof of loss and:

a. Reach an agreement with you;
b. There is an entry of a final judgement; or
c. There is a filing of an appraisal award with us.

11. **Abandonment of Property.**  We need not accept any property abandoned by an "insured."

12. **Mortgage Clause.**
   The word "mortgagee" includes trustee.
   If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear.  If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.
   If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:
   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;
   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and
   c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so.  Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.
   If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.
   If we pay the mortgagee for any loss and deny payment to you:
   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or
   b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest.  In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.
   Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee.**  We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

14. **Nuclear Hazard Clause.**
   a. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **PHANTA U. DARAMY-ANDREWS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No. 1:22-cv-01694-TJK** |
| | : | |
| **LIBERTY INSURANCE** | : | |
| **CORPORATION,** | : | |
| | : | |
| **Defendant.** | : | |

### <u>ORDER</u>

In consideration of Defendant Liberty Insurance Corporation's Motion for Summary Judgment, and any opposition thereto, it is this ____ day of _____ 2024

ORDERED that the motion be and is hereby GRANTED; and it is further

ORDERED that judgment is hereby entered in favor of Defendant, with costs assessed to Plaintiff.

_____
Timothy J. Kelly
U.S. District Court Judge

Serve on:

Charles C. Iweanoge, Esquire
James C. Mehigan, Esquire

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **PHANTA U. DARAMY-ANDREWS** | \* |
| **Plaintiff** | \* |
| | \* |
| **v.** | **\*CASE #: 1:22-CV-01694-TJK** |
| | \* |
| **LIBERTY INSURANCE CORPORATION** | \* |
| **Defendant** | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES, Plaintiff, Phanta U. Daramy-Andrews, by and through undersigned counsel, and moves this Honorable Court to deny Defendant's motion for summary judgment because Defendant forfeited and waived the affirmative defense of contractual limitation period by its actions, there are material facts in dispute, and Defendant is not entitled to judgment as a matter of law. Memorandum of points and authorities supporting Plaintiff's Opposition to Defendant's motion for summary judgment is attached hereto.

Respectfully submitted,
**THE IWEANOGES' FIRM, P.C.**


By:   /s/CharlesCIweanoge
        Charles C. Iweanoge
**IWEANOGE LAW CENTER**
1026 Monroe Street, NE
 Washington, D.C. 20017
Phone: (202) 347-7026
Fax:   (202) 347-7108
Email: cci@iweanogesfirm.com

**App.326**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **PHANTA U. DARAMY-ANDREWS** | * |
| **Plaintiff** | * |
| | * |
| **v.** | ***CASE #: 1:22-CV-01694-TJK** |
| | * |
| **LIBERTY INSURANCE CORPORATION** | * |
| **Defendant** | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### BACKGROUND FACTS

Plaintiff owns the property known as 707 49th Place, NE, Washington, DC, 20019, and purchased insurance coverage from the Defendant, Liberty Mutual Insurance Company, starting in 2012. *See Exhibit 1: Liberty Mutual Insurance Policy Declarations.* The effective date of the annually renewed policy was January 26, 2019, through January 26, 2020.

On or about April 21, 2019, the basement of the property flooded due to a pipe break, resulting in feces and water, causing extensive damage to the basement and personal properties in the basement. Upon reporting the claim, Defendant contracted 1-800-Packout to come to Plaintiff's residence and remove all damaged and contaminated personal property for storage at their facility without cleaning. *See Exhibit 2: Email and Pictures of personal property.* I-800-Packout stored the personal property without cleaning as instructed by Defendant.

Upon notification of the claim, Defendant commenced an insurance fraud investigation and hired Richard Souther, Esquire, to conduct an EOU deposition. *Exhibit 3: Deposition Transcript dated 10/18/2019*. At the deposition, the attorney discovered that the Plaintiff had not filed a proof of loss and inventory. Exhibit 3 pg 11: 5-11; 17: 13-22. As a result, Defendant's attorney ended the deposition so that the Plaintiff would file a proof of loss and inventory list. Exhibit 3 pg 33-34.

In a letter dated November 1, 2019, the Defendant accepted liability for the loss, addressing the issue of supplemental damages. *See Exhibit 4: Letter dated 11/1/2019*. Plaintiff was not paid for any personal property damaged during the loss because Plaintiff had not filed proof of loss and the accompanying inventory. On November 12, 2019, Defendant's attorney sent an email to Plaintiff's counsel stating "[A]attached please find the proof of loss form that Liberty Mutual needs completed in this matter" Exhibit 5 page 6. On December 6, 2019, Defendant's counsel was notified of the difficulties Plaintiff encountered in providing proof of loss and inventory, and the deadline to submit the documents was extended to December 22, 2019. Exhibit 5 pg. 5. Finally, the claim adjuster, Ms. Guida, in an email dated December 23, 2019, extended the deadline to January 27, 2020. Exhibit 5 pg 2. Plaintiff spent days at 1-800-Packouts going through items contaminated with feces to comply with Defendant's unreasonable directive. Plaintiff's Affidavit ¶8.

On January 27, 2020, Plaintiff, through counsel, sent an email with attachments containing: (1) Letter, (2) Proof of loss, (3) Personal Property Schedules, and (4) 1-800-

Packouts invoices. Exhibit 5, pg 2 and attachments. The plaintiff's Special Investigator sent an email on February 3, 2020, claiming that the Proof of Loss was not signed, in addition to other incorrect allegations. Exhibit 6: Email and attachments.

Following the difficulties encountered in complying with Defendant's demand, on March 5, 2020, and the uncertainties about the COVD-19 pandemic, Defendant sent a letter to Plaintiff stating:

> "[W]e understand the insured's current hardships, and we will wait until she is able to complete the required Proof of Loss for the 04/21/2019 water damage and provide a signed copy to us as discussed previously. We will then be able to complete the meeting that we started on 10/18/2019 and make final decision based on what is submitted and reviewed.

The letter further stated:

> At this time, our investigation is suspended. We will be happy to reopen the claim should the insured comply with the conditions of the policy and complete the signed proof of loss.

See Exhibit 7: Letter Dated March 5, 2020.

Nowhere in the letter did it state or suggest that notwithstanding the acceptance of liability and/or suspension of investigation that Defendant does not waive its right to the contractual limitation period. In addition, as a result of the COVID-19 Pandemic, closures, and associated health issues and precautions, Plaintiff was unable to visit 1-800-Packout storage facility to continue taking inventory of her molded and damaged personal properties in possession of 1-800-Packout. It is pertinent to note that on March 18, 2020, the Superior Court ordered that "all statutory and rules-based timelines in the D.C. Code" be "tolled" in response to the

**App.329**

COVID-19 pandemic until May 15, 2020[1]. In a series of subsequent orders issued by the Chief Judge on March 19, 2020, May 14, 2020, June 19, 2020, August 13, 2020, November 5, 2020, and January 13, 2021, the limitation period for all civil cases were tolled from March 18, 2020, through March 30, 2021.

On July 10, 2020. Heather Feagin, a CAT Inside Claims Specialist with Liberty Mutual Insurance, contacted 1-800-Pckout advising that the investigation was suspended and that their invoices for their contracted services should be forwarded to the Plaintiff. See Exhibit 8: Emails pg 2. Since July 2020, Defendant has not made any payments for the storage of Plaintiff's personal property, for which Defendant hired 1-800-Packout to remove, clean, and store.

On April 4, 2022, Plaintiff filed the instant lawsuit in the Superior Court for the District of Columbia against Liberty Mutual Insurance affiliated and related entities because Plaintiff was unaware of the exact Liberty Mutual entity that issued her policy. On June 2, 2022, Plaintiff, through Counsel, received a certified copy of the Plaintiff's insurance policy. Defendant removed the case to this court, Plaintiff filed an amended complaint naming the defendant, Liberty Insurance Corporation, as the proper defendant. The amended complaint asserted three counts: breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. (ECF 8)

**ARGUMENT**

**STANDARD OF REVIEW**

---

[1] See Amended Order, D.C. Super. Ct. (Mar. 18, 2020), https://tinyurl.com/26jdpzn6.

A court may dispose of a case on summary judgment before trial only where the pleadings, stipulations, affidavits, and admissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56(c) mandates the entry of summary judgment, only after adequate time for discovery against a party who fails to make a showing that is sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Joyce v. United States, 795 F. Supp. 1, 3 (D.D.C. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317). The standard test for summary judgment is "whether a fair minded jury could return a verdict for the [nonmovant] on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986); Shields v. Eli Lilly and Co., 895 F.2d 1463 (D.C. Cir. 1990). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255; Washington Post Co. v. U.S. Dept. of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989). In addition, the court may not make credibility determinations or weigh the evidence. Lytle v. Household Mfg., Inc, 494 U.S. 545, 554-555, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990).

The party moving for summary judgment bears the burden of proving lack of any genuine issue of fact, and the court must view the available facts in the light most favorable to the non-moving party. Minihan v. American Pharmaceutical Ass'n, 812 F.2d 726, 727 (D.C. Cir. 1987). The nonmoving party is "required to provide evidence that would permit a reasonable jury to find" in her favor. Laninham v. U.S.

Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). Nevertheless, the Supreme Court in Anderson, stated "credibility determination, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions not those of a judge." 477 U.S. at 255. Notwithstanding that the Court must view the record as a whole it must disregard all evidence favorable to the moving party that the jury is not required to believe. The court is only required to give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontroverted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Id. at 300; See also Zuchel v. Spinharney, 890 F.2d 273 (10th Cir. 1989)(although the defendant presented the testimony of nine eyewitnesses tending to vindicate defendant's conduct, the court affirmed the denial of defendant's motion for summary judgment stating that "it made no difference that defendant's view of the evidence is supported by the majority of the witnesses.").

### 1.    SUMMARY JUDGMENT SHOULD NOT BE GRANTED ON PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT BECAUSE DEFENDANT WAIVED THE AFFIRMATIVE DEFENSE OF THE CONTRACTUAL LIMITATION PERIOD.

"Under modern law, a waiver of the affirmative defense of the statute of limitations means to abandon, renounce, repudiate, or surrender the privilege or right under such statute of limitations." 1 C. CORMAN, LIMITATION OF ACTIONS, at 175 (1991). An insurer can waive or be estopped from asserting a contractual

limitation period when it fails to assert a contractual limitation provision or the "company has conceded liability, and some discussion of a settlement offer has occurred." *Bailey v. Greenberg*, 516 A.2d 934, 938-939 (D.C. 1986); *see Toomey v. Cammack,* 345 A.2d 453, 455 n. 6 (D.C.1975).

In this case, the Defendant conceded liability, as evidenced by Exhibit 3, and suspended action on the claim, as stated in Exhibit 6. Liability is conceded, and the only issue was for the Plaintiff to provide the value of her personal property in the storage. The defendant suspended all actions on the claim until the Plaintiff provided the requested itemized list of her personal property in possession and custody of 1800-Packout.

Defendant incorrectly alleges that Plaintiff was paid for her personal property but has not provided any evidence of the personal property alleged to have been paid to Plaintiff and that Plaintiff disagreed. As is evident from the Plaintiff's deposition transcript relied upon by the Defendant, Plaintiff denied receiving any money from the defendant or money for personal property. Plaintiff's Exhibit 9: Deposition Transcript pg. 51-52. As a matter of fact, Defendant has not produced any evidence or document demonstrating that Plaintiff was paid for her personal property or that a value was assigned to her personal property, and Plaintiff refused. The email communication demonstrates that Plaintiff reasonably relied on the representation by the Defendant that investigation was suspended at the height of the COVID-19 pandemic.

Defendant, by its letter, lulled Plaintiff to reasonably believe that the statute of limitation would not bar her claim because its letter suspended the claim until additional information on the value of the personal property was provided. Plaintiff's Affidavit ¶¶ 9-11. Moreover, the cause of conduct of the parties, including the continued adjudication of her 2015 and 2018 claims without any issue regarding the contractual limitation period, led Plaintiff to reasonably believe that the limitation period was not an issue until a formal denial letter or the parties were unable to agree on the value of her personal property. More importantly, Defendant's claim that it issued payment for $6,069.51 to clean and repair Plaintiff's personal property affected by the loss is incorrect since Defendant requested 1-800-Packout to only store the properties, not clean them.

It is well settled that a defendant is estopped from asserting limitation as a bar if the plaintiff is lulled into inaction. The letter by Defendant did not advise Plaintiff that she must bring her claim within one year. Instead, it gave Plaintiff the understanding that Defendant would adjust her claim as it did previously, and thus, she gave them the benefit of the doubt of performance.  Defendant's acceptance of liability and suspension of action occurred on March 5, 2020, before the one-year contractual limitation period of April 20, 2020, and was not rescinded prior to the end of the limitation period.

The Court should deny Defendant's motion for summary judgment based on the contractual limitation period because (1) Defendant suspended the adjustment of Plaintiff's claim without notifying her that the suspension did not waive the

contractual limitation period; (2) Defendant lulled Plaintiff into missing the deadline for filing suit by its letter dated March 5, 2020 letter; and (3) Plaintiff did not receive the payments stated in its letter dated November 1, 2019, which the Plaintiff was expecting.

### 2.  PLAINTIFF'S CLAIM FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING IS NOT SUBJECT TO THE CONTRACTUAL LIMITATION PERIOD

All contracts, including insurance policies, "contain an implied duty of good faith and fair dealing, which means that `neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" _Hais v. Smith_, 547 A.2d 986, 987 (D.C.1988)). "Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness." _Allworth v. Howard University_, 890 A.2d 194, 201-02 (D.C. 2006) (quoting Restatement (Second) of Contracts § 205, cmt. a (1981)). Bad faith requires more than mere negligence; examples include lack of diligence, purposeful failure to perform, and interference with the other party's ability to perform. See _Allworth,_ 890 A.2d at 202.

To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege either bad faith or arbitrary and capricious conduct. _See Alden v. Georgetown Univ_., 734 A.2d 1103, 1112 n. 11 (D.C.1999).

In this case, Plaintiff's cause of action for breach of the implied covenant of good faith and fair dealing is not subject to the one-year contractual limitation

period because the bad faith actions that were arbitrary and capricious occurred during and after the contractual limitation period in the policy provided by Defendant. Defendant has not stated in its motion for summary judgment that the contractual statute of limitation applies to Plaintiff's claim for breach of the implied covenant of good faith and fair dealing, nor has Defendant advanced any argument regarding any other grounds for summary judgment on Plaintiff's claim for breach of the implied covenant of good faith and fair dealing. Therefore, Defendant concedes that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is proper.

Moreover, the actions Defendant took were the way the claim was adjusted, the Defendant's refusal to inspect and value the personal properties in the storage, and the decision to deny payment of the 1-800-packout storage fees it contracted. These actions occurred between March 2020 and July 2020. During this period District of Columbia suspended all statutes of limitation until 2021. Plaintiff filed her complaint within one year of the series of actions that Plaintiff alleges breached the implied covenant of good faith and fair dealing.

The Court should deny Defendant's motion for summary judgment on Plaintiff's claim for breach of the implied covenant of good faith and fair dealings.

### 3. PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT IS PROPER, AND SUMMARY JUDGMENT SHOULD NOT BE GRANTED

Unjust enrichment occurs when: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." Fort Lincoln Civic Ass'n, Inc. v. Fort

Lincoln New Town Corp., 944 A.2d 1055, 1076 (D.C. 2008). Therefore, "a claim for unjust enrichment accrues only when the enrichment actually becomes unlawful, i.e., where there has been a wrongful act giving rise to a duty of restitution." News World Communications, Inc. v. Thompsen, 878 A.2d 1218, 1225 (D.C. 2003)("[T]he statute of limitations begins to run when the plaintiff's last service has been rendered and compensation has been wrongfully withheld."); see also Bregman v. Perles, 747 F.3d 873 (D.C. Cir. 2014).

Although the general rule is that quasi-contractual claims, such as unjust enrichment, cannot arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests, a court may allow unjust enrichment claims when "there is evidence of fraud or bad faith, there has been a breach of contract or mutual recission of the contract, when recission is warranted, or when the express contract does not fully address a subject matter. While an actual written insurance policy provides coverage on Plaintiff's real and personal properties, Plaintiff's claim for unjust enrichment and right of recovery is based on the premiums she paid to cover her loss. However, despite payment of her premium, Defendant did not cover her loss as required due to bad faith. Defendant cannot unjustly retain Plaintiff's premium knowing that it did not intend to cover damages to her personal property. Plaintiff enriched Defendant by paying her premium. The enrichment became unjust when Defendant, through bad faith, damaged Plaintiff's personal property by storing them without cleaning, refusing to pay 1-800-Packout, and delaying Plaintiff's request for payment of her damaged

personal property. The claim of unjust enrichment asserted by Plaintiff is based on equitable principles, and it is not contingent upon the niceties of the law of contracts and is not based on breach of contract.

The Court should deny the summary judgment on the claim for unjust enrichment.

## **CONCLUSION**

The Court should deny Defendant's motion for summary judgment on the Amended Complaint based on the foregoing and any other reasons that may appear to the Court.

Respectfully submitted,
THE IWEANOGES' FIRM, PC

By:  /s/CharlesCIweanoge/s/
        Charles C. Iweanoge
        **Iweanoge Law Center**
        1026 Monroe Street, NE
        Washington, D.C. 20017
        Phone: (202) 347 – 7026
        Fax: (202) 347 – 7108
        Email: cci@iweanogesfirm.com

## **CERTIFICATE OF FILING AND SERVICE**

I, CERTIFY that a true and correct copy of the foregoing was electronically filed this 17th day of September 2024 and the Court's e-serve system would serve

App.338

Defendant's Counsel.

<u>    /s/CharlesCIweanoge/s/  </u>
Charles C. Iweanoge

**App.339**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **PHANTA U. DARAMY-ANDREWS** | \* |
| **Plaintiff** | \* |
| | \* |
| **v.** | **\*CASE #: 1:22-CV-01694-TJK** |
| | \* |
| **LIBERTY INSURANCE CORPORATION** | \* |
| **Defendant** | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN DISPUTE</u>

1.     Plaintiff admits the allegation in paragraph 1 of Defendant's Statement of Material Facts not in dispute.

2.     Plaintiff admits the allegation in paragraph 2 of Defendant's Statement of Material Facts not in dispute but further states that Plaintiff did not receive a copy of the LibertyGuard Deluxe Homeowners Policy prior to June 2, 2022. *Plaintiff's Affidavit ¶2; See Exhibit 1: Liberty Mutual Insurance Policy Declarations*.

3.     Plaintiff admits that damage was done to the basement and personal properties in the basement, but the damages resulted from feces and water. Plaintiff's Affidavit ¶4. Defendant sent 1-800-Packout to remove all the personal property in Plaintiff's basement and store them without cleaning despite being contaminated with feces and the lack of cleaning resulted in molding of the items. *Plaintiff's Affidavit ¶¶4-6. Exhibit 2: Email dated 5/29/2019, Inventory Listing and Pictures.*

4.     Plaintiff disputes the allegation in paragraph 4 of Defendant's Statement of Material Facts not in dispute to the extent that it claims that $6,069.51 was paid for

the cleaning and repair of Plaintiff's personal property affected by the event. *Plaintiff's Affidavit ¶¶4-6;* Exhibit 3 pg 11: 5-11; 17: 13-22, pg 33-34; Exhibit 5 pg 5. Plaintiff further asserts that a supplemental estimate after Plaintiff's deposition on November 1, 2019, increased the amount but did not address the personal property loss already provided to Defendant by 1-800-Packout. *See Exhibit 4: Letter dated 11/1/2019.* Plaintiff did not receive any payment for her personal property damaged by feces and declared total loss by 1-800-Packout. *Plaintiff's Affidavit ¶¶12-13; See Plaintiff's Exhibit 9 at pg. 49, 51-53.*

5.      Plaintiff disputes the allegation in paragraph 5 of Defendant's Statement of Material Facts not in dispute because there was no determination done as to Plaintiff's personal household properties, as is evident from Defendant's letter dated March 5, 2020. *See Plaintiff's Exhibits 3:* pgs 11: 5-11; 17: 13-22, 33-34; Exhibit *5, Exhibit 6; and Plaintiff's Exhibit 7.*

6.       Plaintiff admits the allegation in paragraph 6 of Defendant's Statement of Material Facts not in dispute.

7.      Plaintiff disputes the allegation in paragraph 7 because Defendant that provisions are inapplicable under the facts and circumstances of this case. Defendant waived the defense when Defendant accepted liability, and Defendant advised Plaintiff that it would suspend the investigation of the claim until it received additional records, accepted liability, and was negotiating resolution of the personal property claim. *See Plaintiff's Exhibit 5, 6, and 7.*

8.      Plaintiff disputes the allegation in paragraph 8 of Defendant's Statement

of Material Facts not in dispute because liability was already accepted, the value of the personal properties were being determined, and Plaintiff relied on the letter dated March 5, 2020. *Plaintiff's Exhibit 7: Letter dated 3/5/2020; Plaintiff's Affidavit ¶¶9-11.*I-800-Packout removed Plaintiff's personal properties in the basement for inventory, itemization, and storage on the instruction of Defendant, which resulted in the items molding from uncleaned feces.

Respectfully submitted,
THE IWEANOGES' FIRM, PC

By:   /s/CharlesCIweanoge/s/
        Charles C. Iweanoge
        **Iweanoge Law Center**
        1026 Monroe Street, NE
        Washington, D.C. 20017
        Phone: (202) 347 – 7026
        Fax: (202) 347 – 7108
        Email: cci@iweanogesfirm.com

### CERTIFICATE OF FILING AND SERVICE

I, **CERTIFY** that that a true and correct copy of the foregoing was electronically filed this 17th day of September 2024 and Defendant's Counsel would be served by the Court's e-serve system.

____/s/CharlesCIweanoge/s/__
        Charles C. Iweanoge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

*********************************************************************************

| | |
|---|---|
| **PHANTA U. DARAMY-ANDREWS** | * |
| **Plaintiff** | * |
| | * |
| **v.** | ***CASE #: 1:22-CV-01694-TJK** |
| | * |
| **LIBERTY INSURANCE CORPORATION** | * |
| **Defendant** | * |

*********************************************************************************

<u>**AFFIDAVIT OF PHANTA U. DARAMY-ANDREWS IN SUPPORT OF PLAINTIFF'S**</u>
<u>**OPPOSITION TO SUMMARY JUDGMENT**</u>

I, Phanta Daramy-Andrews, an adult, affirm under penalty of perjury as allowed by 28 U.S.C.§1746(2) that the following statements are based on personal knowledge and are true to the best of my knowledge, belief and understanding:

1.     I am the owner of the property known as 707 49th Place, NE, Washington, DC, 20019. I purchased insurance coverage from the Defendant, Liberty Insurance Corporation with Policy Number H37-238-660209-40 8 4.

2.     My property has been insured with Liberty Insurance Company from about 2012 and has been renewed annually. The insurance policy for the relevant period was renewed effective January 26, 2019, with an expiration date of January 26, 2020. At the time of the insurance renewal, I only received the declaration page of the insurance policy without the LibertyGuard Deluxe Homeowners Policy.

3.     In 2019, Liberty Insurance was still adjusting and negotiating my personal property claims that occurred in 2015 and 2018.

4.     On or about April 21, 2019, the basement of the property flooded due to pipe break, which caused extensive feces damages to the basement, and most

Page <b>1</b> of <b>3</b>

of my personal properties in the basement.

5.      Liberty contacted 1-800-Packout to come to my residence and removed my personal properties damaged as a result.

6.      1-800-Packout declared pictures as total loss and stored the other items in boxes without cleaning based on the instruction of the insurance company.

7.      When I filed the claim, Defendant commenced insurance fraud investigation and hired an attorney to depose the Plaintiff. After my deposition on October 19, 2019, Defendant accepted liability for the loss and issued a letter dated November 1, 2019, addressing the issue of supplemental damages.

8.      I requested for payment of my personal property declared total loss by 1-800-Packout and Defendant requested that I itemize all my personal property in the possession and custody of 1-800-Packout. I went to the storage of 1-800-Packout on at least two occasions to itemize my personal property stored at that location, until COVID-19 Pandemic and closure of most businesses happened.

9.      On March 5, 2020, Defendant sent a letter to me advising that its investigation was being suspended and will reopen the claim when I submit the signed proof of loss.

10.     The letter did not advise me that my claim has been denied, neither did it inform me that despite the suspension that I must file a complaint prior to April 20, 2020 if I do not submit complete inventory list and signed proof of claim by that date or notify me that the insurance policy for which I only received the declaration page at the time of renewal provided that I must file a claim in court

Page **2** of **3**

within 1 year of the date of loss even though the claim has been accepted.

11.    My communication with Defendant led me to believe in good faith that my claim has been accepted and that the remaining issue was the value of my personal properties declared total loss after itemization which was delayed due to covid closure and the hazardous conditions of the stored personal properties.

12.    I did not receive any checks from the Defendant for payment of my personal property or cleaning of the basement.

13.    I have not been paid for my damaged personal property despite Liberty Insurance acknowledging personal property loss.

**AFFIRMATION**

I SOLEMNLY AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE MATTERS AND FACTS CONTAINED IN THE FOREGOING ARE BASED ON PERSONAL KNOWLEDGE AND ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION, AND BELIEF.

_____
Phanta Daramy-Andrews

*000001*
Liberty Mutual Office
PO Box 970
Mishawaka IN 46546





*Plaintiff's Exhibit 1*

Phanta U Daramy-Andrews
707 49th Pl Ne
Washington DC 20019-4805



## CONTACT US

**Questions About
Your Policy**
**By Phone**
1-301-262-5242
1-866-941-4012

**Sign Up for eService**
- Pay your bill
- Go paperless
- View your policy
- File or view a claim
Manage your policy 24/7 at
LibertyMutual.com/
register

**Visit Us Online**
LibertyMutual.com

**To Report a Claim**
**By Phone**
1-800-2CLAIMS
(1-800-225-2467)

**Online**
LibertyMutual.com/Claims

**Lost your bill and need to
make a payment?  Here is
the address:**
Liberty Mutual Insurance
PO Box 1604
NEW YORK, NY 10116

# Thank you for insuring with Liberty Mutual.

This package contains your updated policy declarations and documents that
reflect changes made to your policy.
- Change Name PHANTA U
  DARAMY-ANDREWS

Please look over this information and keep it with your insurance documents.

Be sure to download our mobile app or visit LibertyMutual.com/register and
check out our eService options. eService makes it easy to get information
and manage your Liberty Mutual account online whenever you like.

If you have any questions about your coverage, available discounts or
product offerings, please call us at 1-301-262-5242/ 1-866-941-4012.

Sincerely,
Your Liberty Mutual Service Team

4000D004H37238660209400000000

```
CONTINUE TO THE NEXT PAGE
FOR A GUIDE TO YOUR
HOME ENDORSEMENT
PACKET
```

THIS IS NOT YOUR HOME INSURANCE BILL. YOU WILL BE BILLED SEPARATELY.

**App.346**



## A GUIDE TO YOUR HOME ENDORSEMENT PACKET

| PAGE | SECTION |
|---|---|
| 1 | **Policy Declarations** |
| | Includes important information about your policy, including insurance information as well as your discounts and benefits. |
| 1 | **Coverage Information** |
| | Includes important coverage information. Please review this section in detail to ensure you are fully covered. Contact us with any questions. |
| 5 | **Important Notices & Policy Forms** |
| | This section includes any notices and policy forms that may change your coverages. |

**Named Insured:**
1. Phanta U
Daramy-Andrews

**Policy Number:**
H37-238-660209-40 9 4

**Policy Period:**
01/26/2019 to 01/26/2020

**Mailing Address:**
707 49th Pl Ne
Washington DC
20019-4805

**Affinity:**
Community Options, Inc.

THIS IS NOT YOUR HOME INSURANCE BILL. YOU WILL BE BILLED SEPARATELY.



| Questions about your Policy? Call 1-301-262-5242 or 1-866-941-4012 | Policy Number: H37-238-660209-40 9 4 | Report a Claim: 1-800-2CLAIMS or LibertyMutual.com/Claims |



**ACTION REQUIRED:**
PLEASE REVIEW AND KEEP FOR YOUR RECORDS.

## Policy Declarations
## Total 12 Month Premium:  $1,385.00

Reason for your new declarations page: Changes made to your policy
Please refer to the **Change Detail** section on page 3 for more information.
**Effective date of this change:** 03/14/2019

Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable.

Through your affiliation with the Community Options, Inc. your policy includes special group savings on your home insurance.

### Insurance Information

| Named Insured: | Phanta U Daramy-Andrews | Policy Number: | H37-238-660209-40 9 4 |
| Mailing Address: | 707 49th Pl Ne Washington DC 20019-4805 | Policy Period: | 01/26/2019-01/26/2020 12:01 a.m. standard time at the address of the Named Insured at Insured Location. |

Insured Location: Same as Mailing address above    Declarations Effective: 03/14/2019

---

### DISCOUNTS AND BENEFITS SECTION

Your discounts and benefits have been applied to your total policy premium.

- Inflation Protection Discount
- Claims Free Discount
- New Roof Discount
- Basic Home Safety

- New or Renovated Home Discount
- Early Shopper Discount
- Multi Policy Discount - Auto

## Coverage Information

### Standard Policy with HomeProtector Plus ™

| SECTION I COVERAGES | | LIMITS | PREMIUM |
|---|---|---|---|
| A. Dwelling with Expanded Replacement Cost | $ | 174,800 | |
| B. Other Structures on Insured Location | $ | 17,480 | |
| C. Personal Property with Replacement Cost | $ | 131,100 | |
| D. Loss of Use of Insured Location | | Actual Loss Sustained | |



**Want to Add a Coverage?**
Call 1-301-262-5242 or
1-866-941-4012 to talk to your
agent about the availability of
this coverage and whether it
meets your needs.

**Policy Number:**
H37-238-660209-40 9 4

**Report a Claim:**
1-800-2CLAIMS or
LibertyMutual.com/Claims



## Coverage Information continued

| SECTION II COVERAGES | | LIMITS | PREMIUM |
|---|---|---|---|
| E. Personal Liability (each occurrence) | $ | 500,000 | |
| F. Medical Payments to Others (each person) | $ | 5,000 | |

### POLICY DEDUCTIBLES

Losses covered under Section I are subject to a deductible of : $1,000

| Total Standard Policy with HomeProtector Plus ™ | $ | 1,374 |
|---|---|---|

| ADDITIONAL COVERAGES | DEDUCTIBLE | | LIMITS | | PREMIUM |
|---|---|---|---|---|---|
| Credit Card, Fund Transfer, Forgery | | $ | 1,000 | $ | 0 |
| Escape of Water (Building/Spec Contents) | $   1,000 | $ | 10,000 | | INCL |
| Coverage E & F increased limit | | | | $ | 11 |
| **Total Additional Coverages** | | | | $ | 11 |

**Total 12 Month Policy Premium: $1,385.00**

### Additional Coverages and Products Available*

We've reviewed your policy and have identified additional optional coverages and products that can add valuable protection. Talk to your agent about purchasing the following coverages and products and whether they meet your needs.

- **Home Computer and Smartphone:** If your smartphone or other devices are not insured, repairing or replacing them can be expensive. Did you know you can insure multiple devices for up to $10,000 with a deductible of $50.00?

- **Identity Fraud Expense:** A stolen identity can be scary and expensive. We'll provide counseling, and pay up to $30,000 for expenses such as lost wages and attorney fees incurred to recover your identity.

*These optional coverages are subject to policy provisions, limitations, and exclusions. Daily limits or a deductible may apply. For a complete explanation, please consult your agent today.



**Questions about your Policy?**
Call 1-301-262-5242 or
1-866-941-4012

**Policy Number:**
H37-238-660209-40 9 4

**Report a Claim:**
1-800-2CLAIMS or
LibertyMutual.com/Claims



---

## Mortgage Information

Mortgagee 1:
JPMORGAN CHASE
BANK, N.A. ISAOA
ITS SUCCESSORS
AND/OR ASSIGNS
LOAN NO. 4503578980
PO Box 47020
Atlanta, GA 30362

Mortgagee 2:
WASHINGTON DC, DHCD
C/O AMERINAT
LOAN NO. 100054241
PO Box 123
Downey, CA 90241-0123

---

## Change Detail

Changes made to your policy for: Policy Change 2
• Change Name PHANTA U DARAMY-ANDREWS

There is no premium increase for above changes.

---

**Policy Forms and Endorsements:** The following forms and endorsements are applicable to your policy

LibertyGuard® Deluxe Homeowner Policy
(HO 00 03 04 91)

Home Protector Plus (FMHO-1183)

Credit Card, Fund Transfer, Forgery
(HO 04 53 04 91)

Protective Devices (FMHO 4172 1014)

Amendmt Pol Definitions (FMHO-2934 7/04)

Amendatory Mold End (FMHO 3370 1112)

Seepage Exclusion Endorsement (FMHO 3391 1112)

Inflation Protection (FMHO-2835)

No SecII/Limit I-Daycare (HO 04 96 04 91)

Lead Poisoning Exclusion (FMHO-976 05/92)

Fuel Storage Exclusion (FMHO-1097 1/97)

Special Provisions (FMHO6100DC 0217)

Escape of Water (Building/Spec Contents)
(FMHO 6500 1115)

---

## Important Messages

**Flood Insurance:** Your Homeowners policy **does not** provide coverage for damage caused by flood, even if the flood is caused by a storm surge. Liberty Mutual can help you obtain this coverage through the Federal Emergency Management Agency (FEMA) if your community participates in the National Flood Insurance Program. Please call your representative for more information.

**A notice for our customers:** Liberty Mutual may consider your claims and loss history when determining whether to renew your policy.



**Questions about your Policy?**
Call 1-301-262-5242 or
1-866-941-4012

**Policy Number:**
H37-238-660209-40 9 4

**Report a Claim:**
1-800-2CLAIMS or
LibertyMutual.com/Claims



LibertyGuard® Deluxe Homeowners Policy Declarations provided and underwritten by Liberty Insurance Corporation (a stock insurance company), Boston, MA.

**David H. Long**
President

**Mark C. Touhey**
Secretary

This policy, including endorsements listed above, is countersigned by:

**Hamid Mirza**
Authorized Representative



Important Information

The enclosed endorsement updates your policy and should be attached to it.

The premium adjustment, if any, for this change will be sent to you separately within a few days.

- Charges will be billed, or, if your account is being paid in installments, will be spread over the remaining installments.

- A check will be sent separately for credits on paid up accounts. On open balance accounts, credits will be spread over the remaining installments or applied to unpaid bills.

If you have any questions, please call or write your Liberty service office.

AUTO 1908 R1                    Liberty Mutual Insurance Group                    Page 1 of 1



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ESCAPE OF WATER FROM A SUMP, SUMP PUMP OR DRAIN ON THE RESIDENCE PREMISES (BUILDING AND SPECIFIED CONTENTS)

### DEFINITIONS

The following definition is added:

"Household equipment and appliances" means only clothing washers and dryers, cooking ovens and ranges, dishwashers, permanently installed heating units, installed air conditioning units, installed carpeting and refrigeration units, not including contents;

### COVERED PROPERTY

We cover the dwelling on the "residence premises" and "household equipment and appliances". Covered property does not include materials and supplies or structures described by Coverage B — Other Structures.

### EXTENSION OF COVERAGE

For an additional premium, we cover accidental direct physical loss to property described above caused solely by water that escapes, overflows or discharges from a sump, sump pump, sump pump well or a drain or related plumbing appliance located on the "residence premises".

To the extent coverage is provided by this EXTENSION OF COVERAGE and up to the LIMIT OF LIABILITY described below, Section I — Exclusions, Water Damage, **1.c.(4)** and **1.c.(5)** do not apply. (This is Exclusions **3.d.** and **3.e.** in forms **HO 00 04** and **HO 00 06.**)

For purposes of coverage under this EXTENSION OF COVERAGE, a drain or related plumbing appliance does not include a roof drain, gutter, downspout or similar fixture or equipment.

### EXCLUSIONS

#### THIS IS NOT FLOOD INSURANCE.

There shall be no coverage under this EXTENSION OF COVERAGE if water excluded under Section I— Exclusions, Water Damage, **1.c.(1)**, **1.c.(2)** and **1.c.(3)** (This is Exclusions **3.a.**, **3.b.** and **3.c.** in forms **HO 00 04** and **HO 00 06.**):

1. is concurrent with, in sequence with, or causes or contributes to the escape of water as described in this EXTENSION OF COVERAGE; and

2. damages property covered under Section I — Property Coverages by other than solely by escape, overflow or discharge from a sump, sump pump, sump pump well or a drain or related plumbing appliance on the "residence premises".

### LIMIT OF LIABILITY

We will pay no more than the amount shown in the Declarations for this EXTENSION OF COVERAGE.

### DEDUCTIBLE

We will pay only that part of the loss that exceeds $1,000. No other deductible applies.

All other provisions of this policy apply.

.

## ANSWERS TO THE MOST COMMON
## HOMEOWNER CLAIMS QUESTIONS

Coping with damage to your home and/or personal items can be difficult and disruptive. During this stressful time, you can count on Liberty Mutual Insurance to make the claims process as easy as possible.

**These FAQs will provide you with valuable information.**

### How can I find out my claim status?

**A** You can easily track your claim with your online account at **libertymutual.com/propertyclaim**. You can also sign up to receive updates via text and email.

### How do I know if my claim is covered by my policy?

**A** Your Claims Representative will review your policy with you and help you understand the coverage available for damages to your home and personal items.

### Is there a deductible?

**A** Your policy has a deductible, but the amount can vary depending on your policy and type of loss. Your deductible is the amount you pay out-of-pocket toward repair or replacement costs, which, in most cases, you'll pay directly to your contractor.

### How will you evaluate damages?

**A** If possible, we'll complete a review of your home and personal items over the phone, or via video chat with our convenient **RealTime Review™**. In some instances, we may need to come to your home to complete a thorough review of damages.

### What if I also have damage to my personal property?

**A** Your Claims Representative will ask you to put together a list of damaged personal items. Having photos, receipts, or manuals for the items will help us estimate the cost to repair or replace them. You can easily submit this information at **libertymutual.com/propertyclaim**. Or if you have the **Home Gallery® app**, you can just export your document file and submit via email or online.

We can also assist you in replacing certain items. For items that are damaged but only need to be cleaned, we have a restoration and/or dry cleaning company that can complete that cleaning for you. This may require the restoration company to pack up and move your contents to their facility for cleaning. Please don't dispose of any personal property items until we've authorized the disposal of the contents.



**App.356**

## How will I be paid?

**A**



Actual Cash Value

$$\underset{\substack{\text{Your Payment}\\\text{Amount}}}{\mathbf{A}} = \underset{\substack{\text{Replacement}\\\text{Cost Value}}}{\mathbf{B}} - \underset{\text{Depreciation*}}{\mathbf{C}} - \underset{\text{Deductible}}{\mathbf{E}}$$

A. **Your Payment Amount** – the amount issued in your first check
B. **Replacement Cost Value** – what you would pay to repair or replace the item at today's cost
C. **Depreciation*** – reduction in property value over time due to age, use, and condition of item
**Actual Cash Value** – what you would pay to repair or replace the item at today's cost minus depreciation
E. **Deductible** – amount you pay out-of-pocket toward repair costs

View our ***Understanding Your Property Claim Payment*** document to walk through a couple of examples using realistic scenarios and the equation above.
*Some depreciation may be recoverable based on the loss settlement provisions in your policy.

## How do I request Recoverable Depreciation?

**A** Once the repairs are completed or the items have been replaced, you'll need to submit proof of purchase or repairs (receipts or invoices). This can be uploaded to your online account. We'll then review and send you a check for the applicable recoverable depreciation, or the amount of depreciation reimbursable based on our estimate of repairs and/or replacement costs.

## What if I have a mortgage on my home?

**A** If you experience damage to your home, please notify your mortgage company as soon as possible. If you have a mortgage loan, both you and your lender have a legal interest in your property and have money at risk if your home is not repaired. If you have a mortgage on your home, we will likely put both your name and the name of your lender on the check to protect the financial interests of both parties.

**Some important things to remember:**

- If your mortgage company is named on the claims check, they will need to endorse it by signing the back of the check
- Contact your mortgage company about releasing the funds to you for repairs
- Continue making mortgage payments as usual
- If your mortgage company has changed or the name we have in our records isn't accurate, please contact Liberty Mutual at **800-2-CLAIMS (800-225-2467)**

## Can you help me find a contractor?

**A** Yes. Liberty Mutual likely has relationships with experienced contractors in your area. Your Claims Representative can provide a recommendation and the contractor's contact information. If you prefer to find a contractor on your own, be sure to read through our ***Need a Contractor? We've Got You Covered*** guide.[1]



**App.357**

### What if I can't live in my home until repairs are completed?

**A** If your home is not livable during repairs, your Claims Representative can help you find temporary housing and explain how we might cover additional living expenses.

### What happens if I begin the repairs and then find additional damage?

**A** You or your contractor should contact your Claims Representative immediately and hold off on making any new repairs until you speak with them. Depending on the nature of the damage, we may need to reinspect your home first. If we find the additional damage is related to your claim, we'll update the repair estimate.

### I'm thinking of doing additional remodeling while my home is being repaired. How does this impact my claim?

**A** Your policy provides payment for the repair or replacement of damaged property with materials or items of similar kind. We can't pay for the increased cost or any additional living expenses incurred as a result of any remodeling or upgrades, which may result in extended repair time. If you choose to remodel or upgrade your home, please coordinate with your contractor directly at your own expense.

### What if my loss was caused by a natural disaster?

**A** In addition to your Claims Representative, who will help you every step of the way, here are some resources to help during this difficult time:

- **Federal Emergency Management Agency:** 800-621-FEMA (3362) or fema.gov
- **American Red Cross:** 800-RED-CROSS (733-2767) or redcross.org
- **U.S. Small Business Administration:** 800-659-2955 or sba.gov
- **Insurance Institute for Business & Home Safety:** disastersafety.org

Tap into our online tools to make your claim easier.

- Access your online account at **libertymutual.com/propertyclaim** to track your claim and upload claim-related documents and photos
- Email documents directly to your Claims Representative
- Download our **Home Gallery® app** from the App Store or Google Play to quickly and easily create an inventory of your belongings

 

This document is not intended to be a complete summary of Liberty Mutual's claims handling practices and standards, nor does it address all claims scenarios. The application of any information within this document will depend on specific facts, circumstances, policy language, and applicable law. Any failure to quote or refer to any specific policy provision in the body of this letter or otherwise is not a waiver of those provisions.

'Not all services are available in all geographic locations. You are in no way obligated to use our Water Mitigation Program Vendors

Android, Google Play, and the Google Play logo are trademarks of Google Inc. Apple and the Apple logo are trademarks of Apple Inc., registered in the U.S. and other countries. App Store is a service mark of Apple Inc.

©2017 Liberty Mutual Insurance



LIBERTY STANDS WITH YOU™

The claim process can be confusing at times. But it doesn't have to be. This detailed guide simplifies each step, so you can get back to normal as soon as possible.

**We're always here for you**

You can easily track your claim's progress anytime with your online account at **libertymutual.com/propertyclaim**, or by signing up to receive text and email updates. Your Claims Representative is also available every step of the way to answer any questions.

## 4 STAGES OF THE CLAIM PROCESS

 Creating Your Claim      Reviewing Damage      Receiving Your Payment      Completing Your Claim

Creating Your Claim



### What we're doing

- We'll review your policy and coverage together and will determine if you're covered for damages to your home and personal items.
- We'll help you choose an emergency service vendor¹ if you need assistance with protecting your home from further damage.
- We'll help you find temporary housing if your home is unlivable.
- We can send you a copy of *Answers to the Most Common Homeowner Claims Questions*.

### What we may need from you

- Take photos or videos to document damages to your home and personal items. Please send us this documentation via your online account or email. If you have the **Home Gallery®** app, you can export your home inventory file and submit online or via email.
- Have water damage? Consider using a Liberty Mutual Program Vendor. Our Water Mitigation Unit will coordinate and monitor the process to help get you back to normal faster.¹ We can also send you a copy of our *Have Water Damage? Benefits of Our Vendor Program*, which outlines the main benefits of using our vendors.



### Reviewing Damage

**What we're doing**

- We may need to come to your home to complete a thorough review of damages. If possible, we'll complete a review of your home and personal items over the phone, or via video chat with our convenient **RealTime Review™**.

- We'll estimate the costs to repair the damages to your home. To make sure you understand the estimate, we'll send you a copy of *Understanding Your Property Claim Estimate*.

- We'll estimate the cost to repair or replace any personal items that were damaged. We'll also guide you through repair and replacement options.



**What we may need from you**

- Send us a detailed list of any personal items that were damaged, including the make, model, age, and condition of each item. Photos, receipts, or manuals for damaged items are also helpful.

- Send us any other important documentation, including estimates from contractors, reports from experts such as plumbers, or receipts for any emergency repairs. See below for the online tools that can help you submit this information.



**Tap into our online tools to make your claim easier.**

- Access your online account at **libertymutual.com/propertyclaim** to track your claim and upload claim-related documents and photos.

- Email documents directly to your Claims Representative.

- Download our **Home Gallery® app** from the App Store or Google Play to quickly and easily create an inventory of your belongings.

 



**Save time with RealTime Review™.**

With this video chat feature, your Claims Representative can collect information about your damage in greater detail and settle your claim more quickly.

Android, Google Play, and the Google Play logo are trademarks of Google Inc. Apple and the Apple logo are trademarks of Apple Inc., registered in the U.S. and other countries. App Store is a service mark of Apple Inc.



**App.361**

*000001*
Liberty Mutual Office
2200 Defense Hwy Ste 101
Crofton MD 21114



Phanta Daramy
707 49th Pl Ne
Washington DC 20019-4805

 **CONTACT US**

Questions About
Your Policy

**By Phone**
1-301-262-5242
1-866-941-4012
Mon - Fri 8AM-10PM EST
Sat 8AM-8PM EST
Sun 11AM-5PM EST

# Thank you for being a Liberty Mutual
# Home Customer since 2012!

This package contains your homeowners renewal. Please look over this
information and keep it with your important documents. Also, you are
receiving special group savings through your affiliation with the SunTrust
Bank.

Remember, you can download our mobile app or visit
LibertyMutual.com/register 24 hours a day to get information and manage
your Liberty Mutual account.

If you have any questions about your coverage, available discounts or
product offerings, please call us at 1-301-262-5242/ 1-866-941-4012.

Sincerely,

Your Liberty Mutual Service Team

**Liberty Mutual Office**
2200 Defense Hwy Ste 101
Crofton MD 21114

**Visit Us Online**
LibertyMutual.com

**To Report a Claim**

**By Phone**
1-800-2CLAIMS
(1-800-225-2467)

**Online**
LibertyMutual.com/Claims

**Sign Up for eService**
- Pay your bill
- Go paperless
- View your policy
- File or view a claim
Manage your policy 24/7 at
LibertyMutual.com/
register

CONTINUE TO THE NEXT PAGE
FOR A GUIDE TO YOUR
HOME RENEWAL PACKET

4000001H3723866020940000000

THIS IS NOT YOUR HOME INSURANCE BILL. YOU WILL BE BILLED SEPARATELY.



---

## A GUIDE TO YOUR HOME RENEWAL PACKET

| PAGE | SECTION |
|------|---------|
| 1 | **Policy Declarations** <br> Includes important information about your policy, including insurance information as well as your discounts and benefits. |
| 1 | **Coverage Information** <br> Includes important coverage information. Please review this section in detail to ensure you are fully covered. Contact us with any questions. |
| 4-19 | **Important Notices & Policy Forms** <br> This section includes any notices and policy forms that may change your coverages. |

**Named Insured:**
1. Phanta Daramy

**Policy Number:**
H37-238-660209-40 8 4

**Policy Period:**
01/26/2018 to 01/26/2019

**Mailing Address:**
707 49th Pl Ne
Washington DC
20019-4805

**Affinity:**
SunTrust Bank

THIS IS NOT YOUR HOME INSURANCE BILL. YOU WILL BE BILLED SEPARATELY.



**Questions about your Policy?**
Call 1-301-262-5242 or
1-866-941-4012

**Policy Number:**
H37-238-660209-40 8 4

**Report a Claim:**
1-800-2CLAIMS or
LibertyMutual.com/Claims


Liberty
Mutual
INSURANCE



**ACTION REQUIRED:**
PLEASE REVIEW AND KEEP FOR YOUR RECORDS.



# Policy Declarations
## Total 12 Month Premium:  $1,369.00

Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable.

Through your affiliation with the SunTrust Bank your policy includes special group savings on your home insurance.

### Insurance Information

| | | | |
|---|---|---|---|
| Named Insured: | Phanta Daramy | Policy Number: | H37-238-660209-40 8 4 |
| Mailing Address: | 707 49th Pl Ne<br>Washington DC 20019-4805 | Policy Period: | 01/26/2018-01/26/2019 12:01 a.m.<br>standard time at the address of the<br>Named Insured at Insured Location. |

Insured Location: Same as Mailing address above        Declarations Effective: 01/26/2018

---

#### DISCOUNTS AND BENEFITS SECTION

Your discounts and benefits have been applied to your total policy premium.

- Inflation Protection Discount
- New or Renovated Home Discount
- Claims Free Discount
- Early Shopper Discount
- New Roof Discount
- Basic Home Safety

# Coverage Information

### Standard Policy with HomeProtector Plus ™

| SECTION I COVERAGES | LIMITS | PREMIUM |
|---|---|---|
| A. Dwelling with Expanded Replacement Cost | $ 169,200 | |
| B. Other Structures on Insured Location | $ 16,920 | |
| C. Personal Property with Replacement Cost | $ 126,900 | |
| D. Loss of Use of Insured Location | Actual Loss Sustained | |

| SECTION II COVERAGES | LIMITS | PREMIUM |
|---|---|---|
| E. Personal Liability (each occurrence) | $ 500,000 | |
| F. Medical Payments to Others (each person) | $ 5,000 | |

**App.364**



**Want to Add a Coverage?**
Call 1-301-262-5242 or
1-866-941-4012 to talk to your
agent about the availability of
this coverage and whether it
meets your needs.

**Policy Number:**
H37-238-660209-40 8 4

**Report a Claim:**
1-800-2CLAIMS or
LibertyMutual.com/Claims



## Coverage Information continued

### POLICY DEDUCTIBLES

Losses covered under Section I are subject to a deductible of : $1,000

| Total Standard Policy with HomeProtector Plus ™ | | | | $ | 1,358 |

| ADDITIONAL COVERAGES | DEDUCTIBLE | | LIMITS | | PREMIUM |
|---|---|---|---|---|---|
| Credit Card, Fund Transfer, Forgery | | $ | 1,000 | $ | 0 |
| Escape of Water (Building/Spec Contents) | $ 1,000 | $ | 10,000 | | INCL |
| Coverage E & F increased limit | | | | $ | 11 |
| **Total Additional Coverages** | | | | $ | 11 |

**Total 12 Month Policy Premium: $1,369.00**

#### Additional Coverages and Products Available*

We've reviewed your policy and have identified additional optional coverages and products that can add valuable protection. Talk to your agent about purchasing the following coverages and products and whether they meet your needs.

- **Multi-Policy Discounts:** Having more than one insurance policy with Liberty Mutual can save you time and money. Learn more about how you can bundle your auto, home, renters, or condo insurance.

- **Home Computer and Smartphone:** If your smartphone or other devices are not insured, repairing or replacing them can be expensive. Did you know you can insure multiple devices for up to $10,000 with a deductible of $50.00?

- **Identity Fraud Expense:** A stolen identity can be scary and expensive. We'll provide counseling, and pay up to $30,000 for expenses such as lost wages and attorney fees incurred to recover your identity.

*These optional coverages are subject to policy provisions, limitations, and exclusions. Daily limits or a deductible may apply. For a complete explanation, please consult your agent today.

#### Mortgage Information

Mortgagee 1:
JPMORGAN CHASE
BANK, N.A. ITS
SUCCESSORS
ITS SUCCESSORS
AND/OR ASSIGNS
LOAN NO. 4503578980
PO Box 47020
Atlanta, GA 30362

Mortgagee 2:
DHCD
ISAOA ATIMA
C/o Greater Washington
Urban League
Washington, DC 20009



**Questions about your Policy?**
Call 1-301-262-5242 or
1-866-941-4012

**Policy Number:**
H37-238-660209-40 8 4

**Report a Claim:**
1-800-2CLAIMS or
LibertyMutual.com/Claims



**Policy Forms and Endorsements:** The following forms and endorsements are applicable to your policy

LibertyGuard® Deluxe Homeowner Policy
(HO 00 03 04 91)

Credit Card, Fund Transfer, Forgery
(HO 04 53 04 91)

Amendmt Pol Definitions (FMHO-2934 7/04)

Seepage Exclusion Endorsement (FMHO 3391 1112)

No SecII/Limit I-Daycare (HO 04 96 04 91)

Fuel Storage Exclusion (FMHO-1097 1/97)

Escape of Water (Building/Spec Contents)
(FMHO 6500 1115)

Home Protector Plus (FMHO-1183)

Protective Devices (FMHO 4172 1014)

Amendatory Mold End (FMHO 3370 1112)

Inflation Protection (FMHO-2835)

Lead Poisoning Exclusion (FMHO-976 05/92)

Special Provisions (FMHO6100DC 0217)

**Important Messages**

**Flood Insurance:** Your Homeowners policy **does not** provide coverage for damage caused by flood, even if the flood is caused by a storm surge. Liberty Mutual can help you obtain this coverage through the Federal Emergency Management Agency (FEMA) if your community participates in the National Flood Insurance Program. Please call your representative for more information.

**A notice for our customers:** Liberty Mutual may consider your claims and loss history when determining whether to renew your policy.

LibertyGuard® Deluxe Homeowners Policy Declarations provided and underwritten by Liberty Insurance Corporation (a stock insurance company), Boston, MA.

David H. Long
President

Mark C. Touhey
Secretary

This policy, including endorsements listed above, is countersigned by:

Hamid Mirza
Authorized Representative



**Important Information -**
**Flood Coverage Not Included in the Standard Homeowners, Condominium, Dwelling Fire, or Renters Insurance Policy**

**Your policy does NOT cover losses caused by flood.**

Generally, the standard homeowners, condominium, dwelling fire, or renters policy (hereafter referred to as "homeowners") does not provide coverage for flooding, surface water that enters the home, or rising water.

Here are some important facts you should know:

- Coverage for flood may be available through the Federal Government's National Flood Insurance Program (NFIP) for an additional premium, or through other sources.

- You must complete a separate application in order to purchase flood insurance; it is not part of your homeowners application.

- You can obtain information about the National Flood Insurance Program by contacting your customer service representative, by visiting www.FloodSmart.gov, or by calling 1-800-427-4661.

- Because flood insurance through the NFIP is regulated by federal law, flood claims are adjusted and paid in a differently than private homeowners insurance claims.

- Please consult with National Flood Insurance Program; the District Department of the Environment; the District Department of Insurance, Securities, and Banking; or your mortgage lender about the risks of flooding, and the potential costs and benefits of flood insurance.

*The above statements shall not be considered a replacement for the terms of and shall not have the effect of altering the coverage afforded by your homeowners policy, and shall not confer new or additional rights beyond those expressly provided for in your homeowners policy. The above statements are only provided as guidance to you in understanding the terms of your homeowners insurance policy with us.*



Important Information -
**Sewer-Line Back Up Coverage Not Included in the Standard Homeowners, Condominium, Dwelling Fire, or Renters Insurance Policy**

**Your policy does NOT cover losses caused by sewer-line back up.**

Generally, the standard homeowners, condominium, dwelling fire, or renters policy (hereafter referred to as "homeowners") do not provide coverage for sewer-line back up.

Here are some important facts you should know:

- Coverage for sewer-line back up (which occurs off the residence premises) may be available for an additional premium.

- You must complete a separate application in order to purchase sewer-line back up insurance; it is not part of your homeowners application.

- You can obtain information about sewer-line back up by contacting a customer service representative at the telephone number shown on your policy Declarations.

- A claim for sewer-line back up may be adjusted and paid differently from other homeowners insurance claims.

- Please consult the District Department of Insurance, Securities, and Banking, or your mortgage lender about the risks of sewer-line backup, and the potential costs and benefits of adding sewer-line back up to your homeowners policy.

*The above statements shall not be considered a replacement for the terms of and shall not have the effect of altering the coverage afforded by your homeowners policy, and shall not confer new or additional rights beyond those expressly provided for in your homeowners policy. The above statements are only provided as guidance to you in understanding the terms of your homeowners insurance policy with us.*



**Important Information Regarding Changes to Your Homeowners Policy**

Please review the changes to your homeowners' policy as detailed below. These changes are included in the Special Provisions endorsement provided with your enclosed renewal. This revised endorsement replaces the previous Special Provisions effective with this renewal.

*The summary that follows is for information purposes only and does not provide coverage. We have described the changes we believe are most significant. Your new Special Provisions, combined with the previous policy forms you received, provide complete details of your coverage. If the below summary conflicts with the applicable policy language, the policy language prevails.*

The following highlights the changes to your policy :

- The definition of "business" is revised to allow for small incidental business exposures and to state that short-term rental is not considered a business;

- "Short-term rental" is added as a defined term. Rental is considered short-term if the total number of days rented during the policy period does not exceed 31;

- Vandalism and Malicious Mischief is revised to include arson. In addition, the allowable vacancy is extended from 30 to 60 days.

- The Water Damage exclusion is updated to specifically state seiche, storm surge and water released from a dam, levee or dike are not covered. Water driven by wind is updated to include hurricane or similar storms.

- Your personal property is covered when located in the residence including the portion of the residence rented as a short-term rental, provided the total number of days rented during the policy period does not exceed 31 days.

   Property in your home that is currently occupied by a long-term tenant continues to be covered.

- Coverage D – Loss of Use is updated to state how coverage applies under specific conditions, such as a short-term rental. In addition, $5,000 of coverage is added for rent you may lose due to cancellation of short-term rental reservations in place at the time of loss.

- Debris Removal is updated to cover debris removal expenses only if they are actually incurred.

- Personal Liability and Medical Payments to Others is covered for up to two roomers and boarders when a portion of your residence is rented to others for use as a private residence. The policy is now updated to specifically include short-term rentals as part of this coverage.

- Damage to Property of Others is updated to provide up to $500 damage to property of a short-term renter when a covered loss occurs.

If you have any questions or would like to review the changes to your policy, your Liberty Mutual representative will be happy to assist you. Please contact us at the number on the enclosed Declarations page.

Thank you for insuring with Liberty Mutual. We appreciate your business.



## Important Information Regarding Changes to Optional Coverage Endorsements

Please take some time to review the changes to optional coverages offered with our homeowners' policy. Changes to each endorsement are summarized below. To determine if your policy includes one or more of these optional coverages, please refer to the endorsements listed on the Declarations page.

*The summary that follows is for information purposes only and does not provide coverage. We have described the changes we believe are most significant. Your new special provisions, combined with previous policy forms you received, provide complete details of your coverage. If the below summary conflicts with the applicable policy language, the policy language prevails.*

### BACK UP OF SEWER AND SUMP PUMP OVERFLOW COVERAGE

**Escape of Water From A Sump, Sump Pump Or Drain On The Residence Premises (Building/Specified Contents)**

(formerly: Backup of Sewer and Sump Pump Overflow)

- Changes are intended to provide specific explanations of the coverages and limitations.
- Coverage is provided for building and specified contents such as household appliances and equipment.
- The policy is updated to specify that the sump pump, sump pump well, drain or related plumbing appliance must be located on the residence premises for coverage to apply.

#### Landlord Endorsement.

- The definition of "business" is updated as a result of other contract changes being made.
- The definition of "insured" is updated to recognize your relatives or other persons under the age of 21 and in your care or custody as insureds so long as they remain residents of your household.
- Coverage for personal property can no longer be extended to a guest or servant while on the premises.
- Property not covered is defined to specifically state items that do not have coverage under this endorsement.
- Coverage D is updated to state how coverage applies under specific conditions.
- Theft coverage is included under Coverages A and B for building property that is a part of any building or structure.

If you have any questions or would like to review the changes to your policy, your Liberty Mutual representative will be happy to assist you. Please contact us at the number on the enclosed Declarations page.

Thank you for insuring with Liberty Mutual. We appreciate your business.



## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ESCAPE OF WATER FROM A SUMP, SUMP PUMP OR DRAIN ON THE RESIDENCE PREMISES (BUILDING AND SPECIFIED CONTENTS)

### DEFINITIONS

The following definition is added:

"Household equipment and appliances" means only clothing washers and dryers, cooking ovens and ranges, dishwashers, permanently installed heating units, installed air conditioning units, installed carpeting and refrigeration units, not including contents;

### COVERED PROPERTY

We cover the dwelling on the "residence premises" and "household equipment and appliances". Covered property does not include materials and supplies or structures described by Coverage B — Other Structures.

### EXTENSION OF COVERAGE

For an additional premium, we cover accidental direct physical loss to property described above caused solely by water that escapes, overflows or discharges from a sump, sump pump, sump pump well or a drain or related plumbing appliance located on the "residence premises".

To the extent coverage is provided by this EXTENSION OF COVERAGE and up to the LIMIT OF LIABILITY described below, Section I — Exclusions, Water Damage, 1.c.(4) and 1.c.(5) do not apply. (This is Exclusions 3.d. and 3.e. in forms HO 00 04 and HO 00 06.)

For purposes of coverage under this EXTENSION OF COVERAGE, a drain or related plumbing appliance does not include a roof drain, gutter, downspout or similar fixture or equipment.

### EXCLUSIONS

### THIS IS NOT FLOOD INSURANCE.

There shall be no coverage under this EXTENSION OF COVERAGE if water excluded under Section I— Exclusions, Water Damage, 1.c.(1), 1.c.(2) and 1.c.(3) (This is Exclusions 3.a., 3.b. and 3.c. in forms HO 00 04 and HO 00 06.):

1. is concurrent with, in sequence with, or causes or contributes to the escape of water as described in this EXTENSION OF COVERAGE; and

2. damages property covered under Section I — Property Coverages by other than solely by escape, overflow or discharge from a sump, sump pump, sump pump well or a drain or related plumbing appliance on the "residence premises".

### LIMIT OF LIABILITY

We will pay no more than the amount shown in the Declarations for this EXTENSION OF COVERAGE.

### DEDUCTIBLE

We will pay only that part of the loss that exceeds $1,000. No other deductible applies.

All other provisions of this policy apply.



## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SPECIAL PROVISIONS – DISTRICT OF COLUMBIA

### DEFINITIONS

Item 2. "Business" is deleted and replaced by the following:

2. "Business" includes:

   a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

   b. Any other activity engaged in for money or other compensation, except the following:

      (1) One or more activities, not described in (2) or (3) below, for which no "insured" receives more than $3,000 in total compensation for the 12 months before the beginning of the policy period.

      (2) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity; or

      (3) A "short term rental".

Under 4. "Insured location" item e. is deleted and replaced by the following:

   e. Vacant land, including that which is vacant except for a fence, owned by or rented to an "insured" other than farmland;

The following definition is added:

   "Short term rental" means one or more rentals, in whole or in part, of the "residence premises" for up to a combined total of 31 days during the policy period.

### SECTION I - PROPERTY COVERAGES

#### COVERAGE A – Dwelling

For form HO 00 03, item 1. is amended as follows:

We cover:

1. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling, and attached wall-to-wall carpeting;

#### COVERAGE B – Other Structures

In all forms other than HO 00 04 and HO 00 06, item 2. is deleted and replaced by the following:

2. Rented to any person not a tenant of the dwelling, unless used solely as a private garage.

#### COVERAGE C - Personal Property

The following is added under items 1. and 2.:

However, we will not cover personal property owned by tenants or guests if the tenants or guests have compensated the "insured" for use of the "residence premises".

#### Special Limits of Liability

For form HO 00 03, the introductory paragraph of **Special Limits of Liability** is amended to read:

These do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category. If personal property can reasonably be considered a part of two or more of the groups listed below, the lowest limit will apply.

Items 10. and 11. are deleted and replaced by the following (these are Items 7. and 8. in Form HO 00 08):

10. $1,000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power.



Electronic apparatus includes:

a. Accessories or antennas; or

b. Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this Item **10.**

**11.** $1,000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

b. Is away from the "residence premises"; and

c. Is used at any time or in any manner for any "business" purpose.

Electronic apparatus includes:

a. Accessories or antennas; or

b. Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this Item **11**

For form **HO 00 03**, the following limits are added:

**12.** $5000 on electronic data processing system equipment and the recording or storage media or accessories used with that equipment.

**13.** $5000 on any one article and $10000 in the aggregate for loss by theft of any rug, carpet (excluding attached wall-to-wall carpet), tapestry, wall-hanging or other similar article.

**14.** $2500 in the aggregate for loss of any of the following whether or not they are part of a collection: trading cards, comic books, figurines, stamps, advertising materials, stuffed animals, dolls, sports and entertainment memorabilia, toys, games, militaria, and books.

**15.** $1200 for any one electrical appliance for loss by sudden and accidental damage from artificially generated electrical currents. This special limit does not apply to electronic data processing equipment or storage media.

In the event Landlord Endorsement FMHO 6502 is part of this policy, the above coverage contained in Special Limits of Liability introductory paragraph and Subparagraphs **10.** through **15.** are deleted and do not apply.

**Property Not Covered**

Item **3.b.** is deleted and replaced by the following:

**3.** Motor vehicle or all other motorized land conveyances. This includes:

a. Their equipment and accessories; or

b. Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

(1) Accessories or antennas; or

(2) Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this Item **3.b.**

The exclusion of property described in **3.a.** and **3.b.** above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

a. Used to service an "insured's" residence; or

b. Designed for assisting the handicapped.

In the event Landlord Endorsement FMHO 6502 is part of this policy, the above coverage contained in the final two Subparagraphs of Item **3.** (a. and b.) are deleted.

**App.373**

Item **6.** is deleted and replaced by the following:

**6.** Property in a location on the "residence premises", when the location is rented to others by an "insured".

This exclusion does not apply to property of an "insured":

a. located on the "residence premises" when the "residence premises" is rented in whole or in part as a "short term rental"; or

b. located in a sleeping room rented to others by an "insured" on the "residence premises".

For form **HO 00 03**, the following item is added as personal property items not covered:

**10.** Water or steam

**COVERAGE D – Loss Of Use** is deleted and replaced by the following:

**COVERAGE D - Loss of Use**

The limit of liability for Coverage D is the total limit for all the coverages that follow.

**1.** If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover Additional Living Expense. Additional Living Expense means any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or to permanently relocate your household elsewhere.

**2.** If a loss covered under this Section makes that part of the "residence premises" rented to others by you not fit to live in, we cover your Loss of Rent. Loss of Rent means the rental income to you of that part of the "residence premises" rented to others at the time of loss, less any expenses that do not continue while the premises is not fit to live in.

This coverage does not apply to:

a. The "residence premises" or that part of the "insured location" that is not rented or leased at the time of the loss; or

b. to any increase in rent or lease payment that occurs after the time of the loss.

We will pay up to $5,000 to reimburse your Loss of Rent when a "short term rental" is cancelled because of a covered loss.

Payment will be for the shortest time required to repair or replace that part of the premises rented.

**3.** If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense and Loss of Rent as provided under **1.** and **2.** above for no more than two weeks.

The periods of time under **1.**, **2.** and **3.** above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement, other than a "short term rental" as provided under **2.** above

In the event Landlord Endorsement FMHO 6502 is part of this policy, the above coverages contained in Coverage D - Loss of Use are deleted and do not apply.

For Forms **HO 00 04** and **HO 00 06**, Item **1.** is deleted and replaced by the following:

**1.** If a loss by a Peril Insured Against under this policy to covered property or the building containing the property makes the "residence premises" not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

**ADDITIONAL COVERAGES**

Item **1. Debris Removal** is deleted and replaced by the following:

App.374



1. **Debris Removal.** We will pay the reasonable expense you incur for the removal of:

   a. Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

   b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

   We will also pay the reasonable expense you incur, up to $500, for the removal from the "residence premises" of:

   a. Your tree(s) felled by the peril of Windstorm or Hail;

   b. Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or

   c. A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

   provided the tree(s) damages a covered structure. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

For form **HO 00 03**, item **7. Loss Assessment** is deleted in its entirety.

For form **HO 00 03**, the following is added to Item **8. Collapse.**

   With respect to this Additional Coverage:

   (1) Collapse means the sudden and entire falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied or used for its current intended purpose.

   (2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

   (3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

   (4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

9. **Glass Or Safety Glazing Material** is deleted and replaced by the following:

9. **Glass Or Safety Glazing Material**

   a. We cover:

   (1) For all forms other than **HO 00 04** and **HO 00 06**, the breakage of glass or safety glazing material which is part of a covered building, storm door or storm window, and for:

   (a) Form **HO 00 04**, the breakage of glass or safety glazing material which is part of a building, storm door or storm window, and covered as Building Additions And Alterations; and

   (b) Form **HO 00 06**, the breakage of glass or safety glazing material which is part of a building, storm door or storm window, and covered under Coverage **A**; and

   (2) For all forms other than **HO 00 04** and **HO 00 06**, the breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a covered building, storm door or storm window, and for:

   (a) Form **HO 00 04**, the breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a building, storm door or storm window, and covered as Building Additions And Alterations; and

   (b) Form **HO 00 06**, the breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a building, storm door or storm window, and covered under Coverage **A**; and

**App.375**



(3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

b. This coverage does not include loss:

(1) To covered property which results because the glass or safety glazing material has been broken, except as provided in a.(3) above; or

(2) On the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss, except when the breakage results directly from Earth Movement as provided for in a.(2) above. A dwelling being constructed is not considered vacant.

Loss to glass covered under this Additional Coverage **9.** will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

For Forms **HO 00 01** and **HO 00 08**, we will pay up to $100 for loss under this coverage.

This coverage does not increase the limit of liability that applies to the damaged property.

(This is Additional Coverage **8.** In Forms **HO 00 01** and **HO 00 08**.)

For form **HO 00 03**, item **10. Landlord's Furnishings** is deleted in its entirety.

The following Additional Coverage is added to all forms except **HO 00 08**. With respect to Form **HO 00 04**, the words 'covered building' used below refer to property covered under Additional Coverage **10. Buildings Additions and Alterations**.

**12. Ordinance or Law**

a. You may use up to 10% of the limit of liability that applies to COVERAGE **A** (or for form **HO 00 04**, you may use up to 10% of the limit of liability that applies to Building Additions and Alterations) for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a **Peril Insured Against**;

(2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a **Peril Insured Against** to another part of that covered building or other structure; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a **Peril Insured Against**.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

c. We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

(This is **Additional Coverage 11.** In forms **HO 00 01** and **HO 00 06**.)

**SECTION I - PERILS INSURED AGAINST**

App.376



**COVERAGE A – DWELLING and COVERAGE B – OTHER STRUCTURES**

For form HO 00 03, the following is added to item 2.b.

(4) Footing(s)

For all forms other than HO 00 04 and HO 00 06, item 2.d. is deleted and replaced by the following:

d. Vandalism and malicious mischief, including fire caused by arson and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

For form HO 00 03, the following is added to item 2.e.:

(10) Growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of the ground;

(11) Exterior color or finishing mismatch between undamaged material and new material used to replace old, weathered or oxidized damaged material.

For form HO 00 03, the final paragraph of Item 2. is further revised as follows:

If any of these cause sudden and accidental water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

**SECTION I - EXCLUSIONS**

Item 1. **Ordinance or Law** is deleted and replaced by the following:

1. **Ordinance or Law,** meaning any ordinance or law:

   a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion 1.a. in all forms other than HO 00 03, and 1.a.(1) in Form HO 00 03, does not apply to the amount of coverage that may be provided for under ADDITIONAL COVERAGES, Glass or Safety Glazing Material or Ordinance or Law;

   b. The requirements of which result in a loss in value to property; or

   c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

      Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

   This exclusion applies whether or not the property has been physically damaged.

   (This is exclusion 1.a. in form HO 00 03.)

Item 2. **Earth Movement** is deleted and replaced by the following:

2. **Earth Movement,** meaning movement of the earth, whether combined with water or not, in any direction, including but not limited to:

   a. Earthquake, including land shock waves or tremors before, during, or after a volcanic eruption;

   b. Landslide, mud slide, or mud flow;

   c. Subsidence or sinkhole; or

   d. Any other earth movement, including earth sinking, rising, shifting, expanding, contracting, or eroding;

   caused by or resulting from manmade, animal, or natural actions, events, or conditions.

   If direct loss by fire or explosion ensues, we will pay only for the ensuing loss.

   This exclusion does not apply to loss by theft.



(This is Exclusion **1.b.** in Form **HO 00 03**.)

Item **3. Water Damage** is deleted and replaced by the following:

3. **Water Damage**, meaning:

  a. (1) Flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, storm surge or spray from any of these, whether or not driven by wind, including hurricane or similar storm; or

    (2) release of water held by a dam, levee, dike or by a water or flood control device or structure;

  b. Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

  c. Water which escapes or overflows from sewers or drains located off the "residence premises";

  d. Water which escapes or overflows from drains or related plumbing appliances on the "residence premises". However, this exclusion does not apply to overflow and escape caused by malfunction on the "residence premises", or obstruction on the residence premises, of a drain or plumbing appliance on the "residence premises"; or

  e. Water which escapes or overflows or discharges, for any reason, from within a sump pump, sump pump well or any other system designed to remove water which is drained from the foundation area.

Water includes any water borne materials.

This exclusion applies whether the water damage is caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from water damage is covered.

(This is exclusion **1.c.** in Form **HO 00 03**.)

Item **4. Power Failure** is deleted and replaced by the following:

4. **Power Failure**, meaning the failure of power or other utility service if the failure takes place off the "residence premises." But if the failure of power or other utility service results in a loss, from a PERIL INSURED AGAINST on the "residence premises," we will pay for the loss or damage caused by that PERIL INSURED AGAINST.

(This is exclusion **1.d.** in form **HO 00 03**.)

For form **HO 00 03**, the following is added as item **2.d.**

  d. **Cosmetic Loss or Damage**, meaning any loss that alters only the physical appearance of the metal roof covering but:

    (1) does not result in the penetration of water through the metal roof covering; or

    (2) does not result in the failure of the metal roof covering to perform its intended function of keeping out the elements over an extended period of time.

Metal roof covering means the metal roofing material exposed to the weather; the underlayments applied for moisture protection; and all flashings required in the replacement of a metal roof covering.

We do cover loss or damage by hail to roof coverings that allow the penetration of water through the roof covering or that results in the failure of the roof covering to perform its intended function of keeping out the elements over an extended period of time.

**SECTION I – CONDITIONS**

2. **Your Duties After Loss**

Paragraph a. is deleted and replaced by the following:

  a. Give prompt notice to us or our agent. With respect to a loss caused by the peril of windstorm or hail, that notice must occur no later than 365 days after the date of loss.

3. **Loss Settlement**. Under form **HO 00 06**, item b.(2) is deleted and replaced by the following:



(2) If the damage is not repaired or replaced within a reasonable time, at actual cash value but not more than the amount required to repair or replace.

The following paragraph is added and applies to this policy and to any Loss Settlement provision in any other endorsement applicable to this policy:

Loss Settlement does not include payment for any actual or perceived decrease in market or resale value resulting from loss to or repair of your covered property.

## SECTION II - EXCLUSIONS

Under **1.** COVERAGE E - Personal Liability and COVERAGE F - Medical Payments to Others

Item a. is deleted and replaced by the following:

a. Which is expected or intended the "insured", even if the resulting "bodily injury" or "property damage"

(1) is of a different kind, quality, or degree than initially expected or intended; or

(2) is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Item c. is deleted and replaced by the following:

c. Arising out of the rental or holding for rental of any part of any premises by an "insured." This exclusion does not apply to the rental or holding for rental of the "residence premises":

(1) As a "short term rental" for use only as a residence;

(2) In part, unless intended for use as a residence more than two roomers or boarders; or

(3) In part, as an office, school, studio or private garage;

## SECTION II - ADDITIONAL COVERAGES

For form HO 00 03, Item **1.**c. under **Claims Expenses** is amended as follows:

c. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit.

Under **3. Damage to Property to Others**, item **d.** is deleted and replaced by the following:

d. To property owned by or rented to a tenant of an "insured" or a resident in your household. This does not apply to "short term rentals"; or

For form HO 00 03, Item **4. Loss Assessment** is deleted in its entirety.

## SECTIONS II - CONDITIONS

**1.** Limit of Liability is deleted and replaced by the following:

**1. Limit of Liability**

a. Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E Limit of Liability shown on the Declarations. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

b. **Sub-limit Of Liability**

Subject to Paragraph a. above, our total liability under Coverage E for the value of services required to contribute to the rehabilitation of a child or minor for damages for which an "insured" is legally liable because of vicarious liability is $10,000. This applies whether or not the vicarious liability is statutorily imposed, for the actions of a child or minor, if such vicarious liability is not otherwise excluded. This special limit does not increase the Coverage E Limit of Liability.



c.  The limit of liability in a. above and the special limit in b. above apply regardless of the number of "insureds", claims made or persons injured.

d.  Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as a result of one accident will not be more than the Coverage F Limit of Liability shown in the Declarations.

However, this condition does not apply to losses that covered under the Home Business Endorsement **HO 05 90 03 97.**

### SECTIONS I AND II - CONDITIONS

2.  **Concealment or Fraud** is deleted and replaced by the following:

2.  **Concealment or Fraud**

a.  Under SECTION I – PROPERTY COVERAGES, with respect to all "insureds" covered under this policy, we provide no coverage for loss under SECTION I - PROPERTY COVERAGES if, whether before or after a loss, one or more "insureds" have:

(1) Intentionally concealed or misrepresented any material fact or circumstance;

(2) Engaged in fraudulent conduct; or

(3) Made false statements;

relating to this insurance.

b.  Under SECTION II – LIABILITY COVERAGES, we do not provide coverage to one or more "insureds" who, whether before or after a loss, have:

(1) Intentionally concealed or misrepresented any material fact or circumstance;

(2) Engaged in fraudulent conduct; or

(2) Made false statements;

relating to this insurance

5.  **Cancellation**, paragraph b. is deleted and replaced by the following:

b.  We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you or mailed to you at your mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

(1) When this policy has been in effect for 30 days or less and is not a renewal with us, we may cancel for any reason by letting you know at least 30 days before the date cancellation takes effect.

(2) When this policy has been in effect for more than 30 days, or at any time if it is a renewal with us, we may cancel for one or more of the following reasons by letting you know at least 30 days before the date cancellation takes effect.

(a) You have not paid a premium due;

(b) You have made a material and willful misstatement or omission of fact to us in connection with any application to or claim against us;

(c) Your property or other interest has been transferred to another person, unless the transfer is permissible under the terms of the policy; or

(d) Your property or its interest or use has materially changed with respect to its insurability.

All other provisions of this policy apply



Information about Homeowners Rate Determination

When determining your premium, we consider many factors, such as your credit history, claims history, and property characteristics.  You may request that Liberty Mutual re-evaluate your current homeowners insurance rate with up-to-date information using the same factors prior to your policy's expiration. If your community adds new fire protection (fire stations) or access to new hydrants close to your home, you should contact us to evaluate possible saving opportunities.

Policy rate re-evaluation is limited to one request per policy period, and may result in a quoted premium either higher or lower. If you would like your policy re-evaluated, please call us at  1-301-262-5242/ 1-866-941-4012 and a representative will be happy to assist you.

FMHO 3057 02 11                                                                                    Page 1 of 1

## Notice of Privacy Policy

Liberty Mutual* values you as a customer and takes your personal privacy seriously. When you request a rate quotation, apply for insurance, request changes to your insurance policy or submit a claim, you disclose information about yourself or members of your family. This notice tells you how we treat the information we collect about you.

### 1. INFORMATION WE MAY COLLECT

We collect information about you from:
- Applications or other forms you complete, and information you provide to us over the telephone;
- Your business dealings with us and other companies;
- Your employer or association for Liberty Mutual Group products;
- Consumer reporting agencies, Motor Vehicle Departments, inspection services and medical providers; and
- Visits to our Liberty Mutual website.

### 2. TYPES OF INFORMATION WE MAY DISCLOSE

We may disclose the following about you:
- Information from your application or other forms, such as your name, date of birth, address, social security number, vehicle and driver information;
- Information about your transactions with us, our affiliates or others, such as your insurance coverages, payment history, and certain claims information; and
- Information we receive from third parties, such as your motor vehicle records and claims history.

### 3. TO WHOM INFORMATION MAY BE DISCLOSED

We do not disclose personal information about you to anyone unless allowed by law. We are allowed by law to provide information to:
- A third party that performs services for us, such as claims investigations, medical examinations, inspections, and appraisals or for roadside assistance or the repair of your vehicle if you have a claim;
- Our affiliated companies and reinsurers;
- Insurance regulators and reporting agencies;
- Consumer reporting agencies to obtain loss history information, motor vehicle reports, or credit report information where permitted by law;
- State Motor Vehicle Departments to obtain a report of any accidents or convictions or to confirm your compliance with compulsory motor vehicle liability insurance laws;
- Law enforcement agencies or other government authorities to report suspected illegal activities;
- A person or organization conducting insurance actuarial, or research studies;
- Companies that provide marketing services on our behalf, or as part of a joint marketing agreement with banks, credit unions, and affinity partners, or providers of annuity and financial products and services offered through us to our customers; and
- As otherwise permitted by law.

### 4. HOW WE PROTECT INFORMATION

We maintain physical, electronic, and procedural safeguards to protect your nonpublic personal information. These safeguards comply with applicable laws. We retain your information for as long as required by law or regulation. The only employees or agents who have access to your information are those who must have it to provide products or services to you. We do not sell your information to mass marketing or telemarketing companies. Any information we share with third parties, such as those organizations which perform a service for us or market our products, is subject to appropriate confidentiality protections and may be used only for the purposes intended.

*This privacy notice is provided on behalf of the following Liberty Mutual companies and affiliates that provide personal automobile, homeowners, life insurance and annuities: Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, LM Insurance Corporation, The First Liberty Insurance Corporation, Liberty Insurance Company of America, Liberty Northwest Insurance Corporation, Liberty Life Assurance Company of Boston, Liberty County Mutual Insurance Company (Texas only), Liberty Lloyds of Texas Insurance Company, LM Property and Casualty Insurance Company, Liberty Mutual Personal Insurance Company, Liberty Personal Insurance Company, Liberty Mutual Mid-Atlantic Insurance Company, LM General Insurance Company, American States Preferred Insurance Company, Consolidated Insurance Company, Wausau General Insurance Company, Wausau Underwriters Insurance Company, Wausau Business Insurance Company and Montgomery Mutual Insurance Company.

2348 08 17

*Plaintiff's Exhibit 2*

 **Gmail**                                          Phanta Daramy-Andrews <phanta29andrews@gmail.com>

## Updated Inventory Listings from 1800 Packouts of DC - Awaiting instruction from Insurance Company
5 messages

**Akia. Turner** <Akia.Turner@1800packoutsofdc.com>                          Wed, May 29, 2019 at 12:44 PM
To: Phanta Daramy-Andrews <phanta29andrews@gmail.com>
Cc: Lidia Zambilovici <Lidia.Zambilovici@1800packoutsofdc.com>


Good Morning Ms. Andrews~!


Please see below for details on the attachments to this email:


-   **Phanta Inventory Listing by Tag #** | A listing of all items we removed from your residence

-   **Phanta Picture Inventory by Tag #** | contains pictures of all items we removed from residence

-   **Phanta Bagged Items Picture Inventory** | contains general pictures of contents from each bag removed from residence

-   **Phanta Total Loss Picture Inventory** | contains pictures of all items removed from residence that are non-salvageable.


These same documents were provided to your insurance company for their review and documentation purposes.


Your insurance company has instructed us to not do anything with your items beyond store them.


Your insurance company also stated they will contact us soon to discuss next steps or actions needed with your items.


Should your insurance company authorize us to clean/service your contents – we can then do a more detailed inventory at that time to document the condition of each piece/item.


As soon as I hear back from your insurance company, I will definitely let you know.


Thanks,


Akia Turner | Customer Service Rep

CONFIDENTIAL

# PHANTA ANDREWS
## Inventory Listing by Tag # ao 05/10/2019

**707 49th Place NE**
**Washington  20019**
**USA**

Date of Loss:
Type of Job: Contents
Type of Loss:
Claim #: 039740892
Insurance Company: Liberty Mutual
Adjuster:
Prepared On: May 10, 2019

App.385



The National Packout Company

**1-800-Packouts of DC**
950 South Pickett Street, Alexandria, Virginia, US 22304
Phone:(703) 461-6425

| Description | Qty | UOM | Category | Condition | Room | Tag |
|---|---|---|---|---|---|---|
| Total loss | 1 | EA | | Total Loss | Basement | |
| Tray | 1 | EA | | | Basement | 1 |
| Muffin Pan | 1 | EA | | | Basement | 2 |
| PBO | 1 | EA | | | Basement | 3 |
| PBO | 1 | EA | | | Basement | 4 |
| PBO | 1 | EA | | | Basement | 5 |
| PBO | 1 | EA | | | Basement | 6 |
| PBO | 1 | EA | | | Basement | 7 |
| PBO | 1 | EA | | | Basement | 8 |
| PBO | 1 | EA | | | Basement | 9 |
| PBO | 1 | EA | | | Basement | 10 |
| PBO | 1 | EA | | | Basement | 11 |
| PBO | 1 | EA | | | Basement | 12 |
| PBO | 1 | EA | | | Basement | 13 |
| PBO | 1 | EA | | | Basement | 14 |
| PBO | 1 | EA | | | Basement | 15 |
| PBO | 1 | EA | | | Basement | 16 |
| PBO | 1 | EA | | | Basement | 17 |
| PBO | 1 | EA | | | Basement | 18 |
| PBO | 1 | EA | | | Basement | 19 |
| PBO | 1 | EA | | | Basement | 20 |
| PBO | 1 | EA | | | Basement | 21 |
| PBO | 1 | EA | | | Basement | 22 |
| PBO | 1 | EA | | | Basement | 23 |
| PBO | 1 | EA | | | Basement | 24 |
| PBO | 1 | EA | | | Basement | 25 |
| PBO | 1 | EA | | | Basement | 26 |
| PBO | 1 | EA | | | Basement | 27 |
| PBO | 1 | EA | | | Basement | 28 |
| PBO | 1 | EA | | | Basement | 29 |
| PBO | 1 | EA | | | Basement | 30 |
| PBO | 1 | EA | | | Basement | 31 |
| PBO | 1 | EA | | | Basement | 32 |

Case 1:22-cv-01694-TJK   Document 34-4   Filed 09/17/24   Page 3 of 58

APP 388

| Description | Qty | UOM | Category | Condition | Room | Tag |
|---|---|---|---|---|---|---|
| PBO | 1 | EA | | | Basement | 33 |
| PBO | 1 | EA | | | Basement | 34 |
| PBO | 1 | EA | | | Basement | 35 |
| PBO | 1 | EA | | | Basement | 36 |
| PBO | 1 | EA | | | Basement | 37 |
| PBO | 1 | EA | | | Basement | 38 |
| PBO | 1 | EA | | | Basement | 39 |
| PBO | 1 | EA | | | Basement | 40 |
| PBO | 1 | EA | | | Basement | 41 |
| PBO | 1 | EA | | | Basement | 42 |
| PBO | 1 | EA | | | Basement | 43 |
| PBO | 1 | EA | | | Basement | 44 |
| PBO | 1 | EA | | | Basement | 45 |
| PBO | 1 | EA | | | Basement | 46 |
| Suitcase | 1 | EA | | | Basement | 47 |
| Suitcase | 1 | EA | | | Basement | 48 |
| Suitcase | 1 | EA | | | Basement | 49 |
| PBO | 1 | EA | | | Basement | 50 |
| PBO | 1 | EA | | | Basement | 51 |
| PBO | 1 | EA | | | Basement | 52 |
| PBO | 1 | EA | | | Basement | 53 |
| PBO | 1 | EA | | | Basement | 54 |
| PBO | 1 | EA | | | Basement | 55 |
| PBO | 1 | EA | | | Basement | 56 |
| PBO | 1 | EA | | | Basement | 57 |
| PBO | 1 | EA | | | Basement | 58 |
| PBO | 1 | EA | | | Basement | 59 |
| PBO | 1 | EA | | | Basement | 61 |
| PBO | 1 | EA | | | Basement | 63 |
| PBO | 1 | EA | | | Basement | 64 |
| Clothes | 1 | EA | | | Basement | 65 |
| Clothes/Linen | 1 | EA | | | Basement | 66 |
| Clothes | 1 | EA | | | Basement | 67 |

App.389

Case 1:22-cv-01694-TJK   Document 34-4   Filed 09/17/24   Page 5 of 58

| Description | Qty | UOM | Category | Condition | Room | Tag |
|---|---|---|---|---|---|---|
| Clothes | 1 | EA | | | Basement | 68 |
| PBO | 1 | EA | | | Basement | 69 |
| Clothes/Linen | 1 | EA | | | Basement | 70 |
| Shoes | 1 | EA | | | Basement | 71 |
| Suitcase of clothes | 1 | EA | | | Basement | 72 |
| Linen | 1 | EA | | | Basement | 73 |
| Clothes | 1 | EA | | | Basement | 74 |
| Clothes | 1 | EA | | | Basement | 75 |
| Linen | 1 | EA | | | Basement | 76 |
| Clothes | 1 | EA | | | Basement | 77 |
| Clothes/Linen | 1 | EA | | | Basement | 78 |
| Clothes/Linen/shoes | 1 | EA | | | Basement | 79 |
| Linen | 1 | EA | | | Basement | 80 |
| PBO | 1 | EA | | | Basement | 81 |
| Clothes | 1 | EA | | | Basement | 82 |
| PBO | 1 | EA | | | Basement | 83 |
| Clothes | 1 | EA | | | Basement | 84 |
| Clothes | 1 | EA | | | Basement | 85 |
| Giant blanket cushion | 1 | EA | | | Basement | 86 |
| Clothes | 1 | EA | | | Basement | 87 |
| PBO | 1 | EA | | | Basement | 88 |
| PBO | 1 | EA | | | Basement | 89 |
| PBO | 1 | EA | | | Basement | 90 |
| PBO | 1 | EA | | | Basement | 91 |
| Clothes | 1 | EA | | | Basement | 92 |
| PBO | 1 | EA | | | Basement | 93 |
| Clothes | 1 | EA | | | Basement | 94 |
| Clothes | 1 | EA | | | Basement | 95 |
| PBO | 1 | EA | | | Basement | 96 |
| Clothes | 1 | EA | | | Basement | 97 |
| PBO | 1 | EA | | | Basement | 98 |
| PBO | 1 | EA | | | Basement | 99 |
| PBO | 1 | EA | | | Basement | 100 |

CONFIDENTIAL

Case 1:22-cv-01694-TJK   Document 34-4   Filed 09/17/24   Page 6 of 58

| Description | Qty | UOM | Category | Condition | Room | Tag |
|---|---|---|---|---|---|---|
| Linen | 1 | EA | | | Basement | 101 |
| PBO | 1 | EA | | | Basement | 102 |
| Suitcase | 1 | EA | | | Basement | 103 |
| Shoes | 1 | EA | | | Basement | 104 |
| Bags and linen | 1 | EA | | | Basement | 105 |
| Suitcase | 1 | EA | | | Basement | 106 |
| Rug/Matt | 1 | EA | | | Basement | 107 |
| PBO | 1 | EA | | | Basement | 108 |
| Styrofoam head and Linen | 1 | EA | | | Basement | 109 |
| PBO | 1 | EA | | | Basement | 110 |
| Boxes and clothes | 1 | EA | | | Basement | 111 |
| PBO | 1 | EA | | | Basement | 112 |
| Linen | 1 | EA | | | Basement | 113 |
| PBO | 1 | EA | | | Basement | 114 |
| Clothes | 1 | EA | | | Basement | 116 |
| PBO | 1 | EA | | | Basement | 117 |
| Dolls | 1 | EA | | | Basement | 118 |
| Tote with books and shower hose | 1 | EA | | | Basement | 119 |
| Tote | 1 | EA | | | Basement | 120 |
| PBO | 1 | EA | | | Basement | 122 |
| Clothes | 1 | EA | | | Basement | 123 |
| Comforter | 1 | EA | | | Basement | 125 |
| Heater | 1 | EA | | | Basement | 135 |
| Lamp | 1 | EA | | | Basement | 137 |
| Heater | 1 | EA | | | Basement | 138 |
| PBO lock box | 1 | EA | | | Basement | 139 |
| Air Conditioner | 1 | EA | Appliances | | Basement | 140 |
| Air conditioner | 1 | EA | | | Basement | 141 |
| Glass top | 1 | EA | | | Basement | 145 |
| Chair | 1 | EA | | | Basement | 152 |
| Chair | 1 | EA | | | Basement | 153 |
| Coat rack | 1 | EA | | | Basement | 154 |
| Coat rack | 1 | EA | | | Basement | 155 |

App.389

CONFIDENTIAL

| Description | Qty | UOM | Category | Condition | Room | Tag |
|---|---|---|---|---|---|---|
| Coat rack | 1 | EA | | | Basement | 156 |
| Lamp | 1 | EA | | | Basement | 158 |
| Tote | 1 | EA | | | Basement | 161 |
| Poles | 1 | EA | | | Basement | 162 |
| Saw | 1 | EA | | | Basement | 163 |
| CDs | 1 | EA | | | Basement | 164 |
| Guitar | 1 | EA | | | Basement | 172 |
| Glasses | 1 | EA | | | Basement | Box 60 |
| Glasses | 1 | EA | | | Basement | Box 62 |
| Clothes | 1 | EA | | | Basement | Box 115 |
| Clothes | 1 | EA | | | Basement | Box 121 |
| Clothes | 1 | EA | | | Basement | Box 124 |
| Baskets, record Player | 1 | EA | | | Basement | Box 126 |
| Books, Glasses, Baskets | 1 | EA | | | Basement | Box 127 |
| Bags, Clothes, and papers | 1 | EA | | | Basement | Box 128 |
| Clothes | 1 | EA | | | Basement | Box 129 |
| Lamp, toy, light | 1 | EA | | | Basement | Box 130 |
| Glasses and Pans | 1 | EA | | | Basement | Box 131 |
| Glass, plates , cups | 1 | EA | | | Basement | Box 132 |
| Books , DVD player, lights | 1 | EA | | | Basement | Box 133 |
| Clothes | 1 | EA | | | Basement | Box 134 |
| Clothes | 1 | EA | | | Basement | Box 136 |
| Silverware | 1 | EA | | | Basement | Box 142 |
| Toys, books, speakers | 1 | EA | | | Basement | Box 143 |
| Books | 1 | EA | | | Basement | Box 144 |
| Bag, toys, Books | 1 | EA | | | Basement | Box 146 |
| Glass, cups, pictures | 1 | EA | | | Basement | Box 147 |
| Glass, Books | 1 | EA | | | Basement | Box 148 |
| Books | 1 | EA | | | Basement | Box 149 |
| Books | 1 | EA | | | Basement | Box 150 |
| Books | 1 | EA | | | Basement | Box 151 |
| Clothes and shoes | 1 | EA | | | Basement | Box 157 |
| Cd's, Books | 1 | EA | | | Basement | Box 159 |

| Description | Qty | UOM | Category | Condition | Room | Tag |
|---|---|---|---|---|---|---|
| CDs and DVDs | 1 | EA | | | Basement | Box 160 |
| Stuff under the stairs | 1 | EA | | | Basement | Box 165 |
| Stuff under the stairs | 1 | EA | | | Basement | Box 166 |
| Stuff under the stairs | 1 | EA | | | Basement | Box 167 |
| Stuff from under stairs | 1 | EA | | | Basement | Box 168 |
| CDs and DVDs | 1 | EA | | | Basement | Box 169 |
| CDs and DVDs | 1 | EA | | | Basement | Box 170 |
| Bag of files | 1 | EA | | | Basement | Box 171 |

**Items:**                                                                    **139**
**Boxes:**                                                                    **34**

**App.391**

**Sign-Off**

I/We confirm that all information on
above list is correct and complete.

Customer                                          Contractor


Date                                              Date

Case 1:22-cv-01694-TJK   Document 34-4   Filed 09/17/24   Page 8 of 58

# PHANTA ANDREWS

## Picture Inventory by Tag # ao 05/10/2019

**707 49th Place NE**
**Washington  20019**
**USA**



Date of Loss:
Type of Job: Contents
Type of Loss:
Claim #: 039740892
Insurance Company: Liberty Mutual
Adjuster:
Prepared On: May 10, 2019



The National Packout Company

**1-800-Packouts of DC**
950 South Pickett Street, Alexandria, Virginia, US 22304
Phone:(703) 461-6425

## Total loss

**1 | EA**

Condition **Total Loss**
Notes **Pictures and paintings that was sitting in the water**

**Wood and cardboard on each frame feels damp**
Room **Basement**
Location **Loss Location**









## Tray

**1 | EA**

Tag **1**
Room **Basement**
Location **Loss Location**



## Muffin Pan

**1 | EA**

Tag **2**
Room **Basement**
Location **Loss Location**



## PBO

**1 | EA**

Tag **3**
Room **Basement**
Location **Loss Location**



1-800-Packouts of DC

707 49th Place NE, Washington  20019

**PBO**

**1 | EA**

Tag **4**
Room **Basement**
Location **Loss Location**



**PBO**

**1 | EA**

Tag **5**
Room **Basement**
Location **Loss Location**

**PBO**

**1 | EA**

Tag **6**
Room **Basement**
Location **Loss Location**



**PBO**

**1 | EA**

Tag **7**
Room **Basement**
Location **Loss Location**

707 49th Place NE, Washington 20019

**PBO**

**1 | EA**

Tag **8**
Room **Basement**
Location **Loss Location**



**PBO**

**1 | EA**

Tag **9**
Room **Basement**
Location **Loss Location**



**PBO**

**1 | EA**

Tag **10**
Room **Basement**
Location **Loss Location**



**PBO**

**1 | EA**

Tag **11**
Room **Basement**
Location **Loss Location**




Case 1:22-cv-01694-TJK     Document 34-4     Filed 09/17/24     Page 13 of 58

1-800-Packouts of DC

267-PHANTA ANDREWS(PHANTA ANDREWS) / Claim #
039740892

707 49th Place NE, Washington 20019

May 10, 2019

**PBO**

**1 | EA**

Tag **12**
Room **Basement**
Location **Loss Location**



**PBO**

**1 | EA**

Tag **13**
Room **Basement**
Location **Loss Location**



**PBO**

**1 | EA**

Tag **14**
Room **Basement**
Location **Loss Location**



**PBO**

**1 | EA**

Tag **15**
Room **Basement**
Location **Loss Location**



Case 1:22-cv-01694-TJK    Document 34-4    Filed 09/17/24    Page 14 of 58
1-800-Packouts of DC    207-PHANTA ANDREWS (PHANTA ANDREWS) / Claim #
039740892

707 49th Place NE, Washington  20019    May 10, 2019

**PBO**

**1 | EA**

    Tag  **16**
    Room  **Basement**
    Location  **Loss Location**



**PBO**

**1 | EA**

    Tag  **17**
    Room  **Basement**
    Location  **Loss Location**



**PBO**

**1 | EA**

    Tag  **18**
    Room  **Basement**
    Location  **Loss Location**



**PBO**

**1 | EA**

    Tag  **19**
    Room  **Basement**
    Location  **Loss Location**



**PBO**

1 | EA

Tag **20**
Room **Basement**
Location **Loss Location**



**PBO**

1 | EA

Tag **21**
Room **Basement**
Location **Loss Location**



**PBO**

1 | EA

Tag **22**
Room **Basement**
Location **Loss Location**



**PBO**

1 | EA

Tag **23**
Room **Basement**
Location **Loss Location**

1-800-Packouts of DC  Case 1:22-cv-01694-TJK   Document 34-4   Filed 09/17/24   Page 16 of 58  26 (PHANTA ANDREWS & PHANTA ANDREWS) / Claim # 039740892

707 49th Place NE, Washington  20019

May 10, 2019

**PBO**

**1 | EA**

Tag **24**
Room **Basement**
Location **Loss Location**



**PBO**

**1 | EA**

Tag **25**
Room **Basement**
Location **Loss Location**



**PBO**

**1 | EA**

Tag **26**
Room **Basement**
Location **Loss Location**



**PBO**

**1 | EA**

Tag **27**
Room **Basement**
Location **Loss Location**



1-800-Packouts of DC

707 49th Place NE, Washington  20019

**PBO**

**1 | EA**

| | |
|---|---|
| Tag | **28** |
| Room | **Basement** |
| Location | **Loss Location** |



**PBO**

**1 | EA**

| | |
|---|---|
| Tag | **29** |
| Room | **Basement** |
| Location | **Loss Location** |



**PBO**

**1 | EA**

| | |
|---|---|
| Tag | **30** |
| Room | **Basement** |
| Location | **Loss Location** |



**PBO**

**1 | EA**

| | |
|---|---|
| Tag | **31** |
| Room | **Basement** |
| Location | **Loss Location** |



CONFIDENTIAL

**App.400**

**PBO**

1 | EA

| | |
|---|---|
| Tag | **32** |
| Room | **Basement** |
| Location | **Loss Location** |



**PBO**

1 | EA

| | |
|---|---|
| Tag | **33** |
| Room | **Basement** |
| Location | **Loss Location** |



**PBO**

1 | EA

| | |
|---|---|
| Tag | **34** |
| Room | **Basement** |
| Location | **Loss Location** |



**PBO**

1 | EA

| | |
|---|---|
| Tag | **35** |
| Room | **Basement** |
| Location | **Loss Location** |



CONFIDENTIAL

**PBO**

**1 | EA**

Tag **36**
Room **Basement**
Location **Loss Location**



**PBO**

**1 | EA**

Tag **37**
Room **Basement**
Location **Loss Location**



**PBO**

**1 | EA**

Tag **38**
Room **Basement**
Location **Loss Location**



**PBO**

**1 | EA**

Tag **39**
Room **Basement**
Location **Loss Location**

**App.402**

1-800-Packouts of DC

Case 1:22-cv-01694-TJK    Document 34-4    Filed 09/17/24    Page 20 of 58
287-PHANTA ANDREWS (PHANTA ANDREWS) / Claim #
039740892

707 49th Place NE, Washington 20019

May 10, 2019

**PBO**

1 | EA

Tag **40**
Room **Basement**
Location **Loss Location**



**PBO**

1 | EA

Tag **41**
Room **Basement**
Location **Loss Location**



**PBO**

1 | EA

Tag **42**
Room **Basement**
Location **Loss Location**




**PBO**

1 | EA

Tag **43**
Room **Basement**
Location **Loss Location**



Case 1:22-cv-01694-TJK    Document 34-4    Filed 09/17/24    Page 21 of 58
1-800-Packouts of DC
267-PHANTA ANDREWS(PHANTA ANDREWS) / Claim #
039740892

707 49th Place NE, Washington  20019
May 10, 2019

## PBO

**1 | EA**

Tag **44**
Room **Basement**
Location **Loss Location**



## PBO

**1 | EA**

Tag **45**
Room **Basement**
Location **Loss Location**



CONFIDENTIAL

## PBO

**1 | EA**

Tag **46**
Room **Basement**
Location **Loss Location**



## Suitcase

**1 | EA**

Tag **47**
Room **Basement**
Location **Loss Location**








## Suitcase

**1 | EA**

Tag **48**
Room **Basement**
Location **Loss Location**









## Suitcase

**1 | EA**

Tag **49**
Room **Basement**
Location **Loss Location**








## PBO

**1 | EA**

Tag **50**
Room **Basement**
Location **Loss Location**




## PBO

**1 | EA**

Tag **51**
Room **Basement**
Location **Loss Location**



## PBO

**1 | EA**

Tag **52**
Room **Basement**
Location **Loss Location**



## PBO

**1 | EA**

Tag **53**
Room **Basement**
Location **Loss Location**




## PBO

**1 | EA**

Tag **54**
Room **Basement**
Location **Loss Location**



**App.406**

**PBO**

**1 | EA**

Tag **55**
Room **Basement**
Location **Loss Location**

 

**PBO**

**1 | EA**

Tag **56**
Room **Basement**
Location **Loss Location**



**PBO**

**1 | EA**

Tag **57**
Room **Basement**
Location **Loss Location**



**PBO**

**1 | EA**

Tag **58**
Room **Basement**
Location **Loss Location**

 

**PBO**

**1 | EA**

Tag **59**
Room **Basement**
Location **Loss Location**




**PBO**

**1 | EA**

Tag **61**
Room **Basement**
Location **Loss Location**




**PBO**

**1 | EA**

Tag **63**
Room **Basement**
Location **Loss Location**



**PBO**

**1 | EA**

Tag **64**
Room **Basement**
Location **Loss Location**




707 49th Place NE, Washington  20019                                        May 10, 2019

## Clothes

**1 | EA**

      Tag **65**
   Room **Basement**
  Location **Loss Location**



## Clothes/Linen

**1 | EA**

      Tag **66**
   Room **Basement**
  Location **Loss Location**



## Clothes

**1 | EA**

      Tag **67**
   Room **Basement**
  Location **Loss Location**



## Clothes

**1 | EA**

      Tag **68**
   Room **Basement**
  Location **Loss Location**



1-800-Packouts of DC

707 49th Place NE, Washington  20019

May 10, 2019

## PBO

**1 | EA**

Tag **69**
Room **Basement**
Location **Loss Location**



## Clothes/Linen

**1 | EA**

Tag **70**
Room **Basement**
Location **Loss Location**



## Shoes

**1 | EA**

Tag **71**
Room **Basement**
Location **Loss Location**




## Suitcase of clothes

**1 | EA**

Tag **72**
Room **Basement**
Location **Loss Location**



CONFIDENTIAL

**App.410**

## Linen

**1 | EA**

    Tag **73**
  Room **Basement**
Location **Loss Location**



## Clothes

**1 | EA**

    Tag **74**
  Room **Basement**
Location **Loss Location**



## Clothes

**1 | EA**

    Tag **75**
  Room **Basement**
Location **Loss Location**




## Linen

**1 | EA**

    Tag **76**
  Room **Basement**
Location **Loss Location**



Case 1:22-cv-01694-TJK    Document 34-4    Filed 09/17/24    Page 29 of 58

1-800-Packouts of DC

267-PHANTA ANDREWS(PHANTA ANDREWS) / Claim #
039740892

707 49th Place NE, Washington  20019

May 10, 2019

## Clothes

**1 | EA**

> Tag **77**
> Room **Basement**
> Location **Loss Location**



## Clothes/Linen

**1 | EA**

> Tag **78**
> Room **Basement**
> Location **Loss Location**




## Clothes/Linen/shoes

**1 | EA**

> Tag **79**
> Room **Basement**
> Location **Loss Location**






## Linen

**1 | EA**

> Tag **80**
> Room **Basement**
> Location **Loss Location**



707 49th Place NE, Washington 20019

## PBO

**1 | EA**

Tag **81**
Room **Basement**
Location **Loss Location**



## Clothes

**1 | EA**

Tag **82**
Room **Basement**
Location **Loss Location**



## PBO

**1 | EA**

Tag **83**
Room **Basement**
Location **Loss Location**



## Clothes

**1 | EA**

Tag **84**
Room **Basement**
Location **Loss Location**



Case 1:22-cv-01694-TJK    Document 34-4    Filed 09/17/24    Page 31 of 58
267-PHANTA ANDREWS(PHANTA ANDREWS) / Claim #
039740892

1-800-Packouts of DC

707 49th Place NE, Washington  20019

May 10, 2019

## Clothes

**1 | EA**

Tag **85**
Room **Basement**
Location **Loss Location**



## Giant blanket cushion

**1 | EA**

Tag **86**
Room **Basement**
Location **Loss Location**



## Clothes

**1 | EA**

Tag **87**
Room **Basement**
Location **Loss Location**



## PBO

**1 | EA**

Tag **88**
Room **Basement**
Location **Loss Location**




Case 1:22-cv-01694-TJK    Document 34-4    Filed 09/17/24    Page 32 of 58

1-800-Packouts of DC                                    207 PHANTA ANDREWS (PHANTA ANDREWS) / Claim #
039740892
707 49th Place NE, Washington  20019                                                  May 10, 2019

## PBO

**1 | EA**

Tag **89**
Room **Basement**
Location **Loss Location**



## PBO

**1 | EA**

Tag **90**
Room **Basement**
Location **Loss Location**



CONFIDENTIAL

## PBO

**1 | EA**

Tag **91**
Room **Basement**
Location **Loss Location**

 

## Clothes

**1 | EA**

Tag **92**
Room **Basement**
Location **Loss Location**



1-800-Packouts of DC

707 49th Place NE, Washington  20019

## PBO

**1 | EA**

Tag **93**
Room **Basement**
Location **Loss Location**



## Clothes

**1 | EA**

Tag **94**
Room **Basement**
Location **Loss Location**



## Clothes

**1 | EA**

Tag **95**
Room **Basement**
Location **Loss Location**



## PBO

**1 | EA**

Tag **96**
Room **Basement**
Location **Loss Location**




1-800-Packouts of DC

Case 1:22-cv-01694-TJK    Document 34-4    Filed 09/17/24    Page 34 of 58
287-PHANTA ANDREWS(PHANTA ANDREWS) / Claim #
039740892

707 49th Place NE, Washington  20019

May 10, 2019

## Clothes

**1 | EA**

Tag **97**
Room **Basement**
Location **Loss Location**



CONFIDENTIAL

## PBO

**1 | EA**

Tag **98**
Room **Basement**
Location **Loss Location**



## PBO

**1 | EA**

Tag **99**
Room **Basement**
Location **Loss Location**



## PBO

**1 | EA**

Tag **100**
Room **Basement**
Location **Loss Location**



1-800-Packouts of DC

267-PHANTA ANDREWS(PHANTA ANDREWS) / Claim #
039740892

707 49th Place NE, Washington  20019

May 10, 2019

## Linen

**1 | EA**

Tag **101**
Room **Basement**
Location **Loss Location**



## PBO

**1 | EA**

Tag **102**
Room **Basement**
Location **Loss Location**



## Suitcase

**1 | EA**

Tag **103**
Room **Basement**
Location **Loss Location**



## Shoes

**1 | EA**

Tag **104**
Room **Basement**
Location **Loss Location**



## Bags and linen

**1 | EA**

Tag **105**
Room **Basement**
Location **Loss Location**




## Suitcase

**1 | EA**

Tag **106**
Room **Basement**
Location **Loss Location**








## Rug/Matt

**1 | EA**

Tag **107**
Room **Basement**
Location **Loss Location**








Case 1:22-cv-01694-TJK    Document 34-4    Filed 09/17/24    Page 37 of 58
267-PHANTA ANDREWS(PHANTA ANDREWS) / Claim #
039740892

1-800-Packouts of DC

707 49th Place NE, Washington  20019

May 10, 2019

## PBO

**1 | EA**

Tag **108**
Room **Basement**
Location **Loss Location**



## Styrofoam head and Linen

**1 | EA**

Tag **109**
Room **Basement**
Location **Loss Location**



## PBO

**1 | EA**

Tag **110**
Room **Basement**
Location **Loss Location**



## Boxes and clothes

**1 | EA**

Tag **111**
Room **Basement**
Location **Loss Location**



**App.420**

(SANTA ANDREWS / SANTA ANDREWS) / Claim #
039740892
May 10, 2019

## PBO

**1 | EA**

Tag **112**
Room **Basement**
Location **Loss Location**




## Linen

**1 | EA**

Tag **113**
Room **Basement**
Location **Loss Location**



## PBO

**1 | EA**

Tag **114**
Room **Basement**
Location **Loss Location**



## Clothes

**1 | EA**

Tag **116**
Room **Basement**
Location **Loss Location**



Case 1:22-cv-01694-TJK   Document 34-4   Filed 09/17/24   Page 39 of 58

1-800-Packouts of DC

267-PHANTA ANDREWS(PHANTA ANDREWS) / Claim #
039740892

707 49th Place NE, Washington 20019

May 10, 2019

## PBO

**1 | EA**

Tag **117**
Room **Basement**
Location **Loss Location**



## Dolls

**1 | EA**

Tag **118**
Room **Basement**
Location **Loss Location**




## Tote with books and shower hose

**1 | EA**

Tag **119**
Room **Basement**
Location **Loss Location**






## Tote

**1 | EA**

Tag **120**
Room **Basement**
Location **Loss Location**




**App.422**

### PBO

1 | EA

Tag **122**
Room **Basement**
Location **Loss Location**




### Clothes

1 | EA

Tag **123**
Room **Basement**
Location **Loss Location**



### Comforter

1 | EA

Tag **125**
Room **Basement**
Location **Loss Location**



### Heater

1 | EA

Tag **135**
Room **Basement**
Location **Loss Location**



## Lamp

**1 | EA**

Tag **137**
Room **Basement**
Location **Loss Location**



## Heater

**1 | EA**

Tag **138**
Room **Basement**
Location **Loss Location**



## PBO lock box

**1 | EA**

Tag **139**
Room **Basement**
Location **Loss Location**



## Air Conditioner

**1 | EA**

Tag **140**
Category **Appliances**
Room **Basement**
Location **Loss Location**



**App.424**

1-800-Packouts of DC            287-PHANTA ANDREWS(PHANTA ANDREWS) / Claim #
039740892

707 49th Place NE, Washington 20019          May 10, 2019

## Air conditioner

1 | EA

    Tag **141**
    Room **Basement**
    Location **Loss Location**



## Glass top

1 | EA

    Tag **145**
    Room **Basement**
    Location **Loss Location**



## Chair

1 | EA

    Tag **152**
    Room **Basement**
    Location **Loss Location**




## Chair

1 | EA

    Tag **153**
    Room **Basement**
    Location **Loss Location**




1-800-Packouts of DC

267-PHANTA ANDREWS(PHANTA ANDREWS) / Claim #
039740892

707 49th Place NE, Washington 20019                                    May 10, 2019

## Coat rack

**1 | EA**

Tag **154**
Room **Basement**
Location **Loss Location**




## Coat rack

**1 | EA**

Tag **155**
Room **Basement**
Location **Loss Location**







## Coat rack

**1 | EA**

Tag **156**
Room **Basement**
Location **Loss Location**







**App.426**

707 49th Place NE, Washington  20019                                                          May 10, 2019

## Lamp

**1 | EA**

Tag **158**
Room **Basement**
Location **Loss Location**



## Tote

**1 | EA**

Tag **161**
Room **Basement**
Location **Loss Location**




## Poles

**1 | EA**

Tag **162**
Room **Basement**
Location **Loss Location**



## Saw

**1 | EA**

Tag **163**
Room **Basement**
Location **Loss Location**




## CDs

**1 | EA**

Tag **164**
Room **Basement**
Location **Loss Location**



## Guitar

**1 | EA**

Tag **172**
Room **Basement**
Location **Loss Location**



## Glasses

**1 | EA**

Tag **Box 60**
Box Size **Medium Box**
Room **Basement**
Location **Loss Location**

 

  

## Glasses

**1 | EA**

Tag **Box 62**
Box Size **Medium Box**
Room **Basement**
Location **Loss Location**



**App.428**

## Clothes

**1 | EA**

Tag **Box 115**
Box Size **Wardrobe Box**
Room **Basement**
Location **Loss Location**



## Clothes

**1 | EA**

Tag **Box 121**
Box Size **Wardrobe Box**
Room **Basement**
Location **Loss Location**




## Clothes

**1 | EA**

Tag **Box 124**
Box Size **Wardrobe Box**
Room **Basement**
Location **Loss Location**



## Baskets, record Player

**1 | EA**

Tag **Box 126**
Box Size **X-Large Box**
Room **Basement**
Location **Loss Location**



Case 1:22-cv-01694-TJK     Document 34-4     Filed 09/17/24     Page 47 of 58

1-800-Packouts of DC

267-PHANTA ANDREWS(PHANTA ANDREWS) / Claim #
039740892

707 49th Place NE, Washington  20019

May 10, 2019

## Books, Glasses, Baskets

**1 | EA**

Tag **Box 127**
Box Size **X-Large Box**
Room **Basement**
Location **Loss Location**

 

## Bags, Clothes, and papers

**1 | EA**

Tag **Box 128**
Box Size **X-Large Box**
Room **Basement**
Location **Loss Location**

 

## Clothes

**1 | EA**

Tag **Box 129**
Box Size **Wardrobe Box**
Room **Basement**
Location **Loss Location**

 



## Lamp, toy, light

**1 | EA**

Tag **Box 130**
Box Size **Large Box**
Room **Basement**
Location **Loss Location**

 

**App.430**

## Glasses and Pans

1 | EA

Tag **Box 131**
Box Size **X-Large Box**
Room **Basement**
Location **Loss Location**



## Glass, plates , cups

1 | EA

Tag **Box 132**
Box Size **Large Box**
Room **Basement**
Location **Loss Location**



## Books , DVD player, lights

1 | EA

Tag **Box 133**
Box Size **Large Box**
Room **Basement**
Location **Loss Location**




## Clothes

1 | EA

Tag **Box 134**
Box Size **Wardrobe Box**
Room **Basement**
Location **Loss Location**






1-800-Packouts of DC

707 49th Place NE, Washington  20019                                                    May 10, 2019

## Clothes

**1 | EA**

Tag **Box 136**
Box Size **Wardrobe Box**
Room **Basement**
Location **Loss Location**







CONFIDENTIAL

## Silverware

**1 | EA**

Tag **Box 142**
Box Size **Large Box**
Room **Basement**
Location **Loss Location**




## Toys, books, speakers

**1 | EA**

Tag **Box 143**
Box Size **Large Box**
Room **Basement**
Location **Loss Location**




## Books

**1 | EA**

Tag **Box 144**
Box Size **Large Box**
Room **Basement**
Location **Loss Location**




**App.432**

## Bag, toys, Books

**1 | EA**

| | |
|---|---|
| Tag | **Box 146** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |



## Glass, cups, pictures

**1 | EA**

| | |
|---|---|
| Tag | **Box 147** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |



## Glass, Books

**1 | EA**

| | |
|---|---|
| Tag | **Box 148** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |




## Books

**1 | EA**

| | |
|---|---|
| Tag | **Box 149** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |




1-800-Packouts of DC

707 49th Place NE, Washington  20019

May 10, 2019



## Books

**1 | EA**

|        |               |
|--------|---------------|
| Tag | **Box 150** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 

## Books

**1 | EA**

|        |               |
|--------|---------------|
| Tag | **Box 151** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 

## Clothes and shoes

**1 | EA**

|        |               |
|--------|---------------|
| Tag | **Box 157** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 

## Cd's, Books

**1 | EA**

|        |               |
|--------|---------------|
| Tag | **Box 159** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |

 

**App.434**

707 49th Place NE, Washington  20019                                         May 10, 2019

## CDs and DVDs

**1 | EA**

| | |
|---|---|
| Tag | **Box 160** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |




## Stuff under the stairs

**1 | EA**

| | |
|---|---|
| Tag | **Box 165** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |







## Stuff under the stairs

**1 | EA**

| | |
|---|---|
| Tag | **Box 166** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |




## Stuff under the stairs

**1 | EA**

| | |
|---|---|
| Tag | **Box 167** |
| Box Size | **Large Box** |
| Room | **Basement** |
| Location | **Loss Location** |




267-PHANTA ANDREWS(PHANTA ANDREWS) / Claim #
039740892

707 49th Place NE, Washington  20019
May 10, 2019



## Stuff from under stairs

**1 | EA**

     Tag **Box 168**
Box Size **Large Box**
  Room **Basement**
Location **Loss Location**

 

## CDs and DVDs

**1 | EA**

     Tag **Box 169**
Box Size **Large Dish Box**
  Room **Basement**
Location **Loss Location**



## CDs and DVDs

**1 | EA**

     Tag **Box 170**
Box Size **Large Dish Box**
  Room **Basement**
Location **Loss Location**

 

## Bag of files

**1 | EA**

     Tag **Box 171**
Box Size **Large Box**
  Room **Basement**
Location **Loss Location**

 

**App.436**

**Items:** **139**

**Boxes:** **34**

**Sign-Off**

I/We confirm that all information on
above list is correct and complete.

Customer                                      Contractor

Date                                          Date

CONFIDENTIAL

# PHANTA ANDREWS

## Total Loss Picture Inventory ao 05/10/2019

**707 49th Place NE**
**Washington 20019**
**USA**



Date of Loss:
Type of Job: Contents
Type of Loss:
Claim #: 039740892
Insurance Company: Liberty Mutual
Adjuster:
Prepared On: May 10, 2019



The National Packout Company

**1-800-Packouts of DC**
950 South Pickett Street, Alexandria, Virginia, US 22304
Phone:(703) 461-6425

2874 HANTA ANDREWS (HANTA ANDREWS) / Claim #
039740892

707 49th Place NE, Washington 20019                                    May 10, 2019

## Total loss

### 1 | EA

| | |
|---|---|
| Condition | **Total Loss** |
| Notes | **Pictures and paintings that was sitting in the water** |
| | **Wood and cardboard on each frame feels damp** |
| Room | **Basement** |
| Location | **Loss Location** |









**Items:**                                                                    **1**

**Boxes:**                                                                    **0**

### Sign-Off

I/We confirm that all information on
above list is correct and complete.

| Customer | Contractor |
|---|---|
| Date | Date |



**1-800-Packouts**
**722-5688**
f ⌨ ⓜ in ▣ ▣

**PKS182857**

## AUTHORIZATION AND PERMISSION FOR DIRECT PAY
### FOR CONTENTS SERVICES AND OR CLEANING SERVICES

THIS AGREEMENT BETWEEN MADE AND ENTERED INTO THIS **9TH** DAY OF **MAY** 1800 Packouts of DC. (1800 Packouts of DC) AND **PHANTA ANDREWS** PROPERTY OWNER OR _____ FIRM REPRESENTATIVE. 1800 Packouts of DC AGREES TO PERFORM SERVICES WHICH ARE LISTED BELOW. OWNER OR REPRESENTATIVE UNDERSTANDS THAT THEY HAVE THE RIGHT TO HIRE ANYONE OF THEIR CHOICE AND HEREBY GIVES AUTHORIZATION TO 1800 Packouts of DC TO PROCEED WITH NECESSARY SERVICES WHICH MAY INCLUDE ANY OR ALL OF THE FOLLOWING SERVICES.

| | | | |
|---|---|---|---|
| *EMERGENCY SERVICES | *CLEANING OF CONTENTS | *MOVEBACK CONTENTS | ✓ |
| *INVENTORY SURVEY | ✗ *REPACKING CONTENTS | *UNPACKING CONTENTS | ✓ |
| *PACKAGING CONTENTS | *STORAGE OF CONTENTS | | |
| *OTHER _____ | | | |

 CONFIDENTIAL

AS SECURITY FOR CONTRACTOR'S FEE, THE OWNER OR REPRESENTATIVE HEREBY AUTHORIZES PAYMENT DIRECTLY TO 1800 Packouts of DC FOR SERVICES RENDERED. SHOULD THE INSURANCE COMPANY NOT PAY ANY PORTION OF THIS CLAIM IT IS THE RESPONSIBILITY OF THE UNDERSIGNED OWNER OR REPRESENTATIVE TO PAY ALL CHARGES IN FULL to 1800 Packouts of DC.

I UNDERSTAND THAT 1800 Packouts of DC WILL PERFORM ALL WORK IN A PROFESSIONAL MANNER AND WILL COMPLETE ANY REQUIRED CONTENTS SERVICE TO THE BEST OF ITS ABILITY. HOWEVER, 1800 Packouts of DC IN NO WAY WARRANTS OR GUARANTEES THE COMPLETE REMOVAL OF MICROBIAL, PATHOGEN AND / OR HAZARDOUS MATERIALS FROM SAID CONTENTS. THE UNDERSIGNED HEREBY RELEASES, INDEMNIFIES AND HOLDS HARMLESS, 1800 Packouts of DC AND ITS OFFICERS, AGENTS AND EMPLOYEES FROM ANY AND ALL LIABILITY FOR DAMAGE CAUSED BY MOISTURE, MOLD, MILDEW, BIO HAZARD AND / OR HAZARDOUS SUBSTANCES WHICH REMAIN, OCCUR OR REOCCUR IN THE CONTENTS AFTER 1800 Packouts of DC HAS PERFORMED ALL REQUIRED WORK IN A PROFESSIONAL MANNER AND COMPLETED THE CONTENTS PROCESS TO THE BEST OF ITS ABILITY.

I AGREE TO ALLOW 1800 Packouts of DC TO USE PHOTOS, VIDEOS, AND IMAGES OF THE WORK PERFORMED AT THE FACILITY/RESIDENCE AND TO INDEMNIFY AND HOLD HARMLESS 1800 Packouts of DC FOR ANY AND ALL CLAIMS ARISING FROM THE USE OF THE PHOTOS, VIDEOS, AND IMAGES FOR MARKETING PURPOSES.

I GRANT TO 1800 Packouts of DC THE AUTHORITY TO EXERCISE ITS JUDGMENT TO INVENOTRY, PACK, CLEAN AND STORE CONTENTS. 1800 Packouts of DC HAS AUTHORITY TO USE CHEMICALS RELATED TO CLEANING AND DEODERIZATION AND I INDEMNIFY AND HOLD HARMLESS 1800 Packouts of DC FOR ANY AND ALL CLAIMS ARISING FROM SAID AUTHORITY, INCLUDING ANY MONETARY LOSS AS A DIRECT OR INDIRECT RESULT OF THE WORK PERFORMED AT FACILITY/RESIDENCE. I AGREE TO KEEP MY CURRENT CONTENTS INSURANCE POLICY ON ALL AFFECTED CONTENTS DURING THE ENTIRE CLAIM.

THE UNDERSIGNED OWNER OR REPRESENTATIVE IS TO REMOVE ANY AND ALL PERSONAL ITEMS THAT IT DOES NOT WANT 1800 Packouts of DC TO HANDLE ON OR BEFORE 1800 Packouts of DC BEGINS WORK ON THE PROPERTY. OWNER OR REPRESENTATIVE SHALL REMOVE ANY AND ALL PRESCRIPTION DRUGS, JEWELRY, FIREARMS, ALCOHOLIC BEVERAGES, AND LEASED ITEMS. OWNER OR REPRESENTATIVE HEREBY HOLDS 1800 Packouts of DC HARMLESS FROM ANY AND ALL CLAIMS OF ANY VARIETY REGARDING THE ABOVE LISTED ITEMS, SAVE ANY INTENTIONAL DAMAGE CAUSED BY 1800 Packouts of DC. 1800 Packouts of DC SHALL NOT RETURN ANY CONTENTS TO THE PROPERTY UNTIL 1800 Packouts of DC HAS BEEN PAID IN FULL. 1800 Packouts of DC MAY REPLACE, REPAIR OR DISCARD ANY AND ALL ITEM(S) THAT 1800 Packouts of DC DEEMS TO BE EITHER DAMAGED OR MISSING. 1800 Packouts of DC WILL MAKE PAYABLE TO POLICY HOLDER FOR DAMAGED ITEM(S) OF RECIEPT SUPPLIED BY POLICY HOLDER UP TO A ONE TIME MAXIMUM OF FIVE HUNDRED DOLLARS FOR SAID DAMAGED ITEM / ITEMS AND UPON PAYMENT TO ME, I SHALL RELEASE 1800 Packouts of DC FROM ANY AND ALL CLAIMS ARISING FROM SUCH ALLEGED DAMAGE.

I UNDERSTAND THAT 1800 Packouts of DC IS **NOT** RESPONSIBLE FOR ANY DAMAGE THAT MAY OCCUR TO THE DRIVEWAY FROM VEHICLES OR HEAVY EQUIPMENT. I AGREE TO INDEMNIFY AND HOLD HARMLESS 1800 Packouts of DC FOR ANY AND ALL CLAIMS ARISING FROM THESE SERVICES PERFORMED BY 1800 Packouts of DC AND/OR ALL 1800 Packouts of DC CONTRACTORS, EMPLOYEES OR SUBCONTRACTORS. I AUTHORIZE 1800 Packouts of DC TO RETURN, DISCARD OR DONATE ANY OF MY CONTENTS THAT REMAIN IN THE CUSTODY OF 1800 Packouts of DC AFTER 12 MONTHS FROM THE DATE HEREOF, AT 1800 Packouts of DC DISCRETION.

I UNDERSTAND AND AGREE THAT UPON THE RETURN OF MY PERSONAL ITEMS THAT IT IS MY DUTY TO INSPECT ALL ITEMS FOR CONDITION AT THE TIME THEY ARE RETURNED. I FURTHER UNDERSTAND THAT 1800 Packouts of DC WILL NOT BE RESPONSIBLE FOR ANY ITEMS LEFT IN BOXES AND/OR WRAPPED THAT YOU OR YOUR DESIGNATED REPRESENTATIVE DID NOT INSPECT. I FURTHER UNDERSTAND THAT 1800 Packouts of DC WILL NOT BE RESPONSIBLE FOR DAMAGES TO ITEMS THAT WERE NOT INSPECTED AND WILL BE HELD HARMLESS FROM ANY AND ALL FUTURE CLAIMS RISING FROM THOSE ITEMS NOT INSPECTED AT THE TIME OF RETURN. ANY ITEMS FOUND TO BE DAMAGED AT THE TIME OF INSPECTION WILL BE NOTED AND ADDRESSED ACCORDING.

**THE TERMS HEREOF ARE CONTRACTUAL IN NATURE AND NOT A MERE RECITAL.** BY SIGNING, I HAVE READ AND UNDERSTAND THIS DOCUMENT.

THIS AGREEMENT SIGNED THIS **9TH** DAY OF **MAY** 2019

_____   
1800 Packouts of DC        _____
                           **PROPERTY OWNER OR REPRESENTATIVE**

                           Mosunmola Adeyemi
                           **PRINT NAME AND E-MAIL ADDRESS**

                           Phanta 29 andrews@gmail.com

**App.440**



Plaintiff's Exhibit 3

# In the Matter Of:

In Re: Phanta Daramy-Andrews

# PHANTA DARAMY-ANDREWS

*October 18, 2019*

*Job Number: 565904*

```
1   ----------------------------------x
2   INSURED: PHANTA DARAMY-ANDREWS      :
3   File Number: HD3320397408920003     :
4   DATE OF LOSS: April 21, 2019        :
5   INSURER: LIBERTY MUTUAL INSURANCE   :
6   ----------------------------------x
7
8
9                 EXAMINATION UNDER OATH
10              OF PHANTA DARAMY-ANDREWS
11                  Washington, D.C.
12              Friday, October 18, 2019
13                     12:32 PM
14
15
16
17
18
19
20
21
22
23  Job No.: 269056
24
25  Recorded By: Sarah Loiler
```

Page 2

```
 1        Examination Under Oath of Phanta

 2  Daramy-Andrews, held at the offices of:

 3

 4

 5

 6        PLANET DEPOS

 7        1100 Connecticut Ave, NW

 8        Suite 950

 9        Washington, D.C. 20036

10

11

12

13        Pursuant to agreement, before Sarah Loiler,

14  Notary Public in and for the District of Columbia.

15

16

17

18

19

20

21

22

23

24

25
```

Page 3

```
 1              A P P E A R A N C E S

 2

 3   ON BEHALF OF THE INSURER:

 4        RICHARD SOUTHER, ESQUIRE

 5        Christopher Costabile Law Offices

 6        10555 Main Street

 7        Suite 400

 8        Fairfax, VA 22030

 9

10   ON BEHALF OF THE INSURED:

11        CHARLES C. IWEANOGE, ESQUIRE

12        The Iweanoge Firm

13        1026 Monroe St NE

14        Washington, D.C. 20017

15

16   ALSO PRESENT:

17        MICHELLE GUIDA (appearing via telephone.)

18

19

20

21

22

23

24

25
```

Page 4

```
 1                    C O N T E N T S

 2   EXAMINATION OF PHANTA DARAMY-ANDREWS          PAGE

 3       By Mr. Souther                              5

 4

 5

 6                    E X H I B I T S

 7            (Attached to transcript.)

 8   EXAMINATION EXHIBIT                           PAGE

 9   Exhibit 1          EUO Letter                   10

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 5

```
 1                    P R O C E E D I N G S
 2   Whereupon,
 3                    PHANTA DARAMY-ANDREWS,
 4     being first duly sworn or affirmed to testify to
 5     the truth, the whole truth, and nothing but the
 6      truth, was examined and testified as follows:
 7                    EXAMINATION BY COUNSEL FOR THE INSURER
 8   BY MR. SOUTHER:
 9       Q    Good afternoon.  Is -- is it
10   Daramy-Andrews?
11       A    Mrs. Daramy-Andrews.
12       Q    Daramy-Andrews, sorry.  I just -- my
13   name is Richard Souther.  I am the attorney who's
14   been retained by Liberty Mutual to do what's
15   called an examination under oath regarding your
16   water loss from April 21 of this year.
17              Have you ever had your deposition taken?
18       A    No.
19       Q    No?  Okay.  The lady sitting to your
20   left, who just administered the oath, is the court
21   reporter.  She's taking down everything that we're
22   saying today.  It's only -- it's only an audio
23   transcript not -- not a video transcript, which
24   means that at a minimum, your answers to any of my
25   questions need to be verbal and a yes or a no.
```

PHANTA DARAMY-ANDREWS - 10/18/2019

```
 1   What that means is that as we go along, you know,
 2   as you're doing right now, you're going to be
 3   nodding your head at me and say -- to indicate yes
 4   or no or saying, you know, the word -- the
 5   phrases, uh-huh or uh-uh, which is great for us
 6   who are sitting here in the room with you because
 7   we can see you.  We can hear the inflection in
 8   your voice.
 9           When we look at the transcript later,
10   both the -- the -- any body movements, head nods,
11   head shakes, shoulder shrugs, hand gestures cannot
12   be accurately recorded and also the phrases,
13   uh-huh and uh-uh appear identical when they're
14   typewritten.  So I ask that, at a minimum, your
15   answers be a yes or a no and at some point, if --
16   if -- I can almost guarantee you what's going to
17   happen.  If I ask you if you meant that as a yes
18   or a no, it's not because I didn't understand the
19   question, it's because I want to make sure that
20   the transcript is accurate.
21       A    Yes, sir.
22       Q    Okay.  Secondly, is again, so we can get
23   an accurate transcript, you and I can't talk at
24   the same time because it makes it very hard for
25   Ms. Loiler to hear what we're saying and
```

1 accurately take down what we're saying. So even

2 though 95 percent of the questions I ask you,

3 you're going to know what I'm asking you before I

4 finish the question, I'd just like you to wait

5 until I finish the question before you begin your

6 answer so that we have an accurate transcript.

7 And I will do the same to allow you to finish your

8 quest -- answer before I jump in with another

9 question or at least I will try to. I can't

10 promise I'll be entirely successful but I will try

11 to.

12         Finally, this is -- this is a

13 examination under oath which means it's part of an

14 investigation. It's -- I'm just trying to find

15 out what happened and what your claims are,

16 especially with the personal property. I'm not

17 trying to trick you. No, I'm not trying to

18 confuse you. I want to make sure that you

19 understand my questions and -- and know what I'm

20 asking you before you answer. So please let me

21 know if you don't understand my question, not

22 sure, or if I've asked it in a convoluted way

23 which I sometimes do. Just tell me you don't

24 understand and I'll -- I'll rephrase or if you

25 didn't hear me, I'll repeat it. I don't want -- I

PHANTA DARAMY-ANDREWS - 10/18/2019

```
 1   don't want you to be confused a███ what I am

 2   asking; okay?

 3        A    Yes, sir.

 4        Q    And finally, if at any point in time you

 5   need to take a break, just let me know.  The only

 6   restriction on taking a break is if -- if I've

 7   asked you a question, I need you to answer the

 8   question before we can take a break, i.e., you

 9   can't take a break to think about the answer;

10   okay?

11        A    Yes, sir.

12        Q    All right.  Can you state your full name

13   for the record.

14        A    Phanta U.  Daramy-Andrews.

15        Q    And the U stands for what -- what's the

16   middle name?

17        A    Umah.

18        Q    Can you spell -- can you spell both your

19   first name and your middle name, please?

20        A    First name is P-H-A-N-T-A, Phanta.

21   Middle initial, U-M-A-H, Umah.

22        Q    Okay.  And what is your date of birth?

23        A    ████ ███ ████

24        Q    Okay.  And the last 4 of your Social

25   Security number?
```

PHANTA DARAMY-ANDREWS - 10/18/2019

Page 9

```
 1    A    ⸱⸱⸱⸱⸱

 2    Q    And what is your current address?

 3    A    707 49th Place Northeast, Washington,

 4  DC, ZIP code 20019.

 5    Q    Okay.  How long have you lived there?

 6    A    Since 2012, January 26th.

 7    Q    And how long have you been a share or a

 8  policy holder of Liberty Mutual?  How long have

 9  you had your Liberty Mutual policy?

10    A    I want to believe from the day I bought

11  the home.

12    Q    Okay.

13    A    Which was under GEICO and GEICO is a

14  party to Liberty Mutual.

15    Q    All right.  Actually, GEICO is not a

16  part -- it's not a part of Liberty.  So did you --

17  did you originally have your -- can you -- I need

18  you to keep your voice up, please, if you -- if

19  you can speak a little louder.

20    A    My policy --

21    Q    Yeah.  Go ahead -- go ahead.

22    A    -- my policy is with Liberty Mutual.

23    Q    Okay.  And my question is how long --

24  how long have you been a policy holder with

25  Liberty Mutual?  Did you have any other company
```

PHANTA DARAMY-ANDREWS - 10/18/2019

```
                                                    Page 10
 1   insuring this property other than Liberty Mutual?
 2        A    In 2012, when I bought the house, it was
 3   under GEICO.
 4        Q    Okay.  Do you know when you switched
 5   over to Liberty?
 6        A    I was told by GEICO that Liberty Mutual
 7   is a -- they have affiliation.
 8        Q    Okay.
 9        A    And my policy was transferred to Liberty
10   Mutual by GEICO and Liberty Mutual in conjunction.
11             MR. SOUTHER:  Now, I want to hand you
12   what I've marked as Exhibit 1, which is the
13   examination under oath letter, the EUO Letter, for
14   today's date and time.  Have you ever -- have you
15   ever seen that letter before?
16             (Deposition Exhibit 1 was marked and is
17   attached to the transcript.)
18        A    Yes, sir.  You forwarded this letter to
19   me.
20        Q    Okay.  And we originally had this -- we
21   originally had this set for some time in June, I
22   believe -- August -- excuse me, August -- August
23   8th and I believe -- and we continued it to today
24   at your request; correct?
25        A    Yes, sir.
```

Page 11

1      Q    Okay.  And part of the letter in Exhibit

2    1, I asked you to produce a certain -- certain

3    documents; is that correct?

4      A    Yes, sir.

5      Q    All right.  And the -- the most

6    important document is the inventory of what you

7    are claiming or is damaged as part of this April

8    2019 water loss.  Have you ever completed or

9    compiled an inventory of the items that were

10   damaged in this -- in this loss or in this event?

11     A    I never compiled any inventory.

12     Q    Okay.  Do you know what items were --

13   strike that.

14          Let me back up.  The -- it's my

15   understanding, am I correct, that the water loss

16   occurred in the basement of your property?

17     A    It was not a water loss, it was feces.

18     Q    Okay.  But there was water that came in

19   to the basement that brought the feces in;

20   correct?

21     A    Yes, sir.

22     Q    Okay.  And so your basement flooded?

23     A    No, sir.

24          MR. IWEANOGE:  No.  Not to the wall, the

25   basement flooded.

PHANTA DARAMY-ANDREWS - 10/18/2019

```
                                              Page 12
 1              MR. SOUTHER:  I am -- I am not using the
 2   word flooded in the legal technical insurance
 3   policy definition.  I am using it in the common
 4   sense, a whole bunch of water went into the space.
 5              MR. IWEANOGE:  Okay.  I just wanted the
 6   record to be clear.
 7       Q    I -- I am using it in the common sense.
 8   There was a whole bunch of water went into the
 9   basement.
10       A    There was a whole bunch of feces in the
11   basement.
12       Q    Okay.  But how did the feces get into
13   the basement?
14       A    It clogged into a Roto-Rooter.  There
15   was a busted pipe under the -- they said there was
16   a busted pipe and the feces came on the basement
17   floor.
18       Q    But the -- the feces -- the method of
19   transmission of the feces was water; correct?
20       A    I would think so --
21       Q    Okay.  Did you ever go down to the
22   basement and look at it?
23       A    Yes, sir.
24       Q    Okay.  And did you see a liquid in the
25   basement?
```

PHANTA DARAMY-ANDREWS - 10/18/2019

Page 13

```
 1      A    Yeah.  Liquid and feces.

 2      Q    Right.  And then the feces were floating

 3 in the liquid?

 4      A    Yes, sir.

 5      Q    Okay.  So it'd be fair to say that --

 6 that for purposes and I'm not trying -- and I'm

 7 not trying to minimize or downplay the

 8 significance of the loss, but I'm just trying to

 9 be simple -- simplify our terms. As we sit here

10 today, be fair to say that the liquid was water?

11           MR. IWEANOGE:  Objection.  As to --

12 because to say that the liquid was water will be

13 incorrect.  Because there's water in everything

14 now.  Well, water mixes with anything else, it's

15 no longer water.  It becomes something else, so --

16           MR. SOUTHER:  All right.

17           MR.  IWEANOGE:  There was fluid --

18           MR. SOUTHER:  For the -- there was a --

19 there was a -- a fluid that contained a whole

20 bunch of objects that was not pure, part of that

21 fluid was water.  It was water mixed with other

22 things; correct?  The fluid wasn't gasoline, it

23 wasn't orange juice, it wasn't any other liquid

24 other than water.  It would contain other objects,

25 but the fluid that brought the other objects was
```

PHANTA DARAMY-ANDREWS - 10/18/2019

Page 14

1   water.

2          MR. IWEANOGE:  Yes.  As we are not

3   experts, know that there is fluid that contains a

4   whole -- fluid that contains a whole bunch of

5   things and I may include water.

6          MR. SOUTHER:  As for purposes of today,

7   I am referring to the fluid and the objects in the

8   fluid solely as water, solely for simplification

9   of --

10         MR.  IWEANOGE:  Okay.

11         MR. SOUTHER:  -- of terminology so that

12  we're not elongating our language for --

13         MR.  IWEANOGE:  Okay.

14         MR. SOUTHER:  -- I -- I will refer to it

15  as water.  I am not making any determination that

16  it was only water.

17         MR. IWEANOGE:  Okay.  Suppose you use

18  the word, fluid, instead of using water?

19         MR. SOUTHER:  That's fine -- that's

20  fine.

21  BY MR. SOUTHER:

22     Q   But it's -- it's -- so this fluid and

23  other objects damaged items that were in your

24  basement; correct?

25     A   Yes, sir.

PHANTA DARAMY-ANDREWS - 10/18/2019

Page 15

```
 1      Q    Okay.  Can you just keep your voice up?

 2      A    Yes, sir.

 3      Q    The -- did -- did this fluid and/or the

 4  other objects damage items in any other part of

 5  your house?

 6      A    Any other part of my house?  It was only

 7  the -- only was -- the basement was wet.  The

 8  feces side.

 9      Q    Okay.  So that was just in -- just in

10  the basement?

11      A    Just the basement?

12      Q    Not the first no -- nowhere on the first

13  floor and --

14      A    No, sir.

15      Q    Okay.  Nowhere on the second floor?

16      A    No, sir.

17      Q    Okay.  And this fluid did not come from

18  someplace inside your house?  In the first floor

19  or the second floor?

20      A    No, sir.

21      Q    Okay.  Have you -- do you -- prior to

22  April 21, 2019, did you have any knowledge about

23  the objects that were in -- stored in your

24  basement with any particularity?

25      A    Could you repeat that, sir?
```

PHANTA DARAMY-ANDREWS - 10/18/2019

1        Q    Oh.   Let me ask this -- let me -- before

2    I -- before I repeat that, let me ask a -- a

3    preliminary question.   What was in your basement

4    prior to April or before the fluid entered the

5    basement on April 21, 2019?

6        A    Clothes, coats, shoes, winter stuff,

7    paintings --

8        Q    So you said --

9        A    -- books, plates, beddings, a whole

10   bunch of different stuff, African designer

11   clothes, et cetera.

12       Q    Okay.   Now, the -- you said there were

13   clothes, what was the second word you said?   In

14   this list, you said clothes, and then a word I

15   didn't understand?

16       A    Coats.   Fur coats, women's jackets.

17       Q    Okay.

18       A    Winter -- winter stuff.

19       Q    Okay.

20       A    Boxes of -- of -- of items that were

21   returned from my upstairs kitchen, they were

22   stored in the basement in the backroom.

23       Q    How -- these items, these clothes, the

24   coats, the winter stuff, the books, the plates,

25   the bedding, the African designer clothes, how

PHANTA DARAMY-ANDREWS - 10/18/2019

Page 17

1   were they stored in the basement?

2        A    Most -- some of them were stored on

3   hangers, on racks.  Most of them was in bags and

4   they were on the floor, in the back room, in the

5   front room, shoes were in bags.  The items that

6   were returned, over 40 boxes were in the boxes

7   stored in the laundry room.  The books were on the

8   shelves, and some antique plates and dolls.  The

9   paintings were on the floor, on the walls --

10       Q    So --

11       A    -- on the room, on the board of the

12  walls.

13       Q    Okay.  Were you ever provided a proof of

14  loss form, an inventory -- or an inventory form by

15  Liberty Mutual?

16       A    No, sir.

17       Q    Okay.  Have you ever compiled an

18  inventory, a list of the specific individual items

19  that fell into these categories that you just

20  listed?

21       A    I never made a list, but I compiled some

22  pictures.  I took pictures.

23       Q    Okay.  Do you have any way of

24  identifying the items that were in these -- the

25  bags or on the shelves or on the -- in the boxes?

PHANTA DARAMY-ANDREWS - 10/18/2019

```
                                                    Page 18
 1   Do you have any idea of identifying and/or valuing
 2   those items?
 3        A    I can identify them, because I bought
 4   them.  Yes, sir.
 5        Q    Okay.  So you -- you can look at the
 6   photographs and say, I know what this individual
 7   item is, and I can tell you what it is, where I
 8   bought it, and at what time I bought it?
 9        A    By looking at them visibly.  Yes, sir.
10        Q    Okay.
11        A    I cannot tell you what time I bought
12   them.
13        Q    Okay.  Can you -- can you tell us where
14   you bought them?
15        A    Some of them were bought many years --
16   some of them were brought from abroad.  Bangkok,
17   Africa, et cetera.
18             MR. SOUTHER:  Charles, can we go off the
19   record for a sec?
20             (Whereupon, a discussion was held off
21   the record.)
22             MR. SOUTHER:  Okay.  So we're back on
23   the record.  We just had a conversation about Ms.
24   Daramy-Andrews -- or Daramy-Andrews providing a
25   more detailed inventory of the items that she's
```

```
 1   claiming that were not in the 40 boxes that were
 2   returned from her upstairs kitchen at least at
 3   this point.  And therefore I'm moving on from
 4   those -- up from those non-boxed items until such
 5   time as the inventory is submitted.
 6   BY MR. SOUTHER:
 7       Q    Ma'am, the 40 boxes, you said they were
 8   returned from your upstairs kitchen.  Can you
 9   explain to me what you mean by they were returned
10   from your upstairs kitchen?
11       A    There was a pipe break in my upstairs
12   bathroom in 2015.
13       Q    Okay.
14       A    And the ceiling fell in from the water.
15       Q    Okay.
16       A    And it affected the kitchen and that
17   part of the house.  And Liberty Mutual called
18   Infinity Restoration to come and remove those
19   items and keep them in the storage, which they
20   did.  Then they returned them unclean and they
21   were put in the basement and they did -- did not
22   return some of my property.  And those boxes were
23   still in the basement.
24       Q    Okay.  You said that they were returned
25   unclean; is that correct?
```

PHANTA DARAMY-ANDREWS - 10/18/2019

Page 20

```
1      A    They were unclean.  The house was
2   unclean.  We stayed out of the house for a year,
3   and --
4      Q    Okay.  So the -- did you -- so this was
5   in -- this was the 2015 claim?
6      A    Yes, sir.  And the case was reopened on
7   -- in 2018.
8      Q    So you had the April 2015 claim;
9   correct?
10     A    Yes, sir.
11     Q    Okay.  And those 40 boxes that you
12  referenced were in the basement in 2019, they were
13  return -- they were boxed -- items that were boxed
14  up as part of the 2015 claim?
15     A    Yes, sir.
16     Q    Okay.  Do you recall what items were put
17  in those boxes in 2015?
18     A    I had a lot of antique -- well finger
19  rings and -- plates and a lot of other things I --
20  I had in those boxes.
21     Q    Was --
22     A    And I can't pinpoint them right now.
23     Q    Understood.
24     A    They were brought back, you know, as I
25  said, unclean, and I just put them in the
```

PHANTA DARAMY-ANDREWS - 10/18/2019

```
 1  basement, because I was, kind of, furious that we
 2  stayed out of the house for over a year.  The
 3  house wasn't cleaned.  They forced us back into
 4  the house.  Our clothes that was left there were
 5  never clean.  It was just too much, so I just
 6  stored them in the basement, because --
 7      Q   Okay.  Did you -- was there any -- after
 8  they were returned to you, if I -- I understand
 9  the timeline correctly, sometime in -- sometime in
10  2016 when they were returned to you?
11      A   Yes, sir.
12      Q   Okay.  When you -- when you moved back
13  into the house, sometime in 2016?
14      A   Yes, sir.
15      Q   Okay.  When they were returned to you in
16  2016, did you ever open any of the boxes and
17  remove any of the items?
18      A   No. I never remove any of the items. I
19  asked Mr. Kevin who brought his team members.  The
20  police opened the boxes so I can inspect whether
21  all of my items was -- were returned.  That's how
22  come, we found out that some of the items were
23  broken and some of the items were not returned, so
24  then I wrote to Liberty Mutual.
25      Q   Who was Mr. Kevin?
```

PHANTA DARAMY-ANDREWS - 10/18/2019

Page 22

```
 1      A    Kevin is the man who packed the stuff
 2   from the house and unpacked them for us to inspect
 3   the boxes.
 4      Q    So is he -- he from Packouts?
 5      A    No.  He is from Infinity Restoration --
 6      Q    Infinity.  I apologize.  He's -- he's
 7   from Infinity.  They're the ones that took the
 8   boxes from the house in 2015 and then returned
 9   them to you in 2016?
10      A    They packed those things in their boxes.
11      Q    Understood.
12      A    All right, sir.
13      Q    And those are the boxes, the 40 boxes
14   that you said were still in the --
15      A    40 plus boxes they returned.
16      Q    Okay.  And those were still in the
17   basement when this event happened in 2019?
18      A    Yes, sir.
19      Q    Okay.  The -- did you ever have any
20   conversations with anyone about the cleaning of --
21   of those items back in 2015?
22      A    Yes, sir.
23      Q    Who did you have conversations with?
24      A    Mr. David Yoon, there was a lot of them
25   --
```

Page 23

1       Q    Which --

2       A    A lot of adjusters was on this case.

3       Q    Okay.  And what were convo --

4       A    The cleaning --

5       Q    What were the conversations specifically

6   about the cleaning of those objects that were in

7   the boxes?

8       A    I asked the cleaning company why you

9   didn't clean my things, why you brought them with

10  all debris and dirt and all in the boxes.  And

11  they said, Well, Liberty Mutual said we can't

12  clean it, so we just stored it.

13      Q    Okay.  Did you have, prior to the boxes

14  being returned, did you have any conversations

15  with anyone at Infinity or at Liberty about

16  cleaning the items?

17      A    Yes, sir.  I spoke with Infinity and I

18  also spoke with Liberty Mutual telling them my

19  concern, that they brought those back into the

20  house dirty and --

21      Q    I understand.

22      A    -- and the items were not cleaned.

23      Q    I'm talking about before you -- before

24  -- during the year that you were out of the house

25  --

PHANTA DARAMY-ANDREWS - 10/18/2019

Page 24

```
1      A    Yes, sir.
2      Q    -- and during the year that the boxes
3  were stored.  Did you have any conversation during
4  that specific time-period with anyone about
5  cleaning the items in the boxes?
6      A    No.  Because all I knew, they were my
7  insurer and they know very well that those things
8  were removed in a dirty manner.  It should have
9  been cleaned before returning them.  And then when
10 I realized they were not clean after we open the
11 boxes, I called them immediately and told them of
12 my grievances.
13     Q    Okay.  Did you have a -- another
14 incident involving, and I think -- I think this
15 one was a flood --
16     A    Yes, sir.
17     Q    -- in 2018?
18     A    Yes, sir.
19     Q    Okay.  And that was one that was not
20 covered by Liberty because of the source of the
21 water; correct?
22     A    According to my insurance policy, it was
23 covered, but Liberty Mutual has its own way of
24 doing things.
25     Q    Well, you -- you filed a claim with your
```

PHANTA DARAMY-ANDREWS - 10/18/2019

Page 25

1  flood insurance; correct?

2       A    My flood insurance is with Liberty

3  Mutual.

4       Q    I understand.  No, no, no.  Well,

5  there's the homeowner's insurance and the flood

6  insurance; they're 2 separate policies.

7       A    Also my car insurance is also included

8  in my policy.

9       Q    But you've -- you filed a claim with the

10  flood -- with your flood insurance, correct?

11      A    With Liberty Mutual.

12      Q    Right.  Okay.  And the -- were the 40

13  boxes taken out of your -- removed from your

14  basement in 2018?

15      A    Liberty Mutual never removed anything

16  from my basement.  It never even cleaned my

17  basement.

18      Q    Okay.  Was the -- did the 40 boxes -- 40

19  plus boxes -- did anyone ever move them at any

20  point in time from when they were returned to you

21  in 2016 until -- until April of 2019?

22      A    No, sir.  They were never removed.

23      Q    They were never moved.  Did you -- but I

24  -- I'm not asking if they were ever removed.  I'm

25  asking did they ever get moved around, taken out

PHANTA DARAMY-ANDREWS - 10/18/2019

```
                                                    Page 26
 1   of the basement to be looked at, moved around the
 2   basement, shifted?
 3       A    No, sir.
 4       Q    Okay.  So they were in -- in April 21,
 5   2019, they were sitting in the same location as
 6   where they were placed when you returned to the
 7   house in 2016?
 8       A    When I returned to the house in 2016,
 9   they were brought down into the basement.
10       Q    And -- and they -- they -- they remained
11   in the same spot?
12       A    They remained in the back of the
13   basement room.
14       Q    Until -- until April of 2019.
15       A    -- until 2019.
16       Q    Okay.  And during those 3 years or 2 --
17   2-and-a-half plus years, did you ever compile a
18   list of the specific items that were in each box?
19       A    I never compiled a list because what I
20   felt was Infinity Restoration removed my items and
21   boxed them.  So they must have had pictures,
22   listing of each items to present to my insurance
23   company and forward me a copy as well, but I never
24   did receive any of those.
25       Q    You produced some black and whites.
```

PHANTA DARAMY-ANDREWS - 10/18/2019

```
                                                    Page 27
 1            MR. SOUTHER:  Charles, they came over to
 2   me as black and whites.  Do you have the colored
 3   versions of them?
 4            MR.  IWEANOGE:  No.  But I -- I believe
 5   those -- those documents are -- it should be with
 6   the insurance company.
 7            MR. SOUTHER:  I understand that.  All
 8   I'm asking you if you --
 9            MR.  IWEANOGE:  No.
10            MR. SOUTHER:  -- you have -- all you
11   have is the black and whites?
12            MR.  IWEANOGE:  I may -- I -- I believe
13   I have the black and white.
14            MR. SOUTHER:  Do you have color of
15   these?
16            MR.  IWEANOGE:  No. I don't have them.
17            MR. SOUTHER:  Okay.
18            MR.  IWEANOGE:  I don't believe so.
19            MR. SOUTHER:  Okay.  Because these are
20   -- I have color versions of those --
21            MR.  IWEANOGE:  Okay.  Yeah -- yeah.
22            MR. SOUTHER:  -- which -- yeah.  No, I
23   do and I just want to make sure you have them --
24            MR.  IWEANOGE:  Well, I have black and
25   whites.
```

PHANTA DARAMY-ANDREWS - 10/18/2019

```
                                                Page 28
 1              MR. SOUTHER:  -- because they may help
 2  -- this may help because this is the version that
 3  you sent me.
 4              MR.  IWEANOGE:  Uh-huh.
 5              MR. SOUTHER:  It's just it -- so I got
 6  46.  You have a 47-page version.  From May 20th,
 7  this is -- you've got a different one.  Maybe
 8  that's the version that I'm missing.  So --
 9              MR.  IWEANOGE:  It looks the same.
10              MR. SOUTHER:  Yeah.  This is -- this is
11  the same.
12              MR.  IWEANOGE:  Yeah.  Not the first
13  page.
14              MR. SOUTHER:  Yeah.  There's -- they're
15  the same ones.
16  BY MR. SOUTHER:
17      Q    So I'm going to hand you this document.
18  I just want you to look at this.  And for the
19  record, it's a document that's titled, Phanta --
20  Phanta Andrew's Picture Inventory by tag number
21  805102019.  It's produced by 1-800-Packouts.
22  Ma'am, I'm showing you what's marked as page 4 out
23  of 46.  It's a photo.  It -- it contains 6
24  photographs of boxes.  Are those part of the box
25  -- of the 40 boxes that you were referencing?
```

PHANTA DARAMY-ANDREWS - 10/18/2019

Page 29

```
 1      A    They look like it.

 2      Q    Okay.  So those are photographs of the

 3   40 boxes that were in your --   that we're talking

 4   about?

 5      A    Yes, sir.

 6      Q    Okay.

 7      A    It look like 40 plus boxes to me.

 8      Q    Right.  But those looked like the boxes

 9   that were removed in the 2015 loss?

10      A    Yes, sir.

11      Q    Okay.  Now, looking at page -- do you

12   know where these boxes are physically right now?

13      A    These boxes are with 1-800-Packouts.

14      Q    So 1-800-Packouts still has them to the

15   best of your knowledge?

16      A    They have everything that came from in

17   the basement.

18      Q    So are these the photographs -- I'll let

19   you just take a look through these.  Are these the

20   photographs you were referencing when you said you

21   could look at photographs and say -- see what was

22   in your basement?

23      A    They looked like some of what was in my

24   basement.

25      Q    Okay.  Can you identify any of the items
```

Page 30

1  just by looking at these photographs?

2      A    Yes.  My --

3      Q    Some of them.

4      A    -- my suitcases.  Some of my suitcases

5  and the shelf.  Some of the exposed items.

6      Q    Okay.  So just so that I'm -- I am -- I

7  understand you correctly, the -- is it correct

8  that the boxes, these 40 plus boxes left your

9  house in 2015, were returned to your house

10  sometime in 2016, sat in the same location until

11  1-800-Packouts pulled them out after this loss in

12  2019?

13      A    Yeah.  Looking back, because they sat it

14  in the back room and when the flood happened, we

15  did shift the boxes around.  That was, I think, in

16  August when that flood happened.  If I'm not

17  mistaken about it, we shifted a box around to get

18  the water out.  So that was the only time when the

19  boxes were brought back into the house into the

20  basement.

21      Q    So that -- so these -- if I understand

22  you correctly, these boxes sat in the same

23  position until you had the flood in 2018?

24      A    Yes, sir.

25      Q    Okay.  And were they --

PHANTA DARAMY-ANDREWS - 10/18/2019

```
 1      A     We never removed the boxes until then.

 2      Q     Was -- was the area they were stored in,

 3  in the basement, did that get flooded in 2018?

 4      A     Yes, sir.

 5      Q     Okay.  And so these were -- these boxes

 6  were pulled out of the basement in 2018?

 7      A     Yes, sir.  To dry the water and --

 8      Q     Okay.  And do you know where they went

 9  in 2018 when they were pulled out of your

10  basement?

11      A     We took it to the backyard --

12      Q     Okay.

13      A     -- to put them to clean the place.

14      Q     And then they went back from the

15  backyard right back into the basement?

16      A     Yes, sir.

17      Q     Okay.  Did you look inside the boxes

18  when they were sitting in your backyard?

19      A     They were sealed.  After we brought it

20  in, we definitely checked because I was there when

21  they were cleaning the basement.  I sat outside

22  until they were done and then we brought the boxes

23  in.

24      Q     Okay.

25      A     So there was no need to look at the
```

PHANTA DARAMY-ANDREWS - 10/18/2019

Page 32

1    boxes again because I was there to keep guide of

2    my property.

3         Q    When you -- the movement of the -- who

4    moved the boxes to the backyard?

5         A    Me, my brother, my daughters.

6         Q    And did anyone from the cleaning

7    company, whoever was cleaning the basement, move

8    them?

9         A    They helped.

10        Q    Okay.

11        A    Yeah.

12        Q    Okay.  Or they just -- they just carried

13   the boxes out of the basement and --

14        A    Yeah.

15        Q    -- left them -- moved them to the

16   backyard?

17        A    To the backyard.  I wish it was gated.

18             MR. SOUTHER:  Okay.  Give me 1 second.

19   All right.  Let me go off the record for a sec,

20   please.

21             (Whereupon, a discussion was held off

22   the record.)

23             MR. SOUTHER:  Okay.  Ma'am -- well, you

24   know, just so the record's clear, what we talked

25   about off the record is that Ms. Daramy-Andrews

Page 33

1  can -- has the right to go inspect her items at

2  the -- the 1-800-Packouts has.  I'm going to

3  provide the contact info of the claim rep to your

4  attorney, so that -- to Mr. Iweanoge so that he

5  can arrange and contact the claim rep, contact

6  1-800-Packouts, schedule your inspection of the

7  items because as I explained, what we do need is a

8  detailed inventory, that is specific to items

9  rather than just broad categories of items and

10  Charles can explain to you exactly what that

11  means.

12          But because of that, I don't think you

13  and I could constructively spend any more time

14  here today without getting frustrated, and -- and

15  it won't -- it won't get the -- the claim moving

16  quicker than if you actually had a chance to sit

17  and had all your items that 1-800-Packouts

18  currently has.  So that you can basically walk

19  down the line and tell, you know, individually,

20  like, these are a pair of shoes from this designer

21  or, you know, this model, this brand so that we --

22  that somebody can put a number -- a dollar amount

23  to them.  So what's going to happen is you're

24  going to get an opportunity to prepare the

25  detailed inventory, submit it.

PHANTA DARAMY-ANDREWS - 10/18/2019

```
 1                    Hopefully, that will eliminate all of
 2   the problems and questions that have arisen on
 3   this claim, but it should get them -- reduce the
 4   number of questions and -- and issues that we have
 5   going forward.  So we're suspending this
 6   examination under oath till a date -- to be
 7   reconvened on a date to be determined once we've
 8   received a detailed inventory; okay?
 9             THE WITNESS:  Yes, sir.
10             MR. SOUTHER:  Because I don't want you
11   to have to spend any more time down here then you
12   absolutely need to because I know you probably
13   have much better things to be doing with your time
14   than sitting in a conference room with me as
15   stunning as my personality is and as -- and as
16   humble as I am.  So I appreciate your time but we
17   are done for today.  I am -- Charles, what I'm
18   going to do because some of the substantive I'm
19   going to have her read and sign --
20             MR.  IWEANOGE:  Okay.
21             MR. SOUTHER:  -- I'm going to ask her to
22   read and sign --
23             MR.  IWEANOGE:  Okay.
24             MR. SOUTHER:  -- and not allow -- allow
25   her to waive that.  Mainly -- just so that --
```

PHANTA DARAMY-ANDREWS - 10/18/2019

Page 35

1    because -- because it's not a court deposition;

2    it's a EUO.  Just make sure that her answers were

3    -- were accurately recorded, which what that

4    means, ma'am, is -- is you will get a copy of

5    this.  So I'm going to order a copy, I'll send a

6    copy to you or to your attorney.  He will have you

7    come in and sit down, and you get to read through

8    it, and get to make notes on a separate sheet of

9    paper as to whether or not you think the answers

10   were recorded correctly; okay?

11            THE WITNESS:  Yes, sir.

12            MR. SOUTHER:  And then you sign to a --

13   to swear to the fact that the transcript is

14   accurate.

15            THE WITNESS:  Yes, sir.

16            MR. SOUTHER:  Okay?

17            THE WITNESS:  Thank you, sir.

18            MR. SOUTHER:  But we are done for today.

19            THE WITNESS:  Thank you, sir.

20            (Off the record at 1:19 PM.)

21

22

23

24

25

PHANTA DARAMY-ANDREWS - 10/18/2019

Page 36

1      CERTIFICATE OF COURT REPORTER - NOTARY PUBLIC

2              I, Sarah Loiler, the officer

3    before whom the foregoing deposition was taken, do

4    hereby certify that said proceedings were

5    electronically  recorded by me; and that I am

6    neither counsel for, related to, nor employed by

7    any of the parties to this case and have no

8    interest, financial or otherwise, in its outcome.

9              IN WITNESS WHEREOF, I have hereunto set

10   my hand and affixed my notarial seal this 30th day

11   of October, 2019.

12

13

14

15   *Sarah Loiler*

16   _____

17   SARAH LOILER, NOTARY PUBLIC,

18   FOR THE DISTRICT OF COLUMBIA

19

20

21

22

23

24

25

Page 37

1                    CERTIFICATION OF TRANSCRIPT

2         I, Mary Lide, do hereby certify that the

3    foregoing transcript, to the best of my ability,

4    knowledge, and belief, is a true and correct

5    record of the proceedings; that said proceedings

6    were reduced to typewriting under my supervision;

7    and that I am neither counsel for, related to, nor

8    employed by any of the parties to this case and

9    have no interest, financial or otherwise, in its

10   outcome.

11

12

13   _____

14   Mary Lide

15   Planet Depos, LLC

16   10/30/19

17

18

19

20

21

22

23

24

25



*Plaintiff's Exhibit 4*

November 01, 2019

Phanta U Daramy-andrews
707 49th Pl Ne
Washington, DC 20019-4805

Claim Number:  039740892-01
Date of Incident:    4/21/2019

Dear Phanta U Daramy-Andrews,

We are writing you to share the latest information about your claim
for supplemental damages, which are the additional damages discovered while
repairs were being completed. After a thorough review of the damages, we have
issued you a payment based on our findings.

**How Your Payment Was Calculated**
We want to make sure you understand how we arrived at your payment amount.
Here's how we calculated it

| | | |
|---|---:|---|
| $ | 26,216.31 | Dwelling/Home |
| $ | 6,769.51 | Personal Property |
| $ | 32,985.82 | CLAIM TOTAL (prior to the following adjustments, as applicable) |
| $ | (4,845.59) | Less applicable recoverable depreciation |
| $ | (892.34) | Less Paid When Incurred (PWI) |
| $ | (25,297.88) | Less prior payment(s) |
| $ | (1,000.00) | Less applicable deductible, which was applied to a previous payment |
| $ | 950.01 | Amount paid to you |

Please review the information provided below to better understand your payment and the claim process.

**For Damage to Your Home**

- To protect your property, please begin the repair process as soon as possible.
- Before starting repairs, make sure your contractor emails me their estimate (if different from the Liberty Mutual Insurance estimate) and any photos, before to starting any repairs.



**CONTACT US**

**By phone**
Tel: (407) 562-0362

Fax: 800-792-2614

**By E-mail**
bryan.wallace@libertymutual.com

**Liberty Insurance Corporation**
Mailing Address:
P.O. Box 515097
Los Angeles, CA 90051-5097
Telephone: (866) 542-2287
Fax: (866) 791-7490

**Visit us online**
LibertyMutual.com

**About Claims Process**
Libertymutual.com/claims-center/home-insurance-claims
Mobile

**Liberty Mutual.**
INSURANCE

**Depreciation**
- If non-recoverable depreciation has been applied to a portion of your loss, your policy requires that property of this type be settled at actual cash value (depreciation applied).
- If recoverable depreciation has been applied, your policy allows for reimbursement for those depreciated items not exceeding the total amount it cost to repair or replace. Once the repairs are completed or the items have been replaced, please submit your receipt(s) to Liberty Mutual for review.
- The following conditions are required prior to reimbursement of recoverable depreciation:
    1. The structure must be repaired or property must be replaced
    2. You must have documentation to support that you have paid for the repairs or replacement of property.
    3. You must make claim for recoverable depreciation within 6 months of the later:
        a) The last date you received a payment for actual cash value; or
        b) The date of entry of a final order of a court of competent jurisdiction declaring your right to replacement cost.

        (Certain Policy Forms and Endorsements may amend the general terms and conditions for claiming recoverable depreciation. For a complete explanation, please refer to your policy or ask your Claims Representative.)

**Requesting Recoverable Depreciation**
- Once the repairs are completed or the items have been replaced, please submit paid bills, receipts and/or cancelled checks for the repairs or replacement, including claim number, and the corresponding line number from your itemized list of contents to the mailing address or fax number listed above. Documents can also be submitted online at www.libertymutual.com. We will then consider payment of the difference between your incurred repair or replacement cost and the actual cash value of the loss. A reinspection of the repairs may be required.
- When submitting receipts for the replacement of personal property, please indicate on the receipt the corresponding item number from the personal property worksheet.

**Understanding Your Payment**
We believe you should be fully informed throughout the entire claims process. That includes learning about your payment. I can review this with you personally or you can ask me for the *Understanding Your Property Claim Payment* guide.

**Here to Help**
If you have any questions, feel free to email or call me. I can assist you more quickly if you reference your claim number in all communications.

Thank you for trusting Liberty Mutual with all your needs.

Sincerely,

Bryan Wallace
Your Liberty Mutual Claims Team

**App.481**

*Plaintiff's Exhibit 5*

| | |
|---|---|
| **Subject:** | Phanta Andrews \| Packout Services Invoice \| FW: Claim#:039740892-01 |
| **Date:** | Thursday, August 6, 2020 at 12:52:22 PM Eastern Daylight Time |
| **From:** | Akia. Turner <Akia.Turner@1800PackoutsOfDc.Com> |
| **To:** | cci iweanogesfirm.com <cci@iweanogesfirm.com> |
| **CC:** | Thomas. Stinger <Thomas.Stinger@1800PackoutsOfDc.com>, Lidia Zambilovici <Lidia.Zambilovici@1800PackoutsOfDC.com>, phanta29andrews@gmail.com <phanta29andrews@gmail.com> |
| **Priority:** | High |
| **Attachments:** | image001.png, image002.jpg, image003.jpg, Phanta Andrews Packouts Invoice PKS182857 as of July 2020.pdf |

Good Afternoon Mr. Iweanoge~!

Following up on the email I emailed over to you a few weeks ago.

Just making sure you received it as it pertains to Phanta Andrew's Storage Invoice.

Don't hesitate to contact me directly should you need any additional information.

Thanks,

Akia Turner | Customer Service Rep
*Professional Packouts, LLC dba* **1800 Packouts of DC (1800 PODC)**
**1-800-Packouts - The National Packout Company**
Local Office 703.461.6407
Akia.Turner@1800packoutsofdc.com
*National: 1-800-Packouts (722-5688)*

**From:** Akia. Turner
**Sent:** Tuesday, July 14, 2020 1:05 PM
**To:** phanta29andrews@gmail.com; Charles C. Iweanoge (cci@iweanogesfirm.com)
**Cc:** Thomas. Stinger; Lidia Zambilovici
**Subject:** Phanta Andrews | Packout Services Invoice | FW: Claim#:039740892-01
**Importance:** High

Good Afternoon Mr. Iweanoge & Ms. Andrews~!

Below is the email our company received from Liberty Mutual instructing us to invoice Ms. Andrews for remaining balance due.

The remaining balance covering Storage of Ms. Andrews' contents @ October 2019 thru July 2020 plus the storage access done in January 2020.

Let me know if you need any additional information from us on this.

Thanks,

Akia Turner | Customer Service Rep
*Professional Packouts, LLC dba* **1800 Packouts of DC (1800 PODC)**

**App.482**

**1-800-Packouts - The National Packout Company**
Local Office 703.461.6407
Akia.Turner@1800packoutsofdc.com
*National: 1-800-Packouts (722-5688)*

**From:** Feagin, Heather [mailto:Heather.Feagin@LibertyMutual.com]
**Sent:** Friday, July 10, 2020 6:17 PM
**To:** Akia. Turner
**Cc:** phanta29andrews@gmail.com; cci@jweanogesfirm.com
**Subject:** Claim#:039740892-01





Hello **Akia Turner,**

At this time, our investigation is suspended. Please submit any invoices regarding the
pack out  directly to Phanta Daramy-Andrews for payment.

Sincerely,
**Heather Feagin**

*All Liberty Mutual Claims Employees are currently working from home to protect
themselves and others. For faster claims processing, we strongly encourage customers to
file new claims online at Liberty Mutual or Safeco,  and to monitor and manage their claims
online at Libertymutual.com/online-claims or Safeco.com/online-claims.*

*For the fastest service during normal business hours, we recommend utilizing our 2-way
text program.*

**Heather D. Feagin**
CAT Inside Claims Specialist I
Liberty Mutual Insurance
PO Box 515097
Los Angeles, CA 90051-5097
Direct: **972-808-4351**
Toll Free: 800-332-3226
Fax: 888-268-8840

 

Track your claim, anytime anywhere with your online account at LibertyMutual.com or Safeco.com



100+ Years of History

Liberty Mutual
INSURANCE

Policy underwritten by **Liberty Insurance Corporation**
© 2020 Liberty Mutual Insurance Company, 175 Berkeley Street, Boston, MA 02116

**From:** Akia. Turner
**Sent:** Friday, July 10, 2020 1:56 PM
**To:** Feagin, Heather
**Cc:** Thomas. Stinger; Lidia Zambilovici
**Subject:** RE: Invoice - 039740892 | Phanta Andrews

Thanks so much.

Let me know if you need anything additional from us.

Thanks,

Akia Turner | Customer Service Rep
*Professional Packouts, LLC dba* **1800 Packouts of DC (1800 PODC)**
**1-800-Packouts - The National Packout Company**
Local Office 703.461.6407
Akia.Turner@1800packoutsofdc.com
*National: 1-800-Packouts (722-5688)*

**From:** Feagin, Heather [mailto:Heather.Feagin@LibertyMutual.com]
**Sent:** Thursday, July 09, 2020 10:04 PM
**To:** Akia. Turner
**Subject:** RE: Invoice - 039740892

Hello!

I will review this claim with my manager tomorrow. I will update you once our review is complete.

Thanks,
Heather

*All Liberty Mutual Claims Employees are currently working from home to protect*

*themselves and others. For faster claims processing, we strongly encourage customers to file new claims online at Liberty Mutual or Safeco, and to monitor and manage their claims online at Libertymutual.com/online-claims or Safeco.com/online-claims.*

*For the fastest service during normal business hours, we recommend utilizing our 2-way text program.*

## Heather D. Feagin
CAT Inside Claims Specialist I
Liberty Mutual Insurance
PO Box 515097
Los Angeles, CA 90051-5097
Direct: **972-808-4351**
Toll Free: 800-332-3226
Fax: 888-268-8840

 

**Track your claim, anytime anywhere with your online account at LibertyMutual.com or Safeco.com**

**From:** Akia. Turner <Akia.Turner@1800PackoutsOfDc.Com>
**Sent:** Wednesday, July 8, 2020 9:53 AM
**To:** Feagin, Heather <Heather.Feagin@LibertyMutual.com>; Guida, Michelle <MICHELLE.GUIDA@LibertyMutual.com>; Wallace, Bryan <Bryan.Wallace@LibertyMutual.com>; Hawkins, Brittany <BrittanyA.Hawkins@LibertyMutual.com>
**Cc:** Lidia Zambilovici <Lidia.Zambilovici@1800PackoutsOfDC.com>; Thomas. Stinger <Thomas.Stinger@1800PackoutsOfDc.com>
**Subject:** {EXTERNAL} RE: Invoice - 039740892
**Importance:** High

Good Morning All~!

Following up on the email reply I sent over on June 17th.

We are looking to find out when Liberty Mutual stopped payment for Phanta Andrew's Storage so I can inform our Accounting Department.

As of June 30th 2020 – the October 2019 thru June 2020 storage is due on Ms. Andrew's contents.

Once we hear back from you – we will update all invoices accordingly and reach out to Ms. Andrews

Thanks,

Akia Turner | Customer Service Rep
*Professional Packouts, LLC dba* **1800 Packouts of DC (1800 PODC)**
**1-800-Packouts - The National Packout Company**
**Local Office 703.461.6407**
Akia.Turner@1800packoutsofdc.com

*National: 1-800-Packouts (722-5688)*

**From:** Akia. Turner
**Sent:** Wednesday, June 17, 2020 8:57 AM
**To:** Feagin, Heather
**Cc:** Lidia Zambilovici
**Subject:** RE: Invoice - 039740892
**Importance:** High

Good Morning~!

I received your voice message in regards to Ms. Andrews June 2020 Storage Invoice.

Please let me know what date you all are no longer paying for Ms. Andrews' Storage so I can inform our Accounting Department.

As of today – the October 2019 thru June 2020 Storage is due on Ms. Andrews' contents.

Once I hear from you - we will update all invoices accordingly and reach out to Ms. Andrews.

Thanks,

Akia Turner | Customer Service Rep
*Professional Packouts, LLC dba* **1800 Packouts of DC (1800 PODC)**
**1-800-Packouts - The National Packout Company**
Local Office 703.461.6407
Akia.Turner@1800packoutsofdc.com
*National: 1-800-Packouts (722-5688)*

**From:** Feagin, Heather [mailto:Heather.Feagin@LibertyMutual.com]
**Sent:** Tuesday, June 16, 2020 5:38 PM
**To:** Akia. Turner
**Subject:** RE: Invoice - 039740892

Hello Akia,

I attempted to reach you by phone at 703-461-6407 however was not successful. I am needing clarification as to why this invoice was sent to us?

Best Regards,
Heather

*All Liberty Mutual Claims Employees are currently working from home to protect themselves and others. For faster claims processing, we strongly encourage customers to file new claims online at Liberty Mutual or Safeco, and to monitor and manage their claims online at Libertymutual.com/online-claims or Safeco.com/online-claims.*

*For the fastest service during normal business hours, we recommend utilizing our 2-way text program.*

## Heather D. Feagin

CAT Inside Claims Specialist I
Liberty Mutual Insurance
PO Box 515097
Los Angeles, CA 90051-5097
Direct: **972-808-4351**
Toll Free: 800-332-3226
Fax: 888-268-8840

 

**Track your claim, anytime anywhere with your online account at** LibertyMutual.com **or** Safeco.com

**From:** 1800-Packouts of DC <quickbooks@notification.intuit.com>
**Sent:** Monday, June 15, 2020 2:00 PM
**To:** Feagin, Heather <Heather.Feagin@LibertyMutual.com>
**Cc:** akia.turner@1800packoutsofdc.com
**Subject:** {EXTERNAL} Invoice - 039740892

INVOICE PKS184297-26

|___|

1800-Packouts of DC

Good Afternoon~!

Please see attachment for invoice covering June 2020 Storage of Phanta
Andrews contents.

Thanks,

1800 Packouts of DC

1800-Packouts of DC
950 South Pickett Street Alexandria, VA 22304
+1 7034616407
Akia.Turner@1800PackoutsofDc.com
https://www.1800packouts.com

If you receive an email that seems fraudulent, please check with the business owner before paying.

© Intuit, Inc. All rights reserved.
Privacy | Security | Terms of Service

*Plaintiff's Exhibit 6*

| Subject: | RE: RE: Re: Phanta U. Daramy-Andrews (HD332-039740892-0003) --Completed proof of loss & item inventory |
|---|---|
| **Date:** | Monday, January 27, 2020 at 3:50:18 PM Eastern Standard Time |
| **From:** | cci iweanogesfirm.com <cci@iweanogesfirm.com> |
| **To:** | Guida, Michelle <MICHELLE.GUIDA@LibertyMutual.com>, Souther, Richard <RICHARD.SOUTHER@LibertyMutual.com> |

**Attachments:** image001.png, image002.jpg, sigimg1.jpeg, Phanta.pdf, Letter POL.pdf, 1689_001.pdf

Good Afternoon:

Please find attached: (1) letter, (2) Proof of Loss, (3) Personal Property schedule and (4) 1-800-Packouts invoice.
Thanks

**Charles C Iweanoge**
Attorney At Law



\*This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of
the addressees named above. If you are not the intended recipient of this e-mail, or an authorized
employee or agent responsible for delivering it to the intended recipient, you are hereby notified
that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-
mail in error, please notify us by reply e-mail. Thank you.

-------- Original Message --------
Subject: RE: RE: Re: Phanta U. Daramy-Andrews (HD332-039740892-0003) --
Completed proof of loss & item inventory
From: "Guida, Michelle" <MICHELLE.GUIDA@LibertyMutual.com>
Date: Mon, December 23, 2019 6:54 am
To: "cci@iweanogesfirm.com" <cci@iweanogesfirm.com>, "Souther, Richard"
<RICHARD.SOUTHER@LibertyMutual.com>

Good Morning,

At this time, we will allow for a final extension until 1/27/20. That will allow your
client 30 days from the time of her visit on 12/27/19 to properly document her
inventory and submit it to Liberty Mutual.

Thank you.

Sincerely,

**Michelle Guida**

# THE IWEANOGES' FIRM

A Professional Corporation
TRIAL ATTORNEYS AND COUNSELORS AT LAW

**IWEANOGE LAW CENTER**
1026 Monroe Street, Northeast
Washington, D.C. 20017-1760

John O. Iweanoge, II. *'
Charles C. Iweanoge '
Jude C. Iweanoge '

*Admitted to the VA Bar
' Admitted to the DC & MD Bar

Phone: (202) 347 – 7026
Facsimile: (202) 347 – 7108
Website: www.iweanogesfirm.com

Writer's Direct Dial and E-mail
Phone: (202) 255-0799
Email: cci@iweanogesfirm.com

Via email to: Michelle.Guida@libertymutual.com

January 27, 2020

Michelle Guida
SIU Special Investigator
Liberty Mutual/Safeco Insurance Companies
Global Retail Markets
P.O. Box 515097
Los Angeles, CA 90051-5097

**FOR SETTLEMENT PURPOSES ONLY
AND WITHOUT PREJUDICE**

Re:     Proof of Loss
        Claim #: 039740892
        Address: 707 49th Place, NE, Washington DC 20019
        Claimant: Phanta Daramy-Andrews
        Date of Loss: 04/21/2019

Dear Ms. Guida:

The purpose of this communication is to submit our client's Proof of Loss form and preliminary personal property loss schedule.

Your office contracted 1-800-Packouts to remove, clean and store our client's personal property after the incident on April 21, 2019. The company stored our client's personal property in four (4) containers at its Northern Virginia facility. Our client has spent three days identifying items in two containers and has listed 592 items as is evident from the attached Property Loss Schedule. However, despite her best efforts with limited access to the facility, our client still has two containers remaining for her to identify the personal properties in them. Also, the attached invoice shows the fee charged by 1-800-Packouts for our client's visits to the facility.

It is my opinion that your office should send an adjuster to the 1-800-Packouts facility in Virginia to identify the remaining items and determine the value of all the items. My suggestion would obviate the need for our client incurring costs and the expeditious resolution of the matter. However, in the event that you are not inclined to send your adjuster to complete the task, our client is requesting for additional sixty (60) days to complete the property loss schedule.

*Page 2 of 2*
*Phanta D-H/Liberty*

Trusting that this is satisfactory at this time, with kind regards, I am

Sincerely Yours

Charles C. Iweanoge

cc: Richard.Souther@libertymutual.com
Encl: As stated

THE IWEANOGES' FIRM, P.C. ✠ Iweanoge Law Center 1026 Monroe Street, N.E., Washington, D.C. 20017-1760 ✠ Tel: (202) 347-7026

**App.493**


**Liberty Mutual.**
INSURANCE

Liberty Insurance Corporation
PO Box 515097
Los Angeles, CA 90051
Fax# 888-268-8840

# PROOF OF LOSS

|  | Claim Number 039740892 | |
|---|---|---|
| **Insured** Phanta Daramy-Andrews | **Date of Loss** 04/21/2019 | **Time of Loss** 12:00 AM |

| **Mailing Address** 707 49th PL NE Washington, DC 20019-4805 | | | | | |
|---|---|---|---|---|---|
| **Address of Loss** (Street) 707 49th Place N.E. | (Apt) | (City/Town) Washington, | (State) DC | (Zip Code) 20019 |
| **Home Telephone** Same | **Business Telephone** (n/a ) | **Extension** | **Cell Phone** 443-635-0084 | **Other** ( ) |

## Policy Information

| COMPANY Policy Number(s) | Effective Date | Expiration Date | Type Home owners | |
|---|---|---|---|---|
| H3723866020940 | 01/26/2019 | 01/26/2020 | HO | |
| | | | | |

Is there any other insurance which may cover this loss? If Yes, Name and Address of Insurance Company | **Policy Number**
☐ Yes ☐ No

Are you the sole owner of the property involved in this loss? If No, Name, Relationship and Address of other party with an interest in this property ☑Yes ☐ No

## Loss Information

| Type of Loss: | ☑ Dwelling | ☐ Other Structures |
|---|---|---|
| | ☑ Personal Property | ☐ Other (Describe): |

**Description of Loss:** There was an Over Flow of Feces in my Home basement the entire basement and its contents were affected; on April 21st 2019

| Was the Police Department Notified? If Yes, Name and Location ☐ Yes ☑ No | Incident Number | Investigating Officer |
|---|---|---|
| Was the Fire Department Notified? If Yes, Name and Location ☐ Yes ☑ No | Incident Number | Investigating Officer |

**Please Read the Important Information on the Reverse Side**

## Proof of Loss

This loss did not originate by any act or plan of the Insured. Nothing has been done by or with the knowledge or consent of the Insured to violate the conditions of this policy or render it void. No attempt to deceive the Company has in any way been made, and all material facts have been provided to the Company. All of the property claimed as part of the loss was destroyed or damaged at the time of the loss, and no property saved from or not damaged in the loss has been hidden. Any other information which may be required will be furnished on demand and considered part of this proof of loss.

The furnishing of this form or the preparation of proofs by a representative of the Company is not a waiver of any of its rights.

All statements included anywhere on this form or on attachments have been carefully read to or by the Insured and warranted by the Insured to be full, complete and true.

Any person who knowingly and with intent to defraud any insurance company or other person files an application for commercial insurance or a statement of claim for any commercial or personal insurance benefits containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, and any person who, in connection with such application or claim, knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.

_Thentaleip Daramy Andrews_    _01 - 26th 2020_
Signature of Insured             Date

_Still compiling list incomplete_

_01 - 26th - 2020_

**Please Complete the Enclosed Property Loss Schedule**

# Property Loss Schedule

**Building / Structural:**   (Attach any estimates or receipts)

Claim# 039740892

| Item No | Description of Damage | Repair Cost |
|---------|----------------------|-------------|
| | | |
| | | |
| | | |

**Personal Property:**   (Attach any estimates or receipts)

| Item No | Qty | Original Item | | Age | | Condition | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---------|-----|---------------|---|-----|---|-----------|-------------------|---------------------|-------------|------------------------|
| | | Description | Brand/Type/Model | Yr | Mo | | | | | |
| 1 | 1 | Blk Coat | winlht fli | | | Total Loss | | | | |
| 2 | 1 | Blk leather | charles khan | | | Total Loss | | | | |
| 3 | 1 | Sweater | maegic lawronce | | | Total Loss | | | | |
| 4 | 1 | N.Y. jersey | Spurts + men | | | Total Loss | | | | |
| 5 | 1 | Sweater | mirror image | | | Total Loss | | | | |
| 6 | 1 | Pants | Kalowa | | | Total Loss | | | | |
| 7 | 1 | Silk Gown | | | | Total Loss | | | | |
| 8 | 1 | Grey Sweater | Dana ktl | | | Total Loss | | | | |
| 9 | 1 | Pants | Sisley | | | Total Loss | | | | |
| 10 | 1 | leather Jacket | Rufnano | | | Total Loss | | | | |
| 11 | 1 | Pancho Red | Amothy Richards | | | Total loss | | | | |
| 12 | 1 | Sweater | woman within | | | Total loss | | | | |
| 13 | 1 | 3 pc Suit | Bicci | | | Total loss | | | | |
| 14 | 1 | Sweater | daisy Frankel | | | Total Loss | | | | |
| 15 | 1 | Gown | méD | | | Total Loss | | | | |
| 16 | 1 | Shirt | Coldwater | | | Total Loss | | | | |
| 17 | 1 | leather Coat | Animal print | | | Total Loss | | | | |
| 18 | 1 | Blk coat | Caron Sport | | | Total Loss | | | | |

Signature of Insured _____         Date _____

HO2

Page 3 of 3

App.496

# Property Loss Schedule

**Building / Structural:**    (Attach any estimates or receipts)

Claim# 039740892

| Item No | Description of Damage | Repair Cost |
|---|---|---|
| | | |
| | | |
| | | |

**Personal Property:**    (Attach any estimates or receipts)

| Item No | Qty | Original Item Description | Brand/Type/Model | Age Yr | Mo | Condition | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---|---|---|---|---|---|---|---|---|---|---|
| 19 | 1 | Coat | Dream Gold | | | Total Loss | | | | |
| 20 | 1 | Des. Sweater | StefinD | | | Total Loss | | | | |
| 21 | 1 | white Skirt | — | | | Total Loss | | | | |
| 22 | 1 | silk shirt | — | | | Total Loss | | | | |
| 23 | 1 | Blue Sweater | SimonTons | | | Total Loss | | | | |
| 24 | 3 | silk gowns | Jessie | | | Total Loss | | | | |
| 25 | | Sweater | old Navy | | | Total Loss | | | | |
| 26 | 1 | Gown | Victoria Secret | | | Total Loss | | | | |
| 27 | 1 | Scarf | — | | | Total Loss | | | | |
| 28 | 1 | Coat | Jessica Linda | | | Total Loss | | | | |
| 29 | 1 | Vest Brown | — | | | Total Loss | | | | |
| 30 | 1 | Sweater | Rocawear | | | Total Loss | | | | |
| 31 | 1 | Dress | Worthington | | | Total Loss | | | | |
| 32 | 1 | Jacket | Sweet woman | | | Total Loss | | | | |
| 33 | 1 | Jean skirt | — | | | Total Loss | | | | |
| 34 | 1 | Pants green | — | | | Total Loss | | | | |
| 35 | 1 | Linen Pants | | | | Total Loss | | | | |
| 36 | 1 | Shaw | Sue Blue NY | | | Total Loss | | | | |

_____    _____
Signature of Insured                    Date

App.497

## Property Loss Schedule

**Building / Structural:**   (Attach any estimates or receipts)

Claim# 039740892

| Item No | Description of Damage | Repair Cost |
|---|---|---|
| | | |
| | | |
| | | |

**Personal Property:**   (Attach any estimates or receipts)

| Item No | Qty | Original Item Description | Brand/Type/Model | Age Yr | Age Mo | Condition MOLD | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---|---|---|---|---|---|---|---|---|---|---|
| 37 | 1 | Silk dress | old navy | | | Total loss | | | | |
| 38 | 1 | Suede Coat | Fur Phasedh | | | Total loss | | | | |
| 39 | 1 | Dress | original | | | Total loss | | | | |
| 40 | 1 | Coat/Dress | JBS | | | Total loss | | | | |
| 41 | 1 | Pants | Linen/Striped | | | Total loss | | | | |
| 42 | 1 | coat | mixit | | | Total loss | | | | |
| 43 | 1 | Des Jeans | Lee | | | Total loss | | | | |
| 44 | 1 | Silk Blouse | Kasper | | | Total loss | | | | |
| 45 | 1 | Sweater | Dialouge | | | Total loss | | | | |
| 46 | 4 | Silk Curtains | white | | | Total loss | | | | |
| 47 | 1 | Dress | African Design | | | Total loss | | | | |
| 48 | 1 | Jacket | St Johns Bay | | | Total loss | | | | |
| 49 | 1 | Jacket | Cmagic | | | Total loss | | | | |
| 50 | 1 | Kids Coat | old navy | | | Total loss | | | | |
| 51 | 1 | Button up | Coogi | | | Total loss | | | | |
| 52 | 1 | Simonton | Sweater | | | Total loss | | | | |
| 53 | 1 | Sweater | Germany | | | Total loss | | | | |
| 54 | 1 | Linen Set | Jonathon | | | Total loss | | | | |

Signature of Insured                                                                 · Date

App.498

# Property Loss Schedule

**Building / Structural:** (Attach any estimates or receipts)    Claim# 039740892

| Item No | Description of Damage | Repair Cost |
|---------|----------------------|-------------|
|         |                      |             |
|         |                      |             |
|         |                      |             |

**Personal Property:** (Attach any estimates or receipts)

| Item No | Qty | Original Item Description | Brand/Type/Model | Age Yr | Mo | Condition most | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---------|-----|---------------------------|------------------|--------|-----|-----------------|-------------------|----------------------|-------------|--------------------------|
| 55 | 1 | long Coat | slinky | | | Total Loss | | | | |
| 54 | 2 | coat/cup | | | | Total loss | | | | |
| 56 | 1 | shirt | African design | | | Total Loss | | | | |
| 57 | 1 | Sweater | Lily Swanke | | | Total Loss | | | | |
| 58 | 1 | Shirt | unique | | | Total Loss | | | | |
| 59 | 10 | Cups | Lilina Fine China | | | Total Loss | | | | |
| 60 | 10 | Plates | Liling Fine China | | | Total Loss | | | | |
| 61 | 7 | Saucers | Liling Fine china | | | Total Loss | | | | |
| 62 | 1 | Crown | enka Taylor | | | Total Loss | | | | |
| 63 | 2 | glass cups | — | | | Total Loss | | | | |
| 64 | 1 | Decor | African design | | | Total Loss | | | | |
| 65 | 9 | Shot glasses | old Foley | | | Total Loss | | | | |
| 66 | 2 | Glass cups | | | | Total Loss | | | | |
| 67 | 1 | Radio | Emerson | | | Total Loss | | | | |
| 68 | 6 | glass cups | | | | | | | | |
| 69 | 2 | Crystal sken curve Cellini | | | | Total Loss | | | | |
| 70 | 2 | wine glasses fun Humoung boy collection | | | | | | | | |
| 71 | 1 | Flat Speaker Klimp | | | | Total Loss | | | | |

Signature of Insured _____     Date _____

# Property Loss Schedule

**Building / Structural:** (Attach any estimates or receipts)

Claim# 039740892

| Item No | Description of Damage | Repair Cost |
|---------|----------------------|-------------|
| | | |
| | | |
| | | |

**Personal Property:** (Attach any estimates or receipts)

| Item No | Qty | Original Item Description | Brand/Type/Model | Age Yr | Mo | Condition MOLD | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---------|-----|---------------------------|------------------|--------|-----|-----------------|-------------------|----------------------|-------------|-------------------------|
| 72 | 2 | Rolling Pin | — | | | Total Loss | | | | |
| 73 | 1 | Pan | — | | | Total Loss | | | | |
| 74 | 5 | 30k Socks | winter sport | | | Total Loss | | | | |
| 75 | 1 | Platter | | | | Total Loss | | | | |
| 74 | 1 | Plate | Homer Laughin To | | | Total loss | | | | |
| 77 | 1 | Steamer | — | | | Total Loss | | | | |
| 78 | 1 | Bread Pan | — | | | Total Loss | | | | |
| 79 | 1 | Propane Burner Portable | blanket | | | Total Loss | | | | |
| 80 | 1 | Decor silver cup | | | | Total Loss | | | | |
| 81 | 4 | Ice cream glasses | | | | Storage | | | | |
| 82 | 2 | green glasses | | | | Storage | | | | |
| 83 | 1 | short glass cup | | | | Storage | | | | |
| 84 | 3 | Silver platters | | | | Total Loss | | | | |
| 85 | 1 | Silver Platter | | | | Total Loss | | | | |
| 86 | 1 | Knife Set | oyster | | | Total loss | | | | |
| 87 | 4 | Tin Platters | Renalds | | | Total Loss | | | | |
| 88 | 1 | Cheese grater | | | | Total Loss | | | | |

_____    _____
Signature of Insured                              Date

HO2

Page 3 of 3

App.500

# Property Loss Schedule

**Building / Structural:** (Attach any estimates or receipts)

Claim# 039740892

| Item No | Description of Damage | Repair Cost |
|---------|----------------------|-------------|
| | | |
| | | |
| | | |

**Personal Property:** (Attach any estimates or receipts)

| Item No | Qty | Original Item Description | Brand/Type/Model | Age Yr | Age Mo | Condition | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---------|-----|---------------------------|------------------|--------|--------|-----------|-------------------|----------------------|-------------|------------------------|
| 89 | 1 | DVD Player | Cyber Home | | | Total Loss | | | | |
| 90 | 2 | Heaters | Space) Sunbeam | | | Storage | | | | |
| 91 | 8 | table cloths | | | | Storage | | | | |
| 92 | 1 | Sham | | | | Total Loss | | | | |
| 93 | 1 | Curtian | Home ed | | | Total loss | | | | |
| 94 | 1 | brown leather | Pots Right | | | Total Loss | | | | |
| 95 | | comforter | | | | Total Loss | | | | |
| 96 | 4 | white cushions | | | | Total Loss | | | | |
| 97 | 2 | Shirts | Baby Things | | | Total Loss | | | | |
| 98 | 1 | Sweater | Jenny See | | | Total Loss | | | | |
| 99 | 4 | Curtians | | | | Total Loss | | | | |
| 100 | 1 | Comforter | Roses (King) | | | Total Loss | | | | |
| 101 | 1 | FL Coat | J a hook | | | Total Loss | | | | |
| 102 | 1 | Robe | Treasure Iskue/ | | | Total Loss | | | | |
| 103 | 1 | Silk Robe | Victoria Secret | | | Total Loss | | | | |
| 104 | 1 | Shaw | Cashmir | | | Total Loss | | | | |
| 105 | 2 | Silk Shirts | | | | Total Loss | | | | |
| 106 | 1 | P-coat | old navy | | | Total Loss | | | | |

_____
Signature of Insured

_____
Date

App.501

# Property Loss Schedule

**Building / Structural:** (Attach any estimates or receipts)

Claim# 039740892

| Item No | Description of Damage | Repair Cost |
|---------|----------------------|-------------|
| | | |
| | | |
| | | |

**Personal Property:** (Attach any estimates or receipts)

| Item -No | Qty | Original Item Description | Brand/Type/Model | Age Yr | Age Mo | Condition MOLD | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|----------|-----|---------------------------|------------------|--------|--------|----------------|-------------------|----------------------|-------------|-------------------------|
| 107 | 1 | Silk Summe Gown | | | | Total loss | | | | |
| 108 | 1 | Brown Jacket | Viranze Jennys | | | Total Loss | | | | |
| 109 | 1 | Silk Blouse | | | | Total Loss | | | | |
| 110 | 1 | Shirt | | | | Total Loss | | | | |
| 111 | 1 | Towel | | | | Total Loss | | | | |
| 112 | 1 | Tie | Crossey Bum | | | Total loss | | | | |
| 113 | 1 | Jean Jacket | Tommy Hilfiger | | | Total Loss | | | | |
| 114 | 1 | Purple Sweater | Dress barn | | | Total loss | | | | |
| 115 | 1 | Sweater | Jordan | | | Total Loss | | | | |
| 116 | 1 | Coat | Gap | | | Total Loss | | | | |
| 117 | 1 | Jacket | First class n | | | Total Loss | | | | |
| 118 | 2 | Plates | Queens 1875 | | | Total Loss | | | | |
| 119 | 1 | Soup Bowl | FDTP | | | Total Loss | | | | |
| 120 | 1 | Sweater | Classique Entire | | | Total Loss | | | | |
| 121 | 1 | Linen Shirt | | | | Total Loss | | | | |
| 122 | 1 | Corsrol dish | Corning | | | Total Loss | | | | |
| 123 | 1 | Decor Flower | | | | | | | | |
| 124 | 1 | Designer Top | Button | | | | | | | |

Signature of Insured                                           Date

App.502

# Property Loss Schedule

**Building / Structural:** (Attach any estimates or receipts)

Claim# 039740892

| Item No | Description of Damage | Repair Cost |
|---|---|---|
| | | |
| | | |
| | | |

**Personal Property:** (Attach any estimates or receipts)

| Item No | Qty | Original Item Description | Brand/Type/Model | Age Yr | Age Mo | Condition MOLD | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---|---|---|---|---|---|---|---|---|---|---|
| 125 | 1 | Designer Suit | | | | Total Loss | | | | |
| 126 | 1 | Silk Gown | | | | Total Loss | | | | |
| 127 | 1 | Sweater | Nautica | | | Total Loss | | | | |
| 128 | 1 | Pillow case Set | Dar meny | | | Total Loss | | | | |
| 189 | 1 | Coat | Style Co | | | "Total Loss | | | | |
| 130 | 1 | Evening Gown | Riecardo | | | Total Loss | | | | |
| 191 | 1 | Sweater | Liz Claibern | | | Total Loss | | | | |
| 132 | 1 | Linen | Renox | | | Total Loss | | | | |
| 133 | 1 | Sweater | Jon myer | | | Total Loss | | | | |
| 134 | 1 | Silk Scarf | | | | Total Loss | | | | |
| 135 | 1 | Skirt | | | | Total Loss | | | | |
| 136 | 1 | Sweater | Bryant | | | Total Loss | | | | |
| 137 | 4 | Shirts | Vixen | | | Total Loss | | | | |
| 138 | 1 | Silk Shirt | loft | | | Total Loss | | | | |
| 139 | 1 | Shirt | African | | | Total Loss | | | | |
| 140 | 1 | Cashmir | marshall Ra | | | Total Loss | | | | |
| 141 | 1 | Shirt | Victoria Secret | | | Total Loss | | | | |
| 142 | 1 | Gown | | | | Total Loss | | | | |

_____
Signature of Insured

_____
Date

App.503

# Property Loss Schedule

**Building / Structural:**  (Attach any estimates or receipts)

Claim# 039740892

| Item No | Description of Damage | Repair Cost |
|---|---|---|
| | | |
| | | |
| | | |

**Personal Property:**  (Attach any estimates or receipts)

| Item - No | Qty | Original Item Description | Brand/Type/Model | Age Yr | Mo | Condition MOLD | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---|---|---|---|---|---|---|---|---|---|---|
| 142 | 1 | Sweater | Sweet Kiss | | | Total Loss | | | | |
| 143 | 1 | Dress | Al-Hannah | | | Total Loss | | | | |
| 145 | 1 | Shirt | Forever | | | Total Loss | | | | |
| 146 | 1 | Swinsuit | Blue | | | Total Loss | | | | |
| 147 | 1 | leather | Harban | | | Total Loss | | | | |
| 148 | 1 | Shirt | Sunathan Regan | | | Total Loss | | | | |
| 149 | 1 | Sweater | Barney Jimmo | | | Total Loss | | | | |
| 150 | 1 | Jeans | Ebarest Crest | | | Total Loss | | | | |
| 151 | 1 | Spaghetti Top | | | | Total Loss | | | | |
| 152 | 1 | Blouse | Jones N Y | Sign | | Total Loss | | | | |
| 153 | 1 | Shirt | Personal Identify | | | Total Loss | | | | |
| 154 | 1 | Leather Coat | Blk Red | | | Total Loss | | | | |
| 155 | 1 | Jacket | Inellgoman | | | Total Loss | | | | |
| 156 | 1 | Jeans | Style cap | | | Total Loss | | | | |
| 157 | 1 | Jeans | NY Company | | | Total Loss | | | | |
| 158 | 1 | Blouse | People Passion | | | Total Loss | | | | |
| 159 | 1 | Dress | Lilly Ae | | | Total Loss | | | | |
| 160 | 1 | Jeans | Express | | | | | | | |

Signature of Insured _____     Date _____

HO2

Page 3 of 3

**App-504**

# Property Loss Schedule

**Building / Structural:** (Attach any estimates or receipts)

Claim# 039740892

| Item No | Description of Damage | Repair Cost |
|---------|----------------------|-------------|
|         |                      |             |
|         |                      |             |
|         |                      |             |

**Personal Property:** (Attach any estimates or receipts)

| Item No. | Qty | Original Item Description | Brand/Type/Model | Age Yr | Age Mo | Condition MOLD | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|----------|-----|---------------------------|------------------|--------|--------|----------------|-------------------|----------------------|-------------|-------------------------|
| 165 | 1 | Pullover | | | | Total loss | | | | |
| 166 | 1 | Silk Blouse | Forever | | | Total loss | | | | |
| 168 | 1 | Blouse | K&M Achazi | | | Total loss | | | | |
| 169 | 1 | Jeans | Cimbrion NY | | | Total loss | | | | |
| 170 | 1 | Silk cushion | | | | Total loss | | | | |
| 171 | 1 | Shirt | Bathef filrry | | | Total loss | | | | |
| 172 | 1 | Pants | | | | Total loss | | | | |
| 173 | 1 | Shirts | Cherokee | | | Total loss | | | | |
| 174 | 1 | Shirt | Focked Colony | | | Total loss | | | | |
| 175 | 1 | Shirt | Nevada | | | Total loss | | | | |
| 176 | 1 | Silk blue public | | | | Total loss | | | | |
| 177 | 1 | Red Scarf | | | | Total loss | | | | |
| 178 | 1 | Shirt | men direction | | | Total loss | | | | |
| 179 | 1 | Shirt | violet & claur | | | Total loss | | | | |
| 180 | 1 | Pants | Angel | | | Total loss | | | | |
| 181 | 3 | Shirts | cold water creek | | | Total loss | | | | |
| 182 | 1 | Linen short | | | | Total loss | | | | |
| 183 | 1 | Silk Pants | | | | Total loss | | | | |

_____          _____

Signature of Insured                            Date

HO2                                                                    Page 3 of 3

App-505

## Property Loss Schedule

**Building / Structural:** (Attach any estimates or receipts)

| Item No | Description of Damage | Repair Cost |
|---------|----------------------|-------------|
| | | |
| | | |
| | | |

**Personal Property:** (Attach any estimates or receipts)

| Item No | Qty | Original Item Description | Brand/Type/Model | Age Yr | Mo | Condition MOL!? | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---------|-----|---------------------------|------------------|--------|-----|-----------------|-------------------|----------------------|-------------|-------------------------|
| 184 | 1 | Mens African Gown | | | | Total Loss | | | | |
| 185 | 1 | Jacken | LL Bean | | | Total Loss | | | | |
| 186 | 1 | Jacket | Suede Leopold cht | | | Total Loss | | | | |
| 187 | 1 | Sweater | denom 21/7 | | | Total Loss | | | | |
| 188 | 1 | Purse | Sima Rody | | | Total Loss | | | | |
| 189 | 1 | scarf | fur Zara | | | Total Loss | | | | |
| 190 | 1 | T-Shirt | Church of the Gown | | | Total Loss | | | | |
| 191 | 1 | See through shirt | | | | Total Loss | | | | |
| 192 | 1 | Poncho | | | | Total Loss | | | | |
| 193 | 1 | Blouse | Danice | | | Total Loss | | | | |
| 194 | 1 | Blouse / silk | | | | Total Loss | | | | |
| 195 | 3 | wigs | human hair | | | Total Loss | | | | |
| 196 | 1 | Jean Shots | many eshlex | | | Total Loss | | | | |
| 197 | 6 | Decorative figurines | | | | Total Loss | | | | |
| 198 | 1 | Blouse | Victoria Secre | | | Total Loss | | | | |
| 199 | 1 | Shirt | Champion By collection | | | Total Loss | | | | |
| 200 | 4 | Antique wine bottles | | | | Total Loss | | | | |
| 201 | 1 | Liquor bottle | | | | Total Loss | | | | |

Signature of Insured _____    · Date _____

Case 1:22-cv-01694-TJK   Document 34-8   Filed 09/17/24   Page 17 of 46

App-506

## Property Loss Schedule

**Building / Structural:** (Attach any estimates or receipts)

Claim# 039740892

| Item No | Description of Damage | Repair Cost |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**Personal Property:** (Attach any estimates or receipts)

| Item No | Qty | Original Item Description | Brand/Type/Model | Age Yr | Mo | Condition | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---|---|---|---|---|---|---|---|---|---|---|
| 202 | 1 | Hand bag |  |  |  | Total Loss |  |  |  |  |
| 203 | 1 | Fine china | Alfred Meakin |  |  | Total Loss |  |  |  |  |
| 204 | 1 | Shirt Pink faded Glory |  |  |  | Total Loss |  |  |  |  |
| 265 | 1 | 50 anniversary Budweiser |  |  |  | Total Loss |  |  |  |  |
| 206 | 1 | Blender | Hamilton Beach |  |  | Total Loss |  |  |  |  |
| 207 | 1 | Coffee Maker | Kueng |  |  | total Loss |  |  |  |  |
| 208 | 2 | Cup | secret Garden |  |  | Total Loss |  |  |  |  |
| 209 | 1 | Glass Pitcher off sul |  |  |  | Total Loss |  |  |  |  |
| 210 | 1 | cake dish |  |  |  | Total Loss |  |  |  |  |
| 211 | 1 | vase |  |  |  | Total Loss |  |  |  |  |
| 212 | 1 | Picture | Denny |  |  | Total Loss |  |  |  |  |
| 213 | 1 | Artwork | R and R |  |  | Total Loss |  |  |  |  |
| 214 | 1 | Blk Angel Picture | Clarice |  |  | Total Loss |  |  |  |  |
| 215 | 1 | Silver Plate |  |  |  | Total Loss |  |  |  |  |
| 216 | 5 | Fine China |  |  |  | Total Loss |  |  |  |  |
| 217 | 1 | Vintage Picture |  |  |  | Total Loss |  |  |  |  |
| 218 | 1 | Crystal Picture |  |  |  | Total Loss |  |  |  |  |
| 219 | 1 | Light scented Lotion |  |  |  | Total Less |  |  |  |  |

Signature of Insured                                                     Date

HO2                                                                    Page 3 of 3

## Property Loss Schedule

Claim# 039740892

**Building / Structural:** (Attach any estimates or receipts)

| Item No | Description of Damage | Repair Cost |
|---|---|---|
| | | |
| | | |
| | | |

**Personal Property:** (Attach any estimates or receipts)

| Item No | Qty | Original Item Description | Brand/Type/Model | Age Yr | Age Mo | Condition more | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---|---|---|---|---|---|---|---|---|---|---|
| 220 | 1 | Candle warmer | Blue | | | Total Loss | | | | |
| 221 | 1 | Candle warmer | white | | | Total loss | | | | |
| 222 | 1 | Silk sheet | white Lambet | | | Total Loss | | | | |
| 223 | 1 | Candle Holder | Sunbeam | | | Total Loss | | | | |
| 224 | 1 | Vintage Tea | Kettle | | | Total Loss | | | | |
| 225 | 1 | Vintage Tea | Kettle | | | Total Loss | | | | |
| 226 | 1 | glass cup | | | | Total Loss | | | | |
| 227 | 1 | Vintage Tea Kettle | Flowers | | | Total Loss | | | | |
| 228 | 1 | Ice cream cup / gold | | | | Total Loss | | | | |
| 229 | 1 | Picture ( yellow) | | | | Total Loss | | | | |
| 230 | 1 | Butter dish | | | | Total Loss | | | | |
| 231 | 2 | Cake Covers | | | | Total Loss | | | | |
| 232 | 1 | Christmas lights large | bulbs | | | Total Loss | | | | |
| 233 | 3 | Bowls   Peir | | | | Total Loss | | | | |
| 234 | 1 | 8 small plates china | | | | Total Loss | | | | |
| 235 | 1 | Candle | | | | Total Loss | | | | |
| 236 | 4 | small bowls glass | | | | Total Loss | | | | |
| 237 | 4 | Shot glasses Peir | | | | Total Loss | | | | |

Signature of Insured                                                      Date

App.508

## Property Loss Schedule

App-509

**Building / Structural:** (Attach any estimates or receipts)

Claim# 039740892

| Item No | Description of Damage | Repair Cost |
|---|---|---|
| | | |
| | | |
| | | |

**Personal Property:** (Attach any estimates or receipts)

| Item No | Qty | Original Item Description | Brand/Type/Model | Age Yr | Age Mo | Condition | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---|---|---|---|---|---|---|---|---|---|---|
| 238 | 1 | gloss cup | | | | Total Loss | | | | |
| 239 | 1 | that orrector | Vintage | | | Total Loss | | | | |
| 240 | 1 | Portable Ele | brone | | | total Loss | | | | |
| 241 | 1 | mixer | wolfgang Puck | | | Total Loss | | | | |
| 242 | 1 | Crock pot | oyster | | | Total Loss | | | | |
| 243 | 2 | Choppas | oyster | | | Total Loss | | | | |
| 244 | 4 | Bowl stand | Bronze | | | Total Loss | | | | |
| 245 | | winter curtain | | | | Total Loss | | | | |
| 244 | 1 | Deep fry er | Pro fryer | | | Total Loss | | | | |
| 247 | 1 | Perfect Pencake | | | | Total Loss | | | | |
| 248 | 1 | filter | | | | Total Loss | | | | |
| 249 | 1 | wooden flowers | | | | Total Loss | | | | |
| 250 | 1 | grey Sweatsuit | | | | Total Loss | | | | |
| 251 | | Blouse/Shul | Cniknil | | | Total Loss | | | | |
| 252 | | Velvet Pents | | | | Total Loss | | | | |
| 253 | | Sweater | The Gonder-luin | | | Total Loss | | | | |
| 254 | 1 | Socket | PST | | | Total Loss | | | | |
| 255 | 1 | Silk Surt | Neiman marcus | | | Total loss | | | | |

_____
Signature of Insured

_____
Date

## Property Loss Schedule

App-510

**Building / Structural:**   (Attach any estimates or receipts)

Claim# 039740892

| Item No | Description of Damage | Repair Cost |
|---|---|---|
| | | |
| | | |
| | | |

**Personal Property:**   (Attach any estimates or receipts)

| Item No | Qty | Original Item Description | Brand/Type/Model | Age Yr | Age Mo | Condition | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---|---|---|---|---|---|---|---|---|---|---|
| 256 | | DC 7 hat | | | | total Loss | | | | |
| 257 | 1 | T-Shirt | Italy | | | Total Loss | | | | |
| 258 | 1 | T-shirt | Top Carolina Bay | | | Total Loss | | | | |
| 259 | 1 | Blazer | TAHARI | | | Total Loss | | | | |
| 260 | 1 | Set of pillowcases | | | | Total Loss | | | | |
| 261 | 4 | wigs (Human Hair) | Long | | | Total Loss | | | | |
| 262 | 1 | P. How case | | | | total Loss | | | | |
| 263 | 1 | Pillow case | | | | Total Loss | | | | |
| 264 | 1 | Pillow Case | | | | Total loss | | | | |
| 265 | 150 | DVDS | | | | Total Loss | | | | |
| 266 | 1 | Space heater sunbeam | | | | Total Loss | | | | |
| 267 | 1 | Space heater Sunbeam | | | | Total Loss | | | | |
| 268 | 1 | walkman CD Phillips | | | | Total Loss | | | | |
| 269 | 3 | Hair bundles Cino | | | | Total Loss | | | | |
| 270 | 6 | wigs Human hair. | | | | Total Loss | | | | |
| 271 | 4 | Neither coasters in case | | | | Total Loss | | | | |
| 272 | 1 | Perfume glow by JLo | | | | Total Loss | | | | |
| 273 | 1 | Samsung DVD player | | | | Total Loss | | | | |

Signature of Insured _____   Date _____

HO2

# Property Loss Schedule

**Building / Structural:**  (Attach any estimates or receipts)

Claim# 039740892

| Item No | Description of Damage | Repair Cost |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**Personal Property:**  (Attach any estimates or receipts)

| Item No. | Qty | Original Item | | Age | | Condition | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---|---|---|---|---|---|---|---|---|---|---|
|  |  | Description | Brand/Type/Model | Yr | Mo | moipe |  |  |  |  |
| 273 | 1 | b.a9 Pos |  |  |  | Total Lost |  |  |  |  |
| 274 | 1 | Radioshack |  |  |  | total Cost |  |  |  |  |
| 275 | 1 | DVD Playar |  |  |  | total Lost |  |  |  |  |
| 276 | 1 | Philips Rulig Phlpsp |  |  |  | total Lost |  |  |  |  |
| 289 | 1 | plan t One |  |  |  | total Lost |  |  |  |  |
| 298 | 1 | Charges |  |  |  | total Lost |  |  |  |  |
| 294 | 1 | CD player Memorek |  |  |  | tolall st |  |  |  |  |
| 250 | 1 | CD play philps |  |  |  | total Lost |  |  |  |  |
| 281 | 1 | Coffee Myler Krups |  |  |  | Kust |  |  |  |  |
| 282 | 1 | Mixer Hamilke Beach |  |  |  | total lost |  |  |  |  |
| 283 | 1 | Foot Massage Fut-1 |  |  |  | total lost |  |  |  |  |
| 284 | 10 | Wigs Caps Haxha |  |  |  | total Lost |  |  |  |  |
| 255 | 1 | Vase |  |  |  | total Losh |  |  |  |  |
| 286 | 1 | Water pictus |  |  |  | total lot |  |  |  |  |
| 287 | 2 | Salga Oumas |  |  |  | total Lost |  |  |  |  |
| 288 | 1 | Race Cooker |  |  |  | total Lost |  |  |  |  |
| 289 | 1 | Ridio Emerson |  |  |  | Kust |  |  |  |  |
| 290 | 1 | Speh- Ku Yo |  |  |  | total Lost |  |  |  |  |

_____  
Signature of Insured

_____  
Date

HO2

App.511

# Property Loss Schedule

**Building / Structural:** (Attach any estimates or receipts)

Claim# 039740892

| Item No | Description of Damage | Repair Cost |
|---|---|---|
| | | |
| | | |
| | | |

**Personal Property:** (Attach any estimates or receipts)

| Item No | Qty | Original Item Description | Brand/Type/Model | Age Yr | Age Mo | Condition | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---|---|---|---|---|---|---|---|---|---|---|
| 291 | 2 | Rollers | For Baking | | | total lost | | | | |
| 292 | 2 | Artho plots plants | | | | total Lost | | | | |
| 293 | 1. | Glass Cup | | | | total Lost | | | | |
| 294 | 1. | Bowl. | MAlaplclin | | | total Lost | | | | |
| 295 | 1 | picture AntoDianen Duong | | | | total Lost | | | | |
| 296 | 1 | glass Dish | | | | total Lost | | | | |
| 277 | 1 | lamp | | | | total Lost | | | | |
| 298 | 2 | Cray stels | | | | total Lost | | | | |
| 299 | 1 | indigase Burner | | | | total lost | | | | |
| 300 | 3. | Cray steel glap | | | | total Lost | | | | |
| 301 | 4 | Red urgn glass wul silver | | | | Rust | | | | |
| 302 | 1. | Short glass Champagne | | | | total Lost | | | | |
| 303 | 1. | hand bag | | | | total Lost | | | | |
| 304 | 1 | crockpot | | | | total Lost | | | | |
| 305 | 2 | The Chopper | | | | Rust | | | | |
| 306 | 1 | Ghina mottain co Plate | | | | total Lost | | | | |
| 307 | 1 | Wall paitin picturn | | | | total Lost | | | | |
| 308 | 1. | Water glass agancussian | | | | total Lost | | | | |

Signature of Insured _____    Date _____

HO2

App.512

# Property Loss Schedule

Claim# 039740892

**Building / Structural:**  (Attach any estimates or receipts)

| Item No | Description of Damage | Repair Cost |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**Personal Property:**  (Attach any estimates or receipts)

| Item No. | Qty | Original Item Description | Brand/Type/Model | Age Yr | Age Mo | Condition | Place of Purchase | Original-Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---|---|---|---|---|---|---|---|---|---|---|
| 309. | 1 | Deep Fryer | presto |  |  | total loss |  |  |  |  |
| 310 | 12. | Serving Spoons |  |  |  | total loss |  |  |  |  |
| 311. | 11 | knives |  |  |  | total loss |  |  |  |  |
| 312. | 2 | cell phone Cool pad |  |  |  | total loss |  |  |  |  |
| 313. | 1 | electric hot plate |  |  |  | rust |  |  |  |  |
| 314 | 1 | leather Coasters |  |  |  | total loss |  |  |  |  |
| 315 | 2. | cyrstel bottle |  |  |  | total loss |  |  |  |  |
| 316 | 1 | Antelope pillow |  |  |  | total loss |  |  |  |  |
| 317 | 1 | Shoe Blue |  |  |  | total loss |  |  |  |  |
| 318 | 1 | Brown Shoe |  |  |  | total loss |  |  |  |  |
| 319. | 1 | Bed Room shoe |  |  |  | total loss |  |  |  |  |
| 320 | 8 | Silver trays |  |  |  | total loss |  |  |  |  |
| 321. | 1 | Graffer |  |  |  | total loss |  |  |  |  |
| 322 | 1 | Godfather Painting |  |  |  | mold |  |  |  |  |
| 323 | 1. | DVD. Cyber Have |  |  |  | Total Loss |  |  |  |  |
| 324 | 1 | Photographs w/ themes |  |  |  | mold |  |  |  |  |
| 325 | 1 | Stone candel Holder |  |  |  | total loss |  |  |  |  |
| 326 | 1. | One Glass plad |  |  |  | total loss |  |  |  |  |

_____  Signature of Insured                    _____  Date

HO2                                                                 Page 3 of 3

# Property Loss Schedule

**Building / Structural:** (Attach any estimates or receipts)   Claim# 039740892

| Item No | Description of Damage | Repair Cost |
|---|---|---|
| | | |
| | | |
| | | |

**Personal Property:** (Attach any estimates or receipts)

| Item No | Qty | Original Item Description | Brand/Type/Model | Age Yr | Age Mo | Condition mol | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---|---|---|---|---|---|---|---|---|---|---|
| 327 | 2 | Strners | | | | Total Loss | | | | |
| 328 | 1 | Antlgwe plate | | | | total loss | | | | |
| 329 | 1 | glass pot top | | | | total loss | | | | |
| 330 | 1. | motorola Scanner | | | | total loss | | | | |
| 331 | 1 | Filtean Mic70.R1 | | | | total loss | | | | |
| 332 | 1 | x hylarden | | | | total loss | | | | |
| 333 | 1 | Cawl C | | | | total Loss | | | | |
| 334 | 1 | Nawapter NAVMAN | | | | total Loss | | | | |
| 335 | 1 | Camera spam mc | | | | total Loss | | | | |
| 336 | 1 | Camera argus | | | | total loss | | | | |
| 336 | 1 | Camera Somson | | | | total loss | | | | |
| 337 | 4. | cell phun Charges | | | | total loss | | | | |
| 338 | 5 | Car charge plate | | | | total loss | | | | |
| 339. | 2 | cell phon Charces | | | | total loss | | | | |
| 340 | 1 | Spodol of thnfed | | | | total loss | | | | |
| 341 | 1 | CD At Green | | | | total loss | | | | |
| 342 | 1 | CD B oB Marlly | | | | total loss | | | | |
| 343 | 1 | C. D Snoq Boo | | | | total loss | | | | |

Signature of Insured                                    Date

App.514

## Property Loss Schedule

**Building / Structural:**   (Attach any estimates or receipts)

Claim# 039740892

| Item No | Description of Damage | Repair Cost |
|---------|----------------------|-------------|
|  |  |  |
|  |  |  |
|  |  |  |

**Personal Property:**   (Attach any estimates or receipts)

| Item No | Qty | Original Item Description | Brand/Type/Model | Age Yr | Mo | Condition MOLD Rust | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---------|-----|---------------------------|------------------|--------|----|---------------------|-------------------|----------------------|-------------|-------------------------|
| 349 | 24 | C. D. | | | | total Lost | | | | |
| 350 | 5 | W/os | Free wave Less | | | total Lost | | | | |
| 351 | 1 | Cal Charel | | | | total Lost | | | | |
| 352 | 2 | Nail Polish | 4·A Colors | | | total Lost | | | | |
| 353 | 1 | Bag Angel | Beanie Babie | | | total Lost | | | | |
| 354 | 1 | Crystal glass | | | | total Lost | | | | |
| 355 | 10 | lil Sticks | Collections | | | total lost | | | | |
| 356 | 2 | Hand bags | | | | total Lost | | | | |
| 357 | 3 | DVD | DVD | | | total Lost | | | | |
| 358 | 1 | Dish Washing tray | | | | total loss | | | | |
| 359 | 1 | Black Lathir phone | Case | | | total Lost | | | | |
| 360 | 1 | glasses | Reading | | | total Lost | | | | |
| 361 | 1 | Panda | Airons | | | total Lost | | | | |
| 362 | 2 | sphards | Advent | | | total Lost | | | | |
| 363 | 1 | Book | Ru Emerions | | | total Lost | | | | |
| 364 | 1 | Book of | Invertion | | | total Lost | | | | |
| 365 | 1 | Ceramic | Wall hanging | | | total Lost | | | | |
| 366 | 1 | African | Leather Shoe | | | total Lost | | | | |

Signature of Insured                                    Date

HO2                                                    Page 3 of 3

App.515

# Property Loss Schedule

**Building / Structural:**  (Attach any estimates or receipts)

Claim# 039740892

| Item No | Description of Damage | Repair Cost |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**Personal Property:**  (Attach any estimates or receipts)

| Item No | Qty | Original Item Description | Brand/Type/Model | Age Yr | Age Mo | Condition | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---|---|---|---|---|---|---|---|---|---|---|
| 367 | 1 | Sueade | Sandals |  |  | total lost |  |  |  |  |
| 368 | 1 | Books | Cooper Ladey |  |  | total Lost |  |  |  |  |
| 369 | 1 | Books | vittorto |  |  | total Lost |  |  |  |  |
| 370 | 1 | Hills | Valu Hi F. |  |  | total lost |  |  |  |  |
| 371 | 1 | Black Ouths | Hill Bottini |  |  | total Lost |  |  |  |  |
| 372 | 1 | Pair sa bos | tso Sneakers |  |  | total Lost |  |  |  |  |
| 373 | 1 | slippin | Animal |  |  | total Lost |  |  |  |  |
| 374 | 1 | Antuns wasteil | maked |  |  | total Lost |  |  |  |  |
| 375 | 1 | Rame sell | Arcuno cutncher |  |  | total Lost |  |  |  |  |
| 376 | 1 | Tablet | Emarson |  |  | total Lost |  |  |  |  |
| 377 | 1 | one Black | Leather bag |  |  | total Lost |  |  |  |  |
| 378 | 1 | Leather | Leather bag |  |  | total Lost |  |  |  |  |
| 379 | 1 | yellow | Brown Couch Raalint Books wia Lost |  |  |  |  |  |  |  |
| 380 | 1 | Black | Phone |  |  | total Lost |  |  |  |  |
| 381 | 1 | Blew white | Phone |  |  | total Lost |  |  |  |  |
| 382 | 1 | pain ani | Trvo Phone |  |  | total Lost |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |

_____    _____
Signature of Insured                              Date

HO2

App.516

# Property Loss Schedule

Case 1:22-cv-01694-TJK   Document 34-8   Filed 09/17/24   Page 28 of 46

App.517

**Building / Structural:** (Attach any estimates or receipts)

Claim# 039740892

| Item No | Description of Damage | Repair Cost |
|---|---|---|
| | | |
| | | |
| | | |

**Personal Property:** (Attach any estimates or receipts)

| Item No | Qty | Original Item Description | Brand/Type/Model | Age Yr | Mo | Condition Rust MOLD | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---|---|---|---|---|---|---|---|---|---|---|
| 383 | 1 | websters 2 Dict | | | | total Lost | | | | |
| 384 | 1 | white big bible printing Light Edition | | | | | | | | |
| 385 | 1 | Black big Bible | | | | total Lost | | | | |
| 386 | 1 | Antique green Phone | | | | total Lost | | | | |
| 387 | 1 | Pioneer Lxb Photo Album | | | | total Lost | | | | |
| 388 | 1 | Pair Rolander Earings | | | | total Lost | | | | |
| 389 | 1 | Head Phone arivn | | | | total Lost | | | | |
| 390 | 4 | English for Hunting Table mat | | | | total Lost | | | | |
| 391 | 1 | sonny adopter blacn | | | | total Lost | | | | |
| 392 | 1 | car/charger black | | | | total Lost | | | | |
| 393 | 1 | Bible scarf | | | | total Last | | | | |
| 394 | 1 | Black APron silla puerls | | | | total Lost | | | | |
| 395 | 1 | nokia R88 Phono | | | | total Lost | | | | |
| 396 | 2 | plastic fobs white | | | | total Lost | | | | |
| 397 | 1 | Blue/white wipPer | | | | total Lost | | | | |
| 398 | 1 | Joseph Conrad | | | | total Lost | | | | |
| 399 | 6 | American Heritage books | | | | total Lost | | | | |
| 400 | 1 | The New King James Portable | | | | total Lost | | | | |

Signature of Insured _____   Date _____

HO2

# Property Loss Schedule

**Building / Structural:**  (Attach any estimates or receipts)

Claim# 039740892

| Item No | Description of Damage | Repair Cost |
|---|---|---|
| | | |
| | | |
| | | |

**Personal Property:**  (Attach any estimates or receipts)

| Item No | Qty | Original Item Description | Brand/Type/Model | Age Yr | Mo | Condition MOLD Rust | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---|---|---|---|---|---|---|---|---|---|---|
| 401 | 85 | NEW WERNER | Editions | | | total cost | | | | |
| 402 | 2 | Beverly Johnson | wigs | | | total lost | | | | |
| 403 | 95 | D.Vs | | | | total Lost | | | | |
| 404 | 30 | Taps | | | | total Lost | | | | |
| 405 | 66 | C. Js | | | | total Lost | | | | |
| 406 | 20 | Simulation | Cameos | | | total lost | | | | |
| 407 | 1 | screw driver | | | | total Lost | | | | |
| 408 | 1 | one black | hagles | | | totas Lost | | | | |
| 409 | 1 | Fundamentals | of Mathamatic | | | total Lost | | | | |
| 410 | 1 | one Leather | bag Park | | | total Lost | | | | |
| 411 | 5 | Five flaps | Desk | | | total Lost | | | | |
| 412 | 1 | one hand made basket | inda made | | | total Lost | | | | |
| 413 | 2 | Speakers | | | | total Lost | | | | |
| 414 | 1 | Stricker | | | | total Lost | | | | |
| 415 | 5 | Tele Phone | Cable | | | total lost | | | | |
| 416 | 1 | one Dell | Digital junk | Box black | | PS Bwr. | | | | |
| 417 | 2 | slippers | Leather Black | | | total Lost | | | | |

Signature of Insured _____   Date _____

App-518

# Property Loss Schedule

| **Building / Structural:** (Attach any estimates or receipts) | Claim# 039740892 |
|---|---|

| Item No | Description of Damage | Repair Cost |
|---|---|---|
| | | |
| | | |
| | | |

**Personal Property:** (Attach any estimates or receipts)

| Item No | Qty | Original Item Description | Brand/Type/Model | Age Yr | Mo | Condition | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---|---|---|---|---|---|---|---|---|---|---|
| 4-18 | 2 | Chair | | | | total lost | | | | |
| 4-19 | 3 | Clothes rak | | | | total lost | | | | |
| 4-20 | 3 | Subt - Case | non zour | | | total lost | | | | |
| 4-21 | 1 | Travle bag | Rathlicrus | | | total lost | | | | |
| 4-22 | 1 | Comfortr | | | | total lost | | | | |
| 4-23 | 10 | Shit | | | | total lost | | | | |
| 4-24 | 1 | Blankit | | | | total lost | | | | |
| 4-25 | 1 | Rohbir mask ext | | | | total lost | | | | |
| 4-26 | 1 | Sewing mackin g | | | | total lost | | | | |
| 4-27 | 2 | Lamps | | | | total lost | | | | |
| 4-28 | 1 | sport sauve tracwer | | | | total lost | | | | |
| 4-29 | 1 | coffie mackn | | | | total lost | | | | |
| 4-30 | 1 | candle holder | | | | total lost | | | | |
| 4-31 | 2 | candle cover | | | | total lost | | | | |
| 4-32 | 1 | saw sharp tooth | | | | total lost | | | | |
| 4-33 | 1 | cooker | | | | total lost | | | | |
| 4-34 | 10 | Glass ornament | | | | total lost | | | | |
| 4-35 | 1 | One porslin dollah | | | | total lost | | | | |

| Signature of Insured | Date |
|---|---|

HO2

App-519

# Property Loss Schedule

**Building / Structural:**   (Attach any estimates or receipts)

Claim# 039740892

| Item No | Description of Damage | Repair Cost |
|---------|----------------------|-------------|
|  |  |  |
|  |  |  |
|  |  |  |

**Personal Property:**   (Attach any estimates or receipts)

| Item No | Qty | Original Item Description | Brand/Type/Model | Age Yr | Mo | Condition *mold* | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---------|-----|---------------------------|------------------|--------|-----|-----------|-------------------|----------------------|-------------|-------------------------|
| 436 | 10 | Potholder | cloth | | | total lost | | | | |
| 437 | 4 | cooking spoons | | | | total lost | | | | |
| 438 | 3 | knife | | | | total lost | | | | |
| 439 | 2 | cooker handle | | | | total lost | | | | |
| 440 | 1 | nutritional scale | | | | total lost | | | | |
| 441 | 1 | silver tray | | | | total lost | | | | |
| 442 | 2 | pots large | | | | total lost | | | | |
| 443 | 2 | Beaker | | | | total lost | | | | |
| 444 | 1 | hotplate | | | | total lost | | | | |
| 445 | 1 | swever ice pot | | | | total lost | | | | |
| 446 | 1 | RBd robbot | | | | total lost | | | | |
| 447 | 1 | Glass tray | | | | total lost | | | | |
| 448 | 3 | spoons | | | | total lost | | | | |
| 449 | 1 | PINKIE LAURENCE P.R. | | | | total lost | | | | |
| 450 | 1 | marfour fashion-cono | | | | total lost | | | | |
| 451 | 1 | BEACH ESSENTIALS | | | | total lost | | | | |
| 452 | 1 | Light and lamp | | | | total lost | | | | |
| 453 | 1 | Linner cool. | | | | total lost | | | | |

_____      _____
Signature of Insured                               Date

HO2

App. 520

# Property Loss Schedule

**Building / Structural:**   (Attach any estimates or receipts)

| | Claim# 039740892 |
|---|---|

| Item No | Description of Damage | Repair Cost |
|---|---|---|
| | | |
| | | |
| | | |

**Personal Property:**   (Attach any estimates or receipts)

| Item No | Qty | Original Item Description | Brand/Type/Model | Age Yr | Mo | Condition | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---|---|---|---|---|---|---|---|---|---|---|
| 454 | 1 | bleach box | | | | total lost | | | | |
| 455 | 1 | naptron | holder | | | total lost | | | | |
| 456 | 1 | ice bochet | silver | | | multi million total cost | | | | |
| 457 | 1 | Ono TQY t52 . 2-170Vs | | | | total lost | | | | |
| 458 | 1 | chalwyn LYNX Lamp | | | | total lost | | | | |
| 459 | 1 | pioneer Radio | | | | total lost | | | | |
| 460 | 1 | parrot Redgreenyellow | | | | total lost | | | | |
| 461 | 1 | Teddy Bear Brown Easter pets total lost | | | | | | | | |
| 462 | 1 | Musical Box C Bean | | | | Total lost | | | | |
| 463 | 2 | Antique Angels | | | | Total lost | | | | |
| 464 | 1 | Art deco man Brown | | | | total lost | | | | |
| 465 | 1 | Louis sherry N.Y. | | | | total lost | | | | |
| 466 | 1 | SKY Timmer wall clock green | | | | total lost | | | | |
| 467 | 1 | Dress short | | | | total lost | | | | |
| 468 | 1 | Leisure Lace Taupe Boots | | | | total lost | | | | |
| 469 | 2 | Slippers Brown white leather | | | | total lost | | | | |
| 470 | 1 | Brown leather Hand bag | | | | total lost | | | | |
| 471 | 1 | Black leather purse | | | | total lost | | | | |

_____
Signature of Insured

_____
Date

App.-521

## Property Loss Schedule

**Building / Structural:** (Attach any estimates or receipts)

Claim# 039740892

| Item No | Description of Damage | Repair Cost |
|---|---|---|
| | | |
| | | |
| | | |

**Personal Property:** (Attach any estimates or receipts)

| Item No | Qty | Original Item Description | Brand/Type/Model | Age Yr | Mo | Condition MOLD | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---|---|---|---|---|---|---|---|---|---|---|
| 472 | 1 | Leather wallet black | | | | Total loss | | | | |
| 473 | 1 | Clamp Black and Red | | | | Total loss | | | | |
| 474 | 1 | Weaving basket Brown | | | | Total loss | | | | |
| 475 | 1 | Crystal glass | | | | Total loss | | | | |
| 476 | 1 | Historical colonia Scence | Engraving Antique | | | Total loss | | | | |
| 477 | 1 | Antique clock Brown/gold | | | | Total loss | | | | |
| 478 | 1 | musical Clown Bed/white | | | | total loss | | | | |
| 479 | 1 | Medium crystal Bowl | | | | Total loss | | | | |
| 480 | 4 | Empire Collection Porcelain | | | | plates Total loss | | | | |
| 481 | 2 | Crystal Bowls | | | | Total loss | | | | |
| 482 | 2 | Crystal glasses | | | | Total loss | | | | |
| 483 | 1 | Guess impression | | | | Total loss | | | | |
| 484 | 2 | Air conditioner Energy Star | LG | | | Total loss | | | | |
| 485 | 1 | Indian game green/orange black | | | | Total loss | | | | |
| 486 | 1 | Gretter Bronze Shredder | | | | Total loss | | | | |
| 487 | 2 | Antique Deco Hen/Rooster | | | | Total loss | | | | |
| 488 | 1 | RCR vedio tape Recorder | | | | Total loss | | | | |
| 489 | 1 | GE space Maker C D player | | | | Total loss | | | | |

Signature of Insured

Date

HO2

App.522

## Property Loss Schedule

**Building / Structural:** (Attach any estimates or receipts)

Claim# 039740892

| Item No | Description of Damage | Repair Cost |
|---|---|---|
| | | |
| | | |
| | | |

**Personal Property:** (Attach any estimates or receipts)

| Item No | Qty | Original Item Description | Brand/Type/Model | Age Yr | Mo | Condition | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---|---|---|---|---|---|---|---|---|---|---|
| 490 | 1 | Set 1 RCA Tea Set Gray | | | | mold Rust | Total loss | | | |
| 491 | 1 | Pocket Juice Charger pink 5.01 | | | | Total loss | | | | |
| 492 | 1 | Blue llaero Bowl Super Bowl | | | | Total loss | | | | |
| 493 | 1 | Silver Ice cream made in Japan | | | | Total loss | | | | |
| 494 | 1 | Crystal Bowl | | | | Total loss | | | | |
| 495 | 1 | Fabrique Basket Gray | | | | Total loss | | | | |
| 496 | 1 | Toshiba DVD player | | | | Total loss | | | | |
| 497 | 1 | Telephone maintain Bell | | | | Total loss | | | | |
| 498 | 1 | Control Arm Be37 HL Benz | | | | Total loss | | | | |
| 499 | 2 | Tie Rod #B4452 Benz | | | | Total loss | | | | |
| 500 | 1 | Antique Shade with Flowers | | | | Total loss | | | | |
| 501 | 1 | Candle Novelty End cap | | | | Total loss | | | | |
| 502 | 1 | Figurine Blue with stones | | | | Total loss | | | | |
| 503 | 2 | giraffes Decorative coat hanger | | | | Total loss | | | | |
| 504 | 1 | Hand game Red, green, orange blue | | | | Total loss | | | | |
| 504 | 1 | Fellowes | | | | Total loss | | | | |
| 505 | 1 | Folding Chair | | | | Total loss | | | | |
| 506 | 1 | Blender with glass Black | | | | Total loss | | | | |

Signature of Insured _____     Date _____

HO2

Page 3 of 3

App.523

## Property Loss Schedule

Claim# 039740892

**Building / Structural:** (Attach any estimates or receipts)

| Item No | Description of Damage | Repair Cost |
|---------|----------------------|-------------|
|         |                      |             |
|         |                      |             |
|         |                      |             |

**Personal Property:** (Attach any estimates or receipts)

| Item No | Qty | Original Item Description Brand/Type/Model | Age Yr | Mo | Condition MOLD Rust | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---------|-----|---------|------|------|-----------|-----|------|------|------|
| 507 | 1 | Panasonic car stereo Two speakers | | | Total loss | | | | |
| 508 | 1 | Ruleta Juego 9 pc conjunto | | | Total loss | | | | |
| 509 | 1 | Frying pan Black | | | Total loss | | | | |
| 510 | 1 | IKea Kettle 17723 Sweden | | | Total loss | | | | |
| 511 | 1 | pressure cooker with Top | | | Total loss | | | | |
| 512 | 1 | Table TOP unlimited Frying pan | | | Total loss | | | | |
| 513 | 1 | mirro cup cake maker silver | | | Total loss | | | | |
| 514 | 1 | Grater silver | | | Total loss | | | | |
| 515 | 1 | Extra large Muffin pan | | | Total loss | | | | |
| 516 | 2 | shower Head with all accesories | | | Total loss | | | | |
| 517 | 1 | Corningware | | | Total loss | | | | |
| 518 | 1 | Frying pan Large | | | Total loss | | | | |
| 519 | 1 | Lab Top holding bag black | | | Total loss | | | | |
| 520 | 1 | Back pacic Jan sport | | | Total loss | | | | |
| 521 | 1 | cush pinic | | | Total loss | | | | |
| 522 | 1 | Aroma cooker Large | | | Total loss | | | | |
| 523 | 1 | Lean mean fat Grilling Machine | | | Total loss | | | | |
| 524 | 1 | deep cooking pot | | | Total loss | | | | |

_____        _____
Signature of Insured                                              Date

App.524

# Property Loss Schedule

**Building / Structural:** (Attach any estimates or receipts)

Claim# 039740892

| Item No | Description of Damage | Repair Cost |
|---------|----------------------|-------------|
|  |  |  |
|  |  |  |
|  |  |  |

**Personal Property:** (Attach any estimates or receipts)

| Item No | Qty | Original Item Description | Brand/Type/Model | Age Yr | Mo | Condition MOLD Rust | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---------|-----|---------------------------|------------------|--------|-----|-----------|-------------------|----------------------|-------------|-------------------------|
| 525 | 1 | Dish Large Bowl |  |  |  | Total loss |  |  |  |  |
| 526 | 1 | Crystal Vase Big |  |  |  | Total loss |  |  |  |  |
| 527 | 1 | Empire collection plate |  |  |  | Total loss |  |  |  |  |
| 528 | 1 | Cover For Food |  |  |  | total loss |  |  |  |  |
| 529 | 1 | Leviton Lamp base with shade |  |  |  | Total loss |  |  |  |  |
| 530 | 1 | Leviton Brass lamp Base |  |  |  | total loss |  |  |  |  |
| 531 | 2 | Blue washing Bowls |  |  |  | total loss |  |  |  |  |
| 532 | 1 | Silver tray |  |  |  | total loss |  |  |  |  |
| 533 | 1 | Compact Air Purifier |  |  |  | total loss |  |  |  |  |
| 534 | 3 | Books Antique |  |  |  | total loss |  |  |  |  |
| 535 | 1 | Bird Cage |  |  |  | total loss |  |  |  |  |
| 536 | 2 | Drinking glasses |  |  |  | total loss |  |  |  |  |
| 537 | 1 | Brown Leather wallet |  |  |  | total loss |  |  |  |  |
| 538 | 1 | Egg beater |  |  |  | total loss |  |  |  |  |
| 539 | 1 | wine glass |  |  |  | total loss |  |  |  |  |
| 540 | 14 | hair wigs Beverly Johnson |  |  |  | total loss |  |  |  |  |
| 541 | 1 | pair white Ryka |  |  |  | total loss |  |  |  |  |
| 542 | 1 | pair prada black/silver |  |  |  | total loss |  |  |  |  |

_____
Signature of Insured

_____
Date

App.525

## Property Loss Schedule

**Building / Structural:**  (Attach any estimates or receipts)

Claim# 039740892

| Item No | Description of Damage | Repair Cost |
|---|---|---|
| | | |
| | | |
| | | |

**Personal Property:**  (Attach any estimates or receipts)

| Item No | Qty | Original Item Description | Brand/Type/Model | Age Yr | Mo | Condition | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---|---|---|---|---|---|---|---|---|---|---|
| 543 | 3 | n.n. white linen | | | spar | Total lost | | | | |
| 544 | 2 | two ladir bags | | | | total lost | | | | |
| 545 | 1 | one silver loaty | | | | total lost | | | | |
| 546 | 1 | teusv shous ilP | | | complu | total lost | | | | |
| 547 | 1 | onu shob pail black | | | | total lost | | | | |
| 548 | 1 | one black firblerip | | | | total Lost | | | | |
| 549 | 1 | orn churnch black | | | ladir bag | Total lost | | | | |
| 550 | 1 | ladar GEALenus | | | | Totu lost | | | | |
| 551 | 2 | art work ponting | | | | Total lost | | | | |
| 552 | 1 | ice blue Eau da Parfum | | | | Total | | | | |
| 553 | 6 | onv art ponting box | | | | Total lost | | | | |
| 554 | 1 | Picturd frame ponting | | | | total lost | | | | |
| 555 | 1 | one big klass youle | | | | total lost | | | | |
| 556 | 3 | 1998 marakusns ore sadl | | | | total lost | | | | |
| 557 | 1 | onu shrult bango | | | | toky loslf | | | | |
| 558 | 94 | D, VD | | | | total lost | | | | |
| 559 | 34 | C, Ds | | | | total lost | | | | |
| | | | | | | | | | | |

Signature of Insured _____                Date _____

App.526

## Property Loss Schedule

**Building / Structural:**   (Attach any estimates or receipts)

Claim# 039740892

| Item No | Description of Damage | Repair Cost |
|---|---|---|
| | | |
| | | |
| | | |

**Personal Property:**   (Attach any estimates or receipts)

| Item No | Qty | Original Item Description | Brand/Type/Model | Age Yr | Mo | Condition | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---|---|---|---|---|---|---|---|---|---|---|
| 560 | 1 | one blue window cotton | | | | total lost | | | | |
| 561 | 1 | one brown leather bag | | | | total lost | | | | |
| 562 | 1 | Mda Cafo | | | | total lost | | | | |
| 563 | 1 | one silver michloss | | | | total lost | | | | |
| 564 | 1 | DUSTING POWDER | | | | total lost | | | | |
| 565 | 3 | # ice tray mindle pot | | | | | | | | |
| 566 | 1 | Laron pots | | | | total lost | | | | |
| 567 | 1 | VICTORIas SECRET | bag | | | total lost | | | | |
| 528 | 1 | one orang bag | | | | total lost | | | | |
| 569 | 1 | FABULOUS FABRIC | scrarrocolls | | | total lost | | | | |
| 570 | 2 | Two pature antic frame | | | | total lost | | | | |
| 571 | 2 | RALPH LAUREN blue and pink | | | | total lost | | | | |
| 572 | 1 | Rad Nick Loss | | | | total lost | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

Signature of Insured                                        Date

HO2                                                                                        Page 3 of 3

App.527

# Property Loss Schedule

**Building / Structural:**   (Attach any estimates or receipts)

Claim# 039740892

| Item No | Description of Damage | Repair Cost |
|---|---|---|
| | | |
| | | |
| | | |

**Personal Property:**   (Attach any estimates or receipts)

| Item No | Qty | Original Item Description | Brand/Type/Model | Age Yr | Mo | Condition | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---|---|---|---|---|---|---|---|---|---|---|
| 573 | 30 | DVDs | | | | | | | | |
| 574 | 20 | CDs | | | | | | | | |
| 575 | 10 | Books | | | | | | | | |
| 576 | 1 | Car Connecting Pack | | | | | | | | |
| 577 | 1 | black Ladеr American toonister bag | | | | | Total Loss | | | |
| 578 | 66 | DVD | | | | | Total Loss | | | |
| 579 | | A Guide To writing book | | | | | Total Loss | | | |
| 580 | 1 | Panasonic Rx-TCA9/ head mike | | | | | Total Loss | | | |
| 581 | | Devrsion of minority and women | | | | | Total Loss | | | |
| 582 | 1 | Car Phone | | | | | Total Loss | | | |
| 583 | 1 | Very sexy for her | | | | | Total Cost | | | |
| 584 | 1 | Yankes oil | | | | | Total Cost | | | |
| 585 | 4 | Nail Glue | | | | | total Cost | | | |
| 586 | 3 | necklinsss, African Chains | | | | | total lost | | | |
| 587 | 2 | hair Clipes | | | | | total Cost | | | |
| 588 | 1 | Ladеr black and brown wallet | | | | | | | | |
| 589 | 1 | one beade box Cost of Chain Grown total Lost shields | | | | | | | | |
| 590 | 1 | one Glass Jar | | | | | total Lost | | | |
| 591 | 1 | dream anges | | | | | total Lost | | | |

Signature of Insured

Date

App.528

# Property Loss Schedule

**Building / Structural:** (Attach any estimates or receipts)

| Item No | Description of Damage | Repair Cost |
|---|---|---|
| | | |
| | | |
| | | |

**Personal Property:** (Attach any estimates or receipts)

| Item No | Qty | Original Item | | Age | | Condition | Place of Purchase | Original Cost (Each) | Repair Cost | Replacement Cost (Each) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Description | Brand/Type/Model | Yr | Mo | molD | | | | |
| 592 | 1 | water culor painting John Lennon Damage | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

_____          _____
Signature of Insured                              Date

Case 1:22-cv-01694-TJK   Document 34-8   Filed 09/17/24   Page 40 of 46



**1-800-PACKOUTS**
The National Packouts Company

# INVOICE

**TAX ID# 81-4267363**

**INVOICE DATE :** 1/17/2020

**Bill To:**
PHANTA ANDREWS
C/O CHARLES C. IWEANOGE
707 49TH PLACE NE
WASHINGTON DC 20019
(443)635-0084 | PHANTA ANDREWS
(202)255-0799 OR cci@iweanogesfirm.com | CHARLES C. IWEANOGE

**INVOICE #** PKS182857

**CLAIM #** 039740892

**INSURED'S NAME:** PHANTA ANDREWS

| DESCRIPTION | AMOUNT |
|---|---|
| **STORAGE ACCESS - 01/14/2020** | |
| *(1) SUPERVISOR - STEPHEN PHELP | 9:00A-5:00P | (7) HOURS @ $53.95 PER HOUR* | $ 377.65 |
| *(1) MOVER - PHILLIP KALAKO | 9:00A-5:00P | (7) HOURS @ $37.50 PER HOUR* | $ 262.50 |
| LOCATION/PULL (3) VAULTS @ $35.00 EACH | #T0016, #569, #GENERIC, #441 @ ROW 3 | $ 105.00 |
| **STORAGE ACCESS - 01/15/2020** | |
| *(1) SUPERVISOR - STEPHEN PHELP | 10:00A-2:00P | (4) HOURS @ $53.95 PER HOUR* | $ 215.80 |
| *(1) SUPERVISOR - KEITH OLIVER | 2:00AP-4:30P | (2.5) HOURS @ $53.95 PER HOUR* | $ 118.69 |
| *(1) MOVER - ABDUL CONTECH | 10:00A-2:00P | (4) HOURS @ $37.50 PER HOUR* | $ 150.00 |
| | |
| **TOTAL** | **$ 1,229.64** |

If you have any questions concerning this invoice, contact:
Akia Turner @ 703-461-6407

**\* PLEASE REFERENCE THE <u>INVOICE NUMBER(S)</u> WITH YOUR PAYMENT ! \***

<u>**PLEASE MAKE CHECKS PAYABLE TO:**</u>
1800 PACKOUTS OF DC
*ATTN: AKIA TURNER*
950 South Pickett Street
*Alexandria, Virginia  22304*

**THANK YOU FOR YOUR BUSINESS!**

 **1800 Packouts of DC**

Remit to:
Professional Packouts, LLC
950 S Pickett Street Alexandria VA 22304
Tax ID# 81-4267363
Office Number: (703)461-6407

| | | | |
|---|---|---|---|
| Insured: | PHANTA ANDREWS - STORAGE ACCESS 01/14-15/2020 | Home: | (443) 635-0084 |
| Property: | 707 49TH PLACE NE WASHINGTON, DC 20019 | | |

| | | | |
|---|---|---|---|
| Estimator: | Thomas "Tommy" Stinger | Business: | (703) 868-5462 |
| Company: | PODC | | |

**Claim Number:** 039740892        **Policy Number:**                **Type of Loss:** <NONE>

| | | |
|---|---|---|
| Date of Loss: | Date Received: | 12/3/2019 |
| Date Inspected: | Date Entered: | 12/4/2019 9:22 AM |

Price List:  DCWA8X_DEC19
Restoration/Service/Remodel
Estimate:  2019-12-04-0922

Phanta Andrews has requested additional access to her storage lot. Ms. Andrews has requested (2) warehouse men to assist her in accessing her storage lot on a Saturday. While we cannot guarantee a Saturday access as we are a Monday thru Friday operation, I will still inquire with our Dispatch Team if this is possible. If not, we will have to schedule access during our normal business hours. 1800 Packouts of LLC, will not be responsible for any textiles or electronics services (cleaning, restoration, hook up, etc) - these items are to be supplied by others.

 **1800 Packouts of DC**

Remit to:
Professional Packouts, LLC
950 S Pickett Street Alexandria VA 22304
Tax ID# 81-4267363
Office Number: (703)461-6407

**2019-12-04-0922**

**01/14/2020 STORAGE ACCESS**

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 1. Contents Evaluation and/or Supervisor/Admin - per hour | 7.00 HR @ | 53.95 = | 377.65 |
| STEVEN PHELPS   9:00A - 5:00P   (7) HOURS  **SUPERVISOR | | | |
| 2. Inventory, Packing, Boxing, and Moving charge - per hour | 7.00 HR @ | 37.50 = | 262.50 |
| PHILLIP KALAKO   9:00A - 5:00P   (7) HOURS | | | |
| 3. Locate/pull each storage vault for client access | 3.00 EA @ | 35.00 = | 105.00 |
| VAULT: #T0016, #569, #GENERIC , #441   LOCATION @ ROW 3 | | | |

**01/15/2020 STORAGE ACCESS**

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 4. Contents Evaluation and/or Supervisor/Admin - per hour | 6.20 HR @ | 53.95 = | 334.49 |
| STEVEN PHELPS   10:00A - 2:00P   (4) HOURS  **SUPERVISOR | | | |
| KEITH OLIVER   2:00P - 4:30P   (2.5) HOURS  **SUPERVISOR | | | |
| 5. Inventory, Packing, Boxing, and Moving charge - per hour | 4.00 HR @ | 37.50 = | 150.00 |
| ABDUL CONTECH   10:00A - 2:00P   (4) HOURS | | | |

**App.532**

 **1800 Packouts of DC**

Remit to:
Professional Packouts, LLC
950 S Pickett Street Alexandria VA 22304
Tax ID# 81-4267363
Office Number: (703)461-6407

## Summary for Contents

| | |
|---|---|
| Line Item Total | 1,229.64 |
| **Replacement Cost Value** | **$1,229.64** |
| **Net Claim** | **$1,229.64** |

Thomas "Tommy" Stinger

**App.533**



# VICTORY COMMERCIAL TIME SHEET

**BRANCH:** 2506-000

**CUSTOMER:** PHANTA ANDREWS

**DATE:** 01/15/2020

**DAY:** WEDNESDAY

**REG #:** PKS182857

**PAGE** 1 **OF** 1

| FUNCTION S-D-H-P | CHPTR CODE | LAST NAME, FIRST NAME | SOC.SEC NUMBER | SHIRT Y-N | LEAVE VICTORY | ARRIVE JOB SITE | LESS LUNCH | LEAVE JOB SITE | ARRIVE VICTORY | TOTAL HOURS |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | Coidech Abdul | | | | 10:00 | | 2:00 | | 4 |
| 2 | | Philip Stevens | | | | 10:22 | | 2:0 | | 4 |
| 3 | | Kevin Olivi | | | | 2:00 | | 4:30 | | 2.5 |
| 4 | | | | | | | | | | |
| 5 | | | | | | | | | | |
| 6 | | | | | | | | | | |
| 7 | | | | | | | | | | |
| 8 | | | | | | | | | | |
| 9 | | | | | | | | | | |
| 10 | | | | | | | | | | |
| 11 | | | | | | | | | | |
| 12 | | | | | | | | | | |
| 13 | | | | | | | | | | |
| 14 | | | | | | | | | | |
| 15 | | | | | | | | | | |
| 16 | | | | | | | | | | |
| 17 | | | | | | | | | | |
| 18 | | | | | | | | | | |
| 19 | | | | | | | | | | |
| 20 | | | | | | | | | | |

**DISTRIBUTION**    WHITE - PAYROLL    YELLOW - MOVE FILE:    PINK - CUSTOMER



*Plaintiff's Exhibit* **7**



**CONTACT US**

**By Phone**
Direct:    (972) 808-4351
Toll Free: (800) 225-2467
Ext.      26752

**By E-mail**
heather.feagin@
libertymutual.com

**Liberty Insurance Corporation**
P.O. Box 515097
Los Angeles, CA 90051-5097

**Visit us online**
LibertyMutual.com

**About Claims Process**
Libertymutual.com/claims-
insurance/about-claims-process

**Mobile**
Scan QR Code with your
iPhone or Android
smartphone to download
the claims app or download
a free reader app at
www.i-nigma.mobi



March 05, 2020

Phanta U. Daramy-Andrews
707 49th Pl NE
Washington DC 20019-4805

| | |
|---|---|
| Insured: | Phanta U. Daramy-Andrews |
| Claimant: | Phanta U. Daramy-Andrews |
| Claim Number: | HD000-039740892-01 |
| Date of Loss: | 04/21/2019 |
| Policy Number: | H37-238-660209-40 |

Dear Phanta Daramy-Andrews,

I wanted to reach out and follow up regarding your recent request for the policy to send a vendor out to conduct an inventory and inspection of the insured's personal property for the claim. Per the conditions of the policy, we are unable to do so as it is the insured's duty after loss to provide the details needed for our investigation. As the insured's conditions and duties after loss have not been met, and the required documentation and details have not been provided, we are unable to proceed with the claim process at this time.

We understand the insured's current hardships and we will wait until she is able to complete the required Proof of Loss for the 04/21/2019 water damage and provide a signed copy to us as discussed previously. We will then be able to complete the meeting that was started on 10/18/2019 and make a final coverage decision based on what is submitted and reviewed. I have included the applicable policy language regarding the insured's duties after loss and documentation that must be provided to us.

SECTION I – CONDITIONS

2. Your Duties After Loss. In case of a loss to covered property, you must see that the following are done:

e. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

f. As often as we reasonably require:

(2) Provide us with records and documents we request and permit us to make copies; and



(3) Submit to examination under oath, while not in the presence of any other "insured," and sign the same;

g. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1) The time and cause of loss;

(2) The interest of the "insured" and all others in the property involved and all liens on the property;

(3) Other insurance which may cover the loss;

(4) Changes in title or occupancy of the property during the term of the policy;

(5) Specifications of damaged buildings and detailed repair estimates;

(6) The inventory of damaged personal property described in 2.e. above;

(7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

(8) Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

At this time, our investigation is suspended. We will be happy to reopen the claim should the insured comply with the conditions of the policy and complete the signed proof of loss.

Sincerely,
Heather Feagin
Claims Department

*Plaintiff's Exhibit* **8**

| **Subject:** | RE: [WARNING : MESSAGE ENCRYPTED]RE: RE: Re: Phanta U. Daramy-Andrews(HD332-039740892-0003) -- Completed proof of loss & item inventory |
|---|---|
| **Date:** | Monday, February 3, 2020 at 5:10:32 PM Eastern Standard Time |
| **From:** | Guida, Michelle <MICHELLE.GUIDA@LibertyMutual.com> |
| **To:** | cci iweanogesfirm.com <cci@iweanogesfirm.com> |
| **Attachments:** | image003.png, image004.jpg, image005.png |

Good Afternoon Charles,

Thank you for returning my phone call regarding Ms. Daramy-Andrews' claim. It appears as though you and I have been playing phone tag.

I have reviewed the proof of loss and note that it is incomplete in the following areas:

-there is no signature

-there is no information regarding the age, place of purchase, original cost, cost of repair or replacement cost value for the items listed.

-there are no photos to prove each item is considered a total loss as Ms. Daramy-Andrews has claimed

-Ms. Daramy-Andrews has not separated out the contents she is claiming damaged from the 04/21/2019 date of loss, versus the 2 prior losses in which some of her personal property suffered water damage.

Please be advised that Liberty Mutual will allow until **Tuesday February 18th** for Ms. Daramy-Andrews to complete the Proof of Loss for the contents that were damaged as a result of the claim she reported on 04/21/2019. There will be no additional extensions beyond 02/18/20.

Thank you.

Sincerely,

**Michelle Guida**
SIU Special Investigator
Special Investigations Unit
Liberty Mutual Insurance | Safeco Insurance
Liberty Mutual, GRM-US Claims
P.O. Box 515097
Los Angeles, CA  90051-5097
Direct Dial: 603-373-4364
Fax: 888-268-8840

Track your claim, anytime anywhere with eService at **www.libertymutual.com**
To learn more about Liberty Mutual's privacy policy, go to **www.libertymutual.com/privacy**



If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you have received this email in error, please notify me via return email and via telephone at 603-373-4364 and permanently delete the original and any copy of any email, attachment, and any printout thereof. Thank you.

**App.538**

**From:** cci@iweanogesfirm.com <cci@iweanogesfirm.com>
**Sent:** Monday, January 27, 2020 3:50 PM
**To:** Guida, Michelle <MICHELLE.GUIDA@LibertyMutual.com>; Souther, Richard
<RICHARD.SOUTHER@LibertyMutual.com>
**Subject:** {EXTERNAL} [WARNING : MESSAGE ENCRYPTED]RE: RE: Re: Phanta U. Daramy-Andrews
(HD332-039740892-0003) -- Completed proof of loss & item inventory

Good Afternoon:

Please find attached: (1) letter, (2) Proof of Loss, (3) Personal Property schedule and (4) 1-
800-Packouts invoice.
Thanks

**Charles C Iweanoge**
Attorney At Law



*This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of
the addressees named above. If you are not the intended recipient of this e-mail, or an authorized
employee or agent responsible for delivering it to the intended recipient, you are hereby notified
that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-
mail in error, please notify us by reply e-mail. Thank you.

-------- Original Message --------
Subject: RE: RE: Re: Phanta U. Daramy-Andrews (HD332-039740892-0003) --
Completed proof of loss & item inventory
From: "Guida, Michelle" <MICHELLE.GUIDA@LibertyMutual.com>
Date: Mon, December 23, 2019 6:54 am
To: "cci@iweanogesfirm.com" <cci@iweanogesfirm.com>, "Souther, Richard"
<RICHARD.SOUTHER@LibertyMutual.com>

Good Morning,

At this time, we will allow for a final extension until 1/27/20.  That
will allow your client 30 days from the time of her visit on 12/27/19
to properly document her inventory and submit it to Liberty Mutual.

Thank you.

Sincerely,

**Michelle Guida**
SIU Special Investigator
Special Investigations Unit
Liberty Mutual/Safeco Insurance Companies
Global Retail Markets
P.O. Box 515097
Los Angeles, CA 90051-5097
Direct Dial: 603-373-4364

 

Notice: The information contained in this message is confidential. If you are not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, do not distribute or copy this communication. If you have received this communication in error, please notify us immediately by replying to the sender. Thank you for your cooperation.

*Before printing this e-mail, please consider whether printing is necessary. Think Green!*

**From:** cci@iweanogesfirm.com <cci@iweanogesfirm.com>
**Sent:** Friday, December 20, 2019 3:47 PM
**To:** Souther, Richard <RICHARD.SOUTHER@LibertyMutual.com>;
Guida, Michelle <MICHELLE.GUIDA@LibertyMutual.com>
**Subject:** {EXTERNAL} RE: Re: Phanta U. Daramy-Andrews (HD332-039740892-0003) -- Completed proof of loss & item inventory

Good Afternoon:

My client has not been able to return to the storage to complete the inventory of his personal property. Due to our client's job schedule, she has been unable to complete the inventory. The last time I asked for an extension, we were under the mistaken believe that my client would be at the storage on December 14, 2019 but the storage could not accommodate her on that date. At this time, the earliest date we have is the December 27, 2019.

At the time, the inventory cannot be submitted before the middle of January and ask that it be extended to allow her to properly document her inventory.
Thanks

**Charles C Iweanoge**
Attorney At Law



*This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressees named above. If you are not the intended recipient of this e-mail, or an authorized employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify us by reply e-mail. Thank you.

-------- Original Message --------
Subject: RE: Re: Phanta U. Daramy-Andrews (HD332-039740892-0003) -- Completed proof of loss & item inventory
From: "Souther, Richard" <RICHARD.SOUTHER@LibertyMutual.com>
Date: Mon, December 09, 2019 7:17 pm
To: "Guida, Michelle" <MICHELLE.GUIDA@LibertyMutual.com>, "Charles C. Iweanoge " <cci@iweanogesfirm.com>

Charles-

We also need the signed EUO transcript, in addition to the inventory.

-Richard Souther

```
Richard W. Souther, Esquire
Law Offices of Christopher R. Costabile
Fairfax Liberty Mutual Group Staff Counsel
10555 Main Street, Suite 400
Fairfax, VA 22030

richard.souther@libertymutual.com
Direct Dial: 703-251-2388
Phone: 703-273-2777
Fax: 703-691-4288
```

**Please be advised that there is a risk a third party can gain access when sending or receiving electronic communications using a computer or other device, or e-mail account.**

**From:** Guida, Michelle
**Sent:** Friday, December 06, 2019 8:41 AM
**To:** Charles C. Iweanoge <cci@iweanogesfirm.com>; Souther, Richard <RICHARD.SOUTHER@LibertyMutual.com>

**Subject:** RE: {EXTERNAL} Re: Phanta U. Daramy-Andrews (HD332-039740892-0003) -- Completed proof of loss & item inventory

Ok, no problem. I will note the file that the extension has been granted until 12/22.

Thank you for reaching out.

Sincerely,

**Michelle Guida**
SIU Special Investigator
Special Investigations Unit
Liberty Mutual/Safeco Insurance Companies
Global Retail Markets
P.O. Box 515097
Los Angeles, CA 90051-5097
Direct Dial: 603-373-4364

 

Notice: The information contained in this message is confidential. If you are not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, do not distribute or copy this communication. If you have received this communication in error, please notify us immediately by replying to the sender. Thank you for your cooperation.

*Before printing this e-mail, please consider whether printing is necessary. Think Green!*

**From:** Charles C. Iweanoge <cci@iweanogesfirm.com>
**Sent:** Friday, December 6, 2019 8:38 AM
**To:** Souther, Richard
<RICHARD.SOUTHER@LibertyMutual.com>
**Cc:** Guida, Michelle <MICHELLE.GUIDA@LibertyMutual.com>
**Subject:** {EXTERNAL} Re: Phanta U. Daramy-Andrews (HD332-039740892-0003) -- Completed proof of loss & item inventory

Good Morning:
My client is working to get the inventory completed but unlikely to be completed by December 12, 2019. For that reason, am requested an extension to December 22, 2019. Thanks

> Charles C. Iweanoge
> THE IWEANOGES FIRM, PC
> 1026 Monroe Street, NE
> Washington, D.C. 20017

Cell: 202-255-0799
Office: (202) 347-7026
Fax: (202) 347-7108
Email: cci@iweanogesfirm.com
*This e-mail contains PRIVILEGED and
CONFIDENTIAL information intended only for the
use of the addressees named above. If you are not
the intended recipient of this e-mail, or an
authorized employee or agent responsible for
delivering it to the intended recipient, you are
hereby notified that any dissemination or copying of
this e-mail is strictly prohibited. If you have received
this e-mail in error, please notify us by reply e-mail.
Thank you.
Sent from my iPhone


On Nov 12, 2019, at 12:03 PM, Souther, Richard
<RICHARD.SOUTHER@libertymutual.com> wrote:


Charles-

Attached please find the Proof of Loss form that
Liberty Mutual needs completed in this matter.  As
you can see, page 3 is a Property Loss Schedule.
Please use this page as a guide for the information
to include in the inventory of items that Ms.
Daramy-Andrews is claiming for this loss.

Please return the completed, signed Proof of Loss
and the inventory on or before December 12, 2019.

If you have any questions, I can be reached at (703)
251-2388.

-Richard Souther

Richard W. Souther, Esquire
Law Offices of Christopher R. Costabile
Fairfax Liberty Mutual Group Staff Counsel
10555 Main Street, Suite 400
Fairfax, VA 22030
richard.souther@libertymutual.com
Direct Dial: 703-251-2388
Phone: 703-273-2777

Fax: 703-691-4288

**Please be advised that there is a risk a third party can gain access when sending or receiving electronic communications using a computer or other device, or e-mail account.**

<Phanta proof of loss.pdf.pdf>

*Plaintiff's Exhibit* 9

1

```
1    IN THE UNITED STATES DISTRICT COURT
2       FOR THE DISTRICT OF COLUMBIA
3  ------------------------------X
4  PHANTA U. DARAMY-ANDREWS,        :
5          Plaintiff,               :
6       v.            :Civil Action No.:
7  LIBERTY INSURANCE CORPORATION,   :1:22-cv-01694-TJK
8          Defendant.               :
9  ------------------------------X
10
11    Deposition of PHANTA DARAMY-ANDREWS
12         Virtually Conducted
13      Wednesday, August 9th, 2023
14          10:00 a.m. (EST)
15
16
17
18
19
20  Job No.: 500480
21  Pages 1 - 69
22  Reported by: Stefanie Towns, CCR
```

2

```
1       Deposition of PHANTA DARAMY-ANDREWS,
2   Conducted Virtually:
3
4
5
6
7
8
9
10
11
12
13       Pursuant to agreement, before Stefanie
14   Towns, Notary Public in and for the District of
15   Columbia.
16
17
18
19
20
21
22
```

3

```
1          A P P E A R A N C E S
2
3   ON BEHALF OF PLAINTIFF:
4   CHARLES C. IWEANOGE, ESQUIRE
5   THE IWEANOGES FIRM, P.C.
6   1026 Monroe Street, NE
7   Washington, D.C. 20017
8
9   ON BEHALF OF DEFENDANT:
10  JAMES C. MEHIGAN, ESQUIRE
11  MEHIGAN LAW GROUP, PLLC
12  11921 Freedom Drive
13  Suite 550
14  Reston, Virginia 20190
15  703.774.7281
16  jmehigan@mehiganlawgroup.com
17
18
19  ALSO PRESENT:
20  Dave Sullivan, Planet Depos Technician
21
22
```

4

```
1          C O N T E N T S
2   EXAMINATION OF PHANTA DARAMY-ANDREWS    PAGE
3     By Mr. Mehigan                         5
4     By Mr. Iweanoge                       66
5
6
7          E X H I B I T S
8       (Retained by Counsel.)
9                                          PAGE
10  1    Liberty Mutual Policy              53
11  2    Original Complaint                 37
12  3    Amended Complaint                  45
13  0    Examination Under Oath             39
14
15
16
17
18
19
20
21
22
```

Transcript of Phanta Daramy-Andrews

2 (5 to 8)

Conducted on August 9, 2023

5

1 Thereupon,

2        PHANTA DARAMY-ANDREWS,

3 called as a witness, and having been first duly

4 sworn, was examined and testified as follows:

5 EXAMINATION BY COUNSEL FOR THE DEFENDANT

6 BY MR. MEHIGAN:

7 Q. Good morning. Please state your name for the

8 record.

9 A. My name is Phanta Daramy-Andrews.

10 Q. Can you spell your last name for me?

11 A. Capital D-A-R-A-M-Y hyphen A-N-D-R-E-W-S.

12 Q. How do you pronounce the first part of your

13 last name? I pronounced it Daramy. Is that

14 incorrect?

15 A. I pronounce it Daramy.

16 Q. Daramy, okay. Thank you. Your date of

17 birth, Ms. Daramy-Andrews?

18 A. April 10, 1959.

19 Q. Your home address?

20 A. 707 49th Place Northeast, Washington, D.C.

21 zip code 20019.

22 Q. And is that the same property or house that

6

1 forms the basis of this lawsuit?

2 A. That's always been.

3 Q. How long have you lived at this address?

4 A. Since 2012.

5 Q. I know you've had your examination under oath

6 done before, correct?

7 A. Could you please repeat yourself?

8 Q. Did you -- you had a deposition or an

9 examination under oath before --

10 A. Yes, sir.

11 Q. -- where you sat at a table and you were

12 asked questions by a lawyer with a court

13 reporter and everything that you said was

14 under oath, right?

15 A. She said she wasn't a court reporter. Yes, I

16 did.

17 Q. Okay. Well, you understand that this is a

18 deposition, right?

19 A. That's what I was told.

20 Q. Okay. And I'm going to be asking you

21 questions. I'm the lawyer for the insurance

22 company. And I'm going to be asking you

7

1 questions, right?

2 A. Could you please identify yourself?

3 Q. Yeah, I'm Jim Mehigan. I'm the lawyer for

4 the insurance company.

5 A. Thank you.

6 Q. Everything that we say here is being taken

7 down by the court reporter. You understand

8 that, right?

9 A. Thank you.

10 Q. And I'm going to be asking you questions and

11 you're going to be providing answers. You

12 understand that?

13 A. Yes, thank you.

14 Q. And your answers are under oath. You

15 understand that as well, right?

16 A. Yes. Thank you.

17 Q. So I'm going to be asking you questions about

18 your case, about this lawsuit, about what

19 your claims are. I'm not going to be asking

20 you any trick questions. And even if I did,

21 you have a very good lawyer with you who

22 would object, and would help you if I were to

8

1 ask you any untoward questions, but I'm just

2 trying to get to the bottom of what happened

3 and what your claims are. So I'll be asking

4 you questions.

5        If you don't understand a question, all

6 you have to do is ask me to repeat it or

7 rephrase it and I'll do my best to repeat or

8 rephrase the question in a way that's

9 understandable. Do you understand that?

10 A. Thank you, sir.

11 Q. If you answer my question, I'm going to

12 assume you understood it. Is that okay?

13 A. Fair enough.

14 Q. We're doing this deposition remotely and I

15 see that you're wearing a very lovely Chanel

16 face mask and it's going to be very difficult

17 to make sure that we get everything on video

18 tape here and also taken down by the court

19 reporter stenographically. Do you understand

20 that?

21 A. Yes, sir.

22 Q. So it's going to be very important for us to

PLANET DEPOS

888.433.3767 | WWW.PLANETDEPOS.COM

App.547

Transcript of Phanta Daramy-Andrews                12 (45 to 48)
Conducted on August 9, 2023

45

1    in D.C. Superior Court on April 28th, 2022.
2    Is that correct?
3  A.  Yes, sir.
4  Q.  Is there a reason why you waited until
5    April 28th, 2022 to file this lawsuit?
6  A.  Yes, sir. I had given Liberty Mutual all of
7    the benefit of the doubt to do the right
8    thing and took advantage of me and my family.
9    And the same like -- they did not want to do
10    the right thing. And I had lost hope in my
11    insurer.
12        MR. MEHIGAN: All right. Can we pull up
13    Exhibit 3, mended complaint?
14        THE TECHNICIAN: Stand by.
15    (Exhibit 3 was marked for identification and
16    is attached to the transcript.)
17 Q.  All right. Ms. Daramy-Andrews I'm showing
18    you what's been marked as Exhibit 3, which
19    I'll represent to you is the amended
20    complaint that was filed in D.C. -- U.S.
21    District Court for the District of Columbia
22    on July 9th, 2022. Do you recognize this

46

1    document? Do you see it?
2  A.  If that what it says, then that's what it is.
3  Q.  Okay.
4  A.  I don't see clearly, as I said.
5  Q.  Fair enough. There are three claims that you
6    filed against Liberty Mutual. One is for
7    breach of contract; two is for breach of the
8    covenant of good faith and fair dealing; and
9    three is unjust enrichment. And I would like
10    to know -- well, what is the basis for your
11    breach of contract claim?
12 A.  I done everything in good faith to make
13    Liberty Mutual to do the right thing. I have
14    written almost everybody. I have pleaded
15    with everybody. I had almost 55 different
16    adjustors on my cases. And Mr. Dillan Noma
17    (ph) seem like he wanted to bring closure.
18    Then, again, it went to the same old story
19    and I just felt abused.
20 Q.  All right. You keep saying the right thing,
21    Liberty Mutual didn't do the right thing.
22    What was the right thing to do that they

47

1    didn't do according to you?
2  A.  Respect my policy.
3  Q.  Okay. Well, Liberty Mutual, as far as I can
4    tell, paid you $21,483.17 to fix your house.
5    They paid alternative living expenses of
6    $7280.48 --
7        MR. IWEANOGE: I have to object.
8    Counsel is testifying and not asking a
9    question.
10        MR. MEHIGAN: Okay. You got to let me
11    get it all out in order to hear the question,
12    okay? So now I got to repeat all this. I'd
13    ask that if you're going to object, that's
14    fine, but at least let me get the whole thing
15    out before you object.
16        MR. IWEANOGE: Okay.
17        MR. MEHIGAN: So I don't have to repeat
18    all this.
19 Q.  All right. It looks to me like Liberty
20    Mutual paid $21,483.17 to fix your house.
21    They paid $7280.48 to live somewhere else
22    while the house was being repaired, and they

48

1    paid $6069.51 to repair or clean and replace
2    your personal property inside the house. How
3    is that unfair to you?
4        MR. IWEANOGE: Objection to this
5    question, because it's not specific to any of
6    the treatment here as to which claim you're
7    referring to.
8  A.  Sir, if you look at the amount of property
9    that was damaged in the house, even the
10    contractor that came, the amount does not
11    suffice the repair that should have been done
12    on the first place.
13 Q.  What contractor said that this was not
14    sufficient?
15 A.  Say, for example, 2015 the house was ripped
16    off, the ceiling fell in. There are
17    photographs to show this. There's a file,
18    there's a file for you to see the list of
19    things.
20 Q.  Okay. We're talking about 2000 -- the claim
21    in 2019, okay? What is your evidence that
22    the amount that Liberty Mutual paid you to

49

1    repair your house was insufficient?
2 A.  That's why I'm confused. Because you said --
3     you mentioned 2015. You mentioned 2018. You
4     mentioned 2019. And you speaking of $21,000,
5     you speaking of $7000.
6 Q.  Okay. Well, the amount of money I just said
7     to you is how much was paid for your 2019
8     claim. So my question to you is, how was
9     that not sufficient? And what is your
10    evidence to support your claim that it is not
11    sufficient?
12 A.  You did not pay me $21,000 in 2019. You did
13    not, sir.
14 Q.  How much did Liberty Mutual pay you for your
15    claim in 2019?
16 A.  I would have to look at my records because I
17    know I did not see any $21,000 from Liberty
18    Mutual in 2019. No physical cash like that
19    was in my hand because --
20 Q.  How much --
21 A.  -- we --
22 Q.  How much --

50

1 A.  Can I speak, sir?
2 Q.  Please, sorry.
3 A.  Thank you. Roto Rooter was paid. The man
4     that -- Jimmy Gusky (ph) for the hot water
5     tank I took my $950.01 and paid him out of my
6     own checking. Those Liberty Mutual send back
7     the $950.01 and still owe Gusky $947.50, they
8     still owe that amount. There are other
9     people that they still owe, that they did not
10    pay. So when they give me $21,000 they did
11    not give me no $21,000. I don't know where
12    they got that amount from or where they give
13    you that information from.
14 Q.  So you dispute that they paid $21,483.17
15    towards your dwelling claim?
16 A.  To who? Not to me, sir.
17 Q.  I'm asking, do you dispute that Liberty
18    Mutual paid that amount toward your dwelling
19    claim?
20        MR. IWEANOGE: Objection. Asked and
21    answered.
22        MR. MEHIGAN: She just answered it with

51

1     a question so I just reasked it, so.
2 A.  What did you say, sir?
3 Q.  So you deny that Liberty Mutual paid
4     $21,483.17 towards your dwelling claim, is
5     that correct?
6 A.  You say I deny?
7 Q.  You deny that Liberty Mutual paid $21,483.17
8     toward your dwelling claim. Is that correct?
9 A.  Sir, I'm not denying anything. From what I
10    heard you say that Liberty Mutual gave me
11    $21,000. Liberty Mutual did not put any
12    $21,000 in my hand. So from what I
13    understood you to say, is I was given
14    $21,000. I was not given $21,000.
15 Q.  Do you dispute that Liberty Mutual paid
16    $6769.51 towards your contents claim?
17 A.  So $6000 to what content claim?
18 Q.  Your personal property inside the house.
19 A.  Sir, there's no personal property content
20    that was specified to me, this is your bill
21    for personal property. What was given to me,
22    if I'm not mistaken, was $6038 -- I can't

52

1     really remember but I think it was $6000 to
2     Ms. Green for the people to claim that
3     basement because it was molded. So it was
4     not the personal property. And the amount
5     that Ms. Green had asked for, they refused to
6     give the amount for my personal property.
7     They refused, so how can they sit there and
8     say they give me $6000 for my personal
9     property. That wasn't even part of the
10    claim.
11 Q.  All right. Do you deny that Liberty Mutual
12    paid $7280.48 in alternative living expenses?
13        MR. IWEANOGE: Objection as to the
14    timeframe. When was this?
15        MR. MEHIGAN: Okay. Fair enough.
16 Q.  For the April 2019 claim, did Liberty
17    Mutual -- do you deny that Liberty Mutual
18    paid you $7280.48 in alternative living
19    expenses?
20 A.  To live where? Can I ask the question, to
21    live where?
22 Q.  Sure. I don't know. Do you deny that --

Transcript of Phanta Daramy-Andrews                    14 (53 to 56)
Conducted on August 9, 2023

53

1  A.  I'm surprised because I can't remember that
2     amount to live anywhere.
3  Q.  Okay. Do you deny that Liberty Mutual paid
4     alternative living expenses of $7280.48 for
5     your claim in 2019?
6  A.  Sir, I cannot remember. I cannot remember.
7     I'm not denying anything but I cannot
8     remember that check from Liberty.
9  Q.  Okay. Did you live elsewhere for a period of
10    time after you discovered the flood in April
11    of 2019?
12 A.  I didn't live anywhere in 2019. The only two
13    places I lived was the Residence Inn of 333
14    Southwest and the Residence Inn on 15th
15    Street Northwest. That's 120,000 we're
16    paying.
17       MR. MEHIGAN: Can we pull up Exhibit No.
18    1, please, Dave?
19       THE TECHNICIAN: Stand by.
20    (Exhibit 1 was marked for identification and
21    is attached to the transcript.)
22 Q.  All right. I'm showing you what's been

54

1     marked as Exhibit 1, which I'll represent to
2     you is your Liberty Mutual insurance policy
3     for the period of January 26th, 2019 to
4     January 26th, 2020. Do you recognize this
5     document?
6  A.  You said January '19?
7  Q.  Yes, January 26th, 2019 through January 26th,
8     2020, which is the policy period. Do you
9     recognize this document?
10 A.  Well, like I said, I cannot see the document
11    clearly but like you're explaining —
12 Q.  Okay.
13       MR. MEHIGAN: Charles, can you look at
14    this document and stipulate that this is the
15    applicable insurance policy?
16       MR. IWEANOGE: There's no way I can
17    stipulate to the policy. If this is policy
18    and the policy of Liberty Mutual this is
19    policy but I cannot stipulate to it because I
20    didn't receive this policy prior to this
21    lawsuit. I was unaware of this exact
22    document. But if this is our policy, it is

55

1     our policy. So I understand you are
2     representing that this is a policy that was
3     provided by Liberty Mutual. If this is our
4     policy, we agree to it that it's our policy.
5  Q.  All right. Ms. Daramy-Andrews, do you have
6     any basis to dispute that this is the
7     applicable policy for the April 2019 claim?
8  A.  Well, I know I had policy. So I don't know
9     if that's a specific policy but I know I had
10    a policy.
11 Q.  Okay. Do you have any basis to say that this
12    is not the policy -- the policy in effect at
13    the time of the alleged incident?
14 A.  I wouldn't know, sir. But I know that my
15    policies were all up to date.
16 Q.  Did you ever provide an inventory to Liberty
17    Mutual for your claims damage contents as a
18    result of the April 2019 flooding?
19 A.  Sir, if I may say 1-800-Packouts was sent by
20    Liberty Mutual. They were responsible to
21    give account for what they took out of my
22    house. So definitely they gave an inventory

56

1     list to Liberty Mutual.
2  Q.  Ms. Daramy-Andrews, did you ever provide
3     Liberty Mutual with an inventory of your lost
4     and/or damaged items as a result of the
5     April 2019 flooding incident?
6  A.  With all do respect, sir, the epidemic was in
7     place. I was told to go to 1-800-Packouts
8     and gave an estimate of whatever to give a
9     listing, and I couldn't, because what was
10    sticking out of my house was all infected
11    with feces and the pandemic was on. I tried
12    but I couldn't.
13 Q.  So what I'm hearing, and correct me if I'm
14    wrong, is that because of the pandemic and
15    for other reasons you were not able to
16    provide Liberty Mutual an inventory of your
17    claims damaged personal property, correct?
18 A.  Sir, if I can continue. These properties are
19    still with 1-800-Packouts. They have their
20    listing of what they took from my home.
21 Q.  Okay. I appreciate, you know, you're saying
22    all this, but I'm asking a very specific

Transcript of Phanta Daramy-Andrews                    15 (57 to 60)
Conducted on August 9, 2023

57

1    question. Did you, Ms. Daramy-Andrews, ever
2    provide Liberty Mutual with an inventory of
3    the contents that you claim was lost or
4    damaged as a result of the April 2019
5    flooding incident?
6  A.  I provided some because Liberty Mutual wanted
7    me to pay 1-800-Packouts for the days that I
8    would be going there to do the listing, and
9    the epidemic was also on. That was a high
10   risk. And I asked Liberty Mutual to please
11   send the adjuster with me or send the
12   adjuster to do it. They refused. And my
13   life was in jeopardy.
14 Q.  So is the answer to my question, no, you did
15   not provide an inventory to Liberty Mutual?
16 A.  Yes, I did but partial.
17 Q.  Okay. Do you have a copy of that here that
18   you can show me?
19 A.  Yes, I do. I have a copy of some.
20 Q.  Okay. I'm going to --
21       MR. IWEANOGE: Counselor, it was
22   provided in discovery and it was provided to

58

1    Liberty Mutual, which you have provided as
2    part of your own discovery packet.
3       MR. MEHIGAN: Okay.
4  Q.  Getting back to the complaint, in addition to
5    the breach of contract claim, you also claim
6    that there was a breach of implied covenant
7    good faith and fair dealing. What do you
8    mean by that?
9       MR. IWEANOGE: Objection as to the legal
10   question, legal term.
11 A.  The breach of contract what I, as a lay
12   person, because I'm not too familiar with all
13   of the terminology of the insurance dealings.
14 Q.  Fair enough. Do you have any evidence to
15   support your claim that Liberty Mutual
16   breached its covenant of good faith and fair
17   dealing?
18 A.  Yes.
19 Q.  Why?
20 A.  How they treated my -- my claim.
21 Q.  Can you think of anything specific that they
22   did that was a breach of an implied covenant

59

1    of good faith and fair dealing?
2  A.  Look at how my home was treated. Look at how
3    my property is treated. Look at how they
4    refused to take care of 1-800-Packouts. Look
5    at how they refused the claims of any of my
6    properties during all of these instances.
7  Q.  All right. You make the claim of unjust
8    enrichment, do you know what that means?
9  A.  Well, in my little way it is unjust because
10   no one should be treated that way who have an
11   insurance policy. That the positive -- the
12   property should be protected by people that
13   they trust with the property. It shouldn't
14   be treated this way. And all of the claims
15   being mistreated. I can understand if one
16   policy is being mistreated. But, two, three,
17   same story. So many adjustors, same
18   behavior, who does that? Is it because of
19   what?
20 Q.  All right. What -- how much money do you
21   think you are owed by Liberty Mutual as a
22   result of your claim in April 2019?

60

1  A.  Sir, if you want to be a fair gentleman as
2    you are, I leave that into your court.
3  Q.  Okay. Well, let me ask you more
4    specifically, what are your damages as a
5    result of your claim that you believe that
6    you're owed?
7  A.  So many damages, sir.
8  Q.  Okay. What are they? Specifically what are
9    they?
10 A.  If I may say, sir, with all due respect, can
11   you go back and review all of those pictures
12   by Infinity, and all of those listings, sir,
13   and see what me and my family have suffered
14   and lost, the trauma, the abuse.
15 Q.  Ms. Daramy-Andrews, with all due respect,
16   this is your claim, right, that you have to
17   bring, and so I need you to tell me what are
18   your damages?
19 A.  Sir, for the three damages?
20       MR. IWEANOGE: No. You need to do 2019.
21       THE WITNESS: Oh, is it 2019. Oh, is it
22   -- that's why I'm asking.

Transcript of Phanta Daramy-Andrews                    16 (61 to 64)
Conducted on August 9, 2023

61

1    MR. IWEANOGE: From 2019.
2    THE WITNESS: That's why I'm --
3    MR. IWEANOGE: The question is specific
4    to 2019.
5    MR. MEHIGAN: The date of loss is
6    April 21, 2019.
7    THE WITNESS: Can I ask him,
8    Mr. Charles, please?
9    MR. IWEANOGE: Go ahead.
10 A.  Sir, thank you for asking me that question.
11   And if I heard you right or if I didn't hear
12   you right, are you relating to 2019 or are
13   you relating to all of my problems?
14 Q.  I'm asking with relation to your claim
15   arising from the incident on April 21, 2019
16   and what are your damages?
17 A.  Well, my damages in 2019 for my personal
18   property?
19 Q.  Well, we can start with personal property,
20   yeah, sure.
21 A.  I will consider $75,000 for my personal
22   property.

62

1  Q.  Okay. You'll consider that but what is the
2     basis for that?
3  A.  Well, for all of what I have lost in 2019.
4  Q.  All right. So what I'm hearing you say,
5     you're not prepared to give me a basis for
6     why you believe the value of the contents,
7     personal property, the value of the damage of
8     $75,000. Is that correct?
9  A.  Can you please rephrase what you said there?
10 Q.  Sure. What I'm hearing you say is that you
11    believe that you're entitled to $75,000 for
12    your loss of contents but you're not prepared
13    to give me a basis for why you think the
14    value of those contents is $75,000?
15    MR. IWEANOGE: I have to object but you
16    can answer.
17 Q.  Can you answer it?
18 A.  Sir, I know what I spent on those things that
19    I bought.
20 Q.  Okay.
21    MR. IWEANOGE: She is not finished.
22    MR. MEHIGAN: Sorry, go ahead.

63

1    MR. IWEANOGE: Answer him.
2  A.  I know what I spent on those things that I
3     bought. My paintings, my clothes, my shoes,
4     my jeweleries in there. There's so many
5     things of value. So as you can see maybe if
6     you went on my Facebook page, you see how I
7     dress. I'm not just an ordinary casually
8     dressed person. I take value into my
9     presentation of myself. I keep a decent
10    home. I put value into what I love. If I
11    were to ask you, I would have asked for more,
12    but I think I'm just being a little
13    courteous.
14 Q.  Can I ask the next question now?
15 A.  Please, sir.
16 Q.  All right. What damages are you claiming as
17    a result of this April 21, 2019 incident,
18    what damages are you claiming for the repair
19    of the dwelling?
20 A.  I am claiming the property being repaired
21    from the inner part of it, where the place is
22    damaged. That it be repaired properly.

64

1  Q.  Yeah. But how much? How much is that going
2     to cost?
3  A.  Pardon me, sir?
4  Q.  How much is that? How much is that going to
5     cost in your estimation?
6  A.  In my estimation I would believe that it
7     would cost at least 50 to $60,000 to have it
8     properly done.
9  Q.  Do you have an estimate to support that?
10 A.  Yes, I will have an estimate for that.
11    Because materials are very costly. And it
12    has to be done properly.
13 Q.  Do you have any basis to say that the amount
14    of alternative living expense that Liberty
15    Mutual provided for this April 21, 2019 claim
16    was not sufficient?
17 A.  It's obvious, sir.
18 Q.  Well, I'm asking you specifically what is
19    your evidence of that?
20 A.  What is my what, sir?
21 Q.  What is your evidence to support that claim?
22 A.  What is my evidence --

Transcript of Phanta Daramy-Andrews                    18 (69 to 72)
Conducted on August 9, 2023

69

1    CERTIFICATE OF REPORTER - NOTARY PUBLIC
2        I, Stefanie Towns, the officer before whom the
3    foregoing deposition was taken, do hereby certify
4    that the foregoing transcript is a true and correct
5    record of the testimony given; that said testimony
6    was taken by me and thereafter reduced to
7    typewriting under my direction; that reading and
8    signing was requested; and that I am neither
9    counsel for, related to, nor employed by any of the
10   parties to this case and have no interest,
11   financial or otherwise, in its outcome.
12       IN WITNESS WHEREOF, I have hereunto set my
13   hand and affixed my notarial seal this 16th day of
14   August 2023.
15   My Commission Expires:
16
17
18   _Stefanie Towns_
19   Stefanie Towns
20
21
22

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **PHANTA U. DARAMY-ANDREWS,** | **:** | |
| | **:** | |
| **Plaintiff,** | **:** | |
| | **:** | |
| **v.** | **:** | **Civil Action No. 1:22-cv-01694-TJK** |
| | **:** | |
| **LIBERTY INSURANCE** | **:** | |
| **CORPORATION,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**REPLY TO PLAINTIFF'S OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Liberty Insurance Corporation, by and through counsel, hereby files this Reply

to Plaintiff's Opposition to Defendant's Motion for Summary Judgment, and for reasons, states:

1.      Plaintiff opposes Defendant's Motion for Summary Judgment, arguing (1) that

Defendant lulled Plaintiff into missing the one-year contractual limitations deadline and

therefore is estopped from enforcing that contractual term; (2) that the one-year contractual

limitations term does not apply to her implied covenant of good faith and fair dealing claim; and

(3) that her unjust enrichment claim is viable notwithstanding the existence of the actual

insurance contract, which Plaintiff seeks to enforce in this action.  These arguments, however,

have no merit and Defendant is entitled to judgment as a matter of law.

2.      By asserting the lulling doctrine, Plaintiff concedes (1) that the one-year

limitations period in the subject policy is enforceable under District of Columbia law and (2) that

she missed the deadline for filing suit under the policy, since the lulling doctrine would not apply

unless she missed the contractual deadline for filing suit. The evidence, however, fails to

establish that Defendant lulled Plaintiff into missing the applicable deadline for filing suit. In

fact, the March 5, 2020 letter relied on Plaintiff as evidence of lulling (ECF 34-9) shows that it

was Plaintiff, not Defendant, who caused the delay in adjusting the claim by her failure to comply with the policy terms. The letter does not speak to the limitations issue, but merely says politely that because Plaintiff failed to provide the proof of loss as required by the policy, Defendant will not be able to make its final coverage decision. Furthermore, the letter is in no way misleading. Under District of Columbia law "an insurance company is estopped from raising a contractual limitations period as an affirmative defense where the company has made misleading representations to the insured and the insured has relied on those representations to his or her detriment." *Martinez v. Hartford Cas. Ins. Co.*, 429 F. Supp. 2d 52, 58 (D.D.C. 2006) quoting *Bailey v. Greenberg*, 516 A.2d 934, 939 n. 5 (D.C. 1986) (internal quotations omitted). Defendant's statements to Plaintiff, however, were not misleading and there is no evidence that Plaintiff relied on any statements in deciding when to file suit. Thus, because Defendant did not make any misleading statements, it did not lull Plaintiff into missing the contractual deadline for bringing her lawsuit.

       3.      Furthermore, Plaintiff has already conceded in her deposition that Defendant did not lull her into not filing suit:

> Q      Okay. Did anybody at Liberty Mutual do anything or say anything that would indicate that they were trying to prevent you from filing a lawsuit against them?
>
> A      I don't think they prevented me.  But I give them the benefit of the doubt to do the right thing as my insurer.

Exhibit 1 at 42-43.  It is therefore clear that Defendant did not do or say anything that caused Plaintiff to miss the contractual deadline for filing suit.

**App.555**

4.      Moreover, Defendant did not lull Plaintiff into sitting on her contractual rights because she was represented by counsel.  On September 11, 2019, Plaintiff's counsel forwarded Defendant a letter of representation advising that his firm was retained by Plaintiff to represent her in her claim. See, 9/11/19 Letter of Representation (**Reply Exhibit 1**).  As the date of loss was April 21, 2019, Plaintiff had legal representation at least seven months before the contractual limitation period expired, which made it even less probable that she could have been lulled into missing the deadline for filing suit. In the District of Columbia, "[a]lthough a claimant's representation by an attorney is not dispositive in determining whether an insurance company is estopped because of misleading statements from asserting the statute of limitations… courts generally are reluctant to find the claimant has been misled by the insurance company where the claimant was sophisticated in business matters or had retained legal counsel." *Bailey*, 516 A.2d at 939 citing *Sumrall v. City of Cypress*, 258 Cal. App. 2d 565, 65 Ca. Rptr. 755, 758 (1968).

5.      Consquently, because Defendant did not make any misleading statements to Plaintiff; because Plaintiff conceded that Defendant did not cause her to wait to file suit; and because Plaintiff was represented by counsel at least seven months before the contractual deadline for filing suit, Plaintiff's claim that Defendant lulled her into missing the deadline for filing suit fails, and Defendant is entitled summary judgment.

6.      Furthermore, Plaintiff argues that her claim for breach of the covenant of good faith and fair dealing is not subject to the one-year contractual limitations term but fails to provide any authority to support that argument.  The contract in question explicitly states that "*[n]o action* can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss." MSJ Exhibit 2 (emphasis added).  Thus, Plaintiff agreed in the contract to bring no action, including the claim of breach of the convent of good

3

**App.556**

faith and fair dealing, after the contractual deadline of one year.  Accordingly, Plaintiff's claim

for breach of the covenant of good faith and fair dealing fails, and Defendant is entitled to

judgment as a matter of law.

7.     Finally, Plaintiff argues that her unjust enrichment claim survives, notwithstanding the

existence of a valid contract. However, Plaintiff fails to offer any support for her contention that

the general rule that bars an unjust enrichment claim where there is an applicable contract does

not apply here. Nevertheless, the law is clear that "there can be no claim for unjust enrichment

when an express contract exists between the parties. *Harrington* 983 A.2d at 346 quoting *Schiff*

*v. American Ass'n of Retired Persons*, 697 A.2d 1193, 1194 (D.C. 1997) (internal quotes

omitted).  Accordingly, Plaintiff's unjust enrichment claim fails, and Defendant is entitled to

judgment as a matter of law.

WHEREFORE for the foregoing reasons, Defendant Liberty Insurance Corporation

respectfully requests that this honorable Court GRANT its Motion for Summary Judgment.


Dated: October 1, 2024                              Respectfully submitted,



                                                    */s/ James C. Mehigan*
                                                    James C. Mehigan, Bar #: 480691
                                                    Mehigan Law Group PLLC
                                                    11921 Freedom Drive
                                                    Suite 550
                                                    Reston, Virginia  20190
                                                    (703) 774-7281
                                                    jmehigan@mehiganlawgroup.com


                                                    *Attorney for Defendant*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on October 1, 2024, a copy of the foregoing was served via ECF to all parties of record.

*/s/ James C. Mehigan*
James C. Mehigan

# THE IWEANOGES' FIRM

A Professional Corporation
TRIAL ATTORNEYS AND COUNSELORS AT LAW

IWEANOGE LAW CENTER
1026 Monroe Street, Northeast
Washington, D.C. 20017

John O. Iweanoge, II.*^
Charles C. Iweanoge ^
Jude C. Iweanoge ^

*Admitted to the VA Bar
^Admitted to the DC & MD Bar

Phone: (202) 347 – 7026
Facsimile: (202) 347 – 7108
Website: www.iweanogesfirm.com

Writer's Direct Dial and E-mail
Phone: (202) 255-0799
Email: cci@iweanogesfirm.com

September 11, 2019

Via Facsimile (703) 691 - 4288

Richard W. Souther, Esquire
**LAW OFFICES OF CHRISTOPHER R. COSTABILE**
10555 Main Street, Suite 400
Fairfax, VA 22030

**RE:    NOTICE OF REPRESENTATION**
**Our Client/Claimant – Phanta U. Daramy-Andrews**
**File No.: HD332-039740892-0003**
**Date of Loss- April 21, 2019**

Dear Mr. Souther:

The purpose of this communication is to formally advise you that we have been retained by Phanta U. Daramy-Andrews to represent her in the above-referenced matter.

Please forward any questions, information, or correspondence regarding this matter to this office.

Sincerely,

Charles. C. Iweanoge

cc: Client

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PHANTA U. DARAMY-ANDREWS,

    *Plaintiff*,

  v.              Civil Action No. 22-1694 (TJK)

LIBERTY INSURANCE CORPORATION,

    *Defendant*.

**<u>MEMORANDUM OPINION</u>**

   In April 2019, Plaintiff's home and personal property were damaged by flooding caused by a burst pipe in her basement.  Defendant, her insurer, determined coverage and compensated her for her loss based on its findings.  Plaintiff now sues, claiming that she is entitled to much more for her losses.  She brings claims of breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.  Defendant moves for summary judgment, arguing that Plaintiff's policy required her to sue within a year of the flood, thus barring her first two claims, and that the existence of the policy—an express contract—means that the unjust enrichment claim fails too.  Defendant is right on both fronts, so the Court will grant its motion for summary judgment on all claims.

**I.**  **Background**

   **A.**  **Factual Background**

   On April 21, 2019, a flooding from a burst pipe damaged Plaintiff's home and personal property.  *See* ECF No. 33-1 ¶ 3; ECF No. 33-3 at 3, 5.  At the time, Plaintiff held a homeowner's insurance policy issued by Defendant that covered damage to her house and personal belongings,

subject to certain conditions.  ECF No. 33-1 ¶ 2; *see* ECF No. 33-4 at 15–16.[1]  Among other things, the policy required her to "[p]repare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss" and to "[a]ttach all bills, receipts and related documents that justify the figures in the inventory."  ECF No. 33-4 at 22.  And "within 60 days after [Defendant's] request," Plaintiff had to submit her "sworn proof of loss" setting forth various information, including "[t]he inventory of damaged personal property."  *Id.* at 22–23.  The policy also contains another key deadline.  It mandated that "[n]o action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss," which in this case is April 21, 2019.  *Id.* at 24.

After Plaintiff reported the claim, Defendant contracted a company, 1-800-Packouts, to remove and store her damaged personal property.  ECF No. 34-1 ¶ 3; *see* ECF No. 34-4.  As part of its investigation, Defendant conducted an "examination under oath" of Plaintiff in October 2019.  *See* ECF No. 34-5.  At that point, she had hired an attorney, who was with her during the examination and has represented her since.  ECF No. 33-1 ¶ 9; ECF No. 35-1.  The interview revealed that Plaintiff had not, consistent with her insurance policy, compiled an inventory of the damaged items.  ECF No. 34-5 at 12.  The parties thus suspended the examination so that Plaintiff and her counsel could schedule an inspection with 1-800-Packouts to complete a detailed inventory, in hopes of "eliminat[ing] all of the problems and questions that have arisen on th[e] claim." *Id*. at 35.

On November 1, 2019, Defendant sent Plaintiff a letter about her "claim for supplemental damages."  ECF No. 34-6 at 1.  It informed her that Defendant had determined it owed Plaintiff

---

[1] Plaintiff has held that insurance policy since 2012 and renewed it annually.  ECF No. 23-2 at 1; ECF No. 34-5 at 10–11.  The policy relevant here was effective from January 26, 2019, to January 26, 2020.  ECF No. 23-2 ¶ 2.

$26,216.31 for repairs to her house and $6,769.51 for personal-property losses, for roughly $33,000. *Id.*[2]  After adjusting for "prior payment(s)" and other items, the letter explained, the amount owed and paid was $950. *Id.*  Eleven days later, Defendant emailed Plaintiff's attorney the proof-of-loss form that she would need to complete by December 12, 2019. ECF No. 34-10 at 6.  Counsel responded that his "client [wa]s working to get the inventory completed" and asked for a ten-day extension, which Defendant granted. *Id.* at 5.  On December 20, Plaintiff's attorney informed Defendant that his client "ha[d] not been able to return to the storage to complete the inventory of [her] personal property . . . [d]ue to [her] job schedule" but would do so on December 27. *Id.* at 3.  So Defendant granted Plaintiff a "final extension" until January 27, 2020 to document and submit her inventory list. *Id.* at 2.  Although she submitted a proof-of-loss statement by that deadline, *id.* at 2, Defendant promptly told her about several deficiencies, *id.* at 1.  For example, the statement contained no relevant cost information or photos and did not separate the items she claimed were damaged during the 2019 flooding from those damaged during earlier flooding. *Id.*  So Defendant gave Plaintiff yet more time to complete the proof-of-loss statement, until February 18, 2020, noting that "[t]here w[ould] be no additional extensions" beyond that date. *Id.*  Plaintiff never provided a full inventory of her claimed losses, a failure she attributes to the COVID-19 pandemic.  ECF No. 33-3 at 7–8.

On March 5, 2020—about six weeks short of the one-year deadline to file suit—Defendant sent a letter to Plaintiff "follow[ing] up regarding [her] recent request for [Defendant] to" conduct

---

[2] Defendant contends that it paid Plaintiff $21,483 to repair her house, $6,069 to clean and repair her personal property, and $7,280 to cover her living expenses while repairs were ongoing. ECF No. 33-1 ¶ 4; ECF No. 33-3 at 5–7.  Plaintiff disputes that Defendant paid her any money to cover the cleaning and repair of her personal property.  ECF No. 34-1 ¶ 4.  But any disagreement between the parties over the precise amounts paid to Plaintiff and what losses they were intended cover does not affect the Court's determination that Plaintiff's claims are time-barred.

the inventory for her.  ECF No. 34-9 at 1.  Defendant declined to do so, noting it was "the insured's duty after loss to provide the details needed for [an] investigation."  *Id.*  As Plaintiff failed to meet her "conditions and duties" under the policy, including by providing "the required documentation and details," Defendant could not "proceed with the claim process at this time."  *Id.*  The letter further noted that Defendant "will wait until [Plaintiff] is able to complete the required Proof of Loss" for the water damage and "will then be able to complete the meeting that was started on [October 18, 2019]"—the date of the examination under oath—"and make a final coverage decision based on what is submitted and reviewed."  *Id.*  The letter also included excerpts of the relevant policy provisions laying out Plaintiff's "Duties After Loss" and concluded: "At this time, our investigation is suspended.  We will be happy to reopen the claim should the insured comply with the conditions of the policy and complete the signed proof of loss."  *Id.* at 2.  The record reflects no further activity by either party until Plaintiff sued more than two years later.

### B.    Procedural History

On April 20, 2022, Plaintiff sued in the Superior Court for the District of Columbia.  *See* ECF No. 1-1; ECF No. 7 at 2–4.[3]  A few months later, the case was removed to this Court.  ECF No. 1.  Plaintiff brings three claims.  First, she alleges Defendant breached the insurance contract by, among other things, failing to pay for the repairs to her home and for her total loss of personal property.  ECF No. 8 ("Am. Compl.") ¶¶ 18–20.  Second, she claims Defendant breached the implied covenant of good faith and fair dealing by refusing to accept her claim, delaying adjustment, and "closing the case without justification."  *Id.* ¶¶ 21–25.  Third, she contends Defendant was unjustly enriched because it "realiz[ed] substantial premium[s]" while "withh[olding] the

---

[3] Plaintiff first sued the wrong corporate entities.  *See* ECF No. 1-1.  She later amended her complaint to name Defendant only.  *See* ECF No. 6 at 1 & n.1; ECF No. 8.

insurance payments" it owed her. *Id.* ¶¶ 26–28. After discovery, Defendant moved for summary judgment in part based on the contractual one-year limitations period. *See* ECF No. 20-2 at 4.

## II.    Legal Standard

Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence is such that a reasonable factfinder could return a verdict for the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" if it is capable of affecting the outcome of the litigation under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the Court must "view the evidence in the light most favorable to the [nonmovant]"—here, Plaintiff—"draw all reasonable inferences in that party's favor, and avoid weighing the evidence or making credibility determinations." *Thompson v. District of Columbia*, 967 F.3d 804, 812–13 (D.C. Cir. 2020) (internal quotation marks omitted). But, in opposing summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). So if the evidence on which the nonmovant relies in opposing summary judgment is "'merely colorable' or 'not significantly probative'" such that no reasonable factfinder could rule in that party's favor based on that evidence, then "summary judgment may be granted." *Bradley v. D.C. Pub. Sch.*, 222 F. Supp. 3d 24, 28 (D.D.C. 2016) (quoting *Anderson*, 477 U.S. at 249–50). Thus, although at summary judgment the Court does not weigh the evidence or find the facts, the Court must decide whether the nonmovant's evidence is probative enough that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249; *Johnson v. Perez*, 823 F.3d 701, 705 (D.C. Cir. 2016).

**App.564**

### III.    Analysis

Defendant argues that Plaintiff's breach-of-contract and implied-covenant-of-good-faith claims are barred by the statute of limitations, and that her unjust-enrichment claim is barred by the express contract between the parties.  Plaintiff, for her part, does not dispute the validity of the statute-of-limitations provision.  Nor does she contest that she filed her suit too late.  Rather, she argues that Defendant may not assert the limitations period as a defense.  Specifically, she claims that Defendant's March 2020 letter suspending its investigation "lulled" her into missing the deadline to sue, and that Defendant's November 2019 letter explaining the payments Defendant issued was an admission of liability by which Defendant "waived" the limitations period.  She also argues that her implied-covenant-of-good-faith claim survives any contractual bar because Defendant's "bad faith" actions occurred during and after the limitations period or because the District of Columbia suspended all statutes of limitations until March 30, 2021.  And as for her unjust-enrichment claim, she appears to ask the Court to look beyond black-letter contract law to give her relief.  None of her arguments holds water.

### A.    Plaintiff's Breach-of-Contract Claim is Time-Barred, and No Exception to the Strict Enforcement of Contractual Limitations Periods Applies

Courts generally recognize the validity of contractual provisions limiting the period within which an insurance-policy holder can sue.  *See Nkpado v. Standard Fire Ins. Co.*, 697 F. Supp. 94, 98 (D.D.C. 2010).  Indeed, under District of Columbia law, which governs this dispute, limitations periods are "strictly" enforced.  *Ketten v. United States*, No. 21-cv-2437 (RMM), 2024 WL 1908660, at *4 (D.D.C. May 1, 2024) (citing *East v. Graphic Arts Indus. Joint Pension Tr.*, 718 A.2d 153, 156 (D.C. 1998)).  Still, a defendant's actions may allow a plaintiff to overcome such a bar.  But as explained below, neither exception applies here, and Defendant is entitled to summary judgment on Plaintiff's breach-of-contract claim.

**App.565**

### 1.    Defendant Did Not "Lull" Plaintiff into Missing the Deadline to Sue

Under the so-called "lulling doctrine," a defending insurance company may be "estopped" from asserting a statute-of-limitations defense if it "has done anything that would tend to lull the plaintiff into inaction, and thereby permit the limitation prescribed by the statute to run." *Bailey v. Greenberg*, 516 A.2d 934, 937 (D.C. 1986) (citation omitted); *see 1426 Wisconsin LLC v. Travelers Indem. Co. of Am.*, 110 F. Supp. 3d 259, 264 (D.D.C. 2015).  That is, the defendant "must have done something" amounting to "an affirmative inducement . . . to delay bringing action"— for instance, by making "misleading representations" on which the plaintiff then relied detrimentally.  *Bailey*, 516 A.2d at 937, 939 n.5.  This estoppel exception is a "narrow[]" one, and courts are especially "reluctant to find that a claimant has been misled by an insurance company" if she was represented by counsel, as Plaintiff was here.  *Id.* at 937, 939.

Nothing in the record suggests Defendant lulled or induced Plaintiff to delay filing suit.  Nor did Defendant make any misleading representations that could have made Plaintiff think the limitations period would not apply to her.  Plaintiff knew since the flooding that she had a potential claim against Defendant.  *Cf. Gardner v. Eerie Ins. Co.*, 639 F. Supp. 3d 135, 143 (D.D.C. 2022) (rejecting argument that limitations period could have started only when insurance company conveyed it would stop making payments because "the limitations provision starts at the time of loss").  And by November of that year, she was "on notice" that Defendant's estimated payments would come up short of what she had hoped for.  *Martinez v. Hartford Cas. Ins. Co.*, 429 F. Supp. 2d 52, 60–61 (D.D.C. 2006).  Yet she sat on her right to sue.

True, there were delays in Defendant's processing of her claim.  Putting aside that Plaintiff need not have waited for that process to play out to file suit, though, those delays were caused by Plaintiff's own non-compliance with the terms of her policy.  She had to "[p]repare an inventory

of [all her] damaged personal property showing the quantity, description, actual cash value and amount of loss" along with "all bills, receipts, and related documents that justify the figures in the inventory." ECF No. 33-4 at 22. As of October 19, 2019, when Plaintiff was examined under oath, she had not done so. *See* ECF No. 34-5 at 12. On November 1, 2019, Defendant timely provided her with its calculation of the reimbursable damages related to her home and personal property—amounts that she believed were inadequate. *See* ECF No. 34-6. Thus, Plaintiff had more than five months before the expiration of the one-year contractual limitations period to assess, with help from counsel, whether to sue. She didn't. Still, after Defendant informed her that a "detailed inventory" was "the most important document" to "mov[e]" her claim along, ECF No. 34-5 at 12, 34, it then twice extended the deadline to provide the proof-of-loss form when counsel said his client could not visit the storage facility given her job schedule. No. 34-10 at 2–3, 5. And when Plaintiff, through counsel, submitted a deficient form in late January, Defendant again gave her more time. *Id.* at 1. But Plaintiff still failed to submit the documents necessary to "make a final coverage decision."[4] ECF No. 34-9 at 1.

That Defendant offered to resume its investigation and ascertain her entitlement to more insurance proceeds should she "comply with the conditions of the policy and complete the signed proof of loss," *id.* at 2, speaks to Defendant's willingness to accommodate her circumstances despite her many delays. But it did not in any way "signal . . . that the limitations period would not apply to" her. *Gardner*, 639 F. Supp. 3d at 142. As noted above, Plaintiff could have sued at any point during that process; any continued investigation into her claim to insurance proceeds was separate from her duty to timely file suit. In other words, extending the former does not pause the

---

[4] Plaintiff apparently never submitted a comprehensive proof-of-loss form. To date, she has submitted only a "partial" inventory. ECF No. 33-3 at 8.

latter.[5]  Defendant accommodated Plaintiff at every step in processing her claim; it was Plaintiff's "own inaction [that] kept [her] from filing a timely complaint." *Martinez*, 429 F. Supp. 2d at 58 (quoting *P'ship Placements, Inc. v. Landmark Ins. Co.*, 722 A.2d 837, 842 (D.C. 1998)).

Plaintiff's main argument is that Defendant's March 5, 2020, letter informing her that the "investigation" into her claim was "suspended" lulled her into inaction. *See* ECF No. 34 at 8–9. She argues that letter "reasonably" led her to "believe that the statute of limitation would not bar her claim because" Liberty "suspended the claim until" she provided "additional information" and because it "did not advise [her] that she must bring her claim within one year." *Id.* at 9.  That is nonsense, especially for a claimant represented by counsel.

To begin, the policy included that statute of limitations, and an insurance company's "failure to call the [insured's] attention to the Policy's expressly delineated limitations provisions," as another court in this District has explained, is "surely not . . . an *affirmative* inducement" under District of Columbia law. *Martinez*, 429 F. Supp. 2d at 58 (emphasis added).  And the letter makes no "representation," let alone a "misleading" one, on which Plaintiff reasonably could have relied in deciding not to sue within one year. *Bailey*, 516 A.2d at 939 n.5.  The letter does not, for instance, ask her to hold off on taking legal action.  Nor does it suggest that Defendant was prepared to pay her claim or "settle[d] amicably" any dispute about the amount of money owed. *Id.* at 939 (citation omitted).  To the contrary, the March letter states that, from Defendant's perspective, it would take no further action because Plaintiff "failed to provide the details necessary for

---

[5] That is why it is irrelevant that Defendant "continued [to] adjudicate[e] . . . [Plaintiff's] 2015 and 2018 claims without any issue regarding the contractual limitation period"—a "c[ourse] of conduct" Plaintiff argues further led her to "believe that the limitation period was not an issue." ECF No. 34 at 9.  Plaintiff does not contend that she ever sued Defendant over her prior claims.  If anything, Defendant's continued adjudication of those claims shows that the claim-evaluation process operates independently of any contractual limitation on filing suit.

**App.568**

[an] investigation." *See* ECF No. 34-9 at 2 (concluding that the "investigation [was] suspended" and Defendant may "*reopen*" it if she complied with the terms of her policy (emphasis added)). As Defendant puts it, the letter "shows that it was Plaintiff, not Defendant, who caused the delay in adjusting the claim." ECF No. 35 at 1-2.   And in any event, as discussed above, that process is separate from Plaintiff's right to sue.   It would make no sense if the law allowed Plaintiff, represented by counsel, to extend her time to sue—in theory indefinitely—by failing to comply with the terms of her policy to provide proof of her damages.   Thus, Plaintiff has failed to raise a material issue of fact as to whether Defendant lulled her into not suing earlier. *Bailey*, 516 A.2d at 939.

### 2.   Defendant Did Not "Waive" the Statute-of-Limitations Defense

Similarly, an insurance company may "waive[] its ability to invoke the limitations period," impliedly by "conced[ing] liability" and having "some discussion[s] of a settlement offer." *Bailey*, 516 A.2d at 938–39 & n.5; *Gardner*, 639 F. Supp. 3d at 142.   That rule sensibly "prevent[s] insurance companies from avoiding payment of claims by entering into prolonged negotiations and then withdrawing" once the limitations period has run. *Martinez*, 429 F. Supp. 2d at 60 (cleaned up and citation omitted).   But "investigat[ing]" an insurance claim is "not synonymous" with "initiat[ing]" settlement discussions, so an ordinary "claim evaluation process does not waive the insurer's right to assert" the limitations period as a defense. *Gardner*, 639 F. Supp. 3d at 142 (quoting *1426 Wisconsin*, 110 F. Supp. 3d at 269).

Nothing in the record suggests that Defendant discussed a settlement with Plaintiff or otherwise waived the limitations period; indeed, it was Plaintiff's own inaction that probably created a barrier to any such talks.   Defendant paid Plaintiff the damages it determined adequate based on its findings.   Defendant also invited Plaintiff to submit proof of her losses to justify a higher amount.   And when she failed to do so, Defendant suspended its investigation.   What else could it

have done?  In any event, there is no evidence in the record of settlement discussions.  And as noted, a claim investigation does not amount to "initiation of settlement discussions," which might give an insured reason to believe that strict compliance with the contractual limitations period is not required.  *1426 Wisconsin LLC*, 110 F. Supp. 3d at 269.  This case is thus far afield from circumstances where an insurer "enter[s] into prolonged negotiations and then withdraw[s] after the . . . limitation[s] period has passed."  *Martinez*, 429 F. Supp. 2d at 60 (quotation omitted).

Plaintiff leans on Defendant's November 1, 2019, letter "addressing the issue of supplemental damages" to argue, it appears, that the parties were indeed engaged in something like settlement talks, with the sole issue being the amount of money owed after itemization of her losses.  *See* ECF No. 34 at 3, 8.  But that letter suggests nothing of the sort.  In it, Defendant informed Plaintiff that it "issued a payment" related to the flooding incident in the amount of $950.01, an amount representing $26,216.31 for her "Dwelling/Home" and $6,769.51 for her "Personal Property" less prior payments, depreciation, deductibles, and money "paid when incurred."  ECF No. 34-6 at 1.  To be sure, Defendant accepted that the flooding incident was covered by the insurance policy, and it also acknowledged its obligation to pay damages.  But at no point did Defendant "indicat[e] that further payment was forthcoming" or that the payment "w[as] for the purpose of settlement."  *1426 Wisconsin LLC*, 110 F. Supp. 3d at 270 (citation omitted).  So no "reasonable insured"—let alone her attorney—"could . . . have read" that letter as stating that Defendant was "waiv[ing] . . . the limitations period" or "intend[ing] to pay the remainder of the claim[s]."  *Id.* Because Plaintiff points to no other evidence to back her argument that Defendant waived the statute of limitations, this exception to the limitations period does not apply.

### B.    Plaintiff's Claim for Breach of the Implied Covenant of Good Faith is Also Time-Barred

"Every contract contains an implied covenant of good faith and fair dealing."  *Sundberg*

*v. TTR Realty, LLC*, 109 A.3d 1123, 1133 (D.C. 2015). At root, this covenant means "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006) (citation omitted). But this claim is time-barred under the same contractual limitations provision that forecloses Plaintiff's breach-of-contract claim, which broadly prohibits any "*action*" to "be brought . . . within one year after the date of loss." ECF No. 33-4 at 24 (emphasis added).

Plaintiff presses three arguments against applying the limitations period, but none persuades. First, she argues that Defendant waived this defense and "concede[d] that [her] claim for breach of the implied covenant . . . is proper" because it did not state in its motion "that the contractual statute of limitations applies" to that claim. ECF No. 34 at 11. Her argument is a nonstarter. Defendant states that Plaintiff brings "three" claims, ECF No. 33-2 at 2, and then proceeds to argue that (1) her "*claims*" are barred by the statute of limitations and (2) her unjust-enrichment claim fails because an express contract exists, *see id.* at 4, 7 (emphasis added). This is not the stuff of waiver. And considering Plaintiff then proceeds to argue why the statute-of-limitations bar should not apply to the claim for breach of the implied covenant, Defendant's motion seems to have been clear enough. *Cf. Schaefer v. EPA*, No. 20-CV-2702 (CRC), 2023 WL 2663015, at *4 (D.D.C. Mar. 28, 2023) ("Although a party's failure to raise an issue in its opening brief usually constitutes waiver, the Court has discretion to consider such arguments where the other party had the opportunity to respond.").

Second, Plaintiff points to Defendant's "bad faith actions that were arbitrary and capricious," including "the way the claim was adjusted," its "refusal to inspect and value the personal properties," and its "decision to deny payment of the 1-800-packout storage fees." ECF No. 34 at 11. All of this puts the cart before the horse. The Court need not—indeed cannot—consider the

merits of Plaintiff's claim for breach of the implied covenant if she cannot clear the contractual statute-of-limitations bar. Plaintiff cites no authority exempting this kind of claim from the ordinary rules.[6]

Plaintiff's third argument fares no better. She appears to suggest that, even assuming the limitations period applies, the District of Columbia's COVID-19-related emergency orders tolled it. *See* ECF No. 34 at 4–5, 11. Specifically, on March 18, 2020, the D.C. Superior Court ordered that "all statutory and rules-based time limits in the D.C. Code" be "tolled" in response to the Covid-19 pandemic until May 15, 2020. *See Amended Order*, D.C. Super. Ct. (Mar. 19, 2020), https://www.dccourts.gov/superior-court/covid-orders. The Superior Court extended the tolling period repeatedly until June 10, 2022. *See Amended Order*, D.C. Super. Ct. (June 10, 2022), https://www.dccourts.gov/superior-court/covid-orders. But the D.C. Superior Court orders evidently do not "provide for the tolling of *contractual* limitations period[s]." *Gardner*, 639 F. Supp. 3d at 143 (emphasis added).

## C.    The Existence of An Express Contract Precludes Plaintiff's Unjust-Enrichment Claim

Plaintiff also asserts that Defendant was unjustly enriched because it "realized substantial premium[s]" while "withh[olding] the insurance payments" it owed her. Am. Compl. ¶¶ 26–28. But unjust enrichment is a quasi-contractual theory of recovery that "presupposes" no "express, enforceable contract" exists. *Plesha v. Ferguson*, 725 F. Supp. 2d 106, 112 (D.D.C. 2010) (citing

---

[6] Plaintiff also hints at "actions" Defendant took "after the contractual limitation period" that, she presumably argues, rise to the level of a breach of the implied covenant of good faith. ECF No. 34 at 11. She asserts these actions occurred as late as July 2020. *Id.* But any claim for breach of the implied covenant of good faith based on those actions would be time-barred as well, because she filed suit in April 2022. And she does not argue that her implied-covenant-of-good-faith claim is somehow independent of her contractual claim or subject to a different statute of limitations.

*Vila v. Inter-Am. Inv. Corp.*, 570 F.3d 274, 279 (D.C. Cir. 2009)); *see Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58, 63 (D.C. 2005). It provides a remedy when "justice warrants a recovery as though there had been a promise." *Jordan Keys & Jessamy*, 870 A.2d at 63 (quoting Black's Law Dictionary 324 (6th ed. 1990)). Because an express contract governed the parties' conduct and Plaintiff has not challenged its validity or enforceability, Defendant is entitled to summary judgment on her claim for unjust enrichment.

Plaintiff acknowledges the "general rule" that an express contract bars an unjust-enrichment claim but argues that courts may still "allow" such a claim in various circumstances, such as "when the express contract does not fully address a subject matter." ECF No. 34 at 12. She provides no legal authority for this proposition. But she argues her claim "is based on the premiums she paid to cover her loss," which Defendant "unjustly retain[ed]" without "cover[ing] damages to her personal property." *Id.* In her view, the "claim for unjust enrichment . . . is based on equitable principles" and "is not contingent upon the niceties of the law of contracts and is not based on breach of contract." *Id.* at 13. But Plaintiff *does* assert breach of contract by challenging Defendant's refusal to do what she says her policy required. So the "niceties" of contract law *do* apply and preclude her claim here. *See Glasgow v. Camanne Mgmt. Inc.*, 261 A.3d 208, 215–16 (D.C. 2021) ("[C]ourts will not displace the terms of a contract and impose some other duties not chosen by the parties." (cleaned up and citation omitted)).[7]

---

[7] To the extent Plaintiff argues that her lawsuit is not an "action" for purposes of the limitations provision because it is an equitable action, she fails to recognize that "[t]here is one form of action—the civil action." Fed. R. Civ. P. 2; *accord* D.C. Super. Ct. R. Civ. P. 2.

**IV.    Conclusion**

For all the above reasons, the Court will grant Defendant's Motion for Summary Judgment.

A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: January 24, 2025

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PHANTA U. DARAMY-ANDREWS, | |
| *Plaintiff*, | |
| v. | Civil Action No. 22-1694 (TJK) |
| LIBERTY INSURANCE CORPORATION, | |
| *Defendant*. | |

## ORDER

For the reasons set forth in the Court's accompanying Memorandum Opinion, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 33, is **GRANTED**. Judgment is hereby **ENTERED** in favor of Defendant. This is a final, appealable order. The Clerk of Court is directed to close the case.

**SO ORDERED**.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: January 24, 2025

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

PHANTA U. DARAMY-ANDREWS
_____
                Plaintiff

vs.                                    Civil Action No. _22-1694 (TJK)_

LIBERTY INSURANCE CORPORATION,
_____
                Defendant

# NOTICE OF APPEAL

Notice is hereby given this  21st    day of  February          , 20 25    , that

Phanta U. Daramy-Andrews by her Attorneys Charles C. Iweanoge, Esquire and THE IWEANOGES; FIRM, PC

hereby appeals to the United States Court of Appeals for the District of Columbia Circuit from

the judgment of this Court entered on the   24th        day of  January         , 20 25

in  favor of   Liberty Insurance Corporation

against said

                                        /s/CharlesCIweanoge/s/
                                    _____
                                        Attorney or Pro Se Litigant

(Pursuant to Rule 4(a) of the Federal Rules of Appellate Procedure a notice of appeal in a civil
action must be filed within 30 days after the date of entry of judgment or 60 days if the United
States or officer or agency is a party)

**CLERK**        Please mail copies of the above Notice of Appeal to the following at the addresses
                indicated:

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

PHANTA U. DARAMY-ANDREWS
_____
Plaintiff

vs.                                    Civil Action No. 22-1694 (TJK)

LIBERTY INSURANCE CORPORATION,
_____
Defendant

## AMENDED NOTICE OF APPEAL

Notice is hereby given this 21st    day of  February    , 20 25   , that

Phanta U. Daramy-Andrews by her Attorneys Charles C. Iweanoge, Esquire and THE IWEANOGES; FIRM, PC

hereby appeals to the United States Court of Appeals for the District of Columbia Circuit from

the judgment of this Court entered on the  24th      day of January      , 20 25

in  favor of  Liberty Insurance Corporation

against said

/s/CharlesCIweanoge/s/
_____
Attorney or Pro Se Litigant

(Pursuant to Rule 4(a) of the Federal Rules of Appellate Procedure a notice of appeal in a civil
action must be filed within 30 days after the date of entry of judgment or 60 days if the United
States or officer or agency is a party)

**CLERK**        Please mail copies of the above Notice of Appeal to the following at the addresses
indicated:

James Charles Mehigan     jmehigan@mehiganlawgroup.com
Mehigan Law Group, PLLC
11921 Freedom Drive, Suite 550
Reston, Virginia 20190

**App.577**